UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| STEVEN ITALIANO, JUNE GIOIA,SUSAN WHITE, DOREEN VAZQUEZ, and CHRIS PIERRE, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Index No.: 14-cv-00018-LDW-ARL |
| Plaintiffs, | ) ) | **AMENDED** |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| MIDLAND FUNDING, LLC, and MIDLAND FUNDING, LLC DBA IN NEW YORK AS MIDLANDFUNDING OF DELAWARE, LLC, | ) ) ) ) | **Jury Trial Demanded** |
| Defendants. | ) ) ) | **FILED VIA ECF** |

_____

Plaintiffs Craig Moore, Susan White, Doreen Vazquez, David Agoado, and Chris Pierre ("Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned attorneys, allege as follows for their Amended Class Action Complaint against defendants Midland Funding, LLC and Midland Funding, LLC DBA in New York as Midland Funding of Delaware, LLC (together "Midland" or the "Midland Defendants"), and Rubin & Rothman, LLC, Forster & Garbus LLP, Cohen & Slamowitz, LLP, and Pressler and Pressler LLP (the "Attorney Defendants") (collectively with Midland, "Defendants"). These allegations are made on information and belief and pursuant to the investigation of their counsel.

## <u>NATURE OF THE CASE</u>

1.     Midland is a consumer debt collector.[1] Midland's business model is predicated upon the purchase of cheap consumer debt, usually priced at pennies on the dollar. This debt is

---

[1] "Consumer debt" and "debt" as used herein are "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

cheap for a reason—much of it is invalid and unsupportable.  Worse, the debt is sold without the underlying debt contract (or any amendments thereto), account statements, customer service records, customer dispute records, or any facts, whatsoever having to do with the actual account under dispute.  Without this evidence, or anyone with personal knowledge of the account, Midland cannot demonstrate a prima facie case against the purported debtors in New York State courts.

2.     Two weeks ago, Chief Judge Jonathan Lippman of the New York State Court of Appeals reiterated that "the law requires a [debt buyer] seeking a default judgment to provide some *firsthand confirmation of the key facts in the case*."[2] (emphasis added).  Yet, the Defendants never possess "firsthand confirmation of the key facts," of the debt that Midland purchases.

3.     Undeterred by their lack of evidence, Defendants circumvent New York State's robust rules of evidence by engaging in a pattern and practice of fraudulently obtaining default judgments by bringing claims that Defendants know they cannot prove.  Facilitating this scheme, Midland and the Attorney Defendants submit fraudulent and materially deceptive robosigned affidavits, which misleadingly purport to be based on "personal knowledge."  Worse, Midland's affidavits include language that has already been held to be materially deceptive by numerous Federal courts.[3]

4.     The Court personnel that engage in the default process engage in a largely ministerial function, relying upon the representations and certifications of the attorneys who practice before the court.  It is thus easy for the Defendants to unscrupulously obtain default

---

[2] April 30, 2014 Press Release, at 1, annexed hereto as Exhibit A.

[3] These rulings were in actions against other defendants.  See infra, n. 10.

judgments without admissible evidence.  Midland then uses these fraudulently obtained default judgments to garnish the precious wages of low-income consumers, having never proven that the consumers owed them anything.

5.     Midland's fraudulent scheme involves three parts. First, Midland purchases the purported debt knowing that any evidence that a consumer might use in disputing the existence of the debt has not been preserved by the original creditor.  Midland's debt purchase transactions are made on a non-recourse basis.  As such, originators are left with no reason to retain the underlying records, ensuring that the records will never see the inside of a courthouse.

6.     Upon information and belief, Midland does not examine the actual supporting documentation for the accounts it purchases to even verify the existence of the debt at issue.  The spreadsheets received from the original creditors in the transaction contain little or no supporting documentation.  Even though the Defendants know that these spreadsheets are specifically created in anticipation of litigation against the purported debtors, and thus are inherently unreliable, and likely inadmissible, in a court of law, Defendants rely on this summary data, and only the summary data, in filing and maintaining their lawsuits against consumers.  At the time of Midland's purchase of the debt, it could verify the purported credit card debts through the original creditors' account statements, which are also electronic. Midland chooses not to.

7.     Second, even though Midland knows that it cannot actually demonstrate the existence of a debt, Midland engages in a pattern and practice of fraudulently filing lawsuits without evidentiary support in New York State courts.  Midland's sole intention in these lawsuits is to obtain default judgments without ever having had prima facie evidence in hand.  During the Class Period, Midland has filed more almost 200,000 lawsuits in New York State courts alone.  Upon information and belief, over 80 percent resulted in default judgments.

8.     Third, Midland engages in the fraudulent practice of submitting materially deceptive affidavits as part of its default actions in order to pressure consumers to settle debts that they do not owe.  Instead of submitting admissible evidence, Midland fraudulently miswords the 15 U.S.C. § 1692g disclosure in its affidavits in order to imply that, should the consumer not reply to Midland within 30 days, the court will presume the debt is valid.  Faced with this perceived court presumption against them, consumers settle, particularly where Midland made sure it brought actions where the consumers would be unable to access documents for their defense.

9.     Rubin & Rothman, LLC, Forster & Garbus LLP, Cohen & Slamowitz, LLP, and Pressler and Pressler LLP (the "Attorney Defendants") are law firms Midland retains to collect on the consumer debt it purchases.  The Attorney Defendants, among other things, commenced tens of thousands of lawsuits, or threatened to commence lawsuits, against Plaintiffs and the other members of the Class, without ever having conducted a reasonable investigation as to the facts they were alleging.  In New York, such debt collection lawsuits must be supported by an attorney's certification pursuant to 22 NYCRR Part 130, Rules of the Chief Administrator, requiring that an attorney sign a document only after an investigation reasonable under the circumstances.  As the Attorney Defendants were aware that Midland's practices were to have no supporting documentation, could not obtain supporting documentation, and that Midland would, nevertheless, provide "robosigned" affidavits by persons unfamiliar with the case, no reasonable investigation could be done.

