

ATTORNEYS AT LAW

275 MADISON AVENUE
SUITE 705
NEW YORK, NY 10016
212 682 1853
212 682 1892  FAX
gfrank@frankllp.com
www.frankllp.com

**VIA ECF**                                                                 May 5, 2016
Hon. Joan M. Azrack, U.S.D.J.
U.S. District Court, Eastern District of New York
100 Federal Plaza, Central Islip, New York 11722

        Re:     *Agoado et al. v. Midland Funding, LLC et al.*, No. 14-cv-00018

Dear Judge Azrack:

      We represent Plaintiffs and the proposed class in the above-referenced action.  We write in response to Defendant Pressler & Pressler, LLP's ("P&P") April 21, 2016 letter[1] requesting a pre-motion conference for its motion for summary judgment ("Letter") (ECF No. 126).[2]  The evidence has demonstrated that Midland and P&P procured default judgments having never possessed proof of their claims, in violation of N.Y. CPLR 3215.  CPLR 3215 specifically requires that any affidavit of merit submitted to obtain a default judgment be based upon on: 1) the affiant's "personal knowledge" of 2) "nonhearsay proof" of the facts underlying the claims and of 3) "nonhearsay proof" of the sum certain allegedly owed.  *333 Cherry LLC v. N. Resorts, Inc.*, 887 N.Y.S.2d 341, 344–45 (N.Y. App. Div. 2009) (emphases added).  P&P deliberately submitted affidavits that P&P knew were (1) not based upon the affiant's personal knowledge of nonhearsay proof of the facts underlying the claims, and (2) not based on any documentary evidence demonstrating any conduct, whatsoever, by which Plaintiff Craig Moore had incurred or acknowledged the sum certain alleged.  P&P then obtained a default judgment against Mr. Moore, never having seen a single piece of evidence demonstrating he owed Midland anything.

      P&P worked with Midland to craft form affidavits that were designed to cover up Defendants' failure to review the documentary evidence required by law.  So confident is P&P in its too-clever scheme that P&P now challenges Plaintiffs to point out which specific sentences in the affidavit were untrue, knowing full well that the mere submission of the affidavit alone created the false impression that it was based on "proof" of Midland's claims, as required by the CPLR.  Discovery has revealed that no one from P&P ever looked at a single piece of proof of this Plaintiff's alleged indebtedness at any point during P&P's prosecution of the collection lawsuit against him,[3] or ever confirmed that the Midland employee who signed the affidavit had

---

[1]  P&P's Letter was well in excess of the three-page limit set forth in Rule IV(B) of Your Honor's Individual Rules.

[2]  Summary judgment is not warranted where the record, when viewed in the light most favorable to the nonmovant, reflects any disputed issue of fact material to the violations alleged; the movant bears the burden of showing the absence of a genuine dispute as to any material fact.  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (discussing Fed. R. Civ. P. 56(a)).

[3]  Mitchell Zipkin, the P&P attorney who handled the collection suit against Mr. Moore, admitted at his deposition that he did not review any account statements, cardholder agreements, and the like prior to securing the default judgment against Mr. Moore.  Insufficient review of pleadings in the course of a collection lawsuit is deceptive

**FRANK** LLP

Hon. Joan M. Azrack
May 5, 2016
Page 2

reviewed such evidence, in direct contravention of its duties under New York Judiciary Law § 487. To this day, no proof that Mr. Moore owed the alleged debt has been produced.[4] P&P protests that it "had possession of relevant data" at the time it procured the default judgment against Mr. Moore—a tacit admission that this judgment was based on nothing more than hearsay, and thus violated both the letter and spirit of CPLR 3215.[5]

I. **New York Judiciary Law § 487**

A law firm violates § 487 when it submits deceitful affidavits in order to secure default judgments against consumers on behalf of a debt buyer it represents. *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 428–29 (S.D.N.Y. 2010) (Chin, Circuit J.). P&P argues that the "affidavits submitted to the state court were [not] intended to deceive the court into issuing a default judgment." However, there is no denying that these boilerplate affidavits—which P&P helped draft—were "carefully drafted to appear as if the affirmant has actual knowledge of the underlying facts [when], in fact, the allegations are based upon hearsay." *Midland Funding LLC v. Wallace*, 2012 N.Y. Misc. LEXIS 12, at *11 (City Ct. Mt. Vernon Jan. 5, 2012). CPLR 3215 requires submission of an affidavit of merit for entry of default judgment, and such an affidavit must be based on the affiant's "personal knowledge" of "nonhearsay" proof of the facts underlying the claims, and of the exact amount allegedly owed. *333 Cherry LLC*, 887 N.Y.S.2d at 344–45. Abandoning its obligation as an officer of the court to assess the validity of its client's claims,[6] P&P submitted to New York courts insufficient affidavits designed to masquerade as the proof required by law. P&P filed these affidavits in bad faith, in order to trick New York courts into awarding default judgments against Mr. Moore.

