**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DAVID AGOADO, LEEANN MCNALLY,
CRAIG MOORE, CHRIS PIERRE,
THOMAS SHARKEY, and DOREEN
VAZQUEZ, individually and on behalf of
all others similarly situated,

                      Plaintiffs,

          - against -                         **REPORT AND**
                                                **RECOMMENDATION**

MIDLAND FUNDING, LLC, MIDLAND              CV 14-18 (WFK) (AKT)
FUNDING, LLC DBA IN NEW YORK AS
MIDLAND FUNDING OF DELAWARE, LLC,
and MIDLAND CREDIT MANAGEMENT, INC.,
 RUBIN & ROTHMAN, LLC, FORSTER &
GARBUS LLP, COHEN & SLAMOWITZ, LLP,
SELIP & STYLIANOU, and PRESSLER AND
PRESSLER LLP,

                    Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    P**RELIMINARY** S**TATEMENT**

       Plaintiffs David Agoado, Leeann McNally, Craig Moore, Chris Pierre, Thomas Sharkey,

and Doreen Vazquez (the "Plaintiffs") commenced this consumer credit putative class action

individually and on behalf of all others similarly situated against Defendants Midland Funding,

LLC, Midland Funding, LLC d/b/a in New York as Midland Funding of Delaware, LLC, and

Midland Credit Management (collectively, the "Midland Defendants") and Rubin & Rothman,

LLC, Forster & Garbus LLP, Cohen & Slamowitz, LLP, Selip & Stulianou, and Pressler and

Pressler LLP (collectively, the "Attorney Defendants").  Generally, Plaintiffs allege that

Defendants engaged in a pattern and practice of fraudulently obtaining default judgments against

consumers by bringing debt collection actions that Defendants knew they could not prove. *See generally* Second Amended Complaint ("SAC") [DE 45].

Plaintiffs now move to file a fourth amended complaint -- after discovery has closed and after the time to amend pleadings has expired. *See* Plaintiffs' Notice of Motion and Motion to Submit the Fourth Amended Class Action Complaint ("Pls.' Mot.) [DE 225]; Plaintiffs' Reply in Support ("Pls.' Reply") [DE 229]. Defendants oppose the Motion to Amend, primarily based on arguments of futility. *See* Declaration of Andrew M. Schwartz, Esq. on behalf of Defendants Midland Funding LLC and Midland Credit Management Inc.'s Opposition of Plaintiffs' Motion for Leave to Amend ("Schwartz Decl.") [DE 226]; Midland Defendants' Memorandum in Opposition to Motion to Amend ("Midland Opp'n") [DE 227]; Defendant Forster & Garbus Joinder Letter Opposing Motion to Amend ("F & G Joinder Letter") [DE 228].

Further, Defendant law firm Rubin & Rothman moves for sanctions (the "Sanctions Motion") against Plaintiffs and Plaintiffs' counsel based on the contention that Plaintiffs filed an improper and unauthorized Third Amended Complaint ("TAC"). *See* Defendant Rubin & Rothman's Notice of Motion for Sanctions ("Defs.' Not.") [DE 231]. The other law firm Defendants -- Forster & Garbus and Cohen & Slamowitz -- have joined in the sanctions motion. *See* DE 232 and 233. In addition to rendering a Report and Recommendation to Judge Kuntz on the Motion to Amend, the Court is also addressing the Sanctions Motion as part of this Report and Recommendation because the two are closely intertwined. For the reasons which follow, this Court respectfully recommends to Judge Kuntz that (1) Plaintiffs' motion to amend be GRANTED and (2) Defendants' motions for sanctions be GRANTED.

## II.    PROCEDURAL POSTURE

In the SAC, Plaintiffs' allegations of fraud are premised on Defendants' use of affidavits which allegedly misstate the statutory language of the Fair Debt Collection Practices Act ("FDCPA").  The SAC also asserts that Defendants utilized as affiants employees of the Midland Defendants who lacked personal knowledge of the account information to which they were attesting.  SAC ¶¶ 3, 8.  After the instant case was commenced and after the SAC was filed, a class action against Midland was settled in the United States District Court for the Northern District of Ohio.  *See Vassalle v. Midland Funding, LLC*, Case No. 3:11-CV-0096, 2014 WL 5162380, at *1 (N.D. Ohio  Oct. 14, 2014).  That settlement enjoined certain claims against Midland regarding its use of affidavits by employees who lacked personal knowledge.  *Id.*

The Midland Defendants sought a stay of the instant action because they had moved to hold Plaintiffs and their counsel in contempt in the United States District Court for the Northern District of Ohio in connection with the class settlement and injunction issued in the *Vassalle* case.  DE 190.  In the motion to stay, counsel for the Midland Defendants noted that the instant case concerns claims for relief which were previously settled and prospectively enjoined by the *Vassalle* settlement.  *Id.*   the Midland Defendants also pointed out that two of the named Plaintiffs in this case, namely, Pierre and Vazquez, were members of the *Vassalle* class, who elected not to opt out of the *Vassalle* settlement.  *Id.*   Plaintiffs opposed the motion to stay as untimely, arguing that the Midland Defendants had "impliedly waived the concern before the Northern District of Ohio and expressly waived its arguments here, because it did not raise them as affirmative defenses in its answer, pursuant to Federal Rule of Civil Procedure 8(c)."  DE 191.

3

After considering the arguments of the parties as well as the *Vassalle* settlement, this Court granted a stay of the instant proceedings on July 19, 2017 while the district court in the Northern District of Ohio decided whether the claims brought here by Plaintiffs Vazquez and Pierre were encompassed within the *Vassalle* settlement and were subject to the injunction issued by the Ohio federal court.  DE 198.  As a result of the stay, this Court stated the following:

> the Court is terminating the current summary judgment motions as well as the related motions pending in the instant action . . . without prejudice, and with the right to reinstatement, contingent upon the receipt of a joint letter from counsel in this action: (1) confirming that Midland's motion to enforce the permanent injunction entered in the case entitled *Vassalle v.Midland Funding LLC*, No. 3:11-cv-0096, pending in the federal court for the Northern District of Ohio and for a show cause order of contempt, has been decided; (2) setting forth the actual District Judge's decision on that motion; and (3) the impact, if any, of the outcome of the Northern District of Ohio decision on the summary judgment briefs in the instant case and whether there is a need for supplemental briefing. The joint letter must be submitted to this Court no later than 21 days after entry of the district judge's decision in the Northern District of Ohio.

*Id*.

Somewhat ironically, the motion for sanctions against Plaintiffs in Ohio resulted in an order to enforce by that court the very same day this Court issued its decision on the stay. Specifically, the Order issued by United States District Judge Jack Zouhary of the Northern District of Ohio stated that

> . . . this Court concludes that Respondents[1] may not pursue claims on behalf of a *Vassalle* class member which rely upon or include a

---

[1]     These are the Plaintiffs in the instant action.  The original Verified Complaint in this case was filed in the Supreme Court of the State of New York, County of Suffolk and named Steven Italiano, June Gioia, Susan White, Doreen Vazquez and Chris Pierre as Plaintiffs, individually and on behalf of all others similarly situated.  *See* DE 1, Ex. A.  On January 2, 2014, the Midland Defendants removed the case to the federal court for the Eastern District of New York.  *See* DE 1.  Subsequently, by stipulation of the parties, Plaintiffs agreed to withdraw their motion to remand the case and Defendants agreed to Plaintiffs' filing an Amended Complaint. DE 19.  When Plaintiffs filed their Second Amended Complaint on August 19, 2014, Steven

> claim that Midland used affidavits made without personal knowledge in debt-collection lawsuits.  Respondents shall withdraw any such claims raised in the *Italiano* and *Mason* lawsuits, and Respondents shall not seek certification of any class including *Vassalle* class members that seeks relief on that basis. . . .  Accordingly, this Court grants Midland's Motion to enforce the *Vassalle* release.

