# Exhibit M-O

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------x
DAVID AGOADO, LEEANN MCNALLY, CRAIG
MOORE, CHRIS PIERRE, THOMAS SHARKEY,
MADGE SHIPMAN, and DOREEN VAZQUEZ,
individually and on behalf of all
others similarly situated,
                    Plaintiffs,
              -against-
MIDLAND FUNDING, LLC, MIDLAND
FUNDING, LLC. doing business in
New York as MIDLAND FUNDING OF
DELAWARE, LLC, and MIDLAND
CREDIT MANAGEMENT, INC.,
                    Defendants.
----------------------------------------x

                         5036 Jericho Turnpike
                         Commack, New York

                         May 14, 2015
                         10:27 a.m.


        Examination Before Trial of the

Plaintiff, DOREEN VAZQUEZ, pursuant to Order,

before CINDY A. AFANADOR, a Notary Public of

the State of New York.




        CINDY AFANADOR COURT REPORTING, INC.
                516-491-2694
            www.cindycourtreporting.com

6

1                          Doreen Vazquez
2    D O R E E N   V A Z Q U E Z, called as a
3          witness, having been duly sworn by a
4          Notary Public, was examined and
5          testified as follows:
6
7                    THE COURT REPORTER:  Please state
8          your full name for the record.
9                    THE WITNESS:  Doreen Vazquez.
10                    THE COURT REPORTER:  What is your
11          address?
12                    THE WITNESS:  123 Browns Road,
13          Nesconset, New York 11767.
14
15    EXAMINATION BY
16    MR. ARLEO:
17          Q.      Good morning, Ms. Vazquez.  My
18    name is Robert Arleo.  I am an attorney and I
19    represent Rubin & Rothman, a defendant named
20    in this lawsuit.
21                    My client is in this lawsuit
22    based on allegations by you and another
23    plaintiff, Chris Pierre, concerning attempts
24    to collect certain debt.
25                    Have you ever been deposed

30

1                    Doreen Vazquez

2        A.      No.

3        Q.      In 2011, did your parents give

4    you any money?

5                MR. BIANCO:  Objection to the

6            form of the question.

7        A.      No.

8        Q.      You filed this lawsuit against

9    Rubin & Rothman; can you tell me the general

10   basis of why you've sued my client?

11               MR. BIANCO:  I'm going to

12           interpose an objection on privilege

13           ground here and just caution you not to

14           discuss anything that we've discussed

15           and I've spoken to you about about the

16           legal ramifications of this case, legal

17           basis of this case.  Factually, from

18           your own knowledge, you are certainly

19           permitted to talk about that.

20       A.      It came to my attention that I

21   had a basis to sue based on certain practice

22   when it was filed against me for the

23   collection.

24       Q.      When you say "when it was filed

25   against me," what do you mean?

1                    Doreen Vazquez

2        A.      Well, through the period of time

3   that I had received notices or whatever from

4   Rubin & Rothman, I felt I didn't have any

5   recourse.  I felt I owed the debt and I was

6   going to have to pay it.  I didn't know I had

7   anything -- options open to me to bring this

8   up.

9        Q.      So when you say you owed the

10  debt, what debt are you talking about?

11                MR. BIANCO:  Objection to the

12          form of the question.

13       A.      From the original credit card

14  from Chase.

15       Q.      Okay.

16                And when did you learn that you

17  had a basis to bring this lawsuit?

18                MR. BIANCO:  Same objection.

19                Discussing when you learned is

20          fine, just please stay away from

21          content --

22       Q.      I don't want to know any

23  conversations you had with your attorney.

24                MR. BIANCO:  When you found out

25          is perfectly fine.

35

Doreen Vazquez

1

2    Q.      Now, you understand that you are

3    suing my client because they attempted to

4    collect a debt from you?

5             MR. BIANCO:   Objection.

6             Again, I am going to interpose a

7        privilege objection.

8             Your understanding -- if your

9        understanding is independent of my legal

10       advice or Alan's legal advice, you can

11       answer.  If it's subject to what I've

12       explained to you about the law, then I

13       instruct you not to answer.

14   Q.      Go ahead.

15   A.      I choose not to answer.

16   Q.      Okay, well, on the record, you

17   are alleging that you are a representative of

18   a class -- is it your understanding this is a

19   class action lawsuit?

20   A.      Yes.

21   Q.      Okay.

22            And do you understand that you

23   have to demonstrate certain qualities to be

24   certified as an adequate class representative?

25   A.      Yes.

36

1                          Doreen Vazquez

2          Q.      Okay.

3                  And what is your understanding of

4    that, other than what your lawyers told you?

5          A.      That there are many other people

6    in the same circumstance as me.

7          Q.      Okay.

8                  And when you say same

9    circumstances, what do you mean?

10         A.      That owe a valid debt, but the

11   way that it was to be collected was possibly

12   not understood by these people or myself.

13         Q.      Well, if you don't dispute that

14   you owed the debt, how is it your -- do you

15   have any understanding on how Rubin & Rothman

16   should have collected it?

17                 MR. BIANCO:  Going to object

18         again on privilege ground.

19                 If you have independent

20         knowledge, then you can answer.  If your

21         knowledge of the law and the legal basis

22         of this case comes from me, then I would

23         instruct you not to answer and I will

24         just, for the record, note that there is

25         a complaint on file.

37

1                         Doreen Vazquez

2                 MR. ARLEO:  Right, that's the

3          exact point.  There is a complaint on

4          file that is a public record.

5          Q.      What in that complaint -- what

6    are you claiming my client did wrong and what

7    laws did they violate?

8                 MR. BIANCO:  Objection.

9                 Counsel prepared that complaint.

10         This is -- you are asking her legal

11         basis out of a legal document that is a

12         matter of public record.  You could read

13         it for yourself, Mr. Arleo.

14                 MR. ARLEO:  I respectfully --

15         okay, how about this question:

16         Q.      What is your understanding as to

17   why my client violated laws and owes -- and is

18   responsible for what you are claiming they

19   did?

20                 MR. BIANCO:  Same objection.

21                 If you have independent knowledge

22         of exactly the laws that were broken and

23         how, then that's fine.

24   DI                 If you relied on my advice or

25         Alan's advice as to how those laws were

38

                        Doreen Vazquez

1

2        broken and why, I instruct you not to

3        answer.

4            Q.     Based upon what your counsel just

5    told you, do you not have an understanding of

6    what laws you have alleged my client violated?

7                  MR. BIANCO:   Yes or no, whether

8        you have an understanding or not.

9                  I instruct you not to discuss the

10       basis or the circumstances around that.

11       It's a yes or no question.

12                 You can answer that.

13           A.    No, I don't.

14           Q.    You don't understand the legal

15   basis for the claims that you have brought

16   against my client?

17           A.    Not the legal basis, no.

18           Q.    What basis do you understand?

19           A.    I understand just that I owe the

20   original debt --

21           Q.    Okay.

22           A.    -- from Chase.

23           Q.    Okay.

24           A.    That's it.

25           Q.    Then why did you sue my client?

39

1                      Doreen Vazquez

2          A.     It was brought to my attention

3   that the way it went about, the collection was

4   not proper.

5          Q.     Okay.

6                 And how was it not proper?

7                 MR. BIANCO:  Objection.

8                 Interpose again a privilege

9          objection.  If you have independent

10         knowledge of how it was improper, you

11         can answer.

12                If you are relying upon me or

13         Alan to explain to you how it is

14         improper, then I instruct you not to

15         answer.

16         A.     Okay, I will not answer.

17         Q.     You refuse to answer that?

18         A.     I refuse to answer.

19                MR. BIANCO:  On advice of

20         counsel.

21                MR. ARLEO:  The record reflects

22         that.

23         Q.     Did you get served with a Summons

24   and Complaint in the lawsuit that Rubin &

25   Rothman brought against you for that credit

40

1                    Doreen Vazquez
2    card debt?
3                    MR. BIANCO:  Objection to the
4         form of the question.
5         A.      Yes.
6         Q.      What did you do when you got
7    served with that?
8                    MR. BIANCO:  Objection to the
9         form of the question.
10        A.      Figured I'm going to have to pay
11   it.
12        Q.      Because you owed it?
13        A.      I owed --
14                   MR. BIANCO:  Objection to the
15        form of the question.
16                   You can answer.
17        A.      -- the original debt, yes, from
18   Chase.
19        Q.      Okay.
20                   Do you claim you owe that money
21   now to anyone?
22                   MR. BIANCO:  Objection to the
23        form of the question.
24                   MR. ARLEO:  Withdrawn.
25        Q.      Based upon that Chase debt that

41

1                    Doreen Vazquez

2    you admit you owed, and can we say it was in

3    excess of $10,000?

4                    MR. BIANCO:  Objection to the

5            form of the question.

6                    You can answer.

7    A.       Yes.

8    Q.       Okay.

9                    Are you responsible to pay that

10   money to anyone now?

11                   MR. BIANCO:  Objection to the

12           form of the question.

13   A.       It is being paid.

14   Q.       You are paying that debt?

15   A.       Yes.

16   Q.       Who are you paying it to?

17                   MR. BIANCO:  Objection to the

18           form of the question.

19   A.       It's a -- it's being paid to the

20   sheriff.

21   Q.       Okay.

22                   Are your wages being garnished?

23   A.       Yes.

24   Q.       How much of your wages are being

25   garnished?

42

1                      Doreen Vazquez

2          A.      Biweekly, $238.

3          Q.      Okay.

4                  And do you know where that money

5     is going?

6          A.      I do not.

7          Q.      Now, so you did possess a credit

8     card issued by Chase Bank USA NA?

9          A.      Yes.

10         Q.      Do you remember when that card

11    was issued?

12         A.      No.

13         Q.      Did you use that card?

14         A.      Yes.

15         Q.      And what did you use the card

16    for?

17         A.      I don't remember specifically.

18         Q.      Okay.

19                 General purchases and gas,

20    restaurants, things like that?

21         A.      Probably, yes.

22         Q.      And how did you make payments on

23    that card?

24                 MR. BIANCO:   Objection to the

25         form of the question.

58

Doreen Vazquez

1          Now, you understand in this

2   lawsuit you may have to go in front of a jury

3   and explain the basis for your claim against

4   my client?

5              MR. BIANCO:   Objection to the

6         form of the question.

8   Q.     Do you understand that?

9   A.     Yes.

10  Q.     Okay.

11         You've testified here today that

12  you did owe that money to Chase?

13             MR. BIANCO:   Objection to the

14        form of the question.

15  A.     Yes.

16  Q.     Okay.

17         Were you concerned about what

18  would happen to your credit if you didn't pay

19  your Chase card?

20  A.     Yes.

21  Q.     Okay.

22         Did any -- to your knowledge, did

23  any negative effect come to your credit

24  because of the judgment entered against you?

25  A.     I don't know.

59

                    Doreen Vazquez

1

2        Q.      Are you claiming that Midland

3    Funding cannot prove that they purchased your

4    debt from Chase?

5                MR. BIANCO:  Objection to the

6           form of the question, and I'm

7           interposing a privilege objection.

8                If you have knowledge independent

9           of your conversations with me about the

10          legal basis for your claims in the

11          complaint, then you can discuss them.

12   DI          If it comes directly from me, I

13          instruct you not to answer.

14       A.      I will not answer.

15       Q.      Okay.

16               Ms. Vazquez, I'm going to show

17   you your Second Amended Class Action

18   Complaint; have you ever read this?

19       A.      Yes.

20       Q.      Okay.

21               When did you read it?

22       A.      Within the past year.

23       Q.      Okay.

24               To your knowledge, did you read

25   this before this was filed in court by your

65

1                          Doreen Vazquez

2    something bad when they filed that complaint?

3                    MR. BIANCO:  Yes or no question.

4          A.       Yes.

5          Q.       And what did they do bad?

6                    MR. BIANCO:  Objection.

7    DI              Instruct you not to answer.

8                    MR. ARLEO:  I don't want

9              legalese.

10         Q.       Give me your general

11   understanding of what my client did bad when

12   they sued you for a debt that you admit was

13   owed?

14                   MR. BIANCO:  You've already asked

15             and answered would be the objection.

16             If you want to explain it one

17             more time.

18                   MR. ARLEO:  I didn't frame it in

19             the words of good or bad.  I said bad,

20             so now she said yes.  Okay, what was

21             bad?

22                   MR. BIANCO:  General

23             understanding?

24         Q.       Every day, you don't have to tell

25   me law or anything.

66

                         Doreen Vazquez

1

2         A.      I can't -- I'm not capable to

3    specify.

4         Q.      Yet you've sued my client.

5                 Okay.

6                 Is one of the reasons why it was

7    bad because Midland Funding really doesn't own

8    that Chase debt; could that be one of the

9    reasons?

10                     MR. BIANCO:  Objection.

11                     Again, it's the same objection

12               over and over again.

13                     MR. ARLEO:  You can object.

14                     MR. BIANCO:  The complaint is --

15               on the record, my client is sitting here

16               to answer general questions.

17                     You are invading specifically

18               upon lawyer-client privilege about the

19               statute in place and how they were

20               violated.

21                     MR. ARLEO:  Didn't ask about

22               statutes.  I said bad, in everyday

23               terminology.  I didn't say give me a

24               legal recitation what's in this

25               complaint.

71

                    Doreen Vazquez

1

2       quick break?

3               MR. ARLEO:  Sure.

4               We can take a break.

5               (Recess taken.)

6               (RR Exhibit 1, Document Bates

7       stamped R&R 000100, marked for

8       identification.)

9          Q.     Ms. Vazquez, can you take a look

10   at what's a letter dated January 5, 2011, it's

11   been marked as RR1 (handing)?

12              Just been handed to you.  Could

13   you read that, please, to yourself, and then

14   let me know when you are finished?

15         A.     (Witness reviewing.)

16              Okay.

17         Q.     Have you ever seen that letter

18   before?

19         A.     I don't remember.

20         Q.     Okay.

21         A.     I don't recall.

22         Q.     That's your address, 123 Browns

23   Road, Nesconset?

24         A.     Yes.

25         Q.     Okay.

72

                            Doreen Vazquez

1

2                       So you do not recall receiving

3     this letter?

4           A.      I don't recall, no.

5           Q.      Have you read the -- look at the

6     top, says current creditor, Midland Funding,

7     LLC, doing business in New York as Midland

8     Funding of Delaware, LLC.  That says current

9     creditor.  What is your understanding of that

10    statement, if any?

11                      MR. BIANCO:  Objection to the

12          form of the question.

13                      You can answer.

14          A.      I don't know.

15          Q.      Okay.

16                      And it said original creditor,

17    Chase.  Amount of debt 10,437.72.

18                      Could that be your credit card,

19    your Chase credit card?

20                      MR. BIANCO:  Objection to the

21          form of the question.

22          A.      Possibly, yes.

23          Q.      And as you read this, can you

24    decipher from this letter that Chase is no

25    longer a creditor?

77

1                    Doreen Vazquez

2              And what did you do, if anything,

3    when you got this lawsuit?

4         A.     Nothing.

5         Q.     Did you call an attorney?

6         A.     No.

7         Q.     And is there a reason why you

8    didn't do anything?

9              MR. BIANCO:  Objection to the

10        form of the question.

11             You can answer.

12        A.     I didn't think I had anything

13   open to me.

14        Q.     Okay.

15             And when you say open to you,

16   what would that mean?

17        A.     As far as challenging it or I

18   figured it says Chase, I owe it to them.

19        Q.     Okay.

20             So you thought you owed this

21   money?

22        A.     To Chase, yeah.

23        Q.     Okay.

24             So would you say here that the

25   wrong person was named as a defendant in this

85

                    Doreen Vazquez

1
2        A. ·     (Witness reviewing.)

3        Q.      While she's reading it, it's

4   marked Affidavit of Service and in the same

5   lawsuit referenced in the previous Summons and

6   Complaint given to her.

7              Do you recall being served with

8   this Summons and Complaint on March 5, 2011?

9              MR. BIANCO:  Objection to the

10        form of the question.

11        A.      Yes.

12        Q.      So this was -- so this is an

13   affidavit of what happened that day?

14        A.      Yes.

15             MR. BIANCO:  Objection.

16        Q.      Okay.

17             MR. ARLEO:  This is 6.

18             (RR Exhibit 6, Document Bates

19        stamped R&R 000111, marked for

20        identification.)

21        Q.      Ms. Vazquez, if you could take a

22   look at that, it's marked as RR 6, a letter

23   dated April 1st, 2011 --

24        A.      (Witness reviewing.)

25        Q.      -- addressed to you.

86

1                       Doreen Vazquez

2               Do you recall receiving this

3    letter?

4         A.    No.

5         Q.    Do you recall receiving any

6    letters from Rubin & Rothman prior to the time

7    you were served with that Summons and

8    Complaint?

9         A.    Yes, but exactly what was in

10   them, I don't recall.

11        Q.    Okay.

12              So when you got those letters

13   from Rubin & Rothman, what did you do --

14              MR. BIANCO:  Objection to the

15         form of the question.

16        Q.    -- if anything?  Did you do

17   anything when you got those letters?

18        A.    No.

19        Q.    Okay.

20              Did you dispute the claim that

21   was set forth in those letters?

22              MR. BIANCO:  Objection to the

23         form of the question.

24        A.    No.

25        Q.    So would it be safe to presume

87

```
 1                    Doreen Vazquez
 2   that this was one -- this could have been one
 3   of those letters that you received from my
 4   client although you don't remember
 5   specifically this exact one?
 6        A.      Yes.
 7        Q.      So then I would say if you don't
 8   remember anything --
 9                MR. ARLEO:  RR 7, please.
10                (RR Exhibit 7, Document Bates
11            stamped R&R 000113, marked for
12            identification.)
13                MR. ARLEO:  While Ms. Vazquez is
14            reading that, it's been marked as RR 7.
15            It's a letter dated May 5, 2011 from --
16            I'm sorry, addressed to Doreen Vazquez.
17        Q.      And while you are reading that,
18   Ms. Vazquez, this is another settlement
19   discount letter, so as you sit here today,
20   if -- do you recall any settlement offer
21   letters from Rubin & Rothman?
22        A.      No.
23        Q.      Okay.
24                MR. ARLEO:  Next exhibit.
25                (RR Exhibit 8, Affidavit of Susan
```

88

1                    Doreen Vazquez

2         Rasmussen, marked for identification.)

3         Q.      Now, what I would like to do on

4    this one, Ms. Vazquez, is, I am going to read

5    verbatim what is in this and ask you of your

6    understanding.  It says Affidavit of Susan

7    Rasmussen.  And Susan Rasmussen's business

8    address is an address in Minnesota.  She is a

9    legal specialist "and have access to account

10   records from Midland Credit Management,

11   servicer of this account," meaning the

12   plaintiff -- defendant, on behalf of the

13   plaintiff.

14              She alleges she's competent and

15   she makes a statement on personal knowledge.

16   She is claiming that Midland Funding,

17   plaintiff set forth, is the current owner of

18   your Chase account.

19              Okay.

20              If you go to the end where she

21   signed this, it's signed May 19, 2011.

22              Would you say that that statement

23   is true or false or --

24              MR. BIANCO:  Objection.

25         Q.      Or if you can't say true or

89

                        Doreen Vazquez

2    false, say I can't say true or false.

3                   MR. BIANCO:   Objection to the

4         form of the question.

5         Q.       Just stick with paragraph 1.

6         A.       (Witness reviewing.)

7                  True.

8         Q.       So you would agree with that?

9         A.       Based on what I am reading.

10        Q.       Well, okay.

11        A.       Yes.

12        Q.       So based upon what you just read

13   in paragraph 1, you would agree that that is a

14   true statement?

15                  MR. BIANCO:   Objection to the

16        form of the question.

17        A.       Yes.

18        Q.       Okay.

19                  Go to paragraph 3 on the second

20   page, it says, "The account shows defendant

21   owed a balance of 10,430 as of 2011, one, two

22   and interest at a rate of 9 percent as

23   annual."

24                  Does that number accurately

25   reflect what you owed to Chase on your Chase

90

1                          Doreen Vazquez

2     card?

3                    MR. BIANCO:  Objection to the

4           form of the question.

5           Q.      Or somewhere near that?

6           A.      Yes.

7           Q.      Okay.

8                    So you are not challenging those

9     two things that were said by this woman in

10    this document?

11                   MR. BIANCO:  Objection to the

12          form of the question.

13          A.      That I owed Chase that, no.

14          Q.      Well, no, how about paragraph 1,

15    that the plaintiff Midland Funding, LLC doing

16    business in New York as Midland Funding of

17    Delaware was the new owner of that account?

18                   MR. BIANCO:  Objection to the

19          form of the question.

20          Q.      I'm sorry, had been assigned that

21    account?

22                   MR. BIANCO:  Same objection.

23                   Objection to the form of the

24          question.

25          A.      Yes.

91

                    Doreen Vazquez

1
2       Q.      Okay.

3               MR. ARLEO:  Nine.

4               (RR Exhibit 9, Chase statement

5       4/17/09 through 5/16/09, marked for

6       identification.)

7       Q.      Go to page 2, because page 2 is a

8   blowup of 1.  Two and 3 is a bigger blowup of

9   1.  I just want to include the entire 1.  I

10  couldn't get it on 2.

11              MR. BIANCO:  Before you start to

12              question on that, I want to make note

13              that the Bates number on at least the

14              record copy is not clear.  It looks like

15              it's been smudged out.

16              I don't know if you have that

17              with you, if you want to read that into

18              the record.  Not a big deal, just wanted

19              to make note of that.  The record copy

20              doesn't show a clear Bates number.

21      Q.      Have you had a chance to look at

22  that, Ms. Vazquez?

23      A.      Yes.

24      Q.      Can you describe what that is?

25      A.      Look like a photocopy of a

1                  Doreen Vazquez

2    statement.

3        Q.      Okay.

4                And is that your name up top with

5    Nesconset and your street address blocked out?

6        A.      Yes.

7        Q.      It says Cardmember Service; would

8    this be a depiction of the billing statements

9    that you received from Chase concerning the

10   credit card?

11               MR. BIANCO:   Objection to the

12       form of the question.

13       A.      Looks like possibly, yeah.   It's

14   a long time ago.

15       Q.      Okay.

16               Why did you bring this as a class

17   action?

18               MR. BIANCO:   Objection to the

19       form of the question.

20               If you understand the question.

21       I just caution you not to disclose

22       privileged information, but if you want

23       to -- you can discuss the fact that this

24       is a class action.

25       A.      Well, a lot of other people are

93

                      Doreen Vazquez

1

2    in the same boat as me.

3         Q.     When you say "same boat," what

4    boat is that?

5         A.     Owe a debt and the manner in

6    which it was brought against them for

7    collection was not proper.

8         Q.     And why was it not proper?  Not

9    legalese.  Why was it bad?

10               MR. BIANCO:  I am going to object

11          to the extent that you can discuss it

12          generally, just don't discuss specifics.

13               MR. ARLEO:  I think we already

14          made it clear to her I don't want any

15          legalese or anything your lawyer told

16          you.

17        Q.     I just want every day and not to

18   be insulting or anything, just make it clear,

19   so it's -- I am going to use the word bad.

20   Why was it bad what my client did?

21               MR. BIANCO:  You can answer the

22          question.

23        A.     The way I understand it is that

24   the proper documentation was not obtained to

25   collect.

94

Doreen Vazquez

1   Q.   And when you say "documentation,"
2   what do you mean by that; what is your
3   understanding of documentation?
4
5            MR. BIANCO:  I am going to object
6        to the extent if it's directly derived
7        of communications with me on what is
8        legally sufficient, then I would
9        instruct you not to answer.  Generally,
10       again, you can discuss --
11  A.   Okay, I will not answer then.
12  Q.   Do you know who the members of
13  your class are?
14           MR. BIANCO:  Objection to the
15       form of the question.
16  A.   Who they are?
17  Q.   Yes.
18           MR. BIANCO:  Are you admitting we
19       have a class?
20           MR. ARLEO:  Putative class.
21  Q.   Who are the members of the
22  alleged putative presently uncertified --
23  A.   I don't know their names.
24  Q.   Do you know where they live?
25  A.   No.

95

1                        Doreen Vazquez

2          Q.       Would they live outside of

3     New York?

4          A.       I don't know.

5          Q.       Are class members located in

6     California in this lawsuit?

7                    MR. BIANCO:  Objection to the

8              form of the question.

9          A.       I don't know.

10         Q.       Are they located in Florida?

11         A.       I don't know.

12         Q.       Are they located in Michigan?

13         A.       I don't know.

14         Q.       So you don't know?

15         A.       I don't know where any of them

16    live.

17         Q.       Okay.

18                   Would you agree to settle this

19    lawsuit on an individual basis if my client

20    offered a settlement to you?

21                   MR. BIANCO:  Objection to the

22             form of the question.

23    DI                I believe that's an improper

24             question.  I will instruct you not to

25             answer.

111

1                    Doreen Vazquez

2          claiming privilege.

3                    MR. BIANCO:  Right, unless I am

4          claiming a privilege, I am not going to

5          instruct her not to answer.  It's

6          improper and I won't do it.

7                    Again, any objection that I make

8          and I believe we went over this already,

9          unless it's a privilege objection and I

10         specifically tell you not to answer, you

11         should answer.

12         Q.    Okay.

13                   Now, do you know what documents

14    they would need to support this claim?

15                   MR. BIANCO:  Objection.

16                   You could answer.

17         A.    No.

18         Q.    But you are saying they could

19    never get the documents that you don't know

20    what they would need to prove?

21                   MR. BIANCO:  Objection to the

22         form of the question.

23                   You can answer.

24         A.    No, I am not certain of what they

25    need.

112

1                    Doreen Vazquez

2         Q.      Okay.

3                  Can you go back to RR 9?

4         A.      (Witness complying.)

5         Q.      If you look at RR 9, which is, as

6    you testified, you believe that looks like a

7    billing statement, okay.  Looking at that

8    Chase billing statement, coupled with the

9    claim that Midland could never get documents

10   from Chase, now that you have looked at that,

11   do you still make that claim?

12                 MR. BIANCO:  Objection to the

13        form of the question.

14                 This looks like it could be a

15        statement from them.

16        Q.      From Chase?

17        A.      Yes.

18        Q.      Okay.

19                 And if Midland got that Chase

20   statement concerning you and your account, do

21   you still assert that Midland could not get

22   any documents from Chase?

23                 MR. BIANCO:  Objection to the

24        form of the question.

25        A.      No.

113

Doreen Vazquez

1       Q.      So you have changed your belief

2   now regarding the assertion?

3       A.      Well, this looks like a statement

4   from them.

5       Q.      Right.

6               Do you believe that that was

7   created by someone to trick you?

8       A.      No.  I am saying I don't recall

9   seeing this, so...

10      Q.      Now that you see it now --

11      A.      Well, it's a photocopy, so...

12      Q.      But that is a Chase statement,

13  isn't it?

14              MR. BIANCO:  Objection.

15      A.      It looks like.

16      Q.      So you've already answered.

17              Thank you.

18              Had you answered that State Court

19  lawsuit that Rubin & Rothman brought against

20  you, and you can say yes or no, just your

21  understanding, and if you appeared in there by

22  answering it in court, would Rubin & Rothman

23  have the right to put you in a deposition just

24  like this?

1                    Doreen Vazquez

2              We did 7.  Now go to paragraph 9.

3         A.      (Witness complying.)

4         Q.      How did Rubin & Rothman fail to

5    conduct a reasonable investigation as to the

6    facts that were alleged in that lawsuit they

7    brought against you?

8                    MR. BIANCO:  Objection to the

9         form of the question.

10        A.      I don't know.

11        Q.      Okay.

12              Well, you said that they failed

13   to do something.  They failed to conduct a

14   reasonable investigation as to the facts that

15   they put in that lawsuit against you.  Did

16   they do something bad by doing that?

17                    MR. BIANCO:  Objection to the

18        form of the question.

19                    Asked and answered.

20                    MR. ARLEO:  I didn't say the word

21        bad.  Now I'm saying bad.

22        Q.      Was that a bad thing for my

23   client to do?

24        A.      I don't know.

25        Q.      You don't know.

117

1                    Doreen Vazquez

2              So how did you know that Midland

3    cannot obtain any documents?

4              MR. BIANCO:  Objection to the

5         form of the question.

6         Q.    What is the basis -- what is your

7    understanding of the claim in this lawsuit

8    that Midland could never obtain any documents

9    to prove that you owed money?

10             MR. BIANCO:  Objection to the

11        form of the question.

12             You can answer.

13        A.    It was discussed with my

14   attorneys.

15        Q.    So because you discussed it with

16   your attorneys, you are electing not to

17   answer?

18        A.    Yes.

19        Q.    Okay.

20             Go to paragraph 10.

21        A.    (Witness complying.)

22        Q.    The judgment that was entered

23   against you, is that for the wrong amount of

24   money to your belief?

25             MR. BIANCO:  Objection to the

1                  Doreen Vazquez

2          form of the question.

3                  I don't see a number in 10.  Are

4          you referencing something else?

5                  MR. ARLEO:  No, paragraph 10 says

6          that Midland's practice of deliberately

7          obtaining, all the while knowing -- hang

8          on.

9                  Oh, for the wrong amount of

10         money.  "Creditors frequently secure

11         default judgments for the wrong amount

12         of money or even against the wrong

13         party."

14         Q.     Did my client obtain a judgment

15    against a wrong party when they sued you?

16                 MR. BIANCO:  Objection to the

17         form of the question.

18                 You can answer.

19         A.     I don't believe so.

20         Q.     Did my client obtain a judgment

21    for a wrong amount of money when they sued

22    you?

23                 MR. BIANCO:  Objection to the

24         form of the question.

25                 You can answer.

119

```
1                    Doreen Vazquez
2          A.      No.
3          Q.      Okay.
4                  Paragraph 11?
5          A.      (Witness reviewing.)
6          Q.      Describe how you are an
7    unprotected consumer.
8                  MR. BIANCO:  Objection to the
9          form of the question.
10                 You can answer, if you know.
11         A.      I don't know.
12         Q.      You don't know.
13                 Okay.
14                 This complaint was filed in your
15   name?
16         A.      Um-hum.
17         Q.      Okay.
18                 Okay.
19                 Why is it improper to sue a
20   working person?
21                 MR. BIANCO:  Objection to the
22         form of the question.
23         Q.      Well, I will go to paragraph 10,
24   okay.
25                 MR. SCHWARTZ:  11?
```

122

1                        Doreen Vazquez

2          Q.       Okay.

3                    If you go to paragraph 48,

4     please?

5          A.       (Witness complying.)

6          Q.       You can read paragraph 48 to

7     yourself.

8          A.       (Witness complying.)

9          Q.       Do you know what a robosigned

10    affidavit is?

11         A.       No.

12         Q.       Has anyone explained to you what

13    that is?

14                  MR. BIANCO:  Objection to the

15          form of the question.

16         A.       No.

17         Q.       Are you a low-income New Yorker

18    struggling to support a family?

19                  MR. BIANCO:  Objection to the

20          form of the question.

21                  Asked and answered.

22                  You can answer.

23         Q.       Ms. Vazquez, you have combined

24    income of $130,000?

25                  MR. BIANCO:  She's thinking

130

Doreen Vazquez

1     A.     Twice.

2     Q.     Are there any lawyers in your

3  family?

4     A.     No.

5     Q.     Any lawyer friends?

6     A.     No.

7     Q.     Other than your lawyers here?

8     A.     No.

9     Q.     Okay.

10            Go to paragraph 62.

11    A.     (Witness complying.)

12    Q.     What expenses have you incurred

13  as a result of the judgment Rubin & Rothman

14  received?

15            I believe you testified garnished

16  wages?

17            MR. BIANCO:   Objection to the

18        form of the question.

19    Q.     How about any bank accounts

20  attached, I'm sorry, seized, did they get your

21  bank accounts?

22    A.     No.

23    Q.     Just wage garnishment, okay.

24            Go to paragraph 86, please.

131

1                        Doreen Vazquez

2          A.      (Witness complying.)

3          Q.      If you look at -- second

4     sentence, "Upon information and belief,

5     neither Midland, nor defendant Rubin & Rothman

6     made a reasonable effort to verify

7     Ms. Vazquez's purported debt before harassing

8     her or before filing suit."

9                        How did Rubin & Rothman harass

10    you?

11                       MR. BIANCO:   Objection to the

12          form of the question.

13                       You can answer.

14         A.      There were phone calls, you know,

15    multiple phone calls.

16         Q.      Okay.

17                       Did you ever pick up the phone

18    and talk to them?

19         A.      It was during the day when I was

20    at work.

21         Q.      How did you know it was Rubin &

22    Rothman?

23         A.      They identified themselves.

24         Q.      Okay.

25                       Did they ever call you at night?

132

                         Doreen Vazquez

1

2          A.      Not that I recall.

3          Q.      Have you ever spoken to anyone at

4    Rubin & Rothman?

5          A.      No.

6          Q.      Ever bother you on the weekends?

7          A.      Not that I recall.

8          Q.      Call you early in the morning

9    before you go to work?

10         A.      No.

11         Q.      Cause your telephone to keep

12   ringing so you have to hang up, they would

13   call you back?

14         A.      No, the machine will pick it up

15   during the day.

16         Q.      Go to entertainment shows?

17                 MR. BIANCO:   Objection to the

18         form of the question.

19                 You can answer.

20         A.      No.

21         Q.      Concerts?

22         A.      Rarely.

23         Q.      When was the last concert you

24   went to besides Paul McCartney?

25         A.      That was probably the last one I

150

1                    Doreen Vazquez

2         A.        Yes.

3         Q.        Okay.

4                    Now, where it says "alleged

5    debtors," do you mean -- let me ask you this:

6    What -- do you have, as we sit here today, do

7    you have any facts through your own knowledge,

8    not through -- not legal issues, but any facts

9    that Midland obtained the default judgment

10   against you without sufficient proof of the

11   assignments of the debt to Midland?

12                   MR. BIANCO:   Objection to the

13        form of the question.

14                   You can answer.

15        A.        Me personally?

16        Q.        Yes.   Sure.

17        A.        No.

18        Q.        Okay.

19                   Now, and I will change one word.

20   I am going to ask the same question.   As you

21   sit here today, factually, I am asking for

22   your factual, your understanding, factual

23   basis, okay, are you aware that Midland

24   obtained the default judgment against you

25   without sufficient proof of the existence of

154

                           Doreen Vazquez

1

2    Q.      So that document, and I will let

3    you know, that document was provided by

4    Midland Credit Management, okay.

5                Is that the kind of document that

6    you are thinking is required for them to bring

7    a lawsuit against you?

8                MR. BIANCO:  Objection to the

9        form of the question.

10               You can answer.

11   A.      I really don't know.

12   Q.      So you don't know what documents,

13   you just believe that there weren't sufficient

14   documents?

15   A.      Yes.

16   Q.      And that's because of

17   conversations with your attorneys?

18   A.      Yes.

19   Q.      Now, you were served with the

20   Summons and Complaint in March of 2011,

21   correct?

22               MR. BIANCO:  In the Chase -- in

23       the Midland v Vazquez action?

24               MR. SCHWARTZ:  Right.

25   Q.      In the Midland Funding/Vazquez

1                    Doreen Vazquez

2         form.

3                    She can answer.

4         A.        Could you repeat that?

5         Q.        Sure.

6                    The paragraph -- the first

7    sentence of the paragraph in 28 in the

8    verified complaint says, "Midland abuses the

9    court system by filing lawsuits for which they

10   do not have proper evidentiary support."

11                   And what I asked you was:  Your

12   knowledge, factually, do you have any facts

13   within your knowledge as to whether that

14   statement is true or false?

15        A.        No.

16        Q.        Okay.

17                   Go to the next sentence, "Midland

18   fails to take reasonable steps to ensure the

19   validity of the debt and with no intention of

20   obtaining evidence to prove its claims, but

21   with the intention to intimidate or coerce

22   debtors into payment or suffering a default

23   judgement by falsely implying that it was

24   willing to prove its claim in court."

25                   Do you see that?

158

1                         Doreen Vazquez

2          A.      Um-hum.

3          Q.      Do you believe that's an accurate

4   statement?

5                  MR. BIANCO:  Objection to the

6          form of the question.

7                  You are asking her about her

8          personal knowledge?

9                  MR. SCHWARTZ:  I'm asking if she

10         thinks it's an actual statement based on

11         her personal knowledge.

12         A.      Based on my personal knowledge,

13  not what has been discussed with my attorneys.

14         Q.      I don't want to hear anything

15  discussed with your attorneys.

16         A.      I don't know how to answer that.

17         Q.      Well, perfect answer is if you

18  don't know --

19         A.      I don't know.

20         Q.      One of the instructions I should

21  have given you is it's a perfectly acceptable

22  answer if you truly don't know an answer, I

23  don't want you to guess.  I'd rather you say I

24  don't know.

25         A.      Okay, I don't know.

159

                    Doreen Vazquez

1

2       Q.      Okay.

3               Now, paragraph 29, it says, "At

4    the time Midland purchases these alleged

5    debts, Midland fails to give the alleged

6    debtor any notice of assignment."

7               Do you see that?

8       A.      Yes.

9       Q.      Okay.

10              Do you believe that that is an

11   accurate statement?

12              MR. BIANCO:   Objection to the

13          form of the question.

14              You can answer.

15      A.      I don't know.

16              MR. SCHWARTZ:   MCM 4.

17              (MCM Exhibit 4, October 30, 2010

18          letter from Midland Credit Management,

19          marked for identification.)

20      Q.      Now, I'm handing you what's been

21   marked MCM 4.   It is an October 30, 2010

22   letter from Midland Credit Management

23   (handing).

24      A.      (Witness reviewing.)

25      Q.      Let me know when you have looked

160

1                    Doreen Vazquez
2    through that.
3         A.        (Witness reviewing.)
4              MR. SCHWARTZ:  This isn't blown
5         up.  I think it will be helpful if we
6         can mark this as MCM 5, that would be
7         great.
8              (MCM Exhibit 5, Chase statement
9         dated 4/17/09 through 5/16/09, marked for
10        identification.)
11        Q.        I'm also going to hand you and
12   you have seen a copy of this, but it was
13   blocked out, so I want to give you a clean
14   copy.  And unfortunately, I don't have the
15   skill set to blow it up, but I'm showing you
16   the Chase account number.  I want you to take
17   a look, but first I want you to, after you
18   look at that focus on MCM 4, which is the
19   Midland Credit Management October 30, 2010
20   letter --
21        A.        Um-hum.
22        Q.        Let me know when you've looked
23   through that.
24        A.        (Witness reviewing.)
25        Q.        Now, do you have any -- as we sit

                          Doreen Vazquez

1    here today, do you have any recollection of

2    receiving any communications from Midland

3    Credit Management?

4          A.      I don't believe I ever saw this.

5          Q.      Okay.

6                  Now, you see at the top there,

7    it's October 30, 2010 is the date on that?

8          A.      Right.

9          Q.      Was that before the collection

10   action was filed against you?

11         A.      I believe so.

12         Q.      And you will see that it's got

13   the name Doreen Vazquez, that's your name?

14         A.      Yes.

15         Q.      Of course, here we have the

16   unredacted address and that is your mailing

17   address, correct?

18         A.      Yes.

19         Q.      Okay.

20                 And I just want to make sure the

21   first paragraph is part of this.  I think it's

22   important, first it identifies up at the top

23   there is a box.  It identifies the original

24   creditor.  What does it identify the original

162

1                    Doreen Vazquez

2    creditor as?

3         A.      Chase.

4         Q.      Okay.

5                 And then you will see it says,

6    "Dear Doreen -- " well, first of all it says

7    in a box "Notice of New Ownership and

8    Pre-Legal Review."

9                 Do you see that?

10        A.      Yes.

11        Q.      Is that accurate?

12                MR. BIANCO:   Objection to the

13        form of the question.

14        Q.      I mean am I accurately reciting

15   what's in that box?

16        A.      Yes.

17        Q.      Under that it says, "Dear Doreen

18   Vazquez."

19                Do you see that?

20        A.      Yes.

21        Q.      And the next part says, "Midland

22   Funding, LLC recently purchased your Chase

23   account and Midland Credit Management, Inc.

24   ("MCM"), a debt collection company, is the

25   servicer of this obligation."

163

1                    Doreen Vazquez

2              Did I read that correctly?

3        A.     Yes.

4        Q.     I want to get your idea, what do

5    you think that means?

6                    MR. BIANCO:  Objection to the

7         form of the question.

8                    You can answer.

9        A.     Based on what I am looking at, it

10   looks like they took over where Chase sold

11   them or took over to try to collect the Chase

12   debt.

13       Q.     So just to make sure I

14   understand, it looks like Midland Funding

15   bought your Chase debt, okay, and that Midland

16   Credit Management was collecting or servicing

17   it; is that about right?

18       A.     That's what it looks like, yes.

19       Q.     I want you to look down to where

20   it says payment coupon towards the bottom.

21       A.     Yes.

22       Q.     Do you see there is an original

23   account number there, it's the second number?

24                   MR. BIANCO:  (Indicating.)

25       A.     Yes.

177

                        Doreen Vazquez

1

2   customer service records, customer dispute

3   records or any facts, whatsoever having to do

4   with the actual account under dispute."

5               Do you see that part of that

6   sentence?

7        A.    Yes.

8        Q.    Did I read that accurately?

9        A.    Yes.

10       Q.    Okay.

11              Now, it says, "The debt is sold

12   without the underlying debt contract."

13              With respect to your debt that

14   was acquired by Midland Funding with Chase, as

15   we sit here, are you aware of whether or not

16   that account was sold from Chase to Midland

17   Funding without the underlying agreement,

18   credit card agreement?

19              MR. BIANCO:  Objection to the

20        form of the question.

21              You can answer.

22       A.    I don't know.

23       Q.    So it's just a guess?

24              MR. BIANCO:  Objection to the

25        form of the question.

178

Doreen Vazquez

1    Q.    I'm asking from your perspective.

2    A.    I don't know.

3    Q.    You don't know if there were any

4    account statements other than the statement

5    that we looked at, Exhibit --

6          MR. BIANCO:  I think it was 9.

7    Q.    Rubin & Rothman 9 or MCM 5, that

8    was a statement, correct?

9    A.    Correct.

10   Q.    Okay.

11         So aside from that -- so with

12   respect to your debt, was it sold by Chase to

13   Midland Funding without an account statement?

14         MR. BIANCO:  Objection to the

15         form of the question.

16         You can answer.

17   A.    I don't know.

18   Q.    You don't know, so

19   notwithstanding the fact -- well, okay, you

20   have seen RR 9, you have seen MCM 5.  Feel

21   free, if you want, to look at it.  I'm asking

22   you that -- you are looking at that and I want

23   to know why you still question the fact that

24   there is a statement, I'm curious?

1                    Doreen Vazquez

2                    MR. BIANCO:  Objection to the

3         form of the question.

4                    You can answer.

5         A.      I don't know when they got that

6    statement.

7         Q.      So you are not sure whether they

8    got it after the judgment or whether it was

9    available before they filed the collection

10   action; is that your issue?

11        A.      Yes.

12        Q.      And if, in fact, they had --

13   let's say they had it before the lawsuit

14   was -- the collection action was filed against

15   you, then they would have had that statement;

16   is that a fair assessment?

17                   MR. BIANCO:  Objection to the

18        form of the question.

19                   You can answer.

20        A.      I would think so.

21        Q.      When you talk about customer

22   service records, do you know what that means?

23        A.      No.

24        Q.      Okay.

25                   So if Chase had provided -- if

1                    Doreen Vazquez

2    Chase had provided information, let's say that

3    and this is -- well, let's go to the next part

4    where it says -- I will come back.  It says,

5    "Customer dispute records," did you ever

6    dispute this debt with Chase?

7          A.    No.

8          Q.    Did you ever dispute this with

9    Midland Funding?

10         A.    No.

11         Q.    Did you ever dispute it with

12   Midland Credit Management?

13         A.    No.

14         Q.    Did you ever dispute it with

15   Rubin & Rothman?

16         A.    No.

17         Q.    So would you expect there would

18   be any customer dispute records if you've

19   never disputed it, the debt?

20              MR. BIANCO:  Objection to the

21         form of the question.

22              For her account?

23              MR. SCHWARTZ:  For her account.

24         A.    No.

25              MR. BIANCO:  Fair enough.

186

1                     Doreen Vazquez

2          Q.     Let's move on.  I want to turn

3    back to the first amended complaint, which was

4    MCM 6.  Turn to paragraph 7, please?

5          A.     (Witness complying.)

6          Q.     The first paragraph of 7, it

7    says, "Second" -- because I believe we already

8    went over paragraph 5 earlier.

9                "Even though Midland knows it

10   cannot actually demonstrate the existence of a

11   debt, Midland engages in a pattern and

12   practice of fraudulently filing lawsuits

13   without evidentiary support of New York State

14   courts."

15                Do you see that?

16         A.     Yes.

17         Q.     Did I read that accurately?

18         A.     Yes.

19         Q.     Again, factually, did you have

20   any factual basis that supports the claim that

21   Midland knows it cannot actually demonstrate

22   the existence of your Chase debt?

23                MR. BIANCO:  Objection to the

24         form of the question.

25                You can answer.

187

1                    Doreen Vazquez

2        A.      I don't know.

3        Q.      And I want to expand, despite the

4    documents that you have seen today, the Chase

5    statement, the Midland Credit Management

6    letter that tells you of the purchase and

7    assignment, that has the same account number

8    as the statement, and those factors

9    interplayed with respect to your account, it

10   says here "Midland knows it cannot actually

11   demonstrate the existence of the debt," with

12   respect to your debt, do you believe that's an

13   accurate statement, as we sit here today under

14   oath?

15              MR. BIANCO:  Objection to the

16        form of the question.

17              You can answer.

18       A.      I don't know.

19       Q.      Why did you let the default

20   judgment be entered against you?

21              MR. BIANCO:  Objection.

22              Asked and answered.

23              MR. SCHWARTZ:  That's not a

24        proper objection, but you are right,

25        it's been asked before.

189

1                    Doreen Vazquez

2    debt?  In other words, Midland sued you; was

3    it because you believed that you owed this

4    debt to Midland and that you couldn't pay it;

5    was that the reason you didn't show up?

6                    MR. BIANCO:  Objection to the

7         form of the question.

8         A.      Regardless of who I owed it to, I

9    don't think I would have showed up.

10        Q.      Okay.

11                Turn to paragraph 16, please, of

12   MCM 6.

13        A.      (Witness complying.)

14        Q.      Paragraph 16 just says you are a

15   resident of the State of New York, I'm

16   assuming that's correct?

17        A.      Yes.

18        Q.      Okay.

19                And at all times relevant in this

20   case you resided in Nesconset, New York; is

21   that correct?

22        A.      Yes.

23        Q.      I wanted to cover that.

24                That's fine.

25                You lived at the 123 Browns Road

1                    Doreen Vazquez

2     address continuously from 2010 to the present,

3     correct?

4          A.     Yes.

5          Q.     So there was never a time that

6     you were on extended leave from that address?

7          A.     No.

8          Q.     That's where you would receive

9     mail?

10         A.     Yes.

11         Q.     As a Suffolk County probation

12    officer, and that was your job throughout this

13    entire time period?

14         A.     Probation assistant.

15         Q.     What was your work schedule like;

16    did you work on weekends, what were your

17    average times?

18         A.     I worked Monday through Friday.

19         Q.     Is that a 9:00 to 5:00 job or is

20    it --

21         A.     It varies.  8:00 to 4:00, 9:00 to

22    5:00, it fluctuates.

23         Q.     Do you do any work on the

24    weekends?

25         A.     No.

1                      Doreen Vazquez

2          Q.      And that also goes through your

3     board of electors?

4          A.      Boards of elections.

5          Q.      Board of Elections job.  Was that

6     a weekend job or was that --

7          A.      No.

8          Q.      That was during the week as well?

9          A.      Yes.

10         Q.      I want to turn to paragraph 30

11    real fast.

12         A.      (Witness reviewing.)

13         Q.      I'm sorry, I am misreading it.

14                 Paragraph -- bear with me one

15    second.

16                 Okay.

17                 In paragraph 38 -- let me know

18    when you are there?

19         A.      38?

20         Q.      38, I'm sorry.

21         A.      (Witness reviewing.)

22         Q.      Of MCM 6, the first amended

23    complaint.  Let me know when you are there.

24         A.      Okay.

25         Q.      At the very bottom it says, "Some

192

1                    Doreen Vazquez

2     alleged debtors pay Midland just to avoid

3     false reports to credit bureaus or to

4     otherwise avoid harassment or the legal

5     process."

6                    Are you alleging with respect to

7     your own case that Midland engaged in filing

8     false reports to your credit?

9                    MR. BIANCO:  Objection to the

10        form of the question.

11        A.    I don't know.  I haven't checked

12    my credit report.

13        Q.    From the time that the original

14    lawsuit was filed, let's say in the past

15    almost two years, you haven't checked your

16    credit report?

17        A.    I have not.

18        Q.    Okay.

19               Have you applied for a loan

20    during that period of time?

21        A.    No.

22        Q.    Have you applied for a credit

23    card during that period of time?

24        A.    No.

25        Q.    Any kind of extension of credit,

Doreen Vazquez

1
2    if you know what I mean?

3        A.    No.

4        Q.    Now, as far as the other aspects

5    here where they talk about some alleged

6    debtors, and I will skip alleged debtors,

7    because I think you conceded that you owe the

8    Chase debt, correct?

9        A.    Yes.

10       Q.    So it says here "Some debtors pay

11   Midland to avoid harassment."

12             Is that a fair reading, at least

13   a fair paraphrasing of the second part of that

14   statement in 38?

15             I am trying to break it down.

16       A.    Um-hum, yes.

17       Q.    Do you recall ever being harassed

18   by Midland Funding?

19             MR. BIANCO:  Objection to the

20        form of the question.

21             You can answer again.

22       A.    There were multiple calls,

23   messages left on my machine.

24       Q.    So let's really hone in on that.

25             Let me preface it by saying that

199

1                    Doreen Vazquez

2    correct?

3         A.    Yes.

4         Q.    If you were going to talk about a

5    threat, that would be kind of what you are

6    talking about?

7              MR. BIANCO:  Objection to the

8         form of the question.

9              You can answer.

10        Q.    Again, this is as a class

11   representative.

12        A.    I referred to an attorney.  You

13   think lawsuit...

14        Q.    In fact, in your situation you

15   were sued by a law firm, correct?

16        A.    Yes.

17        Q.    And you were served the Summons

18   and Complaint, correct?

19        A.    Yes.

20        Q.    And you failed to appear, even

21   though -- and that Summons and Complaint

22   provided you with a date when you had to file

23   an answer; is that accurate?

24        A.    Yes.

25        Q.    And you didn't file an answer; is

200

1                    Doreen Vazquez
2    that accurate?
3          A.     Yes.
4          Q.     A judgment was entered against
5    you; is that accurate?
6          A.     Yes.
7          Q.     You didn't appeal it?
8          A.     Yes.
9          Q.     As a result, your wages were
10   garnished?
11         A.     Yes.
12         Q.     Turn back to MCM 4, which was the
13   10/30/2010 letter from Midland Credit
14   Management.
15         A.     (Witness reviewing.)
16         Q.     You know what, never mind --
17   well, take a look at it.  Let's do it.
18                Now, is there a second page --
19   there is a second page to it, I believe,
20   right; is that correct?
21         A.     (Witness reviewing.)
22         Q.     Now, here it says -- it says
23   here, "Unless you notify MCM within 30 days
24   after receiving this notice that you dispute
25   the validity of this debt or any portion

201

1                    Doreen Vazquez
2    thereof, MCM will assume this debt to be
3    valid."
4                    Did you understand that you could
5    dispute your debt with Midland Credit
6    Management?
7                    MR. BIANCO:  Objection to the
8            form of the question.
9                    Do you have a time frame for
10           that?
11                   You are referencing a letter she
12           said she may not have received.
13                   MR. SCHWARTZ:  I understand.
14           That's a problem.  I am trying to make
15           sure that to the extent it was mailed
16           out to her address that it does have the
17           proper 1692g notifications.
18                   MR. BIANCO:  You can also ask at
19           any time throughout the course of this,
20           did she understand she can dispute.
21                   MR. SCHWARTZ:  I am going to.
22           That was the next question.
23           Q.      Do you see that?  Were you
24    aware -- again, we are going to say the
25    question:  Were you aware at any time that you

1                        Doreen Vazquez

2    could call up Midland Credit Management and

3    say I dispute this debt?

4            A.      Yes.

5            Q.      But you never did?

6            A.      No.

7            Q.      Was that because there was

8    nothing to dispute?

9                    MR. BIANCO:  Objection to the

10           form of the question.

11           A.      I never denied that I owed the

12   original debt.

13           Q.      Okay.

14                   And that there was nothing about

15   the amount being accurate or anything like

16   that, you never questioned that?

17           A.      Right.

18           Q.      We are going to jump -- there was

19   a lot of stuff that was covered in your

20   previous questions.

21                   MR. SCHWARTZ:  This is MCM 8.

22                   (MCM Exhibit 8, Mastercard and Visa

23           Cardmember Agreement, marked for

24           identification.)

25           Q.      You said you don't recall when

203

```
 1                     Doreen Vazquez
 2    you opened your credit card account with
 3    Chase?
 4           A.      True.
 5           Q.      Could you even break it down
 6    to -- if Chase represented that your account
 7    was opened June 21st of 2000, would that seem
 8    like it could be the time when your account
 9    was opened or was that --
10           A.      It's possible.
11           Q.      Is there anything -- does that
12    date stand out for any reason at all?
13           A.      No, it doesn't stand out.
14           Q.      Showing you what's been marked
15    MCM 8, which is a Chase terms and conditions,
16    it's -- it says Mastercard and Visa Cardmember
17    Agreement.  I just want you to look through
18    it.
19           A.      (Witness reviewing.)
20                   MR. BIANCO:  Generally?
21                   MR. SCHWARTZ:  Just generally.
22                   I want to ask her the next
23           question.
24           Q.      Do you have any recollection of
25    ever receiving this agreement?  But look
```

1                    Doreen Vazquez

2      through it first.  I want to make sure you

3      look through it.  Maybe it will jar something.

4            A.      (Witness reviewing.)

5      It doesn't look unusual, looks pretty standard.

6            Q.      The question is:  Do you have a

7      recollection, as we sit here today, whether

8      you've received a copy of those terms and

9      conditions for your Chase credit card?

10           A.      I have no recollection.

11           Q.      Okay.

12                   Do you recall receiving any terms

13     and conditions, any agreement from Chase when

14     you opened your credit card?

15                   MR. BIANCO:  Objection to the

16            form of the question.

17                   Just in or around June of 2000?

18                   MR. SCHWARTZ:  In or around June

19            of 2000.

20           Q.      Ignore the jotting on there, it's

21     not part of the document.

22                   I just want to make sure.  If you

23     don't have a recollection, that's fine.

24           A.      I don't recall, no.

25           Q.      That's fine.

223

                    Doreen Vazquez

1

2    right now I'm only asking about you, nothing

3    your attorneys did.  So that was 29 and you

4    object to this request.

5              You have not had sufficient

6    opportunity to complete your investigation and

7    discovery.  "Subject to and without waiving

8    her general and specific objections, plaintiff

9    states deny."

10             So you are denying -- what you

11   are saying is you have some evidence that

12   Rubin & Rothman lacked a reasonable basis to

13   file the lawsuit against you; is that correct?

14                  MR. BIANCO:  Objection to the

15        form of the question.

16                  You can answer.

17        Q.    I'm trying to figure out what

18   evidence --

19                  MR. BIANCO:  Can you ask it that

20        way?  It will be clearer.

21                  MR. SCHWARTZ:  I think it would.

22        Q.    What evidence do you have, do you

23   have, I'm asking you facts, not law, that

24   shows that Rubin & Rothman didn't have a

25   reasonable basis to file the lawsuit against

224

1                    Doreen Vazquez

2    you?

3              MR. BIANCO:   No objection.

4         A.    I don't know.

5         Q.    We are going to go to 30.

6              Your request for admission number

7    30, it says -- we'll do -- it seems to be

8    "Admit you have no evidence that Midland

9    Funding furnished false information concerning

10   your Chase account to any credit reporting

11   agency."

12             Then you denied that.

13        A.    Um-hum.

14        Q.    To the best of your knowledge,

15   you've testified earlier you haven't even

16   looked at a credit report; is that correct?

17        A.    That's correct.

18        Q.    So do you understand why you

19   denied that response to request for

20   admissions?

21        A.    (No response.)

22        Q.    By "you," I mean you, not your

23   attorney; do you have any idea?

24             That's a yes or no.

25        A.    No.   Sorry.

226

1               Doreen Vazquez

2               MR. BIANCO:  Objection to the

3         form of the question.

4         Q.    What does it cost you -- what has

5    it cost you?

6         A.    To?

7         Q.    Well, you have testified earlier

8    that you owed a debt, that judgment was

9    entered against you, correct?

10        A.    Um-hum.

11        Q.    As a result of that judgment, you

12   didn't oppose or appeal, you were garnished.

13   Aside from all of that garnishment, paying

14   back the debt that you owe, is there any

15   damage that you have incurred as a result of

16   the conduct of Midland Funding?

17              MR. BIANCO:  Objection to the

18        form of the question.

19        A.    I don't know.

20        Q.    What about Midland Credit

21   Management?

22        A.    I don't know.

23        Q.    Make sure I understand, so as we

24   sit here today, you have -- you are unable to

25   articulate any out-of-pocket loss that you

227

```
 1                    Doreen Vazquez
 2    have incurred as a result of the conduct of
 3    either Midland Funding or Midland Credit
 4    Management; is that correct?
 5         A.     Yes.
 6                MR. BIANCO:  Objection to the
 7           form of the question.
 8                You can answer.
 9         Q.     Response to Interrogatories.
10                MR. SCHWARTZ:  Let's get this
11           marked as 10.
12                (MCM Exhibit 10, Responses and
13           Objections to Midland Funding, LLC's First
14           Set of Interrogatories Directed to
15           Plaintiff Doreen Vazquez, marked for
16           identification.)
17         Q.     I'm handing Ms. Vazquez what's
18    been marked MCM 10, which is her responses to
19    Midland Funding interrogatories.
20                Have you seen these before?
21         A.     I believe I have, yes.
22         Q.     And do you recall providing
23    information to respond to these
24    interrogatories to your attorney?
25         A.     Yes.
```

228

Doreen Vazquez

1    Q.      I would like to turn your
2    attention to interrogatory -- your response to
3    interrogatories 3 and 4.
4
5    A.      (Witness reviewing.)
6    Q.      It's page six, I'm sorry.
7    A.      (Witness reviewing.)
8            Okay.
9    Q.      In your response, interrogatory
10   number 3 requests, "Describe each and every
11   communication between you and Midland Credit
12   Management, Inc. during the relevant time
13   period, including whether such communication
14   was in writing or by telephone."
15           As we sit here today, and I
16   believe you testified you've seen the October
17   30, 2010 letter, but again, you don't have any
18   recollection of receiving that letter?
19   A.      Right.
20   Q.      Do you have a recollection of
21   receiving any letter from Midland Credit
22   Management?
23   A.      Yes.  Specifically what, though,
24   I don't recall.
25   Q.      Do you believe it was more than

229

                    Doreen Vazquez

1

2    one?

3        A.      Yes.

4        Q.      Would you say it was more than

5    three?

6        A.      Possibly.

7        Q.      Five?

8        A.      Maybe.

9        Q.      A hundred?

10       A.      I don't think that many, but...

11       Q.      So if you were to give me an

12   estimate -- I will ask for an estimate on this

13   one.  How many do you think you received from

14   Midland Credit Management with respect to this

15   account?

16       A.      I couldn't say exactly.

17       Q.      Okay.

18               And do you have any recollection

19   of having any telephone conversations with

20   Midland Credit Management?

21       A.      No conversations, no.

22       Q.      But you do recall receiving

23   telephone calls from Midland Credit

24   Management?

25       A.      There were messages, yes.

230

1                    Doreen Vazquez

2        Q.      You didn't preserve any of those

3    messages?

4        A.      No.

5        Q.      And those messages, they were

6    made to telephone number ending in, is it

7    9587?

8        A.      Yes.

9        Q.      Okay.

10               Was that the only phone number

11   that -- the only phone number you recall

12   receiving messages from Midland Credit

13   Management?

14       A.      Yes.

15       Q.      Do you have any recollection of

16   what those messages said to you?  In other

17   words, what message did Midland Credit

18   Management leave for you?

19       A.      Just that it was regarding a

20   debt.

21       Q.      Did they provide a call back

22   number?

23       A.      Probably.

24       Q.      Did you call back?

25       A.      I did not.

231

Doreen Vazquez

1

2      Q.      Why?

3              MR. BIANCO:  Objection to the

4      form of the question.

5      Q.      Why didn't you call back?

6      A.      Didn't want to face it, afraid,

7  you know.

8      Q.      At the time you were getting

9  these phone calls from Midland Credit

10  Management, were you receiving calls from

11  other debt collectors?

12      A.      I don't believe so, no.

13      Q.      Had you received calls from other

14  debt collectors prior to receiving the Midland

15  Credit Management calls?

16      A.      I don't remember.  I don't think

17  so.

18      Q.      Let me ask you this:  When you

19  ceased -- before your Chase account was

20  charged -- was charged off, when they stopped

21  it in -- I guess it -- again, prior to May 31,

22  2009, you said you were making payments; do

23  you know when you stopped making payments on

24  your Chase credit card?

25      A.      Exactly when, I don't remember.

233

1           Doreen Vazquez

2           MR. BIANCO:   Objection to the

3      form of the question.

4           You can answer.

5      A.      I don't know.

6      Q.      When I use the letters FDCPA, do

7 you know what that means?

8      A.      No.

9      Q.      Have you ever heard of the term

10 FDCPA, letters FDCPA?

11      A.      No, not to my recollection.

12      Q.      If I say Fair Debt Collection

13 Practices Act, would that refresh your

14 recollection or no?

15      A.      No.

16      Q.      I'm sorry?

17      A.      No.

18      Q.      Let me ask you:   In interrogatory

19 numbers 22 and 23, page 12, we asked that you

20 identify all actual damages that you claim

21 you've incurred as a result of the conduct of

22 Midland Funding and all facts substantiating

23 your claims for actual damages as alleged in

24 your -- in the prayer for relief in the

25 complaint.   I changed it around a little bit

242

                    Doreen Vazquez

1

2    yes.

3         Q.    Okay.

4              And we've asked, I think

5    throughout this deposition, your factual basis

6    for that claim; how do you know that they did

7    not have sufficient documents to file the

8    lawsuit against you to recover on the debt

9    that you owe?

10             MR. BIANCO:  Objection to the

11        form of the question.

12             You can answer.

13        A.    I was never provided with any

14   proof, any papers showing that they had the

15   authority to take it over.

16        Q.    Okay.

17             You also, just to make sure,

18   again, you were served with the Summons and

19   Complaint and you never responded to it?

20        A.    Correct.

21        Q.    Where do you think that

22   obligation, provide you with these documents,

23   where do you think that arises from, when

24   should that have happened?

25             MR. BIANCO:  Objection to the

243

1                     Doreen Vazquez

2          form of the question.

3                     You can answer.

4          Q.       No, go ahead.  I'm sorry.

5          A.       Possibly something to be attached

6     to the paperwork that they are sending me

7     showing that they got the proper documentation

8     at that time.

9          Q.       Okay.

10                    So you are -- make sure I

11    understand it.  What you are saying is when

12    they served the Summons and Complaint on you,

13    there should have been documents sufficient to

14    establish that you were obligated to pay the

15    debt?

16         A.       Correct.

17         Q.       But a court entered a judgment

18    against you; do you understand that?

19         A.       Yes.

20         Q.       They found it sufficient, didn't

21    they?

22                    MR. BIANCO:  Objection to the

23          form of the question.

24         A.       I am not the court.  I don't know

25    what they found sufficient.