**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DAVID AGOADO, LEEANN MCNALLY, CRAIG MOORE, CHRIS PIERRE, THOMAS SHARKEY AND DOREEN VAZQUEZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>**MIDLAND FUNDING, LLC, MIDLAND FUNDING, LLC DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC, MIDLAND CREDIT MANAGEMENT, INC., RUBIN & ROTHMAN, LLC, FORSTER & GARBUS LLP, COHEN & SLAMOWITZ, LLP and PRESSLER AND PRESSLER LLP**<br><br>Defendants. | **Civil Action No.**<br>**2:14-cv-00018-JMA-AKT**<br><br><br>**DECLARATION IN OF XENIA MURPHY REGARDING MEDIA AVAILABILITY REPORT (EXHIBIT M-Q)** |

I, Xenia Murphy, declare:

1.      I am employed by Midland Credit Management, Inc. ("MCM") as a Director of Legal Outsourcing, and I have personal knowledge of this matter.

2.      I make this declaration in connection with the motion for summary judgment of Midland Funding, LLC, Midland Funding, LLC DBA in New York as Midland Funding of Delaware, LLC (together "MF"), and MCM (collectively, "Midland").

3.      MCM and MF are under the common ownership of Encore Capital Group, Inc. MF is a passive buyer of distressed debt portfolios.  These portfolios often include charged off credit card debt. MF itself does not service the debt or engage in debt collection actions.  Instead, MF contracts with MCM to service the debt acquired by Midland.

4.      The accounts to which MF takes title are purchased from debt sellers pursuant to terms and conditions provided in confidential purchase agreements.

1

5.      MF considers its negotiations and communications with the sellers of debt portfolios acquired by MF to be confidential and to include competitively and commercially sensitive information.  This information includes, but is not limited to, the terms, both financial and legal, under which MF acquires debt portfolios.

6.      Information regarding MF's commercial relationship with sellers of debt is highly sensitive, particularly the terms of the purchase agreement, as well as the agreement itself, by which MF acquires the debt.

7.      MF protects information regarding the terms of any purchase agreement between itself and sellers of debt portfolios, and does not willingly share this information with any person who is not bound to keep the information confidential.  If this information were disclosed to any third parties or otherwise made public, it would seriously impact Midland's business operations and its ability to do business in the competitive debt collection market.

8.      As the terms and conditions of the sale of accounts to MF are kept strictly confidential, and MF's competitors are not aware of the unique, bargained-for terms under which MF purchases accounts, MF places a high value on maintaining their confidentiality.

9.      Historically, MCM provided outside legal collection counsel a spreadsheet entitled the "Media Availability Report."

10.     The Media Availability Report provided information drawn from MF's purchase agreements regarding what types of documents concerning accounts placed for collection were available for outside counsel to request for debts in any particular portfolio.

11.     As of September 2015, MCM no longer provides the Media Availability Report to its collection counsel, or utilizes it in any manner.

12.    The information in the Media Availability Report is confidential and Midland has not shared it with any parties other than its outside counsel.

13.    Attached hereto and filed under seal is Exhibit M-Q, a copy of the Media Availability Report that MCM provided to its outside legal counsel. The exhibit has been redacted such that it reflects only information concerning the debt portfolios that included each named Plaintiff's account.

14.    I am familiar with the record keeping practices of MCM.

15.    The Media Availability Report was updated by MCM at or near the time MF purchased each portfolio of debt addressed therein.

16.    MCM made the Media Availability Report using information transmitted by a person with knowledge of the events recorded therein.

17.    MCM kept the Media Availability Report in the ordinary course of business.

18.    It was in the regular practice of MCM to make the Media Availability Report.

19.    The account notes (on the "Collection Detail" page) that MCM provided in discovery to Plaintiffs include the portfolio number assigned to each portfolio of which each Plaintiff's account was a part.

20.    Those account notes reflect the following:

a.   Plaintiff Agoado's Chase account was included in Portfolio No. 1345.

b.   Plaintiff Agoado's HSBC account was included in Portfolio No. 1336.

c.   Plaintiff McNally's account was included in Portfolio No. 1359.

d.   Plaintiff Moore's account was included in Portfolio No. 1063.

e.   Plaintiff Pierre's account was included in Portfolio No. 1112.

f.   Plaintiff Sharkey's account was included in Portfolio No. 1236.

    g.   Plaintiff Vazquez's account was included in Portfolio No. 1133.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____Kent_____, Rhode Island
February 16, 2017

_____
Xenia Murphy
Midland Credit Management, Inc.