# Murphy-Agoado Ex. J

### Table of Interest Charges

The Daily Periodic Rate used in determining your Periodic FINANCE CHARGE on Purchases, Cash Advances and previous billing cycle Purchases for the first 6 billing cycles following the opening of your Account (the "Introductory Period"), is a fixed rate of 0.0162%, corresponding to an ANNUAL PERCENTAGE RATE of 5.9%. Following the expiration of the Introductory Period, the Daily Periodic Rate used in determining your Periodic FINANCE CHARGE on Purchases, Cash Advances and previous billing cycle Purchases will be a fixed rate of 0.0356%, corresponding to an ANNUAL PERCENTAGE RATE of 12.99%.

| | |
|---|---|
| Cash Advance FINANCE CHARGE | 2% of Cash Advance (with a minimum of $10.00) |
| Transaction FINANCE CHARGE | 2% of applicable transaction (with a minimum of $10.00) |
| Minimum FINANCE CHARGE (If any Finance Charge is payable for a monthly billing cycle) | $.50 |
| Annual Membership Fee | None |
| Other Interest Charges: | |
| Late Fee | $20.00 |
| Return Check Fee | $20.00 |
| Overlimit Fee | $20.00 |
| Administrative Fees: | |
| Duplicate of Merchant Sale Slip | $5.00 |
| Duplicate Copy of Monthly Billing Statement | $5.00 |
| Additional Credit Card (in excess of 2) | $5.00 |

### Your Billing Rights

**Keep This Notice For Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at First USA Bank, P.O. Box 8650, Wilmington, Delaware 19899-8650. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but **doing so will not preserve your rights.**

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights And Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule For Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address, and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

FIRST USA.

6/97

M-16014
59R6OO-QCC

# Cardmembe Agreement

# nember Agreement

ement that establishes the terms of your Cardmember Account ("Account") with (including accounts opened with us through other banks that participate in First sterCard/Visa program and whose name may be on the face of your Card). Please and keep it for your records You do not need to sign this Agreement, but please the back of your Card if you have not already done so. All extensions of credit in your Account are being made by First USA Bank in Wilmington, Delaware. Any rd or Account confirms your acceptance of the terms and conditions of this

this Agreement, the words "you" and "your" refer to each person (jointly and e than one) who has applied for the Account and any other person who has sponsible for the Account. The words "we", "us" and "our" refer to First USA re banking corporation. "Card" refers to each MasterCard and/or Visa Card your Account. The Card must be returned or surrendered to us or our agent

**count:** You may use your Card or Account to purchase or lease goods or amounts you owe, wherever the Card is honored ("Purchases"). You may also to obtain cash loans ("Cash Advances") from any financial institution that d. You agree to accept credits to your Account instead of cash refunds when chase was charged to your Account.

Convenience Checks" to you which may be used to access your credit line. Use ce Check will be treated as a "Purchase" in the amount of your check. Each Check will contain your Account number and may be used only by the e name(s) is/are printed on it. Each must be completed and signed by you (or in the same manner as a regular personal check. If we provide Convenience r Account, you may not use them to pay any amount you owe under your Agreement or under any other credit agreement or account you may have

**Your Account:** You authorize us to pay and charge your Account for all Cash Advances made or obtained by you or anyone you authorize to use your nt. You promise to pay us for all of these Purchases and Cash Advances, plus arges assessed on your Account and any other charges and fees which you may he terms of this Agreement. You will be obligated to pay authorized charges to whether resulting from (1) actual use of your Card or Convenience Checks, or telephone, computer or other electronic Purchases made without present- (3) any other circumstance where you authorize a charge, or authorize some- e a charge, to your Account. Each person who is included within the definition u", above, is responsible to pay the full amount owed on the Account. We may pay the full amount owed without first asking the other person(s) to pay. All be made in U.S. dollars. Any payment made by check or other negotiable t be drawn on a U.S. bank or a U.S. branch of a foreign bank. Subject to any visions of applicable law, all payments made by you will be applied to the r Account in the manner we determine.

**thorized Usage:** Your credit line is shown on the folder containing your Card. hange your credit line from time to time, your latest credit line will appear on tatement. You agree not to make a Purchase or obtain a Cash Advance that e unpaid balance of your Account to exceed your credit line. We may honor Cash Advances in excess of your credit line at our sole discretion. If we do, this applies to that excess and you agree to pay the excess immediately if we do so. You agree that we may change or cancel your credit line at any time g your obligation to pay amounts that you owe under this Agreement. We may only a portion of your credit line is available for Cash Advances. If we do and at limit, you will be considered to have exceeded your credit line for all Cardmember Agreement. For security reasons, we may limit the number or of Purchase, Cash Advance and/or Convenience Check transactions that may d with your Card or Account, and we have the right to limit authorizations to s or obtain Cash Advances if we consider it necessary to verify payments r Account.

**tents:** We will send a statement at the end of each monthly billing cycle in ount has a debit or credit balance of more than $1.00 or if a Finance Charge ed. Among other things, your monthly statement will show your New Balance, arge, your credit line and available credit, your Minimum Monthly Payment t Due Date.

**hly Payment:** If the New Balance shown on your monthly statement is less than Minimum Monthly Payment (due by the Payment Due Date) is your New wise, the Minimum Monthly Payment for each billing cycle will be the greater e total of (1) 2% of the New Balance, plus (2) any amount past due, plus t, any amount over your credit line at the time of billing. You may pay more um Monthly Payment and may at any time pay the full amount you owe us.

**s:** We figure a portion of the Finance Charge on your Account, the Periodic HARGE, by applying the applicable Daily Periodic Rate for Purchases or stated in (or determined in accordance with) the Table of Interest Charges set he daily balances of Purchases and Cash Advances in your Account (including ions) for each day of the current billing cycle. We also apply the Daily Periodic ves to the daily balance of Purchases itemized on your previous statement for previous cycle. We then add up the results of these daily calculations to arrive iodic FINANCE CHARGE. Purchases and Cash Advances are included in ce as of the later of the transaction date or the beginning of the billing cycle in posted to your Account, except that Convenience Checks are always included your Account. However, we have a grace period for Purchases. This means

MCM-0156

that you will not pay a periodic Finance Charge for the current billing cycle on current or previous billing cycle Purchases if you paid in full the New Balance, if any, shown on your previous statement by the Payment Due Date shown on that statement (or if your New Balance was zero or a credit amount).

The daily balances for *current cycle* Purchases and Cash Advances and *previous cycle* Purchases are determined as follows (except that Purchase balances will be subject to the grace period described above):

1. **Current Cycle Purchases and Cash Advances.** To get the separate daily balances of Purchases and Cash Advances for the current billing cycle, we take the separate beginning balance of Purchases and Cash Advances in your Account each day, and separately add any new Purchases (including fees that are treated as Purchases) or new Cash Advances (including any cash advance Finance Charges) and any periodic Finance Charges calculated on the previous day's balance of Purchases or Cash Advances. We then subtract any payments or credits posted as of that day that are allocable to your Purchase balance or Cash Advance balance. This gives us the separate daily balances for Purchases and Cash Advances.

2. **Previous Cycle Purchases.** To get the daily balances of previous billing cycle Purchases, we take the beginning balance of Purchases in your Account each day of the previous billing cycle and add any new previous billing cycle Purchases (including fees that were treated as Purchases) and the amount of any periodic Finance Charge calculated on the previous day's balance of Purchases. We then subtract any payments or credits posted as of that day that were allocable to previous billing cycle Purchases. This gives us the daily balances of Purchases for the previous cycle. However, the daily balance for previous billing cycle Purchases is considered to be zero for each day of the previous billing cycle if a periodic Finance Charge was already imposed on Purchases itemized on your previous statement.

If we have "special" periodic rate offers in effect from time to time, we will separately identify them on your monthly statement and separately disclose on your monthly statement the balances to which the special offers apply. These separate balances and the related periodic Finance Charges will be calculated in the same manner as described above for current or previous cycle transactions, as applicable.

We figure another portion of the Finance Charge on your Account by adding a one-time Cash Advance FINANCE CHARGE for each Cash Advance when it is obtained. The amount of the Cash Advance FINANCE CHARGE is stated in the Table of Interest Charges.

If you use your Card or Account to purchase money orders, wire transfers or if you use a Convenience Check, we will charge you a one-time Transaction FINANCE CHARGE for each such Purchase or check usage in the amount stated in the Table of Interest Charges.

The total Finance Charge on your Account for a monthly billing cycle will be the sum of the Periodic FINANCE CHARGES on Purchases, Cash Advances and previous cycle Purchases plus any Cash Advance FINANCE CHARGES and any Transaction FINANCE CHARGES, except that a Minimum FINANCE CHARGE in the amount stated in the Table of Interest Charges will be payable if any Finance Charge is due for a monthly billing cycle.

This Agreement provides for the compounding of Finance Charges (interest).

**Other Interest Charges:** In addition to the Finance Charges discussed above, the following interest charges will be applicable to your Account:

**Annual Membership Fee** — You agree to pay us when billed each year (subject to applicable federal law) a non-refundable Annual Membership Fee in the amount set forth in the Table of Interest Charges for the privileges you have under this Agreement, whether or not you exercise those privileges. Your payment of this fee will not affect any of our rights under this Agreement, including our right to terminate your Account.

**Late Fee** — If we do not receive a payment from you in at least the amount of your Minimum Monthly Payment by the Payment Due Date shown on your monthly statement, we may charge you a late payment fee in the amount set forth in the Table of Interest Charges. You will only be charged one late payment fee for any Minimum Monthly Payment which is not paid by the Payment Due Date.

**Return Check Fee** — If your bank does not honor the check you gave us to pay amounts you owe under this Agreement, or we must return a check because it is not signed or is otherwise irregular, we may charge you a return check fee in the amount set forth in the Table of Interest Charges.

**Overlimit Fee** — We have the right to charge an Overlimit Fee in the amount set forth in the Table of Interest Charges: (1) if your Account balance exceeds your applicable credit line at any time during a monthly cycle; or (2) if you make a Purchase or obtain a Cash Advance at a time when your Account balance is over your credit line.

**Administrative Fees** — If you request photocopies of sales slips or duplicate copies of monthly statements, or if you request more than two Cards or any special services such as obtaining Cards on an expedited basis, you agree to pay our reasonable charges for such services, as from time to time in effect. The present charges for such services are specified on the Table of Interest Charges. However if you request items such as sales slips or duplicate statements in connection with any disputed billing matter (see "Your Billing Rights" on the back panel), we will not impose a fee if a billing error is disclosed.

Unless otherwise arranged between us, the annual membership fee and any late, return check, overlimit or administrative fee will be added to your Account and treated as a Purchase.

**Default/Collection Costs:** Your Account will be in default and we may demand immediate payment of the entire amount you owe us without giving you prior notice if: (1) in any month we do not receive your Minimum Monthly Payment by the Payment Due Date; (2) you make Purchases or obtain Cash Advances in excess of your credit line; (3) you fail to comply with this Agreement; (4) there is a filing for your bankruptcy; (5) you die or become incapacitated; or (6) we believe in good faith that the payment or performance of your obligations under this Agreement is impaired for any other reason. As permitted by applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court costs and the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after your default to an attorney who is not our regularly salaried employee, you agree to pay the reasonable fees of such attorney. We will not be obligated to honor any attempted use of your Account if a default has occurred or we have determined to terminate your Account or limit your Account privileges (as discussed below).

**Termination:** We may terminate your privileges under this Agreement or limit your right to make Purchases or obtain Cash Advances at any time (and list your Account in warning bulletins) without notice or liability. If we ask, you must return your Cards and any unused Convenience Checks to us, cut in half. You agree that you will not try to make a Purchase or obtain a Cash Advance after you have been notified that your privilege to use your Account has been terminated. You may terminate this Agreement at any time. If you do, you must return to us all Cards and Convenience Checks previously issued on the Account. If you call us, we may require that you confirm your intent to terminate in writing. Your or our termination will not affect your existing obligations under this Agreement or your liability for all charges posted to your Account prior to the time all Cards and unused Convenience Checks issued on your Account are returned to us.

**Notices:** We will send statements and any other notices to you at the address shown in our files. If this is a joint account, we can send statements and notices to either of you. You promise to inform us promptly in writing of any change in your address. We may in our discretion accept address corrections from the United States Postal Service.

**Foreign Currency Transactions:** Transactions in foreign currencies will be converted to U.S. Dollars and posted to your Account at the exchange rate determined by MasterCard or VISA (or their affiliates), using their then current currency conversion procedures and charges. Currently, the currency conversion rate is generally either a wholesale market rate or a government-mandated rate in effect on the date of conversion, increased by the applicable conversion charge determined by MasterCard or VISA. The currency conversion rate used on the conversion date may differ from the rate in effect on the date you used your Card or Account.

**Skip/Promotional Features:** From time to time, we may let you skip or reduce one or more monthly payments during a year and/or we may temporarily reduce or eliminate certain Finance Charges on all or a portion of your Account balance or offer you other special terms. If we do, we will advise you of the scope and duration of the applicable skip or promotional feature. When the skip or promotional feature ends, your regular rates and terms will resume.

**Amendments:** We can amend the terms of this Agreement at any time. We will notify you of what these amendments are. Subject to the requirements of applicable law, any amendment to this Agreement will become effective at the time stated in our notice to you and, unless we specify otherwise, the amended terms of this Agreement will apply to all outstanding unpaid indebtedness in your Account as well as new transactions.

**Credit Information:** You agree that we may request consumer credit reports from one or more credit reporting agencies in connection with your application and the administration of your Account. You also authorize us to exchange credit information concerning you or your Account with (and answer questions and requests from) others, such as merchants and credit reporting agencies.

**Phone Calls:** In the regular course of our business we may monitor and record phone conversations made or received by our employees. You agree that we will have such right with respect to all phone conversations between you and our employees, whether initiated by you or any of our employees.

**Refusal To Honor Card:** We are not responsible for refusals to honor your Card or Convenience Checks. And, except as otherwise required by applicable law or regulation, we will not be responsible for merchandise or services purchased or leased through use of your Account.

**Irregular Payments And Delay In Enforcement:** We can accept late payments, partial payments, checks and money orders marked "Paid in Full" or language having the same effect without losing any of our rights under this Agreement. We can also delay enforcing our rights under this Agreement any number of times without losing them. The fact that we may at any time honor a Purchase or Cash Advance in excess of your maximum credit line does not obligate us to do so again.

**Liability For Unauthorized Use Of Your Account:** If your Card or Convenience Checks are lost or stolen or if you are afraid someone may use your Account without your permission, you must notify us at once. You may be liable for that unauthorized use of your Account. You will not be liable for unauthorized use that occurs after you notify First USA Bank, by writing to us at P.O. Box 8650, Wilmington, DE 19899-8650, or verbally by calling us at (302) 594-8200 or 1-800-955-9900, of the loss or theft of your Card or Convenience Checks or the possible unauthorized use of your Account. In any case, your maximum liability is $50.00. We may terminate or limit access to your Account if you have notified us or we have determined that your Card or Convenience Checks may have been lost or stolen, or that there may be unauthorized access to your Account.

**Assignment:** We may at any time assign your Account, any sums due on your Account, this Agreement or our rights or obligations under this Agreement. The person(s) to whom we make any such assignment shall be entitled to all of our rights under this Agreement, to the extent assigned.

GOVERNING LAW: THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAW OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW.

**Inquiries Or Questions:** You may address any inquiries or questions which you have about your Account to: First USA Bank, P.O. Box 8650, Wilmington, Delaware 19899-8650, or you may call us at 1-800-955-9900. If you telephone us instead of writing, you may lose certain rights the law gives you to dispute billing errors (see "Your Billing Rights" on the back panel).

MCM-0158

ADV2333L.ps 3/8/05 1:48 PM Page 1

reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators as follows:

**American Arbitration Association**, 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879; or

**National Arbitration Forum**, P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371

**Procedures and law applicable in arbitration.** A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing

fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**Enforcement, finality, appeals.** Failure or any delay in enforcing this Arbitration Agreement at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

4. **DEFAULT/COLLECTION:** The following is added to the next to last paragraph of the section entitled "**Default/Collection**":

   We also may require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your Account to be six or more billing cycles past due.

5. **USING YOUR ACCOUNT:** The following is added at the end of the section entitled "**Using Your Account**":

   You promise to use your Account only for valid and lawful transactions. For example, internet gambling may be illegal in some places. It is not our responsibility to make sure that you use your Account only for permissible transactions, and you will remain responsible for paying for a transaction even if it is not permissible.

6. **CREDIT LINE/AUTHORIZED USAGE:** The following is added at the end of the section entitled "**Credit Line/Authorized Usage**":

   Your total available credit may not be restored for up to 15 days after we receive your payment.

7. **LATE FEE:** The late fee amount is not changing. However, to clarify how your late fee is determined, the following replaces the section entitled "**Late Fee**":

   **Late Fee:** If we do not receive at least the required minimum payment by the date and time it is due as shown on your billing statement for any billing cycle ("Late Payment"), we may charge the late fee shown in the Table of Interest Charges. If the late fee is based on the New Balance, we calculate the late fee using the New Balance shown on the prior month's statement for which we did not receive at least the required minimum payment by the date and time it was due. This balance is the same as the Previous Balance on the current month's statement that shows the late fee.

If you have questions about these changes, you can call us at the number on the back of your card.

*This notice informs you of changes to your Cardmember Agreement. Please keep it with your original Cardmember Agreement.*

INS10573
ADV2333 04/05

## IMPORTANT NOTICE FOR CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR CARDMEMBER AGREEMENT— PLEASE READ AND RETAIN FOR YOUR RECORDS

Dear Cardmember:

As your credit card company, we value your business. It is important to us that we provide you with timely information regarding your credit card account.

Periodically, we may change various terms and conditions associated with your account. We share this information with you in the form of a Change in Terms disclosure. **The Change in Terms disclosure below advises of upcoming changes that will be effective the first day of your billing cycle that includes June 1, 2005, except for the Minimum Payment section which will be effective as early as the first day of your billing cycle that includes August 1, 2005.** We hope that you take the time to review this information carefully. Please keep this notice with your Cardmember Agreement for future reference.

Thank you for the opportunity to serve your credit needs. We look forward to serving those needs in the future.

**SUMMARY OF CHANGES:**
**The changes to your Cardmember Agreement will take effect on the first day of your billing cycle that includes June 1, 2005, except for the Minimum Payment section which will take effect as early as the first day of your billing cycle that includes August 1, 2005.** We have summarized below some of these changes. For complete details about all changes, please read the entire Amendment. The terms described in this Notice that are already in effect on your account will continue to apply.

**International Transactions**
The foreign currency transaction terms will be expanded to cover other international transactions, and the amount that we may add to those transactions will be changed to 3%.

**Minimum Payment**
The minimum payment calculation will be revised to permit the addition of certain fees and finance charges as part of the minimum payment.

**Arbitration**
The arbitration agreement section provides that arbitration is at the choice of either party, provides for the advancement by us of certain costs to file an arbitration, permits a right of appeal to either party and contains other differences from your existing arbitration terms. Please review the entire arbitration agreement section to fully understand the differences.

*Continues on other side*

ADV2333
Portfolio
0405_Portfolio
Cell #: ?
?
Creative Pkg:Apr05BankOneRep
Mail Date:?

Last Edit Time: 3/8/05, 1:48:17 PM
Current Time: 3/8/05; 1:48:20 PM
User name: sysman6*

Page width: 13.625 in
Page height: 6.875 in
Fonts:ZurichBT-RomanCondensed
ZurichBT-ItalicCondensed
ZurichBT-BoldCondensed

Colors on this page/spread:
Black

Important: Colors will not be listed accurately if images are missing.

Images:

MCM-0159

ADV2333L.ps 3/8/05 1:48 PM Page 2

*Continued from other side*

**Default/Collection**
A term will be added for a 2% a month interest rate for seriously delinquent accounts.

**OTHER CHANGES**

Terms will be added to the **Using Your Account, Credit Line/Authorized Usage,** and **Late Fee** sections.

**EFFECTIVE DATE/NON-ACCEPTANCE INSTRUCTIONS FOR THE ABOVE CHANGE(S):**

**The changes summarized above will be effective the first day of your billing cycle that includes June 1, 2005, except for the Minimum Payment section which will be effective as early as the first day of your billing cycle that includes August 1, 2005.** The new terms will apply to current and future balances on your Account. You have the right to reject the new **International Transactions, Arbitration** and **Default/Collection** terms stated in this Notice. **If you wish to reject these terms, you must notify us in writing by May 24, 2005, that you wish to reject them. If you reject these terms, your Account will be closed to further use (if it is not already closed).** Please include your name, address and account number on the correspondence and mail it to: Cardmember Service, P.O. Box 15098, Wilmington, DE 19850-5098. If you give us notice that you wish to reject these terms, you will be entitled to pay off any existing outstanding balance on your Account under your current terms as modified by this Amendment. Even if you send us the notice, if you use your Card or Account on or after June 1, 2005, you will be deemed to have accepted the new terms and those terms will be applied to you as if you had not sent us any notice. (If you send us the notice, please make alternate arrangements to pay any charges you have previously authorized to be made to this Account, such as recurring charges.)

**AMENDMENTS TO THE CARDMEMBER AGREEMENT:**
In order to implement the above-described change in terms, the following change(s), as applicable, will be made to your Cardmember Agreement:

1. **TRANSACTIONS IN FOREIGN CURRENCIES:** The following replaces the section entitled "**Transactions in Foreign Currencies**":

   **International Transactions:** International transactions include any transaction that you make in a foreign currency or that you make outside of the United States of America even if it is made in U.S. dollars. If you make a transaction in a foreign currency, Visa International or MasterCard International, Inc. will convert the transaction into U.S. dollars by using its respective currency conversion procedures. The exchange rate each entity uses to convert currency is a rate that it selects either from the range of rates available in the wholesale currency markets for the applicable processing date (which rate may vary from the rate the respective entity itself receives), or the government-mandated rate in effect on the applicable processing date. The rate in effect on the applicable processing date may differ from the rate on the date you used your card or account. We reserve the right to charge you an additional three percent (3%) of the U.S. dollar amount of any international transaction, whether that transaction was originally made in U.S. dollars or was made in another currency and converted to U.S. dollars by Visa or MasterCard. In either case, the 3% will be calculated on the U.S. dollar amount provided to us by that entity. The same process and charges may apply if any international transaction is reversed.

2. **MINIMUM PAYMENT:** The following replaces the section entitled "**Minimum Payment**":

   **Minimum Payment:** You agree to pay at least the minimum payment due, as shown on your billing statement, so that we receive it by the date and time payment is due. You may pay more than the minimum payment due and may pay the full amount you owe us at any time. If you have a balance that is subject to finance charges, the sooner you pay us, the less you will pay in finance charges because finance charges accrue on your balance each day.

   Your billing statement shows your beginning balance and your ending balance (the "New Balance" on your billing statement). If the New Balance is $10.00 or less, your minimum payment due will be the New Balance. Otherwise, it will be the largest of the following: $10.00; 2% of the New Balance; or the sum of 1% of the New Balance, total billed periodic rate finance charges, and any billed late and overlimit fees. As part of the minimum payment due, we also add any amount past due and any amount over your credit line.

3. **ARBITRATION:** The following replaces the section entitled "**ARBITRATION**":

   **ARBITRATION AGREEMENT:** PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

   **Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

   **Parties Covered.** For the purposes of this Arbitration Agreement, "we", "us", and "our" also includes our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we", "us" and "our" shall include any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

   **Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal

theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us.

**Initiation of Arbitration.** The party filing a Claim in arbitration must choose one of the following two arbitration administrators: American Arbitration Association or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you

ADV2333
Portfolio
0405_Portfolio
Cell #: ?
?
Creative Pkg:Apr05BankOneRep
Mail Date:?

Last Edit Time: 3/8/05;1:48:17 PM
Current Time: 3/8/05; 1:48:21 PM
User name: sysman6*

Page width: 13.625 in
Page height: 6.875 in
Fonts:ZurichBT-RomanCondensed
ZurichBT-ItalicCondensed
ZurichBT-BoldCondensed
Times-Roman

Colors on this page/spread:
Black

Important: Colors will not be listed accurately if images are missing.

Images: