**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

DAVID AGOADO, LEEANN MCNALLY,
CRAIG MOORE, CHRIS PIERRE,
THOMAS SHARKEY AND DOREEN
VAZQUEZ, individually and on behalf of all
others similarly situated,

                      Plaintiffs,

    - against -

MIDLAND FUNDING, LLC, MIDLAND
FUNDING, LLC DBA IN NEW YORK AS
MIDLAND FUNDING OF DELAWARE,
LLC, MIDLAND CREDIT MANAGEMENT,
INC., RUBIN & ROTHMAN, LLC,
FORSTER & GARBUS LLP, COHEN &
SLAMOWITZ, LLP and PRESSLER AND
PRESSLER LLP

                   Defendants.

**Civil Action No. 2:14-cv-00018 (WFK)(ST)**

---

# MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS'
# MOTION FOR SUMMARY JUDGMENT

## GORDON REES SCULLY MANSUKHANI, LLP

By: Matthew B. Johnson
One Battery Park Plaza, 28th Fl.
New York, NY 10004
Ph: 212.402.2298
mbjohnson@grsm.com

Andrew M. Schwartz, *Pro Hac Vice*
Three Logan Square
1717 Arch St., Suite 610
Philadelphia, PA 19103
Ph: 215.717.4023
*amschwartz@grsm.com*

*Attorneys for Defendants Midland Funding, LLC,*
*Midland Funding, LLC DBA in New York as*
*Midland Funding of Delaware, LLC and Midland*
*Credit Management, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................. 5

III.    APPLICABLE STANDARDS ............................................................................ 9

     A.      Summary Judgment ................................................................................ 9

     B.      Least Sophisticated Consumer Standard............................................. 10

     C.      Reasonable Consumer Standard .......................................................... 10

IV.     ARGUMENT .................................................................................................... 11

     A.      Midland Has Established that it Possessed Evidence Sufficient to      Bring Suit and Obtain Judgment against Each Defendant ...................................... 11

          1.      Midland Possessed More than Sufficient Evidence To Establish Ownership of Plaintiffs' Debts. ............................................... 11

          2.      Plaintiffs Offer No Evidence of "Fraud" ................................... 14

          3.      Filing a Collection Action Without the Immediate Means to Prove Ownership of the Debt is Not Actionable under the FDCPA .................. 16

          4.      Plaintiffs Suffered No Harm When Midland Obtained Judgment on Accounts it Owned that were Valid, Due and Owing.............................. 18

     B.      Midland's Affidavits are Neither False nor Misleading ....................... 18

          1.      Midland Sent Plaintiffs an Initial Communication Including the Proper § 1692g(a) Language via Letter Prior to Filing Suit.................................... 19

          2.      A Formal Pleading is Not an "Initial Communication" Giving Rise to the Obligation to Provide the § 1692g(a) Notice ........................... 20

          3.      The Affidavits are not Materially Misleading ........................... 22

          4.      No Cause of Action Arises under the FDCPA for Communications Not Directed to the Consumer ...................................................... 23

V.      CONCLUSION.................................................................................................. 26

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)........................................................ 10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).................................................. 9, 10

*Carlin v. Davidson Fink LLP*,
   852 F.3d 207 (2d Cir. 2017) ............................................................................................ 21, 23

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).................................................. 9, 10

*Clomon v. Jackson*,
   988 F.2d 1314 (2d Cir. 1993) ............................................................................................... 10

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
   897 F.3d 75 (2d Cir. 2018) .................................................................................................... 24

*Delisi v. Midland Funding, LLC*,
   No. 4:14-CV2125 RWS, 2015 WL 4393901 (E.D. Mo. July 16, 2015) ........................... 17, 18

*Diaz v. Residential Credit Solutions, Inc.*,
   965 F. Supp. 2d 249 (E.D.N.Y. 2013) .................................................................................. 22

*Eades v. Kennedy, PC Law Offices*,
   799 F.3d 161 (2d Cir. 2015) .................................................................................................. 14

*Fritz v. Resurgent Capital Servs., LP*,
   955 F. Supp. 2d 163 (E.D.N.Y. 2013) .................................................................................. 11

*Gabriele v. Am. Home Mortg. Servicing, Inc.*,
   503 F. App'x 89 (2d Cir. 2012) ............................................................................................. 22

*Harvey v. Great Seneca Fin. Corp.*,
   453 F.3d 324 (6th Cir. 2006) ................................................................................................ 16

*Hasbrouck v. Arrow Fin. Servs. LLC*,
   No. 1:09-cv-748, 2011 WL 1899250 (N.D.N.Y. May 19, 2011) ........................................... 16

*Heintz v. Jenkins*,
   514 U.S. 291 (1995)........................................................................................................ 15, 21

*Hill v. Accounts Receivable Servs., LLC*,
   888 F.3d 343 (8th Cir. 2018),
   *cert. denied*, 139 S. Ct. 803 (2019) ...................................................................... 16

*Jensen v. Pressler & Pressler*,
   791 F.3d 413 (3d Cir. 2015) ................................................................................ 22

*Jernigan v. Gen. Collection Co.*,
   No. 8:13CV178, 2013 U.S. Dist. LEXIS 178397 (D. Neb. Nov. 15, 2013) ...................... 23, 24

*Kelsey v. Forster & Garbus, LLP*,
   353 F. Supp. 223 (W.D.N.Y. 2019) ...................................................................... 22

*Klein v. Solomon & Solomon, P.C.*,
   No. 3:10CV1800 (WWE),
   2011 WL 5354250 (D. Conn. Oct. 28, 2011) ......................................................... 23

*Krawczyk v. Centurion Capital Corp.*,
   No. 06-c-6273, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009) ..................................... 16

*Lena v. Cach, LLC*,
   No. 14 C 01805, 2015 WL 4692443 (N.D. Ill. Aug. 6, 2015) .................................. 17

*Mahon v. Credit Bureau of Placer County, Inc.*,
   171 F.3d 1197 (9th Cir. 1999) ............................................................................. 19

*Mason v. Midland Funding LLC*,
   No. 1:16-cv-2867 (CC)(RGV), 2017 WL 6994577 (N.D. Ga. July 27, 2017),
   *report and recommendation adopted as modified*,
   2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) ................................................... 3, 18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ....................................... 10

*McKee v. Ingram Law Office, LLC*,
   No. 15-1201, 2016 WL 6157807 (N.D. Ala. Oct. 24, 2016) .................................... 21

*McStay v. I.C. Sys.*,
   308 F.3d 188 (2d Cir. 2002) ............................................................................... 10

*Mohnkern v. Equifax Info. Servs., LLC*,
   No. 19-cv-6446L, 2021 WL 5239902 (W.D.N.Y. Nov. 10, 2021) ........................... 10

*Mora v. LVNV Funding LLC*,
   408 F. Supp. 3d 297 (W.D.N.Y. 2019) .................................................................. 2

*Motherway v. Gordon*,
   No. 09-cv-05605, 2010 WL 2803052 (W.D. Wash. July 15, 2010) ......................... 21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   623 N.Y.S.2d 529 (1995) .................................................................................... 11

*Parker v. Mandarich Law Group, LLP*,
   No. 19-cv-6313, 2021 WL 2351177 (E.D.N.Y. June 9, 2021) ................................... 11

*Rumfelt v. Midland Funding, LLC*,
   No. 18-cv-6420 (FPG), 2019 WL 1902784 (W.D.N.Y. April 29, 2019) ............... 2, 16, 17

*Schneider v. Cont'l Serv. Group, Inc.*,
   No. 13-cv-5034 (JG)(MDG),
   2013 WL 6579609 (E.D.N.Y. Dec. 16, 2013) ....................................................... 19

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ............................................................................... 10

*Spurgeon v. Frederick J. Hanna & Assocs., P.C.*,
   No. 4:14-CV-3098, 2015 WL 1246157 (D. Neb. Mar. 17, 2015) ........................... 24

*State of N.Y. v. 158th St. & Riverside Dr. Hous. Co., Inc.*,
   2012 NY Slip Op 8194, ¶ 3, 100 A.D.3d 1293,
   956 N.Y.S.2d 196 (3rd Dept. 2012),
   *leave denied* 984 N.E.2d 325 (2013) ................................................................. 13

*Stephens v. Manley Deas Kochalski, LLC*,
   No. 16-3845, 2016 WL 6804441 (E.D. Pa. Nov. 16, 2016) .................................... 21

*Valle v. Westhill Exch., LLC*,
   Case No. GFH-19-2304, 2021 WL 1117282 (D. Md. Mar. 24, 2021) ............... 13, 14

*Vassalle v. Midland Funding LLC*,
   No. 3:11-cv-96, 2012 WL 13027055 (N.D. Ohio Nov. 16, 2012) ..................... 3, 4, 5

**Statutes**

15 U.S.C. § 1602g(a) ............................................................................................ 20

15 U.S.C. § 1692e ........................................................................................... 23, 24

15 U.S.C. § 1692e(11) ....................................................................................... 20, 21

15 U.S.C. § 1692g ................................................................... 20, 21, 22, 23, 24, 25

15 U.S.C. § 1692g(a) ......................................................................................... 19, 20

15 U.S.C. § 1692g(a)(3) ..................................................................................... 20, 23

15 U.S.C. § 1692g(d) .............................................................................................. 20

**Rules**

Fed. R. Civ. P. § 56(c) ................................................................................................ 9

Fed. R. Civ. P. § 56(e) ................................................................................................ 10

Fed. R. Civ. P. § 7 ...................................................................................................... 21

Fed. R. Evid. 803(6) .................................................................................................... 4

The Midland Defendants respectfully submit the following Response in Opposition to Plaintiffs' Motion for Summary Judgment.[1]

## I.        INTRODUCTION

Plaintiffs' motion for summary judgment—in keeping with the theme Plaintiffs have adhered to since the filing of their first complaint 8 years ago—attempts, but fails, to make a mountain out of a molehill. That is, Plaintiffs attempt to characterize a lawful, compliant, and highly regulated business as a fly-by-night operation that flouts applicable laws and rules. There is just one problem with Plaintiffs' fanciful theory: it is entirely refuted by the record in this case.

The facts are relatively basic. Midland Funding purchases charged-off credit card accounts, attempts to work with consumers to get the accounts repaid and, when warranted, files collection lawsuits and obtains judgments on the accounts. At the time it purchases the accounts, MF receives multiple representations as to the accuracy of the information it receives from the seller and also either receives, or has the right to request, relevant documentation associated with the account. These representations and rights are described in long and detailed asset purchase agreements negotiated and executed at arms' length between sophisticated entities (i.e., MF and the sellers). These types of agreements, including the representations and warranties, are commonplace in the debt-buying industry, and have been for years and years.

At all times relevant to this action, Midland possessed information and documentation sufficient not only to justify seeking repayment from the Plaintiffs, but to support collection lawsuits against Plaintiffs should they need to be filed. Indeed, the record is chock full of evidence showing that the Plaintiffs incurred the debts, the accuracy as to the amounts of the

---

[1] The term "Midland Defendants" includes Midland Funding, LLC ("MF"), Midland Funding, LLC DBA in New York as Midland Funding of Delaware, LLC (also "MF") and Midland Credit Management, Inc. ("MCM").

debts, the chain of title of the debts, and other relevant information. Nevertheless, Plaintiffs'

primary contention in this lawsuit is that Midland did not have sufficient competent evidence to

prove their cases, and that Midland should be held liable under the FDCPA. In so doing,

Plaintiffs' motion repeatedly employs empty buzzwords such as "misrepresentation," "fraud"

and "deceit" in an attempt to paint Midland's lawful conduct as actionable. That rhetoric,

however, cannot substitute for actual evidence, and Plaintiffs have failed to establish the facts

necessary to prove that Midland filed collection actions without sufficient information and

documentation. Specifically, to prove such a claim, a plaintiff must show that the debt collector

"filed its collection case without 'a good faith belief in its validity.'" *Mora v. LVNV Funding*

*LLC*, 408 F. Supp. 3d 297, 301 (W.D.N.Y. 2019) (quoting *Rumfelt v. Midland Funding, LLC*,

No. 18-cv-6420 (FPG), 2019 WL 1902784, at *2 (W.D.N.Y. April 29, 2019) (holding that the

plaintiff, alleging that Midland sued him without the immediate means of proving ownership of

his debt, failed to state a claim)). Plaintiffs point to no evidence of bad faith, and the mountains

of evidence Midland had in its possession concerning each of the Plaintiffs' accounts before

filing suit clearly draws the contrary conclusion. Indeed, the fact that competent New York state

court judges awarded Midland judgments in six out of six of the Plaintiffs' cases is more than

telling about the flaws in Plaintiffs' theory of liability.

     For example, Plaintiffs appear to contend that Midland lacked sufficient information and

documentation for Plaintiff Vazquez's account to be awarded a judgment. Plaintiffs even go so

far as to baldly conclude that MF engaged in "fraud" when it secured a judgment against Plaintiff

Vazquez. Pls.' Mem. of Law at p. 15 ("Defendants could not have procured default judgment

against Plaintiffs over secondary debt of unknown ownership.").[2] Plaintiffs' contention is completely meritless, as MF had voluminous documents and information supporting its lawsuit, including the purchase agreement between the debt seller and MF, relevant information about Ms. Vazquez's account, including the date it was opened, the date of charge off and the exact balance due, the terms and conditions governing her account and an account statement for the account from Chase. Midland's Resp. to Pls.' 56.1 ¶ 29(7). Indeed, a competent New York court agreed that MF had sufficient evidence and entered judgment in MF's favor. The *Rooker-Feldman* doctrine prevents Plaintiffs from using this forum to challenge validly secured judgments that were entered by other courts. *Mason v. Midland Funding LLC*, No. 1:16-cv-2867 (CC)(RGV), 2017 WL 6994577 (N.D. Ga. July 27, 2017), *report and recommendation adopted as modified*, 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) (holding that court lacked jurisdiction under *Rooker-Feldman* to address claims nearly identical to those asserted here).

Realizing that proving their "lack of evidence" theory is legally and factually lacking, Plaintiffs attempt to assert, throughout this case, that MF should be held liable because the affidavits it used in support of its collection lawsuits allegedly suffer from material defects. That assertion, however, is demonstrably false, belied by the fact that Midland's affidavit process, as well as its affidavits used against the Plaintiffs, were reviewed and approved by a Special Master in a federal court in Ohio well before this case was filed. *See Vassalle v. Midland Funding LLC*, No. 3:11-cv-96, 2012 WL 13027055, at *3-6 (N.D. Ohio Nov. 16, 2012) (Special Master's findings concluding that Midland's affidavit procedures ensure its affidavits accurately describe the affiant's knowledge and are based on reliable business records properly integrated into

---

[2] References to page numbers of Plaintiffs' memorandum of law refer to the page numbers at the bottom of each page.

Midland's system of record such that the affidavits meet the requirements of Fed. R. Evid. 803(6)). Plaintiffs' counsel is well aware of *Vassalle*, as he has appeared in that case, and that court cautioned him that he was prohibited from asserting affidavit-related claims here that overlapped with that case. Notably, however, Plaintiffs' motion contains no citations to, or recognition of the existence of, *Vassalle*, as doing so would clearly undermine the theory that Midland's affidavits were somehow misleading even after the Special Master's reviewed and approved the affidavits.

In an effort to salvage their summary judgment motion, Plaintiffs further resort to making a series of arguments that are either meritless on their face or rely on misrepresentations of the record. First, Plaintiffs imply that MF purchased many of the accounts at issue from a seller other than the original creditor—i.e., a so-called secondary seller. As an initial matter, however, the record here is clear that MF purchased the accounts of all Plaintiffs herein but for one—Plaintiff Vazquez—directly from the original creditors. Midland Resp. to Pls.' 56.1 ¶ 29.

Second, Plaintiffs falsely represent that at times, when placing accounts for collection with the other defendants herein (the "Attorney Defendants"), Midland informed the Attorney Defendants that no account-level documentation was available.[3] *See, e.g.*, Pls.' Mem. of Law p. 4. In so arguing, however, Plaintiffs either misinterpret, or blatantly lie about, the evidence in the record. In fact, the very evidence that Plaintiffs themselves cite clearly states that while media was not available at the time the account was placed with the law firm, it was readily available upon request. Midland Resp. to Pls.' 56.1 ¶ 38, 45 ("Media is not available via MCM media website <u>at the time of placement</u>. Firms should review media availability via MCM media

---

[3] The "Attorney Defendants" are Cohen & Slamowitz, LLP ("C&S"); Forster & Garbus LLP ("F&G"); Pressler & Pressler LLP ("P&P"); and Rubin & Rothman, LLC ("R&R").

website and <u>request required media via YGC or the Vendor Specialist.</u>") (emphasis added). This Court should not let itself be led to error by accepting Plaintiffs' interpretation of this evidence at face value. The evidence simply does not say what the Plaintiffs contend it says, and therefore, their argument must be rejected.

Third, Plaintiffs misrepresent the terms of the contracts under which MF purchased their debts, claiming that the creditors selling debts to Midland do not provide the true balance due for each account and implying that for certain accounts, the creditor only provided an "approximation" of the amount due. *See, e.g.* Pls.' Mem. of Law p. 3. Not so. Indeed, MF secured, at the time of purchase, electronic documentation containing the exact balance due on each of the Plaintiffs' accounts. Midland Resp. to Pls.' 56.1 ¶¶ 66 - 68. Moreover, MF either received at the time of purchase, or could easily request, additional media and documentation associated with the accounts as needed. Midland Resp. to Pls.' 56.1 ¶ 66. Additionally, all of the agreements pursuant to which Midland purchased the accounts included multiple representations that the records were complete and accurate to the best of the seller's knowledge. *See* Midland Resp. to Pls.' 56.1 ¶ 79; *see also Vassalle*, 2012 WL 13027055, at *3 (concluding that when Midland purchases accounts, "the seller provides representations and warranties, which state … all the account information is 'materially accurate,' including with respect to the amount owed by the borrower … and the balance on the account has not been paid").

For these and other reasons set forth in this second round of Motions for Summary Judgment, the Court should grant Midland's Motion for Summary Judgment and deny Plaintiffs' in its entirety.

## II.    FACTS

Midland respectfully incorporates both its Rule 56.1 Statement of Material Facts ("MLR 56.1"), along with the affidavits and exhibits thereto, from its Motion for Summary Judgment, as

well as its response to Plaintiffs' Rule 56.1 Statement of Material Facts as if set forth in full

herein. Further, Midland notes its objection to Plaintiffs' "Statement of Facts" as it improperly

includes assertions unsupported by evidence and legal argument. *See* Midland's Response to

Pls.' 56.1. Below, Midland addresses several of Plaintiffs' misrepresentations in the "Fact"

section of their memorandum of law.[4]

### *Plaintiff Vazquez*

When MF purchased Plaintiff Vazquez's account from SquareTwo Financial

Corporation, the agreement with SquareTwo included multiple warranties as to the accuracy of

the information provided. Midland Resp. to Pls.' 56.1 ¶¶ 28, 29(7) & 30. Further, the agreement

provided that SquareTwo was providing account information from its own business records as

well as those of SquareTwo's predecessor in interest, and that such records were kept in the

regular course of business, were made or compiled at or near the time by, or from information

transmitted by, a person with knowledge of the data entered into and maintained in SquareTwo's

database. Midland Resp. to Pls.' 56.1 ¶ 29(7). Contrary to Plaintiffs' claims that Midland

informed its law firm R&R that "no account-level documentation was available," Midland stated

that while media was not available at the time the account was placed with R&R, it was readily

available upon request from MCM through the You've Got Claims communications software

("YGC") or through MCM's vendor specialist. Midland Resp. to Pls.' 56.1 ¶¶ 38 & 42 ("Media

is not available via MCM media website <u>at the time of placement</u>. Firms should review media

availability via MCM media website and <u>request required media via YGC or the Vendor</u>

---

[4] As Plaintiffs' Mem. of Law opens with multiple misstatements regarding the accounts of
Plaintiffs Vazquez, Sharkey, McNally and Agoado, Midland addresses the specific claims
regarding these four Plaintiffs below.

<u>Specialist.</u>"). Plaintiffs' claims that no account-level documentation was available is patently false as proven through the record.

### *Plaintiff Sharkey*

When Midland placed Plaintiff Sharkey's account with F&G for collection and possible suit, it did not state that no account-level documentation would be made available, as Plaintiffs falsely represent. Pls.' Mem. of Law p. 4. To the contrary, and as above, Midland informed its counsel that they could review the availability of media on the MCM website and request any required media via YGC or directly from Midland's Vendor Specialist. Midland Resp. to Pls.' 56.1 ¶ 38, 45.

Despite Plaintiff's unsupported assertion that Midland could not provide its counsel with information regarding the amount of Sharkey's debt, Midland produced a document, provided to Midland at the time Sharkey's account was purchased, setting forth the exact balance due at the time MF purchased Sharkey's account as well as his address, last four digits of his social security number and his year of birth. Midland's Resp. to Pls.' 56.1 ¶ 68(f).

Further, Section 8.3 of the purchase agreement under which Plaintiff Sharkey's account was transferred provides, inter alia, that the accounts sold under the agreement "have been originated serviced and maintained in material compliance with all applicable state and federal laws by Seller, its agents and Affiliates." Midland Resp. to Pls.' 56.1 ¶ 53. Regarding the data provided by the seller, it states:

> Data. To the best of Seller's knowledge, the information provided in the Loan Schedule relating to the account number, book value as of the Transfer Date, the primary and Secondary accountholder's names, addresses, and social security numbers, charge-off date, breakdown of principal and interest, and the date of last payment, and the annual percentage rate ***was materially accurate*** as of the Transfer Date.

Midland Resp. to Pls.' 56.1 ¶ 53 (emphasis added).

7

Finally, although Sharkey stated at his deposition that he wasn't sure what the exact amount of his debt was (Midland Resp. to Pls.' 56.1 ¶ 52), he admitted that he knew he owed some balance, never disputed the balance and never requested an itemization of his debt (Midland Resp. to Pls.' 56.1 ¶¶ 51-53).

### *Plaintiff McNally*

When MF purchased McNally's account from her creditor, the creditor provided extensive warranties of accuracy of the data provided. Midland Resp. to Pls.' 56.1 ¶¶ 10 & 65. Thereafter, Midland placed McNally's account with its law firm F&G, informing F&G that account-level documentation could be obtained later via the MCM media website or through a request to an MCM Vendor Specialist. Midland Resp. to Pls.' 56.1 ¶ 46. MCM, in fact, produced an acceptance of credit document in discovery in the form of a live check in the amount of $5,000 from Beneficial signed by Plaintiff McNally. Midland Resp. to Pls.' 56.1 ¶ 10 (citing Murphy-McNally Ex. D).

Plaintiff McNally admitted that she owed the debt. In her deposition, McNally acknowledged she had obtained the loan at issue in the amount of $5,000, that the loan accrued interest, that she failed to pay the loan back, that she was not sure if F&G did anything wrong in connection with collecting her debt and, after it was explained to her, that she understood how the judgment against her came to total $7,216.41. Midland Resp. to Pls.' 56.1 ¶¶ 10, 55-56.

### *Plaintiff Agoado*

Midland purchased two accounts from Agoado's original creditors, HSBC/Household and Chase Bank USA, N.A. Midland Resp. to Pls.' 56.1 ¶ 29(1)-(2). When MCM placed Agoado's HSBC/Household debt with C&S for collection and possible suit, MCM informed

C&S that they may obtain account-level information via the MCM media website or request it from MCM's Vendor Specialist. Midland Resp. to Pls.' 56.1 ¶ 47-48.

Although Plaintiffs declare that MCM informed C&S that no account-level documentation was available as to the Chase account, the cited paragraphs of Plaintiffs' Rule 56.1 Statement do not support the allegation, and in fact no such representation was made. *See* Pls.' 56.1 at ¶¶ 35-40, 47. To the contrary, the documentation cited by Plaintiffs shows that the referenced document stated "Media Available: Y," which means that "Media is available via MCM media website at the time of placement," that the firm would receive notice of what types of media are available, and that the firm should download media as needed from the MCM media website. Midland Resp. to Pls.' 56.1 ¶ 48. Notably, Defendants produced copies of Agoado's Chase account statements in discovery. Midland Resp. to Pls.' 56.1 ¶ 48. Further, the evidence that Plaintiffs cite for the proposition that the judgments obtained against Agoado were based on some kind of fabrication as to the amount due fails to provide any support for the claim. *See* Midland Resp. to Pls.' 56.1 ¶¶ 35-40, 47-48.

## III.      APPLICABLE STANDARDS

### A.      Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the Court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, however, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted). A nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324.

### B.     Least Sophisticated Consumer Standard

When determining whether a communication violates the FDCPA, courts in this circuit employ the "least sophisticated consumer" standard, "which is an objective standard, designed to protect all consumers, the gullible as well as the shrewd." *Mohnkern v. Equifax Info. Servs., LLC*, No. 19-cv-6446L, 2021 WL 5239902, at *7 (W.D.N.Y. Nov. 10, 2021) (citation and internal quotation marks omitted). The Second Circuit, however, has been careful not to conflate lack of sophistication with unreasonableness. *See McStay v. I.C. Sys.*, 308 F.3d 188, 190-191 (2d Cir. 2002) ("in crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness") (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (internal quotation marks omitted)).

### C.     Reasonable Consumer Standard

Claims asserted under § 349 are assessed under different standard than the FDCPA, the

reasonable consumer standard. This is a higher standard than the least sophisticated consumer standard, increasing the burden on Plaintiffs to establish their claim. *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013). The objective standard applied in § 349 is imposed in order to avoid "a tidal wave of litigation." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 623 N.Y.S.2d 529, 533 (1995).

## IV.     ARGUMENT

### A.     Midland Has Established that it Possessed Evidence Sufficient to Bring Suit and Obtain Judgment against Each Defendant

Midland has produced evidence showing that it properly obtained all right, title, and interest to each account at issue and that it possessed sufficient evidence of ownership to bring suits against Plaintiffs in good faith. Plaintiffs, for their part, have not identified any fraudulent statements in Midland's affidavits supporting entry of default judgment. For these reasons, Plaintiffs' claims fail.

#### *1.*     Midland Possessed More than Sufficient Evidence To Establish Ownership of Plaintiffs' Debts.

For each collection action at issue, Midland possessed documentary evidence and information provided by the sellers to conclusively establish that it owned each of Plaintiffs' accounts and was legally entitled to collect it. As noted, Midland purchased all but one of the accounts at issue directly from the original creditors. Midland Resp. to Pls.' 56.1 ¶ 29. Establishing chain of title for accounts purchased directly from the original creditor requires nothing more than producing the bill of sale transferring the debt at issue and the account information obtained at the time of purchase. *See Parker v. Mandarich Law Group, LLP*, No. 19-cv-6313, 2021 WL 2351177, at *13 (E.D.N.Y. June 9, 2021) (finding that debt purchaser established chain of title by producing bill of sale transferring debt and a redacted spreadsheet containing information about the account). Midland has produced each purchase agreement and

bill of sale under which Plaintiffs' accounts were transferred. Midland Resp. to Pls.' 56.1 ¶ 29. The purchase agreements also set forth what account-level documentation MF would receive at purchase and thereafter. Midland Resp. to Pls.' 56.1 ¶ 66. The original creditors provided extensive data—including the exact balance due—and account-level documentation for each account purchased. Midland Resp. to Pls.' 56.1 ¶¶ 67 (addressing data provided concerning each account purchased); 68(a)-(g) (setting forth specific account level documents provided regarding each of Plaintiff' accounts).

Even when Midland did not purchase an account from an original creditor, it still received extensive and reliable information and documentation related to the account. For example, as mentioned above, MF purchased Plaintiff Vazquez's account from SquareTwo Financial Corp. ("SquareTwo"). Midland Resp. to Pls.' 56.1 ¶¶ 29(7), 79. As part of that transaction, SquareTwo represented that it had purchased the account from Chase Manhattan Bank USA, N.A., that it was the sole owner of the account and that the account information provided to MF constituted the seller's own business records "together with the unadulterated electronic records of Seller's predecessor in interest [Chase]." [5] Midland Resp. to Pls.' 56.1 ¶ 70. Further, SquareTwo provided extensive warrantees as to the accuracy of the data provided to MF. Midland Resp. to Pls.' 56.1 ¶¶ 28, 79.

SquareTwo also transferred the account data to MF in computerized form through a spreadsheet containing account level information as well as medial file containing documents associated with each account. Midland Resp. to Pls.' 56.1 ¶ 71. As the information SquareTwo

---

[5] It is a matter of public record that Chase Bank purchased the banking operations of Washington Mutual ("WaMu") after WaMu failed in 2008. Midland Resp. to Pls.' 56.1 ¶ 31. Thus, although Vazquez's account originated with WaMu, Chase became its owner upon purchase of the WaMu banking operations.

provided bore extensive indicia of reliability, Midland was able to incorporate the information

into its system of record and was able to rely on it thereafter. Midland Resp. to Pls.' 56.1 ¶ 72.

SquareTwo or its subsidiary further provided MF with account-level documents, including an

account statement from Vazquez's Chase account and a copy of the terms and conditions

governing her account. Midland Resp. to Pls.' 56.1 ¶ 73.

Midland was entitled to rely upon the records obtained from each of the creditors,

including SquareTwo, as New York law allows for business record adoption. Under this

arrangement, business records are admissible "if the recipient can establish personal knowledge

of the maker's business practices and procedures, or that the records provided by the maker were

incorporated into the recipient's own records or routinely relied upon by the recipient in its

business." *State of N.Y. v. 158th St. & Riverside Dr. Hous. Co., Inc.,* 2012 NY Slip Op 8194, ¶ 3,

100 A.D.3d 1293, 1296, 956 N.Y.S.2d 196, 200 (3rd Dept. 2012), *leave denied* 984 N.E.2d 325

(2013) (emphasis added)). Here, SquareTwo represented that it had incorporated the business

records of the original creditor into its own records, which it subsequently provided to MF upon

purchase of Vazquez's account. Midland Resp. to Pls.' 56.1 ¶¶ 70-72.

Plaintiffs suggest that Midland failed to confirm all ownership details prior to placing

debts for collection and possible suit. In so doing, Plaintiffs quote from an unrelated affidavit

that an unrelated debt purchaser filed in a connection with a lawsuit in Maryland. *See* Pls.' Mem.

of Law p. 13. Without any evidentiary support, the Maryland affidavit baldly proclaimed that

debt sellers sometimes place the same debts with multiple prospective debt purchasers

temporarily, allowing the potential buyer to attempt to collect the debts before deciding whether

to purchase them. *See* Pls.' Mem. of Law p. 13 (citing *Valle v. Westhill Exch., LLC,* Case No.

GFH-19-2304, 2021 WL 1117282, at *6 (D. Md. Mar. 24, 2021)). As an initial matter, there is

13

absolutely no evidence in this litigation—or in *Valle*, for that matter, besides the self-serving affidavit—to support the notion that any debt sellers engage in this practice, much less that Midland engaged in this practice at the time that these Plaintiffs' lawsuits were being prosecuted. Indeed, Midland did not, and it is unaware of any similar practices in the industry. Even if this practice did occur somewhere, it is unclear how Plaintiffs believe it supports their case—i.e., how it supports the theory that Midland did not own the accounts, or possess sufficient information and documentation to prove collection lawsuits against the Plaintiffs.[6] Indeed, one only need to look at the evidence in the record here—Midland has produced purchase agreements for every account at issue, along with extensive specific documents and information related to each of Plaintiffs' accounts—to completely eliminate any possibility that Plaintiffs' accounts were merely placed with Midland "temporarily" or that Midland was not the rightful and sole owner. Midland Resp. to Pls.' 56.1 ¶ 29. Plaintiffs' citation to the unrelated affidavit should be seen for what it is: a Hail Mary designed to distract the Court from the actual evidence in ***this*** case.

### 2.        Plaintiffs Offer No Evidence of "Fraud"

Midland has produced ample evidence of ownership of each debt at issue in this action, yet Plaintiffs contend that Midland brought suit before establishing a sufficient factual basis. This claim fails as a matter of law. Examining a similar claim, the Second Circuit held that "standing alone, the allegation that [an attorney] filed and pursued [a] lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015); *see also*

---

[6] For example, Plaintiffs do not (because they cannot) make any allegation that any other debt collector ever contacted one of the Plaintiffs seeking to collect a debt that Midland owned, or that the original creditors recalled the accounts from Midland and later filed separate and distinct lawsuits.

*Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot be legally taken.'").

A review of the suit that Plaintiffs appear to take issue with the most, the Vazquez action, shows that Midland's suit and its affidavit in support of its motion for default judgment were entirely proper. Plaintiffs note that Vazquez's account originated with WaMu, rather than Chase; although this is true, Chase substituted in as Vazquez's creditor for WaMu when WaMu collapsed in 2008. Midland Resp. to Pls.' 56.1 ¶ 31. Accordingly, Midland produced evidence of Vasquez's Chase account, including an account statement and a copy of the terms and conditions of Vasquez's account provided by SquareTwo. Midland Resp. to Pls.' 56.1 ¶ 73.

Further, a review of Midland's affidavit in support of its motion for judgment against Plaintiff Vazquez reveals no misrepresentations whatsoever. MCM's affiant represents that she has access to the records of MCM, that she makes the statements therein based upon her personal knowledge of those account records, that MF is the current owner of and/or successor to the obligation sued upon and was assigned all rights, title and interest to Vazquez's Chase account. Murphy-Vazquez Ex. F. Further, she states that she is familiar with the way MCM creates business records concerning the account, that the records were kept in the regular course of business and that it was in the regular course of business for a person with knowledge to transmit information to be included in the record. *Id.* Finally, the affiant states that the record or compilation was made at or near the time of the act or event and goes on to provide details about Ms. Vazquez's account. *Id.* Plaintiffs have not established that any of these representations are false or misleading. Nor could they.

Plaintiffs' attempt to attack the facts associated with the Vasquez account is not only meritless, but raises the question: if the arguments related to the Vasquez account are the best they have, how weak are their arguments related to the other Plaintiffs? The answer is that those other claims are likewise devoid of merit and they should all be rejected.

### 3. Filing a Collection Action Without the Immediate Means to Prove Ownership of the Debt is Not Actionable under the FDCPA

Even assuming that Midland lacked the present means to prove its claim on a particular debt at the time of filing suit, which Midland denies, doing so would not constitute a violation of the FDCPA. Courts in this circuit and others routinely hold that "'the filing of a collection lawsuit without the immediate means of proving the debt does not violate the FDCPA.'" *Hasbrouck v. Arrow Fin. Servs. LLC*, No. 1:09-cv-748, 2011 WL 1899250, *5 (N.D.N.Y. May 19, 2011) (quoting *Krawczyk v. Centurion Capital Corp.*, No. 06-c-6273, 2009 WL 395458, at *10 (N.D. Ill. Feb. 18, 2009)). "A debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claims." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006); *see also Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 803 (2019) (debt collector's inadequate documentation of assignment and subsequent loss of collection case did not amount to a misrepresentation under the FDCPA).

A recent case from the Western District of New York is on all fours with the present action. *Rumfelt v. Midland Funding LLC*, No. 18-cv-6420 FPG, 2019 WL 1902784 (W.D.N.Y. April 29, 2019). There, the plaintiff alleged that Midland could not prove with admissible evidence that it owned the plaintiff's debt, that Midland misrepresented in its collection complaint that it owned the debt and that Midland engages in a "'pattern and practice of repeatedly filing collection lawsuits in which it is unable to show that it has standing or

16

ownership of the credit card debt it is attempting to collect.'" *Rumfelt*, 2019 WL 1902784, at \*2 (quoting the plaintiff's complaint). The court, ***following multiple courts around the country***, held that the filing of a collection action by a debt collector without the immediate means of proving ownership of the debt and losing the case is not actionable under the FDCPA. *Id.* (collecting cases). "To state an FDCPA claim against a debt collector for filing a collection case, a plaintiff must plausibly allege that the debt collector filed its collection case without 'a good faith belief in its validity.'" *Id.* at \*3 (quoting *Lena v. Cach, LLC*, No. 14 C 01805, 2015 WL 4692443, at \*4 (N.D. Ill. Aug. 6, 2015)). Here, Midland has established, on the basis of the extensive account-level documentation it obtained concerning each debt (in all but one case directly purchasing the accounts from the original creditor) that it had a good faith belief that it was capable of proving its claims at the time the suits at issue were filed.

In a similar action cited by the *Rumfelt* court, a plaintiff sued MF alleging that MF had sued him with full knowledge that it lacked the evidence required under state law to prove standing and the amount or validity of the debt. *Delisi v. Midland Funding, LLC*, No. 4:14-CV2125 RWS, 2015 WL 4393901, at \*1 (E.D. Mo. July 16, 2015). The plaintiff further alleged (as do Plaintiffs here) that but for MF's false representations regarding standing and the amount or validity of the debt, MF would not have obtained judgment against him, causing actual damages. *Id.* The court dismissed the plaintiff's FDCPA claims, finding that Midland's affidavit of indebtedness, representing that it was based on personal knowledge of Midland's account records and that MF was the current owner and had been assigned all rights to the debt was not, on its face, false or deceptive. *Id.* at \*6. Much like with Plaintiffs' arguments regarding the Vazquez affidavit, in which Plaintiffs contend that the affidavit is false and deceptive, Plaintiffs

(and the *Delisi* plaintiff) failed to identify why the statements in Midland's affidavits are false or deceptive. *Id.*

The evidence in this case clearly shows that Midland incorporated the business records from the prior creditors into its database, was justified in relying upon them, was justified in generating affidavits admitting those records into evidence, and overall had a good faith basis to bring each suit at issue. Plaintiffs' failure to identify evidence that shows any material issue with this process—along with the notion that collaterally attacking a prior state court judgment is prohibited (*see Mason v. Midland Funding LLC*, No. 1:16-cv-2867 (CC)(RGV), 2017 WL 6994577 (N.D. Ga. July 27, 2017), *report and recommendation adopted as modified*, 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017)) —dooms their summary judgment motion.

### 4.    Plaintiffs Suffered No Harm When Midland Obtained Judgment on Accounts it Owned and that were Valid, Due and Owing

Midland has conclusively established that it owned each debt on which it brought suit against the various Plaintiffs to collect. It is a truism that Plaintiffs cannot establish the existence of damages arising from making payments on debts that are properly due and owing. As Midland has established that each Plaintiff herein owed the debts that Midland attempted to collect, and further that Midland possessed the right to enforce those debts, Plaintiffs' claims of harm fail.

### B.    Midland's Affidavits are Neither False nor Misleading

Plaintiffs' argument that Midland's affidavits are materially misleading because they "misquoted the FDCPA" by omitting the qualifying language "by the debt collector" is not supported in fact or law. *See* FACC ¶ 51 & n.9 (alleging that use the affidavit language as alleged is a "despicable practice" that has been vilified by "a mountain of case law"). Plaintiffs'

theory is severely flawed for several reasons.[7]

### 1.   Midland Sent Plaintiffs an Initial Communication Including the Proper § 1692g(a) Language via Letter Prior to Filing Suit.

The evidence clearly shows that Midland sent each of the Plaintiffs' an initial communication – a so-called "validation letter" – providing all disclosures required by the FDCPA. Notably, "section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor…. Nowhere does the statute require receipt of the Notice."' *Schneider v. Cont'l Serv. Group, Inc.*, No. 13-cv-5034 (JG)(MDG), 2013 WL 6579609, at *5 (E.D.N.Y. Dec. 16, 2013) (quoting *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999)). The record clearly shows that Midland fulfilled this requirement, as Midland has not only produced copies of each validation letter sent to Agoado, McNally and Sharkey but also sworn affidavits attesting to the dates that MCM sent each letter. Midland Resp. to Pls.' 56.1 ¶¶ 74-78. Plaintiffs Agoado, McNally and Sharkey each confirmed that those initial letters were properly addressed to their residences at the time they were sent. Midland Resp. to Pls.' 56.1 ¶¶ 75-78.

In response, Plaintiffs contend without basis that "Midland never mailed" the validation letters to Plaintiffs Agoado, McNally and Sharkey. Pls.' Mem. of Law at p. 20. Plaintiffs' bold contention, however, is not supported by the record—to the contrary, it is apparently only based on the testimony of Plaintiffs Agoado, McNally and Sharkey stating that they did not ***remember*** receiving the validation notice. Plaintiffs' Rule 56.1 Statement (¶¶ 61-64). Plaintiffs' assertion that the letters were never mailed is belied by the record. Plaintiffs' attempt at a creative

---

[7] The allegedly offensive text *does not* appear in the affidavits for the debts of Plaintiffs Moore (MLR 56.1 ¶ 198(a), Pierre (MLR 56.1 ¶ 225) or Vazquez (MLR 56.1 ¶ 354(a)).

argument simply does not line up with the documentary evidence in this case; thus it should be rejected.

In sum, it is beyond a doubt that the facts and the law establish that the Plaintiffs received a proper validation notice—with all the proper disclosures—from Midland.[8]

### 2. A Formal Pleading is Not an "Initial Communication" Giving Rise to the Obligation to Provide the § 1692g(a) Notice

Ignoring the fact that all Plaintiffs were properly advised of their validation rights long before the lawsuits against them were filed, Plaintiffs attempt to mine a validation-related FDCPA violation from Midland's affidavits in support of their collection lawsuits. Plaintiffs' attempt to contend that Midland violated § 1692g(a)—which requires a collector to include certain information in the "initial written communication"—because they did not include validation-related information in its collection affidavits. Specifically, Plaintiffs state that the affidavit language is missing four words – "by the debt collector" – that are required to be included in a true validation notice under § 1692g(a)(3). Plaintiffs' effort to impose the requirements of § 1602g(a) upon affidavits submitted directly to the court to create liability fail miserably.

As an initial matter, Plaintiffs fail to mention that a formal pleading—such as an affidavit in support of a collection action—is not an "initial written communication" under the FDCPA. The plain text of §1692g(d), however, clearly disposes of their argument, as it states that a "communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692g] subsection (a)." Moreover, the weight of authority holds that the term "formal pleading" used in §§ 1692g(d) and 1692e(11) (which provides a

---

[8] Thus, rendering Plaintiff's FDCPA claims time-barred.  See 15 U.S.C. § 1692k(d).

similar exemption from disclosure obligations in "a formal pleading made in connection with a legal action") applies to a variety of court filings, and is not limited to the definition of "pleading" found in Fed. R. Civ. P. 7. In fact, the Second Circuit has recognized that "even documents that are superfluously attached to a formal pleading are not initial communications within the meaning of the FDCPA." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017).[9] Similarly, a federal court in Washington concluded that it would be "fundamentally nonsensical" to find that motions for summary judgment are not covered by the formal pleading exception in § 1692e(11). *Motherway v. Gordon*, No. 09-cv-05605, 2010 WL 2803052, at *3 (W.D. Wash. July 15, 2010); *see also Stephens v. Manley Deas Kochalski, LLC*, No. 16-3845, 2016 WL 6804441, at *3 (E.D. Pa. Nov. 16, 2016) (finding that a notice of appearance, although not an initial pleading or complaint, "are 'pleadings' within the broad meaning of the term as used in section 1692e(11)." If a motion for summary judgment clearly falls within the FDCPA's exception for formal pleadings from the definition of initial communications, certainly an affidavit filed to support a motion for default judgment would as well.

Accordingly, the affidavits at issue could never be required to include the "by the debt collector" language—or any other validation-related language—from § 1692g that Plaintiffs say was missing. Tellingly, although Plaintiffs cite cases holding that omitting the words "by the debt collector" may violate 1692g *in the context of a true validation notice*, not in the context of pleadings, affidavits, or any other documents. In fact, all the cases that Plaintiffs identify as supposedly supporting their position are easily distinguishable because *none* of them even

---

[9] Courts have cited the Supreme Court's finding that an "objective of the FDCPA was the preservation of creditors' judicial remedies" as a basis for declining to limit scope of the formal pleading exemption in the FDCPA to that of the Federal Rules. *See McKee v. Ingram Law Office, LLC*, No. 15-1201, 2016 WL 6157807, at *4 (N.D. Ala. Oct. 24, 2016) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995)).

mention affidavits, or state that § 1692g language must appear in the affidavits verbatim. FACC ¶ 51 at n.9. For example, Plaintiffs cite *Diaz v. Residential Credit Solutions, Inc.*, in support of the claim that Midland's affidavits violated the FDCPA, but *Diaz* holds only that a ***validation notice*** must specify that failure to dispute the debt will lead the debt collector to assume the debt is valid. *Diaz v. Residential Credit Solutions, Inc.*, 965 F. Supp. 2d 249, 260 (E.D.N.Y. 2013). It says nothing about the fact that such language is required in an affidavit that is not sent to consumers.

### 3.    The Affidavits are not Materially Misleading

Any omission of the words "by the debt collector" in an affidavit—even if validation-related language were required in affidavit, which it is not—is immaterial. Material communications are those "that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Here, the affidavits at issue ***were never served on Plaintiffs*** and not one of the Plaintiffs alleges to have ever seen one of the affidavits or testified that they did. *See generally* FACC. "A false statement is only actionable under the FDCPA if it has the potential to affect the decision–making process of the least sophisticated [consumer]." *Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 223, 231 (W.D.N.Y. 2019) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015)). Accordingly, it is impossible for Plaintiffs to have been misled by the omission of the words "by the debt collector" if they never saw the affidavits at issue, as a document not seen could not affect the consumer's decision making process. Even if the Plaintiffs had seen the affidavits, they have presented no evidence that the collection letters referenced in the affidavits—which were sent to the Plaintiffs at the time MF purchased their debts—omitted the "by the debt collector" language.

### 4.      No Cause of Action Arises under the FDCPA for Communications Not Directed to the Consumer

Further, the language at issue is not actionable because it does not constitute a communication to the debtor. As the Second Circuit concluded in *Carlin*, "[t]he legislative history and stated purpose of the [FDCPA] thus indicate that the statute's primary purpose, particularly where § 1692g is implicated, is to regulate communications from the debt collector to the debtor." *Carlin*, 852 F.3d at 214. Similarly, the District of Connecticut dismissed a plaintiff's § 1692e claims where the plaintiff "failed to allege" how the allegedly wrongful statements "were materially false or misleading" where the "communications were directed at the court, rather than [the plaintiff] herself." *Klein v. Solomon & Solomon, P.C.*, No. 3:10CV1800 (WWE), 2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011). As communications to a court rather than to Plaintiffs are not actionable under the FDCPA, the claims asserted by Plaintiffs Agoado, McNally and Sharkey regarding the allegedly improper § 1692g(a)(3) language must fail.

Another court has rejected claims nearly identical to those here. In *Jernigan v. Gen. Collection Co.*, No. 8:13CV178, 2013 U.S. Dist. LEXIS 178397 (D. Neb. Nov. 15, 2013) the court held that the omission of the "by the debt collector" language in a notice accompanying a complaint, rather than in validation notice, was not material. In *Jernigan*, the defendant debt collection law firm had attached a notice to its debt collection complaint, which was served on the plaintiff, stating "[u]nless the debtor disputes the debt within thirty (30) days after receipt of this notice, it will be assumed that the debt is valid"). *Jernigan*, 2013 U.S. Dist. LEXIS 178397, at *2-3. [10] The plaintiff contended that the notice was false and deceptive because it would cause the consumer to believe that the debt would be assumed to be valid *by the court* if she did not

---

[10] Westlaw citations are not available for *Jernigan*.

dispute the debt within thirty days. *Id.* at *7. The court held, as a matter of law, that the notice was neither false nor deceptive, and further that any misrepresentation of the 1692g notice was not material, because even if Jernigan believed that the county court would assume her debt valid if she did not dispute it, it would have no effect on Jernigan herself. *Jernigan*, 2013 U.S. Dist. LEXIS 178397 at *8.

Plaintiffs attempt to distinguish *Jernigan*, arguing that the court did not employ the least sophisticated consumer standard as this Court does. This objection misses the mark, however, as courts in Nebraska and rest of the 8th Circuit employ the ***unsophisticated consumer*** standard, which is nearly the same as the ***least sophisticated consumer*** standard. *Spurgeon v. Frederick J. Hanna & Assocs., P.C.*, No. 4:14-CV-3098, 2015 WL 1246157, at *3 (D. Neb. Mar. 17, 2015). As the *Spurgeon* court explained, the standard is a slight modification of the least sophisticated consumer standard designed to protect "the consumer who is uninformed, naïve, or trusting, yet it admits an objective element of reasonableness" to shield collectors from liability for unrealistic or peculiar interpretations of writings. *Id.* Essentially, the standards are the same. *See* § 3(B), *supra*, setting forth the least sophisticated consumer standard. What the *Jernigan* court actually determined is that the notice did not misled the plaintiff "to her detriment" and therefore was not "materially misleading." *Jernigan*, 2013 U.S. Dist. LEXIS 178397, at *8. This holding would not be any different had the court applied the least sophisticated consumer standard. The same holds true for the three Plaintiffs here—the affidavits at issue lacked "the potential to affect the decision-making process of the least sophisticated consumer" and therefore were not materially misleading. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). Statements that are immaterial are not actionable under § 1692e. *Id.* at 86.

Plaintiffs also allege that Plaintiff Pierre was "deceived into believing that any dispute of the debt would require overcoming a legal presumption that the debt is valid" and that Defendants pressured him to settle the collection suit. FACC at ¶ 52 & n.10 ("Such was the case with Plaintiff Pierre"). The affidavit used in the Pierre suit, however, ***did not include*** the allegedly deceptive 1692g language. MLR 56.1 at ¶ 255 (citing Murphy-Pierre Ex. F). As such, it is impossible for Pierre to have been misled by it (which, in any event, Pierre never saw). Likewise, the allegedly offending language *does not* appear in the affidavits of Plaintiffs Moore (MLR 56.1 ¶ 198(a) or Vazquez (MLR 56.1 ¶ 354(a)).

V.      CONCLUSION

Plaintiffs' Fourth Amended (Corrected) Complaint is based on sheer conjecture inspired by a press release, cases involving other parties and inapposite case law. Plaintiffs' brazen assertions, such as their claim that Midland "absconds with millions of dollars" from consumers despite lacking "evidence to make a prima facie case" have been shown to lack any basis in fact. Therefore, Midland respectfully requests that the Court grant summary judgment in its favor, dismiss all claims against it and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: Astoria, New York
        January 13, 2022

**GORDON REES SCULLY MANSUKHANI**

Matthew B. Johnson
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: 212.402.2298
Fax: 212.269.5505
MBJohnson@grsm.com

Andrew M. Schwartz, *Pro Hac Vice*
Three Logan Square
1717 Arch St., Suite 610
Philadelphia, PA 19103
Tel: 215.717.4023
**amschwartz@grsm.com**

*Attorneys for Defendants Midland Funding, LLC,*
*Midland Funding, LLC DBA in New York as*
*Midland Funding of Delaware, LLC and*
*Midland Credit Management, Inc.*