# Exhibit M-R

Additional Excerpts from Plaintiff McNally Deposition (pp. 221-228)

# In The Matter Of:

*DAVID AGOADO, et al. v.*
*MIDLAND FUNDING, LLC, et al.*

## LEEANN MCNALLY
*June 26, 2015*

**Cindy Afanador**
COURT REPORTING, INC.

CONFERENCE SUITES
MANHATTAN — BRONX — BROOKLYN - QUEENS
GARDEN CITY — MELVILLE — HAUPPAUGE - RIVERHEAD

HTTP://WWW.CINDYCOURTREPORTING.COM
**1-877-337-6968**

*Original File FINAL 062615 LEEANN MCNALLY_1.TXT*
Min-U-Script®

Page 221

1  LeeAnn McNally
2  A. Yes.
3  Q. Have you seen this document
4  before?
5  A. Doesn't look familiar.
6  Q. For the record, this is stamped
7  MCM-0311 through MCM-0313 consecutive.
8     Do you see a line that identifies
9  the original creditor in this letter near the
10 top?
11 A. Yes.
12 Q. Who's the original creditor?
13 A. Ben Fisher.
14 Q. And the first paragraph of this
15 letter states, "Midland Funding, LLC recently
16 purchased a Beneficial account and Midland
17 Credit Management (MCM), a debt collection
18 company, is the servicer of this obligation."
19    Do you understand what that
20 paragraph means?
21    MR. BIANCO: Objection to the
22  form of the question.
23 A. Yes.
24 Q. What does that mean to you?
25 A. It means the debt collection

Page 222

1      LeeAnn McNally
2  company is now going to try to get money from
3  me.
4  Q. And to whom is this letter
5  addressed?
6  A. Me.
7  Q. And what's the address to which
8  it is addressed?
9  A. 151 Hilary Street, Oakdale.
10 Q. Can you read the next paragraph
11 to yourself?
12 A. (Witness complying.)
13    Okay.
14 Q. Do you remember receiving this
15 letter?
16 A. No.
17 Q. Do you have any reason to believe
18 it was not sent to the 151 Hilary Street
19 address?
20 A. No.
21 Q. Do you believe this letter
22 represents that your account might be sent to
23 an attorney if you did not pay the debt?
24    MR. BIANCO: Objection to the
25  form of the question.

Page 223

1  LeeAnn McNally
2  A. Yes.
3  Q. And what is your understanding of
4  the meaning of the second paragraph of this
5  letter?
6  A. If I don't contact them, they
7  will go and get an attorney.
8  Q. And in the third paragraph, did
9  they give you a time period by which to
10 contact them?
11    MR. BIANCO: Objection to the
12  form of the question.
13 A. December 3rd of 2011.
14 Q. And by them?
15 A. Midland Funding, Midland Credit
16 Management.
17 Q. Do you understand that there is a
18 difference between Midland Funding, LLC and
19 Midland Credit Management, Inc.?
20 A. No. I notice it's mentioned in
21 the first paragraph and -- okay, so Midland
22 Funding purchased it, but Midland Credit
23 Management services the debt collection
24 company? I don't understand.
25 Q. Okay.

Page 224

1      LeeAnn McNally
2     Well, if you look at the first
3  paragraph, how do you understand the role of
4  Midland Funding, LLC and Midland Credit
5  Management, Inc. as set forth in that
6  paragraph?
7     MR. BIANCO: Objection to the
8   form of the question.
9  A. Midland Funding purchased my
10 Beneficial account and Midland Credit
11 Management is the servicer of this obligation.
12 Q. And if you look down, you will
13 see in all caps it states "Notice: Please see
14 reverse side for important disclosure
15 information."
16    Is that correct?
17 A. Yes.
18 Q. If you flip to page 2, which I
19 will represent to you in the original was the
20 reverse side. Just take a minute to look at
21 the text there.
22 A. (Witness reviewing.)
23 Q. I will just ask the start of the
24 long paragraph at the top. It states, "The
25 records associated with the purchase from

Page 225

1  LeeAnn McNally
2  Beneficial reflect that you are obligated on
3  this account which is in default. As of the
4  date of this letter, you owe $6,666.15."
5      Do you have any reason to dispute
6  that statement?
7      MR. BIANCO: Objection to the
8   form of the question.
9   A.  The amounts keep changing, but
10  that's about it.
11  Q.  Next sentence states, "Because of
12  interest/late fees and other charges that may
13  vary from day to day, the amount due on the
14  day you pay may be greater."
15      Would you agree that that is what
16  that states?
17  A.  Yes.
18  Q.  Looking back at what has been
19  marked McNally 18, if you look at the last
20  page of that document, please?
21  A.  (Witness complying.)
22  Q.  Under sale amount, what is that
23  figure?
24  A.  $6,661.60.
25  Q.  And looking forward to McNally

Page 226

1  LeeAnn McNally
2  19 --
3  A.  (Witness reviewing.)
4  Q.  What is the figure listed?
5  A.  $6,666.15.
6  Q.  Did you make any payments to
7  Midland Credit Management, Inc. on the
8  Beneficial account?
9  A.  I don't recall.
10  Q.  Do you recall if you ever spoke
11  with Midland Credit Management, Inc.?
12  A.  I don't recall.
13  Q.  Continuing on page 2 of McNally
14  19, under the paragraph I was just referring
15  to, it states -- the paragraph below it states
16  "Unless you notify MCM within 30 days after
17  receiving this notice that you dispute the
18  validity of the debt or any portion thereof,
19  MCM will assume this debt to be valid."
20      Is that an accurate statement?
21  A.  Yes.
22  Q.  You are stating that you did not
23  notify your creditors when you lived at the
24  Hilary Street address?
25      MR. BIANCO: Objection to form.

Page 227

1  LeeAnn McNally
2  A.  I changed my address.
3  Q.  How did you change your address?
4  A.  I went to the post office.
5  Q.  Did you notify the New York
6  Department of Motor Vehicles that you changed
7  your address?
8  A.  Yes.
9      MR. BIANCO: Objection to the
10  form of the question.
11  THE WITNESS: Sorry.
12  MR. BIANCO: She asked and
13  answered that again.
14  Q.  Did you notify any creditors when
15  you changed your address?
16  A.  I changed my address, I felt like
17  that should have covered it. I didn't know I
18  had to call everybody and tell them my address
19  changed.
20  Q.  If you look at the third page of
21  this document --
22      MR. BIANCO: Did you get all of
23   that, Cindy?
24      THE COURT REPORTER: Yes.
25  Q.  So there is -- under Transaction,

Page 228

1  LeeAnn McNally
2  it states, "The above-referenced account was
3  purchased by Midland Funding, LLC and serviced
4  by Midland Credit Management, Inc. (MCM) the
5  balance of $6,666.15 is due by December 3,
6  2011."
7      Is that what that states?
8  A.  Yes.
9  Q.  Do you have any reason to dispute
10  the accuracy of that statement?
11  A.  No.
12  Q.  Did you ever happen to request
13  validation of the debt from Midland Credit
14  Management, the Beneficial debt?
15  A.  No.
16      MR. BIANCO: We have been going
17   for about an hour and a half. Can we
18   take a few minutes?
19      MR. MATTHEW JOHNSON: Sure.
20      (Recess taken.)
21      (At this time, Robert Arleo
22   disconnected from the call.)
23      (McNally Exhibit 20, Document Bates
24   stamped MCM-0325 through MCM-0331, marked
25   for identification.)