10.     Midland's practice of deliberately obtaining default judgments—all-the-while knowing it could never prove its prima facie cases—is so insidious that it is exactly what Chief Judge Lippman, the New York State Attorney's General Office, the New York State Department

of Financial Services, and the New York State Legislature are seeking to combat in recently announced reforms: "in practice default judgments are obtained on the basis of 'robosigned' affidavits containing hearsay allegations and few if any facts pertaining to the history of the debt at issue. Creditors frequently secure default judgments for the wrong amount of money or even against the wrong party. . . ."[4] (emphasis added).

11.     Through these practices, Midland absconds with millions of dollars in garnished wages from these unprotected consumers, while the Attorney Defendants gain substantial fees by doing Midland's bidding. All without enough evidence to make a prima facie case.  Midland and the Attorney Defendants repeatedly engage in these fraudulent, practices in New York State courts every day.  Just last week, Midland filed 265 complaints in the County courts of *this* District alone – an average of 53 complaints per day.  Plaintiffs, and the class, "the majority of whom are low-income or working people, including many elderly and disadvantaged New Yorkers,"[5] need relief now.

## JURISDICTION AND VENUE

12.     All Defendants conduct business in the State of New York.  Venue is predicated on the residence of Plaintiffs and on the fact that Midland and the Attorney Defendants conduct business in Suffolk County, New York.

13.     This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1337, and under 15 U.S.C. § 1692k(d), which provides that "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy . . . ."

---

[4] April 30, 2014 Press Release, at 1.

[5] *Id*. at 2.

14.     This Court has supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court also has jurisdiction over all the claims under 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), in that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any members of a class of plaintiff is a citizen of a state different from any defendant."

## PARTIES

### Plaintiffs

16.     Plaintiff Doreen Vazquez is a resident of the State of New York.  At the time of the events described herein, Ms. Vasquez resided in Nesconset, New York.  Ms. Vazquez is a consumer as the term is defined by 15 U.S.C. § 1692a(3).  One or more of the Defendants initiated at least one action against Ms. Vasquez alleging claims related to consumer debt.

17.     Plaintiff Susan White is a resident of the State of New York.  At the time of the events described herein, Ms. White resided in Copiague, New York.  Ms. White is a consumer as the term is defined by 15 U.S.C. § 1692a(3).  One or more of the Defendants initiated at least one action against Ms. White alleging claims related to consumer debt.

18.     Plaintiff David Agoado is a resident of the State of New York.  At the time of the events described herein, Mr. Agoado resided in North Babylon, New York.  Mr. Agoado is a consumer as the term is defined by 15 U.S.C. § 1692a(3).  One or more of the Defendants initiated at least one action against Mr. Agoado alleging claims related to consumer debt.

19.     Plaintiff Chris Pierre is a resident of the State of New York.  At the time of the events described herein, Mr. Pierre resided in Holbrook, New York.  Mr. Pierre is a consumer as

the term is defined by 15 U.S.C. § 1692a(3).  One or more of the Defendants initiated at least one action against Mr. Pierre alleging claims related to consumer debt.

20.    Plaintiff Craig Moore is a resident of the State of New York.  At the time of the events described herein, Mr. Moore resided in Coram, New York.  Mr. Moore is a consumer as the term is defined by 15 U.S.C. § 1692a(3).  One or more of the Defendants initiated at least one action against Mr. Moore alleging claims related to consumer debt.

**Defendants**

21.    Defendant Midland is a Delaware Limited Liability Company which transacts business in the State of New York or contracts to supply services in the State of New York. Midland Funding, LLC is the successor in interest to or an alter ego of Midland Funding, LLC d/b/a in New York as Midland Funding of Delaware, LLC.  Midland maintains offices at 8875 Aero Drive, Suite 200, San Diego, California 92123.  Midland buys consumer debt from the originating creditor and then collects, or attempts to collect, directly or indirectly, consumer debts that were owed or due or asserted to be owed or due to the originating creditor.

22.    Defendant Rubin & Rothman, LLC is a law firm, located at 1787 Veterans Memorial Highway, Islandia, New York 11749, retained by Midland to collect on the consumer debt that Midland purchased.  Pursuant to that retention, Rubin & Rothman files actions in New York courts seeking collection.  As part of the filing of each such case Rubin & Rothman includes a Rule 130 certification.

23.    Defendant Forster & Garbus LLP is a law firm, located at 60 Vanderbilt Motor Pkwy, Commack, New York 11725, retained by Midland to collect on the consumer debt that Midland purchased.  Pursuant to that retention, Forster & Garbus files actions in New York

courts seeking collection.  As part of the filing of each such case Forster & Garbus includes a Rule 130 certification.

24.     Defendant Pressler and Pressler LLP is a law firm, located at 305 Broadway, 9th floor, New York, New York 10007, retained by Midland to collect on the consumer debt that Midland purchased.  Pursuant to that retention, Pressler and Pressler files actions in New York courts seeking collection.  As part of the filing of each such case Pressler and Pressler includes a Rule 130 certification.

25.     Defendant Cohen & Slamowitz, LLP is a law firm, located at 199 Crossways Park Drive, Woodbury, New York 11797-2016, retained by Midland to collect on the consumer debt that Midland purchased.  Pursuant to that retention, Cohen & Slamowitz, LLP files actions in New York courts seeking collection.  As part of the filing of each such case Cohen & Slamowitz includes a Rule 130 certification.

## CLASS ALLEGATIONS

26.     This action is brought on behalf of Plaintiffs individually and as a class action on behalf of two classes (collectively referred to herein as "the Class"):

    a.    All persons who were or are residents and consumers in the State of New York from September 19, 2008 and continuing through the present (the "Midland Class Period"), against whom Defendants commenced lawsuits, or threatened to commence lawsuits, against Plaintiffs and the other members of the Class for the collection of consumer debt for which Defendants had insufficient evidence of the existence of the consumer debt.  Excluded from the Class are the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest; and

    b.    All persons who were residents and consumers in the State of New York from May 16, 2008 through the present (the "Attorney Defendant Class Period"), against whom the Attorney Defendants commenced lawsuits, or threatened to commence lawsuits on behalf of Midland, against Plaintiffs and the other members of the Class for the collection of consumer debt for which the Attorney Defendants had insufficient evidence of the existence of the consumer

debt, or failed to conduct a proper investigation under the circumstances. Excluded from the Class are the partners and employees of the Attorney Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which the Attorney Defendants have or had a controlling interest.

27.    The Attorney Defendants, on behalf of Midland, have filed tens of thousands of consumer debt collection lawsuits in the State of New York.  From January 1, 2014 through April 14, 2014, alone, the Attorney Defendants have filed 8,021 lawsuits in the State of New York.  While the exact number of Class members can only be determined by appropriate discovery, Plaintiffs believe there are thousands of members of the Class.  Members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by United States mail.

28.    Plaintiffs' claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law that is complained of herein.

29.    There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that may affect individual members. These include the following:

a.    Whether Midland engaged in debt purchase transactions without verifying the validity of the alleged debt they were purchasing;

b.    Whether Defendants had sufficient evidence of the existence of the alleged consumer debt;

c.    Whether the alleged consumer debt was properly assigned to Midland;

d.    Whether the alleged debtor was furnished with evidence of the alleged consumer debt;

e.    Whether the alleged debtor was furnished with evidence of the assignment of the alleged consumer debt;

9

      f.     Whether Midland filed materially deceptive affidavits in association with the consumer debt litigation;

      g.     Whether the Attorney Defendants filed complaints without conducting a reasonable investigation under the circumstances;

      h.     Whether Plaintiffs and the other members of the Class are entitled to damages, including punitive damages, costs, or attorneys' fees for Defendants' acts and conduct as alleged herein.

30.     Plaintiffs will fairly and adequately represent the Class members.  Plaintiffs have no interests that conflict with the interests of other Class members.  Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTS

### Midland

32.     Debt collection litigation has surged in New York.  In 2011, almost 200,000 debt collection actions were filed in New York State alone.  These lawsuits are targeted at those least able to defend themselves, as only 2 percent of all New Yorkers sued had representation.[6]  A substantial number of these lawsuits were filed by Midland and the Attorney Defendants.

33.     "Debt buyers" like Midland buy defaulted, charged-off debts for pennies on the

---

[6] *See* Shin, Susan and Claudia Wilner "The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Equality." New Economy Project, June 2013. Available at: http://www.nedap.org/resources/documents/DebtCollectionRacketNY.pdf (last visited May 16, 2014).

dollar and then seek to collect the full face value of the debts for themselves. Information about a purchased portfolio of debts is transmitted to the debt buyer electronically in the form of a spreadsheet. The spreadsheet contains a list of accounts in the portfolio, as well as the consumer's name, Social Security number, last known address and telephone number, the account number, charge-off date, date and amount of last payment, and alleged amount owed. Midland does not purchase or obtain documents showing an indebtedness between the original creditor and debtor, such as the credit contract and amendments thereto, account statements, customer service records, or customer dispute records.

34. In its 2009 Workshop Report, *Collecting Consumer Debts: The Challenges of Change*, the Federal Trade Commission recommended that debt collectors be required to have more or better information to substantiate debt claims. Similarly, the Chief Judge of the New York Court of Appeals recently announced a set of reforms aimed at ensuring a fair legal process for debtors in credit collection lawsuits. Among the reforms recommended are requirements that creditors submit affidavits that include detailed proof in support of default judgment applications.

35. Midland purchases consumer debt without recourse and frequently without the primary or supporting documentation to establish a valid consumer debt or that it is the assignee of the consumer debt from the originating creditor. Midland usually has no right to obtain, or even request any of the underlying documentation of the original alleged consumer debt that it purchases.

36. To investigate a consumer's dispute or respond to a request for information about an alleged consumer debt, Midland would have to obtain and review supporting documentation from the original creditor. As Midland purchases this consumer debt for pennies on the dollar,

and the purchase is non-recourse, Midland does not receive and cannot obtain this documentation.

37.    Midland aggressively seeks to collect on the consumer debt it purchases.  Midland directly, and indirectly through its agents, including the Attorney Defendants herein, caused tens of thousands of dunning letters to be sent and telephone calls to be made to alleged debtors without ever having supporting documentation as evidence of the consumer debt, and without prior reasonable investigation and meaningful attorney involvement.

38.    Midland pressures consumers to pay despite the absence of the underlying evidence to support the alleged consumer debt or the assignment of that consumer debt to itself. Such pressure may include threats to report the alleged consumer debt to credit rating agencies. Some alleged debtors pay Midland just to avoid false reports to credit bureaus or to otherwise avoid harassment or the legal process.

39.    If the dunning letters and telephone calls do not cause the alleged debtor to pay the demanded amount, the Attorney Defendants draft form New York State court complaints which are filed although there is no underlying documentation available and without prior reasonable investigation into the validity of the consumer debt.

40.    Midland Funding LLC or Midland Funding, LLC DBA in New York as Midland Funding of Delaware, LLC are named in these actions as plaintiffs and the alleged owners of the consumer debt as successor in interest to the original creditor.

41.    Midland files thousands of cases in Nassau and Suffolk County each year and hundreds of thousands of cases in other counties around New York State.  Since the advent of e-Courts case tracking in 2006, Midland has filed more than 40,000 cases in Nassau and Suffolk County District Courts alone.  Midland generates a significant portion of its revenue by filing

lawsuits and collecting on judgments that are granted by courts in lawsuits filed against individual consumers.

42.     When using the courts to collect on purchased consumer debts, Midland typically files a two-page, boilerplate complaint that identifies Midland as the successor in interest to an alleged creditor, asserts a claim for breach of contract, and demands judgment.

43.     As the plaintiff, Midland identifies itself as the owner of the alleged consumer debt or successor in interest to the original creditor, and claims that the alleged debtor breached a contract with the creditor by failing to pay for goods or services purchased on an account issued by the original creditor.

44.     New York State Court of Appeals Chief Judge Lippman has emphasized that the specific practice of filing lawsuits without first obtaining "firsthand confirmation of the key facts in the case" is contrary to what "the law requires."[7]  The Chief Judge further condemns the practice of obtaining default judgments "on the basis of 'robosigned' affidavits containing hearsay allegations and few if any facts pertaining to the history of the debt at issue."[8]  Yet, these are exactly the practices complained about herein.  Such a practice is pernicious, because "[d]ubious consumer debt litigation practices can lead to unwarranted default judgments, often with devastating consequences for the debtor—typically a lower-income New Yorker struggling to support a family and find or maintain a job."[9]

45.     It is improper for a consumer debt buyer to commence any action unless it can readily obtain evidence in admissible form that would make out a prima facie case.  Such proof

---

[7] April 30, 2014 Press Release, at 2.

[8] *Id.*

[9] *Id.*

should include evidence that the debt buyer actually owns the consumer debt, that the debtor was given notice of the assignment, and that the underlying consumer debt claim is meritorious. Midland has no such admissible evidence.

46.     In the stead of evidence in admissible form, Midland crafts its employee affidavits in order to mislead the least-sophisticated consumer.   Specifically, the 15 USC § 1692g disclosure in the boilerplate affidavit[10] that Midland files in default actions states, in pertinent part:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt will be assumed valid.

47.     The actual statutory language of 15 U.S.C. § 1692g states:

> [A] debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . . . a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*.

> (emphasis added)

48.     Removing the statutory words "by the debt collector," in a 15 U.S.C. § 1692g disclosure is a tried and true fraudulent scheme employed by unscrupulous debt collectors.  As a result, there is a mountain of case law vilifying this despicable practice.[11]   Midland's language,

---

[10] Upon information and belief, Midland uses this language in all affidavits submitted in support of default judgments.

[11] As Judge Spatt emphasized in a similar situation in *Diaz v. Residential Credit Solutions, Inc.*, 965 F. Supp. 2d 249 (E.D.N.Y. 2013): "as other courts have held, 'the absence of the term 'by the debt collector,' [in a 15 U.S.C. § 1692g disclosure] or its equivalent here, is a sufficient allegation of an FDCPA violation to survive the standard for a motion to dismiss." (quoting *Philip v. Sardo & Batista, P.C.,* Civil Action No. 11-4773 (SRC), 2011 U.S. Dist. LEXIS

as written, is crafted to confuse the least-sophisticated consumer into believing that under the FDCPA, a court will assume the debt to be valid if the consumer does not respond within 30 days. After 30 days have passed, the least-sophisticated consumer is thus deceived into believing that any dispute of the debt would require overcoming a legal presumption that the debt is valid. Defendants then pressure members of the Class to settle these actions, paying Midland for debt that Midland could never prove was owed in the first place.[12]

49.     Many of these affidavits have been executed at the offices of Midland Credit Management, Inc. in St. Cloud, Minnesota, and submitted to a court without the requisite Certificate of Conformity required by the CPLR. At all relevant times, Midland was and is the owner of Midland Credit Management, Inc. ("MCM"). Midland uses MCM to manage and oversee Midland's collection efforts.

50.     Midland facilitates the Attorney Defendants' submissions of misleading, improper and inadequate evidence by having Midland employees sign hundreds of affidavits per day. These affidavits are allegedly based on the employees' "personal knowledge" of the account information. On information and belief, these affiants have little, if any, knowledge of the facts to which they attest or any understanding of the contents of the documents that they are signing.

51.     The Attorney Defendants are required to submit evidence in "admissible form" in support of an application to obtain a default judgment. The Attorney Defendants, however,

---

130267, at *12 n. 1, 13 (D.N.J. Nov. 10, 2011)); citing *Galuska v. Collectors Training Inst. of Illinois*, No. 07-2044, 2008 U.S. Dist. LEXIS 39508 at *17-18 (M.D. Pa. May 13, 2008)); *see also Orr v. Westport Recovery Corp.*, 941 F. Supp. 2d 1377, (N.D. Ga. 2013)(same); *Koch v. Atkinson, Diner, Stone, Mankuta & Ploucha, P.A.*, 2011 U.S. Dist. LEXIS 109826 (S.D. Fla. Sept. 26, 2011); *Guerrero v. Absolute Collection Serv.*, 2011 U.S. Dist. LEXIS 155541 (N.D. Ga. Oct. 6, 2011); *Harlan v. NRA Group, LLC*, 2011 U.S. Dist. LEXIS 12751 (E.D. Pa. Feb. 9, 2011); *Pierce v. Carrington Recovery Servs.*, LLC, 2009 U.S. Dist. LEXIS 72049, (W.D. Pa. Aug. 14, 2009); *Nelson v. Select Fin. Servs.*, 2006 U.S. Dist. LEXIS 42637 (E.D. Pa. June 8, 2006); *Smith v. Hecker*, 2005 U.S. Dist. LEXIS 6598 (E.D. Pa. Apr. 18, 2005).

[12] Such was the case with Plaintiff Pierre.

routinely submit to the trial courts misleading, improper, and inadequate documentation provided to them by Midland, taking advantage of the fact that default judgments are, for the most part, issued as a ministerial function by court clerical personnel who rely upon the representations of the attorneys who practice before the court. Moreover, hearsay evidence prepared in anticipation of litigation, such as the spreadsheets upon which Defendants rely, is not admissible evidence.

52.     Many consumers subjected to Defendants' practices do not understand the court system, cannot afford to hire an attorney, or feel forced into settling a lawsuit in which Midland may be seeking a total judgment that has ballooned to more than twice the principal amount of the alleged consumer debt due to interest, and other fees.

53.     From the perspective of the "least sophisticated consumer," which the FDCPA seeks to protect, such a lawsuit could deceive or mislead a person into believing that the debt buyer would likely recover a judgment if the consumer did not pay the alleged consumer debt or agree to a proposed settlement.  The mere filing of such a lawsuit pressures consumers to pay something.

54.     The vast majority of the Midland lawsuits filed within the State of New York result in default judgments in favor of Midland because the unrepresented defendants failed to appear or respond, often due to improper service.

55.     Only a miniscule number of these filed cases go to trial.  In the vast majority of these consumer debt collection lawsuits, there is no answer or responsive pleading filed which result in default judgments entered against unrepresented consumers.

56.     If a responsive pleading is served, the Attorney Defendants will often allow the cases to lie fallow.  Similarly when a *pro se* defendant answers and demands discovery, the same result may occur.

57.     In some instances, Defendants file a summons against the alleged debtor, yet fail to affect service, leaving the case to lie fallow, not removing or withdrawing the case, and leaving this blemish on the consumer's public record.

58.     The consumers sued in the consumer debt collection lawsuits incur significant expenses, including payments to the Attorney Defendants and to Midland, garnished wages, and attached bank accounts.

59.     All of these practices are well noted by New York's courts.  See *Midland Funding LLC v. Loreto*, case 008963/11, 34 Misc. 3d 1232(A) (Civil Ct, Richmond Cnty Feb. 23, 2012), annexed hereto as Exhibit B.

**<u>The Attorney Defendants</u>**

60.     22 NYCRR § 130-1.1 allows the court at its discretion to award any party or attorney in a civil action before the court, except where prohibited by law, reimbursement for actual expenses and reasonable attorney's fees resulting from frivolous conduct.  "Frivolous conduct", under section 130-1.1(c), includes conduct undertaken primarily to "harass or maliciously injure another," and conduct that "asserts material factual statements that are false." In determining whether the conduct at issue was frivolous, the court shall consider, among other things, "the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, or should have been apparent, or was brought to the attention of counsel or the party."

61.     22 NYCRR § 130-1.1A requires that every paper served on another party or filed or submitted to the court be signed by an attorney, or a party if the party is not represented by an attorney.  By such signature, under section 130-1.1A an attorney or party certifies that, to the best of their knowledge, and "after an inquiry reasonable under the circumstances … the

presentation of the paper or the contentions therein are not frivolous as defined in section 130-1.1(c)."

62.    Yet, the Attorney Defendants engage in a pattern and practice of using boilerplate complaints to make factually unsupportable attestations against Plaintiffs and members of the Class. Instead of conducting an investigation reasonable under the circumstances, the Attorney Defendants did not engage in any investigation, whatsoever. This is reflected in their deceptive, and just lazily drafted boilerplate complaints. For example:

a.    In the boilerplate complaint used by Rubin & Rothman, and filed against Plaintiff Vasquez on February 2, 2011, Rubin & Rothman asserted that "Defendant(s) accepted statements sent by plaintiff or plaintiff's assignor." This was a false attestation as Rubin & Rothman could not have known any details of the interactions between Vasquez and Chase Bank, the purported originator, as Midland did not receive any of those details in its purchase. Also, if the attorneys conducted a reasonable investigation, how is it that the supposed account statements at issue were sent by *either* Midland *or* the originator? Surely an attorney that had properly verified this statement would know.

b.    Similarly, the boilerplate complaint used by Defendant Pressler & Pressler, LLP, and filed against Plaintiff Moore on June 27, 2011, asserts that: "The agreement containing the terms and conditions governing the use of the charge account, including terms of payment was issued to defendant(s)." However, as with all of Midland's alleged consumer debtors, Midland did not have actual access to the supposed agreement—the entire allegation was simply fabricated.

c.      The boilerplate complaint used by Defendant Forster & Garbus, and filed against Plaintiff White on January 7, 2011, falsely asserts that:

> on information and belief the Defendant in person or through an agent made credit card purchases or took money advances under a credit card or line of credit account or promissory note/loan— which a copy was furnished to Defendant.

As, upon information and belief, neither Midland nor Forster & Garbus ever saw any evidence of Plaintiff White's "credit card purchases" or "money advances," there is simply no basis for this statement. Neither did Midland or Forster & Garbus have any knowledge of what statements were or were not provided to Plaintiff White by the purported originator.

b.      The boilerplate complaint used by Defendant Cohen & Slamowitz, and filed against Plaintiff Agoado on January 3, 2012, falsely asserts that:

> Plaintiff's predecessor in interest, HOUSEHOLD FINANCIAL CORPORATIO [sic] …offered to open a credit card account … in Defendant's name.  Defendant accepted the offer by using the account.

As, upon information and belief, neither Midland nor Cohen & Slamowitz ever saw any of the purported account's purchase records, or any evidence of Plaintiff Agoado's use of the account, there is simply no basis for this statement.

63.     The Attorney Defendants have each flooded the New York court system with lawsuits during the class period, having filed tens of thousands of lawsuits on Midland's behalf. Since 2009, the Attorney Defendants have filed tens of thousands of cases in New York on Midland's behalf. Specifically, Cohen & Slamowitz, LLP has filed over 70,300 actions, Forster

& Garbus LLP has filed over 52,300 actions, Pressler and Pressler LLP has filed over 36,600 actions, and Rubin & Rothman, LLC has filed over 7,200 actions.

**Plaintiffs**

**David Agoado**

64.     On or about January 3, 2012, Midland, represented by defendant Cohen & Slamowitz, LLP, commenced two actions against plaintiff Agoado in the First District Court of Suffolk County, under Index Nos. CEC-12 000765 and CEC-12 000767, collectively seeking $19,414.10, plus interest and costs.  Upon information and belief, neither Midland, nor Cohen & Slamowitz, LLP, made a reasonable effort to verify Mr. Agoado's purported debts before harassing him or before filing the lawsuits.  Although defendants assert that the purported debts were purchased from "Household Financial Corporatio" [sic] and Chase Bank, N.A., upon information and belief, Midland does not possess, and has never possessed (nor ever seen), any documentary evidence supporting any of the purported debts purchased from Household Financial Corporation or Chase Bank.  In fact, Midland is incapable of ever proving the existence of a debt or debt agreement as, upon information and belief, Midland never reviewed, nor has been in possession of, any documentary evidence of the purported debts, such as Agoado's credit card applications or any credit card purchases.  Midland alleges the debts purchased from Household Financial Corporation and Chase Bank are legitimate debts simply because Household Financial Corporation and Chase Bank apparently told them so.

65.     Since defendants do not possess (nor have they ever possessed) actual evidence of the purported debts, they were forced to manufacture supporting evidence.  Thus, the *only* documents provided by Midland to the First District Court were two nearly identical affidavits signed by a Kayla Haag, stating that Midland's own computer systems show that Mr. Agoado

owed Midland money, and that those computer systems were created and maintained in the regular course of Midland's business.  Ms. Haag did <u>NOT</u> assert that she relied on any documents, whatsoever, that related to the extension of credit or accrual of the alleged debts; neither did Ms. Haag state who purportedly entered these self-serving entries into Midland's own computer systems, or what documents were relied upon in making these self-serving entries. Instead, in direct contravention of both State and Federal law, Midland—aided by its counsel— commenced its debt collection actions against Mr. Agoado with no evidence demonstrating a debt other than that Midland thought he owed them a debt based on records Midland itself created.  Upon information and belief, Ms. Haag mass signs so many of these affidavits there is no possibility that she confirmed the existence of any debt other than possibly reviewing a few line items in Midland's own self-serving records.

66.     As part of its application for the default judgments, Defendants did *not* provide:

a.     Affidavits of facts evidencing the sale of the accounts by the original creditors.

b.     Affidavits of the purchase and sale of the debts by intermediate debt sellers, *i.e.*, a copy of all written assignments of the accounts.

c.     A copy of the original credit card agreements.

d.     A copy of any credit card statements evidencing the credit card debts.

e.     Affidavits of non-expiration of the statute of limitations for the specific debts that were purportedly accrued by Mr. Agoado.

**Craig Moore**

67.     On or about June 27, 2011, Midland, represented by defendant Pressler & Pressler, LLP, commenced an action against plaintiff Moore in the First District Court of Suffolk County, under Index No. CEC-11 0006838, seeking $508.88, plus interest and costs.  Upon information and belief, neither Midland, nor Pressler & Pressler, made a reasonable effort to verify Mr. Moore's purported debt before harassing him or before filing suit.   Although

defendants assert that the purported debt was purchased from GE Money Bank, upon information and belief, Midland does not possess, and has never possessed (nor ever seen),any documentary evidence supporting any of the purported debts purchased from GE Money Bank.  In fact, Midland is incapable of ever proving the existence of a debt or debt agreement as Midland avoided purchasing any of the documentary evidence of the purported debt, ranging from Moore's credit card application to the alleged credit card purchases that comprise the purported debt.  Midland alleges the debts purchased from GE Money Bank are legitimate debts simply because GE Money Bank apparently told them so.

68.     Since defendants do not possess (nor have they ever possessed) actual evidence of the purported debt, they were forced to manufacture supporting evidence.  Thus, the *only* document provided by Midland to the First District Court was an affidavit signed by a Paula Hansen, stating that Midland's own computer systems show that Mr. Moore owed Midland money, and that those computer systems were created and maintained in the regular course of Midland's business.  Ms. Hansen did NOT assert that she relied on any documents, whatsoever, that related to the extension of credit or accrual of the alleged debt; neither did Ms. Hansen state who purportedly entered these self-serving entries into Midland's own computer systems, or what documents were relied upon in making these self-serving entries.  Instead, in direct contravention of both State and Federal law, Midland—aided by its counsel—commenced its debt collection action against Mr. Moore with no evidence demonstrating a debt other than that Midland thought he owed them a debt based on records Midland itself created.  Upon information and belief, Ms. Hansen mass signs so many of these affidavits there is no possibility that she confirmed the existence of any debt other than possibly reviewing a few line items in Midland's own self-serving records.

69. As part of its application for default judgment, Defendants did *not* provide:

    a. An affidavit of facts evidencing the sale of the account by the original creditor.

    b. An affidavit of the purchase and sale of the debt by intermediate debt sellers, *i.e.*, a copy of all written assignments of the account.

    c. A copy of the original credit card agreement.

    d. A copy of any credit card statements evidencing the credit card debt.

    e. An affidavit of non-expiration of the statute of limitations for any specific debts that were purportedly accrued by Mr. Agoado.

**Susan White**

70. On or about December 30, 2010, Midland, represented by defendant Forster & Garbus LLP, commenced an action against plaintiff White in the Second District Court of Suffolk County, under Index No. BAC-11 000136, seeking $5,544.41, plus interest and costs. Upon information and belief, neither Midland, nor Forster & Garbus LLP, made a reasonable effort to verify Ms. White's purported debt before harassing her or before filing suit. Although it appears on the Summons that the "Orig Cred" was Bank of America, defendants make no effort in their complaint to identify the underlying creditor. Regardless, upon information and belief, Midland does not possess, and has never possessed (nor ever seen), any documentary evidence supporting any of the purported debts presumably purchased from Bank of America. In fact, Midland is incapable of ever proving the existence of a debt or debt agreement as Midland avoided purchasing any of the documentary evidence of the purported debt, ranging from Ms. White's credit card application to the alleged credit card purchases that comprise the purported debt. Midland alleges the debts purchased from Bank or America are legitimate debts simply because Bank of America apparently told them so.

71. Ms. White retained counsel to represent her against Midland.

72.     The action against Ms. White was ultimately withdrawn by Midland and Forster & Garbus.

**Doreen Vazquez**

73.     On or about February 2, 2011, Midland, represented by defendant Rubin & Rothman, LLC, commenced an action against plaintiff Vazquez in the Fourth District Court of Suffolk County, under Index No. SMC-11 0001333, seeking $10,430.00, plus interest and costs. Upon information and belief, neither Midland, nor defendant Rubin & Rothman, LLC, made a reasonable effort to verify Ms. Vazquez's purported debt before harassing her or before filing suit.  Although defendants assert that the purported debt was assigned to Midland by "Chase," upon information and belief, Midland does not possess, and has never possessed (nor ever seen),any documentary evidence supporting any of the purported debts assigned to Midland by "Chase."  In fact, Midland is incapable of ever proving the existence of a debt or debt agreement as Midland avoided collecting any of the documentary evidence of the purported debt, ranging from Ms. Vazquez's credit card application to the alleged credit card purchases that comprise the purported debt.  Midland simply alleges that the "Chase" debt is legitimate simply because "Chase" apparently told them so upon assignment.

74.     On or about May 31, 2011, Midland obtained a default judgment against Ms. Vazquez in the amount of $11,062.08, including interest and costs.  Ms. Vazquez was subsequently served with an income execution by the Sheriff of Suffolk County.  To this day, defendants continue to fraudulently garnish Ms. Vazquez's wages, having never demonstrated any such debt exists in the first instance.

**Christopher Pierre**

75.     On or about January 5, 2011, Midland, represented by defendant Rubin & Rothman, LLC, commenced an action against plaintiff Pierre in the Fourth District Court of Suffolk County, under Index No. SMC-11 000291, seeking $6,980.53, plus interest and costs. Upon information and belief, neither Midland, nor defendant Rubin & Rothman, LLC, made a reasonable effort to verify Mr. Pierre's purported debt before harassing him or before filing suit. Although defendants assert that the purported debt was assigned to Midland by Chase Bank, N.A., upon information and belief, Midland does not possess, and has never possessed (nor ever seen), any documentary evidence supporting any of the purported debts assigned to Midland by Chase Bank.   In fact, Midland is incapable of ever proving the existence of a debt or debt agreement as Midland avoided collecting any of the documentary evidence of the purported debt, ranging from Mr. Pierre's credit card application to the alleged credit card purchases that comprise the purported debt.   Midland simply alleges that the Chase Bank debt is legitimate simply because Chase Bank apparently told them so upon assignment.

76.     On or about April 14, 2011, Midland obtained a default judgment against Mr. Pierre in the amount of $6,900.67, including interest and costs.   Midland then used their improperly obtained default judgment as leverage to force a settlement, dated June 17, 2011, with Mr. Pierre.

## AS AND FOR A FIRST CAUSE OF ACTION
### (N.Y. GEN. BUS. LAW § 349)
### (Against All Defendants)

77.     Plaintiffs repeat and reallege each and every paragraph set forth above as though fully set forth herein.

78.     Plaintiffs are New York consumers entitled to the protection afforded under Article 22-A of the General Business Law ("GBL") entitled "Consumer Protection from Deceptive Acts and Practices."

79.     GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."

80.     A GBL § 349 cause of action accrues when consumer-oriented conduct is deceptive and materially misleading to a reasonable consumer, and causes actual damages.

81.     Defendants' acts and omissions are directed at consumers and include, but are not limited to:

    a.     using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and members of the class, as described above;

    b.     commencing actions against consumers without sufficient factual basis, and using fraudulent, deceptive, and misleading affidavits and affirmations to influence and pressure consumers in order to obtain settlements from Plaintiffs and members of the class, as described above; and

      c.     commencing actions against consumers without sufficient factual basis, predicated upon false allegations and knowing misrepresentations, yet backed by an attorney's Rule 130 certification.

82.    The acts and practices herein set forth were deceptive, misleading and fraudulent. As a result of such practices, Plaintiffs and members of the Class were injured, suffered damages, and are entitled to relief as provided by N.Y. Gen. Bus. Law § 349.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(FAIR DEBT COLLECTION PRACTICES ACT)**
**(On behalf of Plaintiff Agoado and members of the Class, against the Midland Defendants)**

83.    Plaintiffs repeat and reallege each and every paragraph set forth above as though fully set forth herein.

84.    Plaintiff Agoado is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) of the FDCPA.

85.    The Midland Defendants are operating as "debt collectors" as the term is defined by 15 U.S.C. § 1692a(6) of the FDCPA.

86.    The FDCPA was enacted to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a).

87.    15 U.S.C. § 1692e of the FDCPA provides sixteen specific and nonexclusive prohibited debt collection practices, and generally prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Among the acts prohibited are the false representation of "the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A), and "use of any false representation or deceptive means to collect or attempt to collect any debt."  15 U.S.C. § 1692e(10).

88.     15 U.S.C. § 1692f of the FDCPA prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."

89.     Defendants violated 15 U.S.C. §§ 1692e and 1692f by making false and misleading representations, and engaging in unfair and abusive practices.  Defendants' violations include, but are not limited to, the following:

     a.     participating in the preparation and filing of fraudulent, deceptive, and misleading affidavits and affirmations in order to obtain tens of thousands of default judgments against Plaintiffs and members of the class, as described above;

     b.     participating in the preparation and filing of fraudulent, deceptive, and misleading affidavits and affirmations to influence and pressure consumers in order to obtain settlements from Plaintiffs and members of the class, as described above;

     c.     commencing actions against consumers without sufficient factual basis, predicated upon false allegations and knowing misrepresentations, yet backed by an attorney's Rule 130 certifications falsely stating that to the best of their knowledge, and after an inquiry "reasonable under the circumstances," the complaint and the contentions therein were not frivolous;

90.     The acts and practices herein set forth were deceptive, misleading, and fraudulent. Plaintiff Agoado and the Class have been damaged as a result of Defendants' violations, and are entitled to relief as provided for by 15 U.S.C. § 1692k.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Violations of New York Judiciary Law § 487)**
**(Against the Attorney Defendants)**

91.     Plaintiffs repeat and reallege each and every paragraph set forth above as though fully set forth herein.

92.     New York Judiciary Law § 487 provides, in pertinent part, as follows:  "An attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

93.     At the time the Attorney Defendants were retained by Midland, they knew, or should have known that Midland had no right to obtain, or even request any of the underlying documentation of the consumer debt that it purchased, and therefore lacked evidence of the alleged debts sufficient to present to a New York State court to prove a prima facie case, or to support the affidavits and affirmations submitted to the courts.

94.     As set forth above, the Attorney Defendants violated New York Judiciary Law § 487 by engaging in a chronic, persistent pattern of conduct with the intent to deceive consumer-defendants and multiple New York courts.  Defendants' violations include, but are not limited to:

      a.     commencing actions against consumers without sufficient factual basis, predicated upon false allegations and knowing misrepresentations, yet backed by an attorney's Rule 130 certifications falsely stating that to the best of their knowledge, and after an inquiry "reasonable under the circumstances," the complaint and the contentions therein were not frivolous;

b.   participating in the preparation and filing of fraudulent, deceptive, and misleading affidavits and affirmations to influence and pressure consumers in order to obtain settlements from Plaintiffs and members of the class, as described above; and

c.   participating in the preparation and filing of fraudulent, deceptive, and misleading affidavits and affirmations in order to obtain tens of thousands of default judgments against Plaintiffs and members of the class, as described above.

95.   As a result of Attorney Defendants' deceitful and fraudulent conduct, Plaintiffs and the members of the Class have been injured. Plaintiffs and the Class are entitled to relief, as provided for by New York Judiciary Law § 487, in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)
### (Against All Defendants)

96.   Plaintiffs repeat and reallege each and every paragraph set forth above as though fully set forth herein.

97.    Plaintiffs and members of the class have paid substantial amounts to Midland and the Attorney Defendants in the form of wage garnishments and attachments from default judgments, as well as settlements obtained through the use of fraudulent, deceptive, and misleading affidavits and affirmations against Plaintiffs and members of the class, as described above.

98.   Defendants gained monetary benefits in the form of payments on such default judgments and settlements, as well as the resulting fees, to which the Defendants were not entitled.  Defendants never possessed, or could ever possess, the prima facie evidence necessary

to prove claims brought against Plaintiffs and the Class. Thus, the Defendants would have sustained no monetary benefit at all, had they not manipulated the New York State court system.

99. Allowing Midland and the Attorney Defendants to retain these monetary benefits, obtained through fraud, deceit, or misrepresentation, would be unjust. Midland and the Attorney Defendants should not be unjustly enriched and the monies collected should be returned to the Plaintiffs and members of the class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and all others similarly situated demand judgment as follows:

i) Declaring this Action to be a proper plaintiffs' class action, declaring Plaintiffs to be proper representatives of the Class, and declaring Plaintiffs' Counsel to be class counsel;

ii) On the First Cause of Action, under New York's Unfair and Deceptive Practices Act, awarding Plaintiffs and the other members of the Class damages in an amount to be determined at trial;

iii) On the First Cause of Action, under New York's Unfair and Deceptive Trade Practices Act, awarding such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action; and entering a permanent injunction to prevent future violations of the FDCPA by the Defendants;

iv) On the Second Cause of Action, under the Federal Debt Collection Practices Act, awarding Plaintiffs and the other members of the Class statutory and actual damages as provided by 15 U.S.C. § 1692(k);

v)   On the Third Cause of Action, under New York Judiciary Law § 487, awarding Plaintiffs and the other members of the Class monetary damages in an amount to be determined at trial,  and treble damages as provided by NY CLS Jud § 487.

vi)  On the Fourth Cause of Action, for Unjust Enrichment, requiring Midland and the Attorney Defendants to pay full restitution to all members of the putative class where the Defendants have collected monies upon the purported debts or default judgment entered;

vii)  Awarding Plaintiffs costs and expenses, including reasonable attorneys' fees and expenses; and

viii)  Granting such other and further relief as the Court may deem just and proper.

Dated:      New York, New York
            May 16, 2014

                                        Respectfully submitted,

                                        **FRANK & BIANCO LLP**

                                        By:    /s/ Marvin L. Frank_____
                                        Marvin L. Frank (MF 1436)
                                        Benjamin Bianco (BB 5188)
                                        Bridget Hamill (BH 0207)
                                        Gregory A. Frank (GF 0207)
                                        275 Madison Avenue, Suite 705
                                        New York, New York 10016
                                        Tel: (212) 682-1853
                                        Fax: (212) 682-1892
                                        info@frankandbianco.com

                                        **BIANCO, BYRNES & FINKEL, LLP**
                                        Alan Finkel
                                        5036 Jericho Tpke. Suite 208
                                        Commack, New York 11725
                                        (631) 462-4911
                                        afinkel@sclf.com