II. **New York General Business Law § 349**

P&P violated GBL § 349, because its conduct (1) was consumer-oriented, (2) involved deceptive acts and practices, and (3) caused injury to these Plaintiffs. *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) (Preska, C.J.) (citing *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010)).

P&P incorrectly argues that the deceptions perpetrated against Mr. Moore during the underlying collection action were somehow immaterial, and therefore did not violate § 349,

---

because it creates the false impression of meaningful attorney involvement. *See, e.g.*, *Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 287 (D.N.J. 2014) ("[W]hatever reasonable attorney review may be, a four-second scan is not it.") (emphasis added).

[4] Contrary to P&P's assertions, Mr. Moore has never admitted to the alleged debt amount for which Defendants obtained default judgments against him.

[5] It is irrelevant (and unsubstantiated) that, as P&P contends in its Letter, P&P and Midland had a "standard business practice" pursuant to which Midland occasionally provided P&P with proof of other consumers' indebtedness "upon request." *See Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 78 (2d Cir. 2015) ("It is extremely rare" that a debt buyer "will receive any underlying documentation" as to individual accounts.) (citing Fed. Trade Comm'n, *The Structure and Practices of the Debt Buying Industry*, 34–35 (Jan. 2013)).

[6] *See Amalfitano v. Rosenberg*, 903 N.E.2d 265, 269 (N.Y. 2009) (The "evident intent" of § 487 is "to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function.").

FRANK LLP

Hon. Joan M. Azrack
May 5, 2016
Page 3

because (as P&P argues) Mr. Moore did not rely on these misleading statements. P&P's argument begs this Court to misread a reliance requirement into § 349. As the New York Court of Appeals has "repeatedly stated, reliance is not an element of a [§] 349 claim," and a statement is materially deceptive in violation of § 349 if it <u>could</u> mislead the hypothetical average consumer. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000). What matters is that P&P's deceptive practices allowed it to secure the default judgment against Mr. Moore.[7]

Finally, P&P's standing challenge to Plaintiffs' GBL § 349 claims falls flat because the private right of action provisions of § 349 definitively apply to "all <u>deceptive</u> acts or practices . . . , whether or not subject to any other law of this state . . . ." (emphasis added). Accordingly, courts within this Circuit do not deny consumers their right to directly sue debt collectors under § 349, simply because GBL § 601 also empowers the New York State Attorney General to take action. *See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-cv-2741 (JSR), 2016 U.S. Dist. LEXIS 24230, at *15 (S.D.N.Y. Feb. 27, 2016) (Rakoff, J.) ("There is no basis for [Defendant's] argument that § 601 bars overlapping § 349 claims."). The case that P&P cites—*Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)—stands for the unremarkable proposition that a consumer may not base a § 349 claim upon <u>non-deceptive</u> debt collector misconduct proscribed by § 601. *Samms*, 2016 U.S. Dist. LEXIS 24230, at *15 (distinguishing *Conboy*).

### III.   <u>Unjust Enrichment</u>

The *Rooker-Feldman* doctrine does not bar claims such as Plaintiffs', which "speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." *Sykes*, 780 F.3d at 94–95; *see Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) (*Rooker-Feldman* inapplicable in FDCPA case because plaintiff "does not complain of injuries <u>caused</u> by the state court judgment" but by the misconduct of debt collector and its outside law firm, which was "simply ratified, acquiesced in, or left unpunished by the state court judgment") (emphasis original) (internal brackets, quotation marks, and citation omitted). P&P's willingness to violate Mr. Moore's rights on Midland's behalf provided P&P a benefit, by improving P&P's reputation with Midland as a reliable co-conspirator that Midland could trust to aid in the defrauding of consumers.[8] Indeed, the record shows that Midland reviewed Attorney Defendant performance to see if previously set targets were met.

For all of the reasons set forth above, P&P is not entitled to summary judgment.

Sincerely,

/s/ Gregory A. Frank

---

[7] P&P argues it did not violate § 349 because no money has been extracted from Mr. Moore on the basis of the unlawful judgment against him. However, § 349 does not require proof of "pecuniary harm." 731 N.E.2d at 612.

[8] *See Davis v. Cornerstone Tel. Co., LLC*, 878 N.Y.S.2d 800, 802 (N.Y. App. Div. 2009) (approving plaintiff's claim for unjust enrichment on the basis of defendants' "nonmonetary benefits").