July 19, 2017 Order (Zouhary, Jack, J.), Northern District of Ohio in *Vassalle, et al. v. Midland Funding, LLC, et al.*, Case No. 3:11 CV 96 ("July 19, 2017 Zouhary Order") [DE 200-1], attached as Exhibit A to Parties' August 9, 2017 Joint Letter in Accordance with the July 19, 2017 Order of this Court ("Joint Letter") [DE 200].

The next day, July 20, 2017, counsel for Defendant Rubin & Rothman filed a letter informing the Court of Judge Zouhary's decision and asserting that the decision had a major impact on the summary judgment motions previously filed and that supplemental briefing would be necessary.  DE 199.  Counsel further stated that he was reserving his client's right to seek other relief "against the Plaintiffs Pierre and Vazquez, and their attorneys, which may be available to my client for compelling my client to defend against legal claims advanced in the above-entitled lawsuit which were precluded by the Vassalle injunction."  *Id*.  On August 9, 2017, the Parties filed a Joint Letter attaching a copy of Judge Zouhary's decision and pointing out that the Judge (1) granted the motion to enforce the Vassalle release and (2) denied, without prejudice, Midland's request for a contempt finding, subject to [Plaintiffs'] compliance  with that Order.  DE 200.  With the exception of Defendant Rubin & Rothman, the remaining Defendants did not believe that supplemental briefing was necessary, nor did Plaintiffs.  *Id.*

---

Italiano, June Gioia and Susan White were no longer listed as Plaintiffs.  Instead, the first named Plaintiff became David Agoado.  *See* DE 45.

This Court set the case down for hearing on November 15, 2017. *See* October 17, 2017 Electronic Order.  At that hearing, the Court informed  counsel that having reviewed Judge Zouhary's decision as well as the subsequent filings of the parties, the Court had determined that proceeding on the existing papers was not feasible and that new briefing would be required. *See* November 15, 2017 Civil Conference Minute Order [DE 206].  However, the Court advised that prior to undertaking further briefing, Plaintiffs needed to file a Third Amended Complaint in order to address the changes needed to be made in light of Judge Zouhary's decision which clearly impacted the pleadings.  DE 206.  Plaintiffs were directed to file their Third Amended Complaint by December 15, 2017. *Id.*  Once Plaintiffs did so, Defendants would be permitted to (1) file an Answer; (2) move to dismiss; or (3) move immediately to summary judgment motion practice. *Id.*

 Once Plaintiffs filed their Third Amended Class Action Complaint [DE 207], counsel for Defendant Rubin & Rothman filed a letter on behalf of all the Defendants stating, among other things, that "Plaintiffs have brazenly, *and for the first time in this litigation*, alleged claims against the law firm Defendants based upon the Fair Debt Collection Practices Act (FDCPA)." DE 209 (emphasis in original).  Counsel went on to add the following:

> As to the Midland Defendants, Plaintiffs have impermissibly expanded their class claims to include a Nationwide class definition and the latest iteration of the complaint still consists of impertinent statements masquerading as fact. Despite the assurances of Plaintiffs' counsel at the November 15th conference, the TAC not only fails to streamline the litigation, but serves to the contrary by impermissibly expanding the claims.

> In addition to the foregoing, the Plaintiffs Pierre and Vazquez are still alleging claims against the Defendant Rubin & Rothman, LLC which are based upon the subject Midland affidavits. Said Defendant believes these claims are precluded by the *Vassalle* injunction.

> In sum, all Defendants are miffed as to why the Plaintiffs filed the  TAC in light of the discussions which occurred at the status conference on

> November 15th. To compel the Defendants to now formally respond to the
> TAC in the present form would be extremely prejudicial.

*Id*.  Defendants requested a hearing to discuss these issues.  *Id*.  In an opposing letter, Plaintiffs'

counsel emphasized that his request at the November 15, 2017 hearing was to amend the

complaint to "fully conform with the evidence" [DE 213] and not to be limited in the manner

argued by the Defendants.

In its Order setting the matter down for a hearing, the Court directed Plaintiffs' counsel to

submit a copy of the Third Class Action Amended Complaint which had been served, highlighted to

show the specific changes (additions and subtractions) made to the pleading from the Second

Amended Complaint which was filed at DE 45.  At the conclusion of the November 7, 2018

conference, after hearing from all parties, the Court struck the Third Amended Complaint for failure

to comply with the Orders of the Court.  *See* November 7, 2018 Civil Conference Minute Order

[DE 219].  Since Plaintiffs wished to proceed with a formal motion under the Federal Rules to

amend the SAC at that juncture, the Court set a briefing schedule with counsel.  DE 219.

## III.   THE OPERATIVE PLEADING

### A.   The Second Amended Complaint

The following allegations are taken from Plaintiffs' Second Amended Complaint, filed on

August 19, 2014, which is the current operative pleading in this action.  *See generally* SAC

[DE 45].  Defendant Midland Funding, LLC is a Delaware company "which transacts business in

the State of New York or contracts to supply services in the State of New York."  *Id.* ¶ 23.  The

SAC asserts that Midland Funding, LLC is the "successor in interest to or an alter ego of

Midland Funding, LLC d/b/a in New York as Midland Funding of Delaware, LLC."  *Id.*  The

company purchases consumer debt from the originating creditor and then seeks to collect this

debt. *Id.*

Defendant MCM is a Kansas corporation engaged in the business of collecting debts in New York and across the county and "regularly attempts to collect debts alleged to be due to another." *Id.* ¶ 24. All of the Attorney Defendants are retained by the Midland Defendants to file debt collection actions in New York courts. *Id.* ¶¶ 25-28. The individually named Plaintiffs are consumers – as defined by 15 U.S.C. § 1692a(3) – against whom Defendants initiated debt collection actions. *Id.* ¶¶ 16-22.

According to the SAC, "'debt buyers' like Midland buy defaulted, charged-off debts for pennies on the dollar and then seek to collect the full face value of the debts for themselves." *Id.* ¶ 36. Plaintiffs emphasize that Midland purchases nonrecourse debt accounts "without the primary or supporting documentation to establish a valid consumer debt or that [Midland] is the assignee of the consumer debt from the originating creditor." *Id.* ¶ 38. Midland "aggressively" seeks to collect on these nonrecourse debt obligations and the Attorney Defendants have "caused tens of thousands of dunning letters to be sent and telephone calls to be made to alleged debtors without ever having supporting documentation as evidence of the consumer debt." *Id.* ¶ 41. If the dunning letters and telephone calls do not result in payment, the Attorney Defendants draft form New York State court complaints -- without sufficient documentation (or none) "and without prior reasonable investigation into the validity of the consumer debt." *Id.* ¶ 43.

The SAC alleges that instead of evidence in admissible form, "Midland crafts its employee affidavits in order to mislead the least-sophisticated consumer" by use of boilerplate language. *Id.* ¶ 50. In support of these debt collection actions, typically in the default judgment context, Defendants submit such affidavits which allegedly: (1) misstate the statutory language of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(g); and (2) are

"robosigned" and misrepresent that the affiant has personal knowledge of the account information underlying the debt.  *Id.* ¶¶ 3, 50-54.

There are two classes asserted in the SAC:

1. "All persons who were or are residents and consumers in the State of New York from September 19, 2008 and continuing through the present (the "Midland Class Period"), against whom Defendants commenced lawsuits, or threatened to commence lawsuits, against Plaintiffs and the other members of the Class for the collection of consumer debt for which Defendants had insufficient evidence of the existence of the consumer debt.  Excluded from the Class are the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest"; and

2. "All persons who were residents and consumers in the State of New York from May 16, 2008 through the present (the "Attorney Defendant Class Period"), against whom the Attorney Defendants commenced lawsuits, or threatened to commence lawsuits on behalf of Midland, against Plaintiffs and the other members of the Class for the collection of consumer debt for which the Attorney Defendants had insufficient evidence of the existence of the consumer debt, or failed to conduct a proper investigation under the circumstances. Excluded from the Class are the partners and employees of the Attorney Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which the Attorney Defendants have or had a controlling interest."

*Id.* ¶ 29(a), (b).  The SAC also lists four causes of action:  (1) a claim arising under New York General Business Law § 349 against all Defendants for engaging in deceptive and materially misleading consumer conduct; (2) an FDCPA claim based on violations of 15 U.S.C. §§ 1692e and 1692f against the Midland Defendants for using false, deceptive, or misleading representations in connection with collecting debt; (3) violations of New York Judiciary Law § 487 against the Attorney Defendants for intending to deceive consumer-defendants in multiple New York courts; and (4) unjust enrichment against all Defendants.  *See id.* ¶¶ 90-112. Responsive pleadings were previously filed, discovery was exchanged, and multiple summary

judgment motions had been fully briefed.  On May 1, 2017, Judge Azrack referred the motions

for summary judgment [DE 150, 171, 173, 174, and 175] to this Court for a Report and

Recommendation.  Other motions concerning issues ancillary to the summary judgment motions

[DE 146, 176, 178, 186, and 187] were referred to this Court for decision.  *See* Judge Azrack's

May 1, 2017 Electronic Order.

> **B.    The Motion to Amend and Proposed Fourth Amended Complaint**

As laid out above, at the November 7, 2018 hearing, the Court struck the TAC for failure

to comply with this Court's prior orders.  *See* DE 219.  The Court reiterated its previous

directive, which was for the TAC to "remov[e] from the second amended complaint those factors

that should have been taken into account as a result of Judge Zouhary's decision," noting that

there was "no authorization . . . to add a new class" and "no carte blanche given to completely

remake this complaint."  Transcript of Proceedings held November 7, 2018 ("11/7/18 Tr.") at 16,

19.  Looking forward, and noting that the time to amend pleadings had long since expired and

that Fed. R. Civ. P. 16 must also be taken into consideration, the Court set a briefing schedule for

Plaintiffs to file a motion to amend, should they choose to pursue that option.  DE 220 at 22.

The briefing schedule was memorialized in the Court's Minute Order dated November 7, 2019.

DE 219.

The fully briefed motion papers were filed on January 24, 2019.  Notably, Plaintiffs'

motion papers do not include a memorandum of law in violation of Local Civil Rule 6.1.

DE 225.  Hence, Plaintiffs' motion papers do not contain any discussion of the law which applies

to this motion.[2]  Instead, in their Notice of Motion, Plaintiffs state that the FAC asserts no new

---

[2]     Plaintiffs' proposed Fourth Amended Class Action Complaint (the "FAC") is attached as Exhibit "A" to the Attorney Declaration of Gregory A. Frank, Esq., in Support of

claims and amends the class definitions to clarify that claims by class members who were sued by Midland before March 11, 2011 and which sought relief based on "an affidavit used in a debt-collection lawsuit brought by Midland [that] was executed by a person who lacked personal knowledge of the facts stated in the affidavit," are excluded.  Pls.' Mot. at 3.

The allegations set forth in the proposed FAC are based upon "deceptive affidavits" which Defendants used in debt collection lawsuits.  FAC ¶ 9.  The FAC asserts that the Attorney Defendants commenced or threatened to commence tens of thousands of lawsuits against Plaintiffs and other members of the class "without having conducted a reasonable investigation as to the facts they were alleging."  *Id.*  Plaintiffs further charge that the Attorney Defendants "were aware that Midland's practices were to have no supporting documentation, that [Midland] could not obtain supporting documentation, and that Midland would, nevertheless, provide deceptive affidavits when no reasonable investigation could be done."  *Id.*

Direct references to affidavits based on "personal knowledge" which appeared in the SAC do not appear in the FAC.  According to Plaintiffs, the two New York state classes in the FAC are the same as those alleged in the TAC, with language specifically excluding claims based on the so-called "personal knowledge" affidavits.  In addition, Plaintiffs maintain that the FAC does not include the third class which was alleged in the TAC -- the nationwide class against the Midland Defendants.  Pls.' Mot. at 3.  Plaintiffs assert that the FAC contains the same causes of action as alleged in the SAC.  Frank Decl. ¶ 5.

The Midland Defendants oppose the proposed FAC and contend that Plaintiffs should instead proceed with the SAC as the operative complaint.  DE 226, 227.  According to the

---

Plaintiffs' Motion to Submit Their Fourth Amended Class Action Complaint ("Frank Decl.") [DE 225-1].

Midland Defendants, the proposed amendments are futile because "the . . . modifications and amendments reflect no material change from the SAC. . . . It does not remove any causes of action, no new issues are raised and/or added and the amendments are not substantive." DE 227 at 4, 10-11. "Rather, Plaintiffs' efforts in the proposed FAC purport to remove the improper claims prohibited by *Vassalle*, but in doing so convert them to more generalized claims that could potentially be broader than the claims previously asserted." *Id.* Moreover, the Midland Defendants argue that "Plaintiffs have provided no cause, let alone good cause, to permit this untimely amendment to the SAC." *Id.* at 12. Defendant law firm Forster & Garbus joined the Midland Defendants' opposition. DE 228.

In their reply, Plaintiffs contend the FAC has clarified that Plaintiffs do not seek relief which is duplicative of the award in *Vassalle*. Pls.' Reply at 2. Plaintiffs maintain they have good cause pursuant to Rule 16 to submit the FAC because "they have been ordered to do so," *id.*, and that "Midland cannot meet its burden of establishing prejudice," *id.* at 6. In addition, Plaintiffs argue that the Court should strike the Midland Defendants' opposition because their memorandum of law is more than ten pages long but lacks a table of contents and authorities, in violation of this Court's Individual Practice Rule III(C)(2). *Id.* at 8. Although failures to adhere to Individual Practice Rules are not condoned, the Court rejects this argument because, notably, Plaintiffs themselves did not submit a memorandum of law in support of their motion to amend – despite direction by this Court to do so – and they did not cite a single case in support of their motion to amend until their reply brief.

### C.   The Joint Motion for Sanctions

Defendant law firm Rubin & Rothman also filed a motion for sanctions -- in which the other named Defendants have joined -- based on Plaintiffs' filing of the TAC. *See* DE 231-234.

Defendants seek attorneys' fees and costs as well as payment for the "unnecessary expenditure of [the] court['s] time" since, as a result of the TAC, Defendants had to move to stay the Court's November 7, 2018 Order concerning dispositive motion briefing and, once again, had to oppose Plaintiffs' proposed amendments presented in the FAC. *See* Defendants' Memorandum of Law in Support of Motion for Attorney's Fees and Costs ("Defs.' Mem. II") [DE 231-1] at 8, 9. Defendants specifically take issue with the FDCPA claim asserted in the TAC against the Attorney Defendants and the addition of a nationwide class against the Midland Defendants. *Id.* at 3. In addition, Defendants note that Plaintiffs' counsel asked to conform the TAC to the evidence at the November 7, 2018 hearing, which Defendants did not consent to nor did the Court authorize, contrary to Plaintiffs' representations. *Id.* at 7. As a result, Defendants ask the Court to compel Plaintiffs' counsel to pay Defendants' fees and costs under 28 U.S.C. § 1927 for "vexatiously and baselessly multiplying these proceedings" or, alternatively, pursuant to the Court's inherent powers. *Id.* at 8-10.

In their opposition, Plaintiffs take the position that "[t]his Circuit's courts impose attorney's fees and costs only if a litigation decision was purely motivated by an improper purpose, such as to delay the litigation." Plaintiffs' Opposition to Defendant Rubin & Rothman, LLC's Motion for Attorney's Fees and Costs ("Pls.' Opp'n II") [DE 235] at 1 (citing *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000)) (emphasis in original). Plaintiffs argue that in filing the TAC, their "aim was to conform their claims and theories to the evidence already propounded during discovery, and they believed, erroneously, that this Court had approved that approach." Pls.' Opp'n II at 1. According to the Plaintiffs, the Defendants' arguments fall "far short of proving that Plaintiffs' counsel deliberately acted in bad faith" and that Plaintiffs' counsel "engaged in good-faith, zealous advocacy when they filed the Third

Amended Class Action Complaint . . . that [Rubin & Rothman] now challenges as sanctionable." *Id.* Plaintiffs assert that an award under § 1927 is only proper where the attorneys' actions "are so completely without merit as to require the conclusion" that they had to have been taken for some improper purpose. *Id.* at 3. Plaintiffs' opposition spends considerable time discussing the Consumer Financial Protection Bureau's 2015 regulatory action against Midland after this case had been commenced as well as the fact depositions taken in this case -- all in support of Plaintiffs' contention that this information revealed the existence of new claims, therefore justifying amendment of the pleadings. *Id.* at 7-9. According to Plaintiffs' counsel, they had a good faith basis to assert FDCPA claims against the Attorney Defendants and to define a nationwide class. *Id.* at 14-18. As a result, Plaintiffs claim that Defendant Rubin & Rothman cannot establish that the TAC was filed for an improper purpose and, hence, sanctions are not warranted. *Id.* at 20-22.

## IV.   STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a); *DaCosta v. City of New York*, No. 15-CV-5174, 2017 WL 5176409, at *8 (E.D.N.Y. Nov. 8, 2017), *reconsideration denied sub nom. DaCosta v. Tranchina*, 285 F. Supp. 3d 566 (E.D.N.Y. 2018). Whether to grant leave to amend is a decision squarely within the district court's discretion. *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2489 (2010) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."). A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009)

14

(quoting Fed. R. Civ. P. 15(a)). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Johnson v. Landmark Hosp. LLC*, No. 14CV6839, 2016 WL 843286, at *2 (E.D.N.Y. Mar. 1, 2016) (citing *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998)); *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

This liberal standard requires only that the movant provide "colorable grounds" for the relief sought. *See UMG Recordings, Inc. v. Lindor*, No. CV-05-1095, 2006 WL 3335048, at *2 (E.D.N.Y. Nov. 9, 2006); *Alkhatib v. New York Motor Group, LLC*, No. CV 13-2337, 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) ("If the movant has at least colorable grounds for relief, justice . . . requires that the court grant leave to amend the complaint.") (quoting *Sokolski*, 178 F.R.D. at 396); *Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872, 877 (W.D.N.Y. 1992). It is the opposing party who bears the burden to establish that an amendment would indeed be futile. *See Balk*, 2013 WL 6990767, at *5; *Alkhatib*, 2015 WL 3507340, at *7; *Blaskiewicz v. Cty. Of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1988)).

However, where, as here, a motion to amend is filed after the deadline set by the Court in a scheduling order, the motion is subject to the more demanding standard of Rule 16(b). *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000); *Ricciardi v. Kimco Facilities Servs. Corp.,* No. 10–CV–5731, 2012 WL 6761533, at * 1 (E.D.N.Y. June 12, 2012) adopted by 2013 WL 42416 (E.D.N.Y. Jan.3, 2013); *Alexander v. Westbury Union Free Sch. Dist.,* 829 F.Supp.2d 89, 117 (E.D.N.Y.2011); *Sokol Holdings, Inc., v. BMB Munai, Inc.,* 05–CV–3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug.14, 2009).

The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (internal citations and quotation marks omitted) (citing Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)). Thus, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16)); *see Parker*, 204 F.3d at 340; *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012). The balancing act between Rules 15(a) and 16(b) is necessary to prevent a scheduling order from being rendered meaningless and undermine a court's ability to manage its docket. *Eberle v. Town of Southampton,* No. 12 Civ. 4472, 2013 WL 6198298, at *2 (E.D.N.Y. Nov. 27, 2013).

Whether good cause exists under Rule 16(b) turns on the "diligence of the moving party." *Parker*, 204 F.3d at 340. To show good cause, "the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines.'" *Chrebet v. Cnty. of Nassau*, No. 09 CV 4249, 2014 WL 1836835, at *11 (E.D.N.Y. May 8, 2014) (quoting *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 CIV. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) *aff'd sub nom. Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 CV 3749, 2009 WL 3467756 (S.D.N.Y.). "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol*, 2009 WL 2524611, at *8 (citing *Parker*, 204 F.3d at 340; *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)). "A party fails to show good cause when the proposed amendment rests on

information 'that the party knew, or should have known, in advance of the deadline.'"  *Perfect Pearl v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting *Sokol*, 2009 WL 2524611, at *8); *see Lamothe v. Town of Oyster Bay*, No. 08–cv–2078, 2011 WL 4974804, at *5–6, (E.D.N.Y. Oct. 19, 2011).

While diligence is the "primary consideration" in the good cause analysis, it is not the only consideration.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (addressing application of Rule 16(b) to situation where Rule 15(a) would otherwise permit amendment as of right).  "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.*; *see Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013 WL 1703529, at *1 (E.D.N.Y. Apr. 19, 2013) *adopted in part by*, 2014 WL 991715 (E.D.N.Y. Mar. 13, 2014); *Ritchie Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 n. 2 (S.D.N.Y. 2012).

Notwithstanding the foregoing principles, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-214 (2d Cir. 2011) (quoting *Foman*, 371 U.S. at 182); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004).  In assessing futility, courts must analyze "whether a proposed pleading would be able to withstand a dispositive pretrial motion." *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2013 WL 1687198, at *6 (S.D.N.Y. Apr. 18, 2013) (citing *Parker*, 204 F.3d at 339); *Touchtunes Music Corp. v. Rowe Int'l*

*Corp.,* 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012)).  With respect to the Rule 15(a) factors, "[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile."  *See Cummings-Fowler v. Suffolk Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

## V.   DISCUSSION

### A.   Motion to Amend

#### 1.   *"Good Cause" Under Rule 16*

This case is far from being in its early stages.   The action was removed from state court on January 2, 2014.  DE 1.  On April 10, 2014, Judge Wexler[3] "so ordered" a stipulation which gave Plaintiffs until May 16, 2014 to file an amended complaint and also gave Defendants until June 2, 2014 to move under Rule 12 or to answer.  DE 20.   The Amended Complaint was filed on May 16, 2014.  DE 21.  Defendants Midland, Cohen & Slamowitz, Pressler and Pressler, and Rubin & Rothman all answered the Amended Complaint.  DE 36, 38, 40, 42.  However, Forster & Garbus requested a pre-motion conference in order to move to dismiss.  DE 34.  Before the Court could respond to the pre-motion conference request, Plaintiffs' counsel filed a letter on August 6, 2014 informing Judge Wexler that Plaintiffs intended to file an amended complaint which would voluntarily withdraw Plaintiff White from the action, thereby mooting Forster & Garbus' basis for dismissal.  DE 44.  Based on Plaintiffs' representations, Judge Wexler denied the Defendants' request for a pre-motion conference, without prejudice and with the right to renew following the filing of the Second Amended Complaint.  *See* August 13, 2014 Electronic Order.  The SAC was filed on August 19, 2014 and all of the Defendants filed answers.  On

---

[3]    Judge Wexler was the District Judge assigned to this matter up until his untimely death.

December 11, 2014, the assigned magistrate judge "so ordered" the scheduling order, which, among other things, set a March 3, 2015 deadline to commence motion practice to amend pleadings after the exchange of paper discovery.  DE 53.

Discovery was to be completed by August 3, 2015 and the first step to initiate the dispositive motion process had to be taken by August 25, 2015.  The Court granted Plaintiffs' unopposed motion [DE 61] on July 7, 2015 and extended the discovery deadline to December 3, 2015.  The date to initiate dispositive motion practice was extended to December 21, 2015.  *See* Magistrate Judge Lindsay's July 7, 2015 Electronic Order.  On November 18, 2015, following a number of discovery disputes, the Court temporarily held the discovery deadline in abeyance pending a further conference with the parties and the completion of various tasks ordered by the Court.[4]  Upon motion, on July 7, 2015, the Court extended the discovery deadline to December 3, 2015 and the date for the first step for dispositive motions to December 21, 2015. *Id.*  Following a number of discovery disputes, on November 18, 2015, the Court temporarily held the discovery deadline in abeyance, pending a further conference with the parties.  DE 97. At the subsequent December 10, 2015 motion hearing, in addition to ruling on several discovery motions, the Court ordered all depositions to be completed by March 1, 2016.  DE 106.

On April 21, 2016, all of the Defendants filed separate letter motions to then assigned Judge Azrack seeking a pre-motion conference for the purpose of filing summary judgment motions.  *See* DE 121, 123-126.  That same day, Plaintiffs sought a pre-motion conference as to Class Certification.  DE 122.  The motions for summary judgment were fully briefed on February 1, 2017.  Three months later, in May 2017, Defendants wrote to advise the Court of the *Vassalle* litigation in Ohio, which began the chain of events leading to the current disputes

---

[4]     The pre-trial phase of the case was reassigned to this Court on October 14, 2015.

between the parties.  Because (1) the deadline to amend pleadings expired in March 2015 and (2) the Court struck the TAC, Plaintiffs must satisfy the more stringent standard set forth in Rule 16 and demonstrate "good cause" in order to be granted leave to file the FAC.

Plaintiffs argue that they have "good cause" to file a post-discovery FAC "because the FAC complies with the limited relief ordered by the *Vassalle* Court."  DE 229 at 5.   The Court points out that this is exactly what the Court directed Plaintiffs to do at the November 15, 2017 hearing – namely, amend the SAC to comport with the rulings/relief ordered by Judge Zouhary in *Vassalle*.  Plaintiffs went well beyond the Court's directives, however, resulting in the TAC being stricken.  At this juncture, Plaintiffs are in some ways seeking a "do-over" by requesting the opportunity to file a pleading which they believe to be compliant with this Court's prior directives.

Plaintiffs' counsel has acknowledged a different understanding from that of the Defendants and the Court as to those directives.  This reason, standing alone, however, is not a sufficient basis as a matter of law to demonstrate good cause.  *See Katzman v. Citibank*, 5:03-CV-1031, 2009 WL 10722208, at *2 (N.D.N.Y. Mar. 30, 2009) ("Mistake or inadvertence of counsel will generally not support a finding of good cause sufficient to excuse a party's failure to comply with Rule 16(b).") (citing *Duval v. U.S. Xpress Enters., Inc.*, No. 03-CV-812, 2005 WL 6021864, at *2 (N.D.N.Y. Oct. 13, 2005)).   "[A]ttorney neglect, carelessness, or oversight is not a sufficient basis for a court to amend a Scheduling Order pursuant to Rule 16(b)."  *Lamothe*, 2011 WL 4974804, at *7 (quoting *MultI-Judice, S.A. v. Snapple Beverage Corp.*, No. 02-CV-4635, 2005 WL 1138470, at *2 (S.D.N.Y. May 12, 2005)) (alteration in original); *see Ansam Assocs., Inc. v. Cola Petro., Ltd.*, 760 F.2d 442, at 446-47 (2d Cir. 1985).

In their opposition to the motion to amend, the Midland Defendants argue that

> . . . although Plaintiffs have modified the SAC to amend the class definitions and annex the FAC in its unredacted form, the FAC's modifications and amendments reflect no material change from the SAC. The FAC certainly does not streamline the litigation. It does not remove any causes of action, no new issues are raised and/or added and the amendments are not substantive. Rather, Plaintiffs' efforts in the proposed FAC purport to remove the improper claims prohibited by *Vassalle*, but in doing so convert them to more generalized claims that could potentially be broader than the claims previously asserted. Rather than allow these amendments, the Court should simply allow the Plaintiffs to proceed on the SAC.

Midland Opp'n at 4-5.[5] This speculation as to "potentially" what could happen does not strengthen Defendants' arguments. Instead of directly addressing the Rule 16(b) standard (*i.e.*, whether good cause exists under Rule 16(b) turns on the diligence of the moving party), the Defendants' opposition focuses instead on the issue of "futility," the standard applied under Rule 15 which is discussed below. Aside from periodic references to the "utimely amendment" which Plaintiffs seek to have accepted, the Midland Defendants contend that nothing has really changed in the substance of the FAC from the SAC – except the "language added to the Class Definition" and the "removed references to personal knowledge of affidavits." *Id*. at 12. Counsel points out that the parties have already briefed summary judgment motions and concludes that "as the SAC is susceptible to summary judgment, Plaintiffs' proposed FAC would also not survive summary judgment." *Id.* However, whether the FAC would survive summary judgment is not the applicable standard here. Counsel concludes by stating that Plaintiffs have provided "no cause, let alone good cause, to permit this untimely amendment to the SAC." *Id.*

---

[5] It is important to note that Defendant Rubin & Rothman did not file any opposition to Plaintiffs' motion to amend. Neither did Defendants Cohen & Slamowitz or Pressler and Pressler. Defendant Foster & Garbus submitted a one paragraph letter stating that it was joining in all arguments presented by the Midland Defendants.

The Court points out that there is another basis to support "good cause" if the proposed amendment rests on information which was not available prior to the deadline to amend the pleadings. *Lamothe*, 2011 WL 4974804, at *8 (citing *Volunteer Fire Ass'n of Tappen, Inc. v. County of Rockland*, No. 09-CV-4622, 2010 WL 496827, at *4 (S.D.N.Y. Nov. 24, 2010). Although Plaintiffs surprisingly do not make an argument on this basis, this factor nonetheless weighs in their favor. At the time Plaintiffs filed the TAC, they were aware that the TAC needed to comply with *Vassalle* and Judge Zouhary's Orders in that case. *See Chrebet v. County of Nassau*, No. 09 CV 4249 (DRH) (AKT), 2014 WL 1836835, at *19 (E.D.N.Y. May 8, 2014) ("[T]he good cause standard [of Rule 16] is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." (alteration in original) (quoting *Hernandez*, 2013 WL 1703529, at *2)); *see also Lamothe*, 2011 WL 4974804, at *8 ("[E]ven if the Plaintiffs have learned new facts through the discovery process, this does not automatically entitle the Plaintiffs to amend." (citing *Triangle Indus., Inc. v. Kennecott Copper Corp.*, 402 F. Supp. 210, 212 n.1 (S.D.N.Y. 1975))). The Court finds that Plaintiffs were not able to draft the proposed FAC at the outset of these proceedings, or, more critically, by the Court's March 3, 2015 deadline to amend pleadings. It was not until after the SAC was filed in July 2017 that Judge Zouhary issued his Order requiring Plaintiffs to withdraw certain causes of action in this case. That decision resulted in a change of circumstances in the instant case.

As noted above, whether good cause exists under Rule 16(b) turns on the diligence of the moving party. This Court, at the November 15, 2017 Status Conference, determined that Plaintiffs needed to act concerning the existing pleading based on the impact of Judge Zouhary's decision. DE 206. The Court summarized that the Plaintiffs would prepare a Third Amended Complaint and directed that such pleading be filed on ECF by December 15, 2017. Plaintiffs

complied with the Minute Order to the extent that the TAC [DE 207] was timely filed on December 15, 2017.  Unfortunately, Plaintiffs went well beyond the Court's directives as to what they incorporated in the TAC, resulting in the Defendants' vigorous objections to the contents of the TAC.  After reviewing the matter, the Court struck the TAC at a hearing held on November 7, 2018.  DE 219.  Once the Court issued that ruling, Plaintiffs stated at the hearing that they wished to proceed with a formal motion under the Federal Rules to further amend the SAC.  *Id.*  To that end, in consultation with the parties, the Court set a briefing schedule which called for the fully briefed motion to be filed by January 24, 2019.  *Id.*  Counsel complied. Looking to this series of events, the Court finds that there was no lack of diligence on the part of the Plaintiffs in seeking to file the FAC.  Rather, the issue focused upon by Defendants deals more directly with what consequences should follow from Plaintiffs' filing the improper TAC and that matter is taken up below.

Plaintiffs' motion to amend at this stage goes to the question of whether they should be given the opportunity to bring the pleadings into compliance with court orders which were issued *after* the deadline to amend had expired.  For the foregoing reasons, the Court in its discretion reluctantly finds that Plaintiffs meet the first prong of the test here, namely, compliance with Rule 16(b).

### 2.    *Second Test:  Application of Rule 15*

Even though they meet the standard under Rule 16(b)(4), Plaintiffs still bear the burden to show that the proposed FAC is permissible under Rule 15.  *Lamothe*, 2011 WL 4974804, at *9.  As previously noted, leave to amend may be denied for reasons including futility, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the non-moving party.  *Williams*, 659 F.3d at 213-14.

Defendants contend that Plaintiffs' proposed amendments "converted [their causes of action] to more generalized claims that could potentially be broader than the claims previously asserted." Midland Opp'n at 4. The Court has already addressed such speculation. Of greatest concern to the Defendants is the assertion that Plaintiffs will seek additional discovery if their motion is granted.[6] *Id*. at 4, 5 n.1. Defendants maintain that the allegations in the SAC and the proposed amendments in the FAC are similar and that "[t]he only differences of note . . . are . . . Plaintiffs[] added language to the Class Definition and removed references to personal knowledge affidavits, while continuing to improperly argue a lack of personal knowledge in the body of the FAC." *Id.* at 12. Based on Defendants' perceived similarities between the SAC and proposed FAC, Defendants argue that these allegations were already briefed by the parties in their summary judgment papers based on the SAC. *Id.* In response, Plaintiffs argue Defendants are unable to meet their burden because the "FAC clearly comports with Judge Zouhary's July 2017 Order." Pls.' Reply at 6. Moreover, if the FAC does not go "far enough to comply with *Vassalle*" as Defendants argue, Plaintiffs contend that "[t]he Northern District of Ohio alone has the power to make that pronouncement, and if [Defendants] "really believed [they] were prejudiced by the FAC, [they] would have brought the FAC to the [Ohio] Court's attention." *Id.* at 6. Lastly, Plaintiffs stated "the FAC's changes will necessitate neither

---

[6]    According to Defendants,  "[i]n the event that Plaintiffs' motion for leave to amend is granted, the Midland Defendants' concern arises as to whether plaintiffs will seek to utilize this 'expansion' from the specific (and facially improper allegations) to the general (and equally deficient) allegations, as an opportunity to reopen and seek additional, wasteful discovery in an effort to buttress its recasting of the failed 'actual knowledge' and 'robosigned' arguments under the umbrella of 'deceptive and fraudulent' claims, notwithstanding Plaintiffs' clear and unequivocal statement in its Attorney's Declaration that no new causes of action are being alleged in this latest (albeit futile) effort to alter their complaint." *Id*. at 4, 5 n.1

additional discovery nor briefing." Against the backdrop of these arguments, the Court turns to the framework of Rule 15.

### a.    Futility

When examining the futility of an amendment, the Court analyzes the proposed claim pursuant to a motion to dismiss standard under Rule 12(b)(6). *See Allen v. United Parcel Service, Inc.*, 98 F. Supp. 2d 293, 298 (E.D.N.Y. 2013). "[T]he court need not finally determine the merits of a proposed claim or defense, but merely satisfy itself that it is colorable and not frivolous." *Id.* (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 141, 169-70 (1983)) (alteration in original). An amendment is futile "if the proposed claim could not withstand a motion to dismiss." *Id.* The Court examines the issue of futility concerning the FAC by analyzing whether it complies with *Vassalle*. The proposed FAC omits all direct references to "personal knowledge," but its factual context still references Defendants' use of affidavits. *See* FAC ¶¶ 3, 8, 9, 31, 49, 54, 69, 72, 75, 79. The causes of action in the FAC were not altered from the SAC. Plaintiffs still assert a theory of unjust enrichment and violations of N.Y. Gen. Bus. Law § 349, the FDCPA, and N.Y. Judiciary Law § 487 -- all largely based on Defendants' use of "fraudulent, deceptive, and misleading affidavits." *Id.* ¶¶ 90, 98, 103, 106. The added FDCPA violations against the Attorney Defendants in the TAC have been eliminated. The causes of action in the FAC do not specify the grounds which render Defendants' affidavits fraudulent, deceptive, or misleading. Although the FAC lacks factual allegations of "personal knowledge" affidavits in name, it attempts to mask similar allegations when discussing "deceptive" affidavits, which are truly the same in principle. For example, without explicitly asserting that the Attorney Defendants utilized affidavits which were based on "personal knowledge," Plaintiffs state that the Attorney Defendants did not conduct reasonable investigations "as to the facts they were

alleging." *Id.* ¶ 9.   The FAC goes on to claim that the Attorney Defendants were aware that

Midland did not have supporting documentation, but that "*Midland would, nevertheless, provide*

*deceptive affidavits when no reasonable investigation could be done*." *Id.* (emphasis added).

Plaintiffs similarly allege that "Midland facilitates the Attorney Defendants' submissions of

misleading, improper and inadequate evidence by having Midland employees sign hundreds of

affidavits per day." *Id.* ¶ 54.   In the same vein, Plaintiffs allege that three Midland employees

"mass sign[] so many . . . affidavits there is no possibility that [the employees] confirmed the

existence of any debt." *Id.* ¶¶ 69, 72, 75, 79.[7]

Significantly, Plaintiffs allege a theory that Defendants' affidavits are misleading based

on grounds separate and distinct from the alleged scheme rooted in the "personal knowledge"

affidavits -- namely, that Defendants' utilize affidavits which misstate FDCPA language and are

misleading to consumers.   *See id.* ¶¶ 49-52.   Claims of this nature are not barred by *Vassalle*.

*See Pelzer v. Vassalle*, 655 F. App'x 352, 361 (6th Cir. 2016) ("The claims covered by the

release in the revised settlement are also more narrowly defined.   Class members are prohibited

from asserting independent claims based only on Midland's affiants falsely attesting to having

personal knowledge of individual accounts. Claims alleging other illegal, abusive, unfair, or

deceptive practices by Midland with respect to the affidavits are not released, and class members

remain free to sue Midland for those practices. Consumers could collectively litigate such

claims.   Thus, while the release eliminates some avenues class members could use to seek relief,

---

[7]   It is worth pointing out that in the section of the FAC identifying the individual Plaintiffs, the paragraphs addressing Plaintiffs Pierre and Vazquez  do not contain any references to Midland affidavits  made without personal knowledge while the sections addressing the other Plaintiffs do include such references and comply with the language ordered by the Special Master in the Northern District of Ohio.  *See* FAC ¶¶ 68-85.   Likewise, the causes of action are individualized and comply with Judge Zouhary's decision and this Court's Orders.

it leaves many others open.").  Consequently, in this action, Plaintiffs do not need to abandon affidavit claims in their entirety as Defendants suggest.  Midland Opp'n at 9-10.  Moreover, the class definitions specifically exclude claims which are based on Midland affidavits executed by individuals who lacked personal knowledge of the facts stated in the affidavit, and the nationwide class against the Midland Defendants in the TAC has been deleted.  FAC ¶ 28.  In light of the FAC's allegations taking issue with Defendants' affidavits on two separate grounds -- and Plaintiffs specifically disclaiming one of those grounds in its class definitions -- the Court finds that Plaintiffs have asserted colorable claims for relief which are not barred by the *Vassalle* injunction, and, thus, are not futile.  *See Allen*, 988 F. Supp. 2d at 303.  Moreover, the Court finds that Plaintiffs have cured the deficiencies which the Court identified in the TAC at the November 2017 hearing.

### b.    Prejudice

Even finding that Plaintiffs have stated valid causes of action in the FAC, the Court must take into account any prejudice to the Defendants as among the "most important" factors to consider.  *Lamothe*, 2011 WL 4974804, at *13.  "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend."  *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (citing *Barrows v. Forest Laboratories*, 742 F.2d 54, 58 (2d Cir. 1984) (footnote omitted); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995)).  "Factors relevant to a showing of prejudice include 'whether the assertion of new claims would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 161 (S.D.N.Y. 2005) (citing

*Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  "A proposed amendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed."  *Id.* (citing *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)).  "The party opposing an amendment has the burden of proving that leave to amend would be prejudicial."  *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 538 (E.D.N.Y. 2010) (citing *Blaskiewicz*, 29 F. Supp. 2d at 137-38).

As to the first factor regarding additional expenditures, discovery has long-since closed and Defendants argue that if the motion to amend is granted, Plaintiffs will seek to reopen discovery.  Midland Opp'n at 5.  Although the Court initially shared this concern, Plaintiffs unequivocally stated in their Reply that they "will not seek extra fact discovery based on any changes in the FAC."  Pls.' Reply at 6 n.10.  The more difficult hurdle for Plaintiffs, though, is that summary judgment was fully briefed utilizing the SAC as the operative complaint.  *See Zubulake*, 231 F.R.D. at 161.  However, the Court finds that Defendants have not met their burden to prove that leave to amend would be prejudicial.  Defendants' arguments against the FAC rely heavily on their perception that the "proposed FAC lacks any material or substantive change from the SAC."  Midland Opp'n at 11.  That statement undercuts Defendants' assertion of prejudice.  *Id.*  Defendants go on to state that "[a]ll allegations and arguments in Plaintiffs' proposed FAC pleading have already been addressed and briefed by Midland Defendants in their Summary Judgment Motion and have been opposed by Plaintiffs."  *Id.* at 12.  By this admission, Defendants concede that the FAC does not incorporate new causes of action or allegations, such that they believe their summary judgment papers based on the SAC would still be sufficient.   In granting a stay of these proceedings on July 19, 2017 this Court terminated the parties' summary judgment and related motions without prejudice, and with the right to reinstate.  DE 198.  The

Court directed the parties to submit a joint letter once the *Vassale* decision was issued to set forth the impact of that decision on the summary judgment motions previously filed here. *Id.* In responding, Plaintiffs and all of the Defendants, with the exception of Rubin & Rothman, took the position that supplemental summary judgment briefing was unnecessary in the aftermath of Judge Zouhary's Order. July 19, 2017 Joint Letter [DE 200]. Defendant Rubin & Rothman's counsel conveyed that he might need to refile his client's motion for summary judgment. *Id.* Regardless of whether the TAC or FAC is the operative pleading in this case, the summary judgment motions would need to be reinstated. The FAC takes into account Judge Zouhary's decision and the *Vassale* settlement, unlike the SAC, and only limited supplemental briefing would be necessary in reinstating the parties' motions based on the FAC. The Court therefore finds that the Defendants have not met their burden to prove the degree of prejudice necessary to warrant denial of the motion to amend.

For all of the foregoing reasons, this Court respectfully recommends to Judge Kuntz that Plaintiffs' motion to amend be granted and that Plaintiffs be permitted to file an FAC consistent with the rulings in this Report and Recommendation.

### B.    The Joint Motion for Sanctions

As the Court noted at the outset, the sanctions motion is inextricably connected to Plaintiffs' actions in attempting to amend the pleadings here in an improper manner. For this reason, the Court is treating the sanctions motion as Part II of this Report and Recommendation.

Less than a month after the motion to amend was fully briefed, Defendant law firm Rubin & Rothman filed a "Motion for Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1927 and The 'Inherent Authority' of the Federal Courts." Defendant Rubin & Rothman's Notice of Motion [DE 231]. The motion was filed on behalf of all Defendants in this action and asks the Court to

29

sanction the Plaintiffs and their attorneys "by ordering them to pay the attorney's fees and costs incurred by each Defendant based upon the filing of an improper Third Amended Complaint TAC." Defs.' Mem. II, attached as Exhibit 1 to Defs.' Notice of Motion at 1.[8]

Defendants maintain that sanctions are appropriate pursuant to 28 U.S.C. § 1927 and the Court's inherent authority because Plaintiffs' TAC was "patently improper" in that it added FDCPA claims against the Attorney Defendants and expanded the class against the Midland Defendants. Defs.' Mem. II at 3-4. 28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (citation omitted); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'") (citation omitted); *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982) ("To justify the imposition of excess costs of litigation upon an attorney [under § 1927] his conduct must be

---

[8]    Defendant Forster & Garbus filed a letter on January 8, 2019 stating that "[p]ursuant to Fed. R. Civ. P. 10(c), F & G intends to adopt by reference and join in all arguments presented by R & R in support of its Motion." DE 232. Likewise, counsel for Defendant Cohen & Slamowitz filed a letter the same day stating that "[w]hile it was the intent of the attorney defendants that this motion was made on behalf of all, in an abundance of caution please note that pursuant to Fed. R. Civ. P. 10(c), [Cohen & Slamowitz] intends to adopt by reference and join in all arguments presented by R & R in support of its motion." DE 233.

of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.").  Similarly, under the exercise of a court's inherent power to supervise and control its own proceedings, the bad-faith exception to the "American Rule" -- that litigants generally bear their own litigation expenses -- allows a court to award attorneys' fees where there is "both 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes,' and 'a high degree of specificity in the factual findings of [the] lower courts.'"  *Oliveri*, 803 F.2d at 1272 (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986)).  The standard a court uses in determining whether to impose sanctions under its inherent authority is substantively similar to the standard a court uses in determining whether to impose sanctions under § 1927. *See Oliveri*, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent powers.") (citation omitted).

Counsel for Defendant Rubin & Rothman argues that "[t]he sneaky filing of an unauthorized TAC, in a brazen attempt to add improper and unconsented to claims of violation of the FDCPA against the named law firm Defendants, and the improper and unconsented attempt to expand the class against the Midland Defendants, has multiplied the proceedings in the instant lawsuit in an unreasonable and vexatious manner.  The purpose of the 11/15/17 hearing was *solely* to streamline the litigation in light of the Vassalle injunction."  Defs.' Mem. II at 6 (emphasis in original).  At the outset of the November 7, 2018 hearing, the Court noted that it had scheduled the hearing to address the issues raised by the Defendants after they were served with the TAC.  11/7/18 Tr. at 5.  Specifically, the Court stated "[t]he purpose of which at the

31

time at least was to clarify and streamline the actual causes of action going forward in the case and the proper plaintiffs in the case as well based on Judge Zouhary's decision." *Id*. Defendants argue that the Plaintiffs did just the opposite. *Id.* at 7.

With respect to what the Court had directed concerning an amendment to the pleadings and what the Plaintiffs actually did, Defendants' counsel points to the record of the previous November 15, 2017 hearing in which Plaintiffs' counsel, Attorney Frank, stated the following:

> . . . but in order to have simplicity and in order to save the parties a huge amount of time and money then going through this process, it seems more expeditious to eliminate any personal knowledge allegations and this is part of what I want to accentuate because this case has always been about a lack of ability to prove their claims under New York law.

11/7/18 Tr. at 8 (quoting 11/15/17 Transcript at 11-12 [DE 212]). At the subsequent hearing on November 7, 2018 which was scheduled to deal with the TAC, the following exchange took place between Plaintiffs' counsel and the Court concerning the pleading document which was actually filed:

> ATTORNEY FRANK:   First of all, to be clear, what defendants are attempting to do is to prevent claimed plaintiffs from having an authoritative complaint that includes the discovery in this action.
>
> That the second amended complaint is a pre-discovery complaint. As counsel mentioned, well actually counsel didn't mention, there was some letter exchange to amend the complaint prior to summary judgments. The defendants refused.
>
> And ultimately all of the facts stated in the present third amended complaint are the first time that plaintiffs had the opportunity to submit a complaint that includes the discovery in this case. Plaintiffs –
>
> THE COURT:   But by what authorization?
>
> ATTORNEY FRANK:   I'm sorry Your Honor?

> THE COURT:          But by what authorization?  You had a direct order from me as to what you were permitted to do.

11/7/18 Tr. at 12.  Plaintiffs' counsel represented here that there had been discussion about amending pleadings previously and he acknowledged that Defendants refused to consent.  *Id*.  Yet the record shows Plaintiffs did nothing in terms of motion practice to seek leave to amend at that time, which was long after the deadline to amend had expired, presumably because they were quite aware Defendants would oppose.

Defendants' counsel asserts that the TAC "is approximately 40% larger than the SAC and further contains a vast expansion of Plaintiffs' alleged theories of liability, including the alleged FDCPA claims against the law firm defendants."  Defs.' Mem. II at 6-7.   According to Defendants, if the Plaintiffs intended to expand the FDCPA class allegations against the Midland Defendants, then Plaintiffs should have disclosed this fact at the November 15, 2017 hearing.  *Id*. at 7.  After hearing from the parties, the Court concluded the November 7, 2018 hearing with the following determination:

> There was absolutely no authorization here to add any new claims. There certainly was no authorization to add a new class. There was no carte blanche given to completely remake this complaint.   And I think the conversation that day as well as the directives that I gave were perfectly clear. And I think Mr. Frank when you were doing this, you certainly should have understood that if you were going to be adding new things that were beyond the directive to simply streamline this pleading to conform essentially with the rulings that were made in Ohio, then before you started adding anything else to this, you should have come back to the Court and said we want the right to amend further. We want to add some additional claims. Or you should have done something to ask to be able to make a motion to amend. And you didn't do that.  Frankly at this point I have thought through what the options should be here and this is what I'm telling you. What you've submitted does not comply with my Orders and I'm striking it.  Now if you decide that you're compelled to make a motion to amend at this late date, that's

entirely up to you.  I'm not going to preclude you from doing that. I can't keep you from making a motion.

11/7/18 Tr. at 19-20.

Plaintiffs' counsel argues that Plaintiffs' actions constituted "zealous advocacy" and not sanctionable conduct.  *See* Plaintiffs' Opposition to Defendant Rubin & Rothman, LLC's Motion for Attorney's Fees and Costs ("Pls.' Opp'n") [DE 235] at 1.  So far as Plaintiffs are concerned, Rubin & Rothman's arguments fall short of proving that Plaintiffs' counsel acted in bad faith. The Court points out that Plaintiffs spend much time focused on the timing of the request to amend rather than on their conduct in response to the Court's Orders as to the scope of the amended pleading.

By including in the TAC an expanded, nationwide class against the Midland Defendants and adding an FDCPA cause of action against the Attorney Defendants without obtaining authorization from the Court, the Court finds that Plaintiffs have unreasonably and vexatiously multiplied the proceedings in this case.  After the TAC was filed, Defendants were prompted to request a stay from this Court, submit correspondence pertaining to the issues in the TAC, and appear in Court for a hearing regarding the same.  Plaintiffs' argument against the imposition of sanctions is largely based upon their asserted disingenuous belief that the Court gave them a blank check to "conform the TAC to the evidence," as a result of which Plaintiffs claim that they did not act in bad faith and had a good faith basis to assert FDCPA claims against the Attorney Defendants.[9]   Plaintiffs voluntarily elected to file a grossly expanded pleading with

---

[9]      In a footnote to the opposition to the motion for sanctions, Plaintiffs argue that the motion filed by Rubin & Rothman is only joined by Forster & Garbus and Cohen & Slamowitz because those firms filed joinder motions.  *Id.* at 13 n.13.  The Midland Defendants filed a reply, stating that Plaintiffs are mistaken and that the other Defendants, including Midland, do so "join" the motion.  DE 237.  Noting that the preliminary statement of the motion for sanctions unequivocally states "[e]ach of the other Defendants named herein join in this motion and ask

the hope that no one would notice the expansion.  Such action was undertaken to gain an advantage over the Defendants when Plaintiffs knew full well that the discovery deadline had long passed and that the Court had restricted the scope of the anticipated amendment.

Although Plaintiffs' counsel "denies acting with the necessary animus required for a violation of § 1927, his conduct belies his words."  *Edmondson v. County of Nassau*, CV 03-1025, 2006 WL 8441291, at *2 (E.D.N.Y. Jan. 13, 2006).  Despite the repeated contention of Plaintiffs' counsel that he believed the Court granted him permission to file a TAC that "fully conformed Plaintiffs' claims and theories to the evidence propounded during discovery," DE 235 at 13, the record belies such assertion.  This is one of several instances in which Plaintiffs have "cherry-picked" their own words and tried placing them in the mouth of the Court in order to bolster their argument.  The selected excerpts, however, are misleading.

At the outset of the November 2017 hearing, the Court was clear in stating "[t]he Ohio decision requires Plaintiffs Vazquez and Pierre to withdraw causes of action which rely upon or include a claim that Midland used affidavits made without personal knowledge in debt collection lawsuits.  Consequently, to insure that the operative pleading has accounted for those findings the plaintiffs . . . need to file an amended complaint."  DE 212, at 7.  In addition, although Plaintiffs' counsel made reference to conforming the pleading to the evidence, the Court did not give him permission to do so.  *Id.* at 13.[10]  As Defendants note in their motion, if

_____

this Court to sanction the Plaintiffs and their attorneys by ordering them to pay the attorneys fees and costs incurred by each Defendant," the Court will consider the motion as filed on behalf of all Defendants.

[10]     After the Court authorized Plaintiffs leave to amend their complaint to conform with *Vassalle*, the following exchange took place between the Court and counsel for the parties:

> Mr. Schwartz: Again, from defendant Midland Credit Management
> and Defendant Midland Funding we think the acceptable solution
> is an amended complaint provided they're not adding any time

Plaintiffs sought to assert FDCPA claims against the Attorney Defendants or desired to expand the class allegations against the Midland Defendants, Plaintiffs' counsel should have made this disclosure at the November 2017 hearing.  Accordingly, the Court finds that Plaintiffs multiplied the proceedings here unnecessarily because the TAC forced the Defendants to file objections and to add more motion practice.  The Court finds that it is somewhat lost on the Plaintiffs that their failure to comply with the Court's Orders was serious enough for the Court to take the drastic action of striking the TAC.

For these reasons, the Court respectfully recommends to Judge Kuntz that Defendants' motion, pursuant to § 1927, for reasonable costs, including attorneys' fees, which were incurred in connection with Plaintiffs' unreasonable multiplication of the proceedings in this case be GRANTED.  In light of this finding that sanctions are appropriate under § 1927, the Court need not address whether sanctions are warranted pursuant to its inherent powers, nor will the Court compel Plaintiffs to pay the Court for its time as Defendants have requested.

The Court further recommends to Judge Kuntz that Defendants be given a reasonable time to submit an application for fees and costs directly connected to:  (1) the time expended in reviewing the TAC once it was filed; (2) the time expended in preparing the submissions to the Court to object to the TAC; and (3) the time in Court for the November 7, 2018 hearing.  The Court does not recommend an award of attorney's fees for the preparation of the sanctions

---

barred claims but if it's still related to the issues at hand we're fine with that.  If this case is about whether we had a reasonable basis to bring the suits and maintain the suits we've already -- we're prepared to argue that. So I think if they amend the complaint for the purposes of simplicity we think that's a great idea. I don't see why it would take them any longer than three weeks to get that done.

*Id.* at 12-13.

36

motion.  The Court also points out that the lion's share of the time incurred on the above items was expended by the Rubin & Rothman law firm.  The other Defendants opted to "join in" the Rubin & Rothman arguments and any fees incurred in that process were minimal and the fee applications should so reflect.

## VI.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Kuntz that the (1) the Plaintiffs' motion to amend be GRANTED to the extent set forth in this Report and Recommendation; (2) the joint motion for sanctions be GRANTED to the extent set forth in this Report and Recommendation; and (3) that Defendants be permitted to submit a fee application within a reasonable period of time which adheres to the limitations described above.

## VII.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable William F. Kuntz.  Any requests for an extension of time for filing objections must be directed to Judge Kuntz prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
         March 4, 2020

_/s/ A. Kathleen Tomlinson_
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge