UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
DAVID AGOADO, LEEANN MCNALLY, CRAIG
MOORE, CHRIS PIERRE, THOMAS SHARKEY, and
DOREEN VAZQUEZ individually and on behalf of all                    Case No. 2:14-cv-00018-WFK-ST
other similarly situated,


                                        Plaintiffs,


            -against-


MIDLAND FUNDING, LLC d/b/a as MIDLAND
FUNDING OF DELAWARE, LLC, and MIDLAND
CREDIT MANAGEMENT, INC., RUBIN &
ROTHMAN, LLC, FORSTER & GARBUS LLP,
COHEN & SLAMOWITZ, LLP, PRESSLER &
PRESSLER LLP,
                                        Defendants.
-------------------------------------------------------------------- X



**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---------------------------------------------------------------------



Glenn M. Fjermedal, Esq.
DAVIDSON FINK LLP
Attorneys for Defendant Forster & Garbus LLP
Office and Post Office Address
28 East Main Street, Suite 1700
Rochester, New York 14614
Telephone:  (585) 546-6448

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………….....

PROCEDURAL HISTORY AND NATURE OF CASE…………………………….....

FACTS…………………………………………………….....

    I.    <u>POINT 1</u>....................……………………………………………………

    II.    <u>POINT II</u>…………………………………………………………………..

<u>CONCLUSION</u> …………………………………………………………………..

## TABLE OF AUTHOITIES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)………………………………...……..9

*Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996)……………...…………………...………9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………………….…11

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213………………………………………….…18

*Celotex*, 477 U.S. at 324……………………………………………………………………8, 9

*Clark v. Unifund CCR Partners*, 2007 U.S. Dist. LEXIS 31552………………………………11

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018)……………13,17, 22

*Cohen v. a 1999 Pontiac, VIN No. 1G2WJ52M1XF237001*, 42 Misc. 3d 401, 976 N.Y.S.2d 782, 784 (Sup. Ct., Suffolk Cnty. 2013)……………………………………….…………..13,17, 22

*Delisi v. Midland Funding, LLC*, No. 2015 U.S. Dist. Lexis 92441………..……………....12

*Diaz v. Residential Credit Solutions, Inc.*, 965 F. Supp. 2d 249, 260 (E.D.N.Y. 2013)……….19

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015)…………………………10

*Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012)…………..19

*Gagen v. Kipany Prods.*, 289 A.D. 2d 844, 735 N.Y.S.2d 225, 228 (3d Dep't 2001)…………17

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333……………………………………11

*Hasbrouck v. Arrow Fin. Servs. LLC*, 2011 U.S. Dist. LEXIS 53928………………………13

*Heintz v. Jenkins*, 514 U.S. 291, 296 (1995)…...……………………………………………18

*Jernigan v. Gen. Collection Co.*, No. 8:13CV178, 2013 U.S. Dist. LEXIS 178397……….21, 22

*Joosten v. Gale*, 129 A.D.2d 531, 514 N.Y.S.2d 729, 732 (1st Dep't 1987)…………………..16

*Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 223, 231 (W.D.N.Y. 2019)…………………..16

*Klein v. Solomon & Solomon, P.C.*, No. 3:10CV1800 (WWE), 2011 WL 5354250……………21

*Krawczyk v. Centurion Capital Corp.*, 2009 U.S. Dist. LEXIS 12204…...……………………11

*Lena v. Cach, LLC*, No. 14 C 01805, 2015 U.S. Dist. Lexis 103007…..…………………..12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)……..………9

*McKee v. Ingram Law Office, LLC*, No. 15-1201, 2016 WL 6157807…………………………18

*Motherway v. Gordon*, No. 09-cv-05605, 2010 WL 2803052…..……………………………18

*Muhlhahn v. Triple Cee Bar & Rest. Supply Co.,* 133 A.D.2d 996, 521 N.Y.S.2d 146, 147 (3d Dep't 1987)………………………………………………………………………………16

*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)………………………………………………22

*Rumfelt v. Midland Funding LLC*, 2019 U.S. Dist. Lexis 71860…..………………………..11, 12

*Schneider v. Cont'l Serv. Group, Inc.*, No. 13-cv-5034 (JG)(MDG), 2013 WL 6579609….…..20

*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)…………………………………………..9

*Spurgeon v. Frederick J. Hanna & Assocs., P.C.*, No. 4:14-CV-3098, 2015 WL 1246157, at *3 (D. Neb. Mar. 17, 2015)………………………………………………………………………22

*Stephens v. Manley Deas Kochalski, LLC*, No. 16-3845, 2016 WL 6804441…...………………18

*Woodson v. Mendon Leasing Corp.,* 100 N.Y.2d 62, 70-71 (2003)………………………..15

## PRELIMINARY STATEMENT

Defendant Forster & Garbus LLP ("F&G") submits this Memorandum of Law in Response to Plaintiffs' Motion for Partial Summary Judgment seeking judgment on liability for all claims against F&G.[1]  The present matter arises out of Defendant F&G's efforts to collect debt owned by Midland Funding, LLC DBA in New York as Midland Funding of Delaware, LLC ("MF"), placed by Midland Credit Management, Inc. ("MCM") with F&G for collection from Plaintiffs LeeAnn McNally (formerly DeRosa, herein, "McNally") and Thomas Sharkey ("Sharkey") (collectively, "Plaintiffs").  (Fourth Amended Complaint, ¶ 9 (attached as Exhibit A to the Declaration of Glenn M. Fjermedal, Esq., executed December 3, 2021 ("FAC") in support of F&G's Motion for Summary Judgment).  Plaintiffs' claims against F&G are based on the unsupported allegation that F&G unlawfully commenced collection actions and obtained default judgments against them without having sufficient documentation of the debts or factual basis that McNally and Sharkey owed the debts.  The FAC makes conclusory allegations that the Affidavits of Fact, signed by Midland and filed by F&G in support of its request to the state court that judgment be awarded to Midland representatives against McNally and Sharkey, were false or fraudulent as they were not supported by sufficient documentation, if any, of their debts to which F&G failed to review or document or relied upon purported "junk account spreadsheets" before filing suit or later when requesting entry of default judgments.  (FAC ¶¶ 74-81).

Plaintiffs' claims simply ignore the plethora of evidence contradicting their unsubstantiated claims.  First, Midland provided F&G with comprehensive data that it received such as: (1)

---

[1] Defendant F&G joins and incorporates by reference all arguments made by Midland Funding, LLC ("MF"), Midland Funding, LLC DBA in New York as Midland Funding of Delaware, LLC (MF operating under a d/b/a, also referred to herein as "MF") and Midland Credit Management, Inc. ("MCM") (collectively, "Midland"), and law firm co-defendants Rubin & Rothman ("R&R"), Cohen & Slamowitz, LLP ("C&S") and Pressler & Pressler, LLP ("P&P") (collectively "Attorney Defendants") in support of their respective oppositions to Plaintiffs' Motion for Partial Summary Judgment.

representations and warranties from each debt seller attesting to the accuracy of the information regarding each account purchased; and (2) documents verifying the existence and amount due as to each purchased debt, as well the right to request and receive further documentation as needed. Midland purchased all but one of the accounts at issue from the originating creditor; which is not an issue for F&G.

Upon purchase of the debts, it was F&G's understanding that MF incorporated the account-level information, provided in the form of a spreadsheet, as well as the account documents ("media") from the business records of each seller into its system of record, which Midland relied upon in its day-to-day business affairs. MCM shared the business record information with F&G to assess for potential suit.  It is F&G's understanding that MCM's affiants used this account-level data from the spreadsheets, as well as account media in the course of creating truthful and accurate affidavits for accounts MCM placed with F&G.  Should Midland's affiants or F&G detect any inconsistencies in the information in a spreadsheet, Midland's affiants or F&G would access and review further account-level media and information to ensure that the information presented in the affidavit was truthful and accurate.[2]

Midland provided F&G with comprehensive data for both McNally and Sharkey containing electronically-stored information identifying their names, home addresses, social security numbers, the original creditor names, the original account numbers, the client account numbers, the dates the accounts were opened, the dates of the last payments, the dates the accounts were charged off, the total charge off balances and the dates Midland purchased the accounts.  F&G

---

[2] Plaintiffs' counsel is also aware that Midland's affidavit process and its affidavits were reviewed and approved by a Special Master in a federal case in Ohio, as Plaintiffs' counsel appeared in that case, Plaintiffs continue to assert that Midland's affidavits are unsound. *See Vassalle v. Midland Funding LLC*, No. 3:11-cv-96, 2012 WL 13027055 (N.D. Ohio Nov. 16, 2012) (Special Master's findings of fact and conclusions of law regarding Midland's affidavit process). In fact, Plaintiffs avoids citing to the *Vassalle* action because it undermines this contention.

also had access to an abundance of account statements, applications, charge-off statements, chain of title documents and affidavits from the original creditor and Midland which were produced by Midland during the course of discovery in this case.  In addition, McNally and Sharkey's own respective testimony reveals that they readily admitted that they incurred their respective debts which they failed to pay.  Further, Plaintiff Sharkey lacks standing to assert any claims, as he failed to include his interest in this action as an asset in his bankruptcy schedule when his debts were discharged in Chapter 7 bankruptcy in 2019.  Sharkey's claims belong to the bankruptcy trustee, not Sharkey and agreed in F&G's Motion for Partial Summary Judgment.

Summary judgment is appropriate when the record shows that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. Once Plaintiffs Sharkey and McNallys' misrepresentations of fact and law are stripped away, it is clear that Plaintiffs present no significant probative evidence to support their conclusory allegations such that there can be no genuine issue for trial. For these and other reasons set forth in this second round of Motions for Summary Judgment, the Court should grant F&G's Motion for Partial Summary Judgment while denying that of Plaintiffs in its entirety.

## PROCEDURAL HISTORY AND NATURE OF CASE

### I.        FACTS

F&G  respectfully incorporates both its Rule 56.1 Statement of Material Facts, along with the affidavits and exhibits thereto, as well as its response to Plaintiffs' Rule 56.1 Statement of Material Facts as if set forth in full herein. Further, F&G notes its objection to Plaintiffs' "Statement of Facts" as it improperly includes assertions unsupported by evidence and legal argument. *See* F&G's Response to Plaintiffs' Rule 56.1 Statement ("Pls 56.1").[3] Below, F&G

---

[3] F&G also refers to and incorporates by reference Midland's Response to Plaintiffs'' Rule 561 Statement and Statement of Additional Facts, ¶¶ 65, 66, 67, 68(c), 68(f), 74, 77 and 78.

addresses several of Plaintiffs' misrepresentations in the "Fact" section of their Memorandum of Law.

### *Plaintiff Sharkey*

When Midland placed Plaintiff Sharkey's account with F&G for collection and possible suit, it did not state that no account-level documentation would be made available, as Plaintiffs represent. Pls.' Mem. of Law p. 4. To the contrary, Midland informed F&G that they could review the availability of media on the MCM website and request any required media via the You've Got Claims ("YGC") communications software or directly from Midland's Vendor Specialist. F&G's Resp. to Pls.' 56.1 ¶ 38, 45.

Despite Plaintiff's unsupported assertion that Midland could not provide its counsel information regarding the amount of Sharkey's debt, Midland produced such document, provided to Midland at the time Sharkey's account was purchased, setting forth the exact balance due at the time MF purchased Sharkey's account as well as his address, last four digits of his social security number and his year of birth. F&G's Resp. to Pls.' 56.1 ¶ 68(f).

Further, reference to Section 8.3 of the purchase agreement under which Plaintiff Sharkey's account was transferred provides, inter alia, that the loans sold under the agreement "have been originated serviced and maintained in material compliance with all applicable state and federal laws by Seller, its agents and Affiliates." F&G's Resp. to Pls.' 56.1 ¶ 53. Regarding the data provided by the seller, it states "Data. To the best of Seller's knowledge, the information provided the Loan Schedule relating to the account number, book value as of the Transfer Date, the primary and Secondary accountholder's names, addresses, and social security numbers, charge-off date, breakdown of principal and interest, and the date of last payment, and the annual percentage rate was materially accurate as of the Transfer Date." F&G's Resp. to Pls.' 56.1 ¶ 53.

Finally, although Sharkey stated that he wasn't sure what the exact amount of his debt was in his deposition (F&G's Resp. to Pls.' 56.1 ¶ 52), he admitted that he knew he owed some balance, never disputed the balance and never requested an itemization of his debt F&G's Resp. to Pls.' 56.1 ¶¶ 51-53).

### *Plaintiff McNally*

When MF purchased McNally's account from her creditor, the creditor provided extensive warrantees of accuracy of the data provided. F&G's Resp. to Pls.' 56.1 ¶¶ 10 & 65. Thereafter, Midland placed McNally's account with F&G for collection, informing F&G that account-level documentation could be obtained later via the MCM media website or through a request to an MCM Vendor Specialist. F&G's Resp. to Pls.' 56.1 ¶ 46. MCM in fact produced an acceptance of credit document in discovery in the form of a $5,000 check from Beneficial signed by Plaintiff McNally. F&G's Resp. to Pls.' 56.1 ¶ 10 (citing Murphy-McNally Ex. D).

Plaintiff McNally admitted that she owed the debt. In her deposition, McNally acknowledged she had obtained the loan at issue in the amount of $5,000, that the loan accrued interest, that she failed to pay the loan back, that she was not sure if F&G did anything wrong in connection with collecting her debt and, after it was explained to her, that she understood how the judgment against her came to total $7,216.41. F&G's Resp. to Pls.' 56.1 ¶¶ 10, 55-56.

### STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the Court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial'" (*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))), and "may not rely on conclusory allegations or unsubstantiated speculation" (*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted)).

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). A nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324. Therefore, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

**ARGUMENT**

**POINT I:**     **F&G HAS SUFFICIENT DOCUMENTATION TO SUPPORT A SUIT AND DEFAULT JUDGMENT AGAINST MCNALLY AND SHARKEY WHO BOTH ADMITTED TO INCURRING THE DEBTS WHICH THEY DEFAULTED ON.**

Plaintiffs do not bring FDCPA claims against F&G, but rather assert only state law claims for violations of GBL 349 and NYJ 487 as well as unjust enrichment.  However, even these claims must fail as they are both factually and legally without merit.  Not only did F&G have sufficient documentation to commence suits and request default judgments against McNally and Sharkey, but they both admitted under oath that they recognized the account debts in question as set forth in F&G's Local Civil Rule 56.1 Statement of Uncontested Material Facts ("F&G's MLR 56.1").  McNally conceded that she borrowed $5,000.00 from Beneficial funded by HSBC Bank USA, N.A. ("Beneficial") in which she even identified her endorsed signature on the $5,000.00 Beneficial check issued to her.  McNally further testified that she defaulted on the subject debt.  (F&G's MLR 56.1 ¶¶ 78-80).  Sharkey also conceded that he opened up and used a Bank of America credit card and defaulted on his payment obligations.  (F&G's MLR 56.1 ¶¶ 108-09).  Therefore, both McNally's and Sharkey's testimonies confirm that there are no disputes that the charges were incurred by each of them which wholly undermines their claims against F&G.

**A.      Each Action F&G Filed on Behalf of Midland was Grounded in a Proper Factual Basis.**

Plaintiffs' allegation that F&G brought suits without sufficient factual basis, allegedly violations of GBL 349 and NYJ 487, fails as a matter of law.  Examining a similar claim, the Second Circuit held that "standing alone, the allegation that [an attorney] filed and pursued [a] lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015).  The "'naked assertion, devoid of further factual enhancement'" that

a debt purchaser lacked sufficient factual basis to bring suit fails to meet the burden of stating a plausible claim for relief. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal punctuation and alteration omitted)).

Midland has produced affidavits and other documents refuting Plaintiffs' assertions that Midland lacked sufficient evidence for its counsel to bring suit. F&G, as Midland's counsel, properly relied on information, documentation and truthful affidavits from Midland when filing suit on Midland's behalf.  Even if Midland were to lack all evidentiary material to prove a claim at the outset of filing suit, which F&G disputes, courts in this circuit and others routinely hold that "'the filing of a collection lawsuit without the immediate means of proving the debt does not violate the FDCPA.'"  *Hasbrouck v. Arrow Fin. Servs. LLC*, 2011 U.S. Dist. LEXIS 53928, at *13 (N.D.N.Y. 2011) (quoting *Krawczyk v. Centurion Capital Corp.*, 2009 U.S. Dist. LEXIS 12204 (N.D. Ill. 2009)).  "A debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claims." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006); *see also Clark v. Unifund CCR Partners*, 2007 U.S. Dist. LEXIS 31552, at *4 (W.D. Pa. 2007) (assertion that the law firm attached affidavit to a complaint without documentary evidence of the debt found insufficient to establish a false representation claim under the FDCPA). Even if Midland or F&G were not able to prove a particular claim, this result would not, alone, give rise to a cause of action against Midland or F&G.  *See Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'").

A fairly recently case from the Western District of New York is on all fours with the present action. *Rumfelt v. Midland Funding LLC*, 2019 U.S. Dist. Lexis 71860 (W.D.N.Y. 2019). Therein, the plaintiff alleged that Midland could not prove with admissible evidence that it owned the plaintiff's debt, that Midland misrepresented in its collection complaint that it owned the debt and

- 11 -

that Midland engages in a '"pattern and practice of repeatedly filing collection lawsuits in which it is unable to show that it has standing or ownership of the credit card debt it is attempting to collect.'" *Rumfelt*, 2019 U.S. Dist. Lexis 71860, at *2. The court, following multiple courts around the country, held that the filing of a collection action by a debt collector without the immediate means of proving ownership of the debt and losing the case is not actionable under the FDCPA. *Id.* (collecting cases). "To state an FDCPA claim against a debt collector for filing a collection case, a plaintiff must plausibly allege that the debt collector filed its collection case without 'a good faith belief in its validity.'" *Id.* at *3 (quoting *Lena v. Cach, LLC*, No. 14 C 01805, 2015 U.S. Dist. Lexis 103007, at *4 (N.D. Ill. Aug. 6, 2015)). Here, Midland has established, on the basis of the extensive account level documentation it obtained regarding each debt (in all but one case directly purchasing the accounts from the original creditor) that it had a good faith belief that it was capable of proving its claims at the time the suits at issue were filed.

In a similar action cited by the *Rumfelt* court, a plaintiff sued MF alleging that MF had sued him with full knowledge that it lacked the evidence required under state law to prove standing and the amount or validity of the debt. *Delisi v. Midland Funding, LLC*, No. 2015 U.S. Dist. Lexis 92441, at *1 (E.D. Mo. July 16, 2015). The plaintiff further alleged (as do Plaintiffs here) that but for MF's false representations regarding standing and the amount or validity of the debt, MF would not have obtained judgment against him, causing actual damages. *Id.* The court dismissed the plaintiff's FDCPA claims, finding that Midland's affidavit of indebtedness, representing that it was based on personal knowledge of Midland's account records and that MF was the current owner and had been assigned all rights to the debt was not, on its face, false or deceptive. *Id.* at *6. Much like with Plaintiffs' arguments regarding the Vazquez affidavit, in which Plaintiffs contend that the affidavit is false and deceptive, Plaintiffs (and the *Delisi* plaintiff) failed to identify why the statements in Midland's affidavits are false or deceptive. *Id.*

Moreover, Plaintiffs have presented no evidence that MCM's affidavits included false information which are argued at length in Midland's Memorandum of Law in support of Motion for Summary Judgment which F&G incorporates herein by reference.  Midland produced documentary evidence and information for both Plaintiffs McNally's and Sharkey's accounts. Based on this evidence, MCM's affiants had personal knowledge of the facts to which they attested.  Further McNally and Sharkey came forward with no evidence tending to show that the debts Midland sought to collect were not valid.  *See* F&G's MLR 56.1 at ¶¶ 78-80 and 108-09 (facts drawn from Plaintiffs McNally's and Sharkey's depositions).   Mere speculation and conclusory statements alleging that Midland's affidavits contain false statements are insufficient to establish a genuine issue of fact.  *Hasbrouck*, 2011 U.S. Dist. LEXIS 53928, at *16 (plaintiff's own affidavit regarding defendant's failure to prove her debt in state court held insufficient to prove that affidavit supporting motion for default judgment contained false information). McNally's and Sharkey's mere speculation that F&G's suits on behalf of Midland were not backed up by admissible evidence is unsupported by any evidence and, therefore, must fail.

## B.    Midland's Collection Actions Were Filed After a Reasonable Inquiry by F&G Into the Facts and Circumstances Giving Rise to the Claims.

F&G, as Midland's counsel, reviewed both the McNally and Sharkey claims and filed each suit after exercising his or her professional legal judgment that the suit was supported by a sound factual basis, predicated on truthful representations such that the suit was not frivolous.  Plaintiffs McNally and Sharkey, however, assert that counsels' commencement of each collection action against them violated GBL 349 and NYJ 487.

Courts have held that, prior to filing suit to collect a consumer debt, the filing attorney must be meaningfully involved such that she "personally considered, and formed a specific opinion about, the individual debtor's case." *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 95

(E.D.N.Y. 2009).  F&G refers to its Local Rule 56.1 Statement and the Declarations of Joel D. Leiderman as to the McNally and Sharkey debts which demonstrate F&G's meaningful involvement through review of each claim prior to filing, as well as their access to appropriate documents and witnesses as needed, reliance on admissible evidence and exercise of independent judgment in litigating on Midland's behalf.  *See generally* F&G's MLR 56.1 ¶¶ 1-27; Declarations of Joel D. Leiderman.  As Plaintiffs merely rely on conclusory allegations and unsubstantiated speculation supporting their claims that F&G commenced actions on behalf of Midland without sufficient factual basis or supported by false allegations, summary judgment in F&G's favor is proper.

### C.    F&G Met Its Burden of Presenting Prima Facie Proof of a Cause of Action in Order to Obtain a Default Judgment Under Applicable New York Law.

CPLR 3215(a), which addresses New York default judgment practice, reads as follows:

> (a) Default and entry. When a defendant has failed to appear, plead or proceed to trial of an action reached and called for trial, or when the court orders a dismissal for any other neglect to proceed, the plaintiff may seek a default judgment against him.  If the plaintiff's claim is for a sum certain or for a sum which can by computation be made certain, application may be made to the clerk within one year after the default. *The clerk, upon submission of the requisite proof, shall enter judgment for the amount demanded in the complaint or stated in the notice served pursuant to subdivision (b) of rule 305, plus costs and interest.*  Upon entering a judgment against less than all defendants, the clerk shall also enter an order severing the action as to them.  When a plaintiff has failed to proceed to trial of an action reached and called for trial, or when the court orders a dismissal for any other neglect to proceed, the defendant may make application to the clerk within one year after the default and the clerk, upon submission of the requisite proof, shall enter judgment for costs.  Where the case is not one in which the clerk can enter judgment, the plaintiff shall apply to the court for judgment.

CPLR 3215(a) (emphasis added).

CPLR 3215(f) further provides the requisite proof needed before a Clerk of the Court may enter a default judgment application:

(f) Proof. On any application for judgment by default, the applicant shall file proof of service of the summons and complaint, or a summons and notice served pursuant to subdivision (b) of Rule 305 or subdivision (a) of rule 316 of this chapter, *and proof of the facts constituting the claim, the default and the amount due by affidavit made by the party*, or where the state of New York is the plaintiff, by affidavit made by an attorney from the office of the attorney general who has or obtains knowledge of such facts through review of state records or otherwise.   Where a verified complaint has been served, it may be used as the affidavit of the facts constituting the claim and the amount due; in such case, an affidavit as to the default shall be made by the party or the party's attorney.   When jurisdiction is based on an attachment of property, the affidavit must state that an order of attachment granted in the action has been levied on the property of the defendant, describe the property and state its value.   Proof of mailing the notice required by subdivision (g) of this section, where applicable, shall also be filed.

CPLR 3215(f) (emphasis added).

*Woodson v. Mendon Leasing Corp.,* 100 N.Y.2d 62, 70-71 (2003) explains the rules and

principles applicable to entry of default judgments pursuant to CPLR 3215 as follows:

A verified complaint may be submitted instead of the affidavit when the complaint has been properly served (*see* CPLR 3215[f]).   Given that in default proceedings the defendant has failed to appear and the plaintiff does not have the benefit of discovery, the affidavit or verified complaint need only allege enough facts to enable a court to determine that a viable cause of action exists (*see* 7 Weinstein-Korn-Miller, N.Y. Civ. Prac. ¶ 3215.24 at 32-326).   *Indeed, defaulters are deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them* (*see Rokina Opt. Co. v. Camera King*, 63 N.Y.2d 728, 730, 480 N.Y.S.2d 197, 469 N.E.2d 518 [1984]) (emphasis added).

By reading CPLR 3215(f) and the first sentence of the above quote from *Woodson* together,

the Court can observe that the New York legislature provided, and the Court of Appeals reiterated,

that a verified complaint was a sufficient basis for entry of judgment by default.   The Court,

presumably, has seen enough verified complaints to know that such complaints rarely, if ever,

include the documentation a party defendant insists is the minimum required and frequently are

- 15 -

verified by a person without personal knowledge of all the relevant facts that defendant also insists to be necessary.

Understanding the words "a viable cause of action exists[,]" cited by the New York Court of Appeals in *Woodson,* has been interpreted by the same court as follows:

> CPLR 3215 does not contemplate that default judgments are to be rubber-stamped once jurisdiction and a failure to appear have been shown.  Some proof of liability is also required to satisfy the court as to the prima facie validity of the uncontested cause of action (*see*; 4 Weinstein-Korn-Miller, N.Y. Civ. Prac. ¶¶ 3215.22 - 3215.27).  The standard of proof is not stringent amounting only *to some firsthand confirmation of the facts*.

*Joosten v. Gale*, 129 A.D.2d 531, 514 N.Y.S.2d 729, 732 (1st Dep't 1987) (emphasis added).

*Silberstein v. Presbyterian Hosp.*, 96 A.D.2d 1096, 463 N.Y.S.2d 254, 256 (2d Dep't 1983) also requires "prima facie proof of a cause of action . . . ."  For example, the Third Department in *Muhlhahn v. Triple Cee Bar & Rest. Supply Co.,* 133 A.D.2d 996, 521 N.Y.S.2d 146, 147 (3d Dep't 1987) rejected defendant's claim that an affidavit was insufficient proof as it implicated defendant as the supplier of the cleaning agent that caused the relevant injury based on hearsay and conclusory statements and not on personal knowledge.  The court noted:

> [T]his overstates the level of proof required to support a default judgment.  A defendant upon default is deemed to have admitted all traversable allegations, including the basic allegation of liability . . . .  The affidavit need only allege enough to enable the court to determine jurisdiction lies and there is a cause of action upon which relief may be granted . . . . As the language of CPLR 3215(e) [now (f)] itself indicates, the level of proof required to uphold a complaint is all that is contemplated.

Plaintiffs allege, with no factual basis, that state courts issue default judgments "as a ministerial function by court clerical personnel who rely upon the representations of the attorneys who practice before the court," allowing Midland to obtain default judgments in the absence of proof of the existence of any debt.  (FAC ¶¶ 4, 55).  Although a state court defendant's default

"admits all factual allegations of the complaint and all reasonable inferences therefrom" (*Cohen v. a 1999 Pontiac, VIN No. 1G2WJ52M1XF237001*, 42 Misc. 3d 401, 976 N.Y.S.2d 782, 784 (Sup. Ct., Suffolk Cnty. 2013)), the default "does not give rise to a mandatory ministerial duty to enter a default judgment against [defendant]" (*Gagen v. Kipany Prods.*, 289 A.D. 2d 844, 735 N.Y.S.2d 225, 228 (3d Dep't 2001)).  Rather, a "plaintiff must present some proof of liability so that the reviewing court can determine that the 'prima facie validity' of the uncontested cause of action has been established."  *Id.* at 227.  State court procedure "does not contemplate that default judgments are to be rubber-stamped once jurisdiction and failure to appear have been shown. Some proof of liability is also required to satisfy the court as to the prima facie validity of the uncontested cause of action."  *Joosten*, 514 N.Y.S.2d at 732 (citing 4 Weinstein-Korn-Miller, NY Civ. Prac. ¶¶ 3215.22-3215.27).  Plaintiffs' effort to portray themselves as victims of default judgments lacking prima facie evidentiary support fails miserably.

**POINT II:     MIDLAND'S AFFIDAVITS ARE NEITHER FALSE NOR MISLEADING.**

Plaintiffs' argument that Midland's affidavits outlines by F&G in its default applications are materially misleading because they "misquoted the FDCPA" by omitting the qualifying language "by the debt collector" is not supported in fact or law.  *See* FAC ¶ 51 & n.9 (alleging that use the affidavit language as alleged is a "despicable practice" that has been vilified by "a mountain of case law"). Plaintiffs' theory is severely flawed for several reasons.[4]

### A.    A Formal Pleading is Not an "Initial Communication" Giving Rise to the Obligation to Provide the § 1692g(a) Notice

Plaintiffs fail to mention that a formal pleading in a collection action can never be considered an initial communication under the FDCPA. The weight of authority holds that the

---

[4] The allegedly offensive text *does not* appear in the affidavits for the debts of Plaintiffs Moore (MLR 56.1 ¶ 198(a), Pierre (MLR 56.1 ¶ 225) or Vazquez (MLR 56.1 ¶ 354(a)).

term "formal pleading" as used in the FDCPA should be interpreted to apply to a variety of court filings, rather than being limited to the definition of pleading found in Fed. R. Civ. P. 7. Courts have cited the Supreme Court's finding that an "apparent objective of the FDCPA was the preservation of creditors' judicial remedies" as a basis for declining to limit scope of the formal pleading exemption in the FDCPA to that of the Federal Rules. *See McKee v. Ingram Law Office, LLC*, No. 15-1201, 2016 WL 6157807, at *4 (N.D. Ala. Oct. 24, 2016) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995)). In addition, the Second Circuit has recognized that "even documents that are superfluously attached to a formal pleading are not initial communications within the meaning of the FDCPA." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017). Similarly, a federal court in Washington concluded that it would be "fundamentally nonsensical" to find that motions for summary judgment are not covered by the formal pleading exception. *Motherway v. Gordon*, No. 09-cv-05605, 2010 WL 2803052, at *3 (W.D. Wash. July 15, 2010); *see also Stephens v. Manley Deas Kochalski, LLC*, No. 16-3845, 2016 WL 6804441, at *3 (E.D. Pa. Nov. 16, 2016) (finding that a notice of appearance, although not an initial pleading or complaint, "are 'pleadings' within the broad meaning of the term as used in section 1692e(11)."[5] If a motion for summary judgment clearly falls within the FDCPA's exception for formal pleadings from the definition of initial communications, certainly an affidavit filed to support a motion for default judgment would as well.

As a debt collector is only required to provide the validation notice in its initial communication with a consumer, the affidavits at issue could never be required to include the language regarding who would deem a debt admitted as set forth in § 1692g(a). *See* 15 U.S.C. § 1692g(a). Plaintiffs, without any supporting authority whatsoever, attempt to expand the FDCPA's

---

[5] 15 U.S.C. § 1692e(11) includes the same exemption for formal pleadings as does § 1692g(d).

requirement from validation notices to affidavits. Tellingly, although Plaintiffs cite cases holding that omitting the words "by the debt collector" may violate 1692g in the context of a validation notice, ***none*** of the cases holds that the obligations of § 1692g can be expanded beyond validation notices. Certainly, none of the cases states that the § 1692g must be used in affidavits and, if it is, it must be quoted verbatim. Accordingly, all the cases that Plaintiffs identify as supposedly supporting their position are easily distinguishable. FACC ¶ 51 at n.9. For example, Plaintiffs cite *Diaz v. Residential Credit Solutions, Inc.*, in support of the claim that Midland's affidavits violated the FDCPA, but *Diaz* holds only that a ***validation notice*** must specify that failure to dispute the debt will lead the debt collector to assume the debt is valid. *Diaz v. Residential Credit Solutions, Inc.*, 965 F. Supp. 2d 249, 260 (E.D.N.Y. 2013). It says nothing about the fact that such language is required in an affidavit that is not sent to consumers.

### B.     The Affidavits are not Materially Misleading.

Any omission of the words "by the debt collector" in an affidavit in support of a motion for default judgment is immaterial. Material communications are those "that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Here, the affidavits at issue **were never served on Plaintiffs** and not one of the Plaintiffs alleges to have ever seen one of the affidavits or testified that they did. *See generally* FACC. "A false statement is only actionable under the FDCPA if it has the potential to affect the decision–making process of the least sophisticated [consumer]." *Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 223, 231 (W.D.N.Y. 2019) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015)). Accordingly, it is impossible for Plaintiffs to have been misled by the omission of the words "by the debt collector" if they never saw the affidavits at issue, as a document not seen could not affect the consumer's decision making

process.  Even if the Plaintiffs had seen the affidavits, they have presented no evidence that the collection letters referenced in the affidavits—which were sent to the Plaintiffs at the time MF purchased their debts—omitted the "by the debt collector" language.

**C.    Midland Sent Plaintiffs an Initial Communication Including the Proper § 1692g(a) Language via Letter Prior to Filing Suit.**

Although Plaintiffs now argue that "Midland never mailed Plaintiffs" initial letters to Plaintiffs Agoado, McNally and Sharkey correctly setting forth the proper § 1692g language, the paragraphs of F&G's Rule 56.1 Statement (¶¶ 61-64) cited in support fail to confirm the assertion. Rather, the cited paragraphs provide that Plaintiffs Agoado, McNally and Sharkey did not remember seeing the pre-suit letter when it was presented to them, years later, by opposing counsel at their depositions. F&G's Resp. to Pls.' 56.1 ¶¶ 61-64. Midland, on the other hand, produced copies of each initial letter sent to Agoado, McNally and Sharkey, including the proper § 1692g language, as well as affidavits attesting to the mailing of those letters. F&G's Resp. to Pls.' 56.1 ¶ 74. Further, Plaintiffs Agoado, McNally and Sharkey each confirmed that the initial collection letters were properly addressed. F&G's Resp. to Pls.' 56.1 ¶¶ 75-78. Further, "'section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor…. Nowhere does the statute require receipt of the Notice."' *Schneider v. Cont'l Serv. Group, Inc.*, No. 13-cv-5034 (JG)(MDG), 2013 WL 6579609, at *5 (E.D.N.Y. Dec. 16, 2013) (quoting *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999)).  Thus, Midland satisfied its duty to provide notice of rights under § 1692g(a) upon mailing the initial collection letters to Agoado, McNally and Sharkey. Plaintiffs' assertion that the letters were never mailed is a clear misrepresentation of the record.

**D.    No Cause of Action Arises under the FDCPA for Communications Not Directed to the Consumer**

Further, the language at issue is not actionable because it does not constitute a communication to the debtor. As the Second Circuit concluded in *Carlin*, "[t]he legislative history and stated purpose of the [FDCPA] thus indicate that the statute's primary purpose, particularly where § 1692g is implicated, is to regulate communications from the debt collector to the debtor." *Carlin*, 852 F.3d at 214. Similarly, the District of Connecticut dismissed a plaintiff's § 1692e claims where the plaintiff "failed to allege" how the allegedly wrongful statements "were materially false or misleading" where the "communications were directed at the court, rather than [the plaintiff] herself." *Klein v. Solomon & Solomon, P.C.*, No. 3:10CV1800 (WWE), 2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011). As communications to a court rather than to Plaintiffs are not actionable under the FDCPA, the claims asserted by Plaintiffs Agoado, McNally and Sharkey regarding the allegedly improper § 1692g(a)(3) language must fail.

Other courts have rejected claims nearly identical to those here. For example, *Jernigan v. Gen. Collection Co.*, No. 8:13CV178, 2013 U.S. Dist. LEXIS 178397 (D. Neb. Nov. 15, 2013) holds that the omission of the "by the debt collector" language in a notice accompanying a complaint, rather than in validation notice, was not material. In *Jernigan*, the defendant debt collection law firm had attached a notice to its debt collection complaint, which was served on the plaintiff, stating "[u]nless the debtor disputes the debt within thirty (30) days after receipt of this notice, it will be assumed that the debt is valid"). *Jernigan*, 2013 U.S. Dist. LEXIS 178397, at *2-3. The plaintiff contended that the notice was false and deceptive because it would cause the consumer to believe that the debt would be assumed to be valid *by the court* if she did not dispute the debt within thirty days. *Id.* at *7. The court held, as a matter of law, that the notice was neither false nor deceptive, and further that any misrepresentation of the 1692g notice was not material, because even if Jernigan believed that the county court would assume her debt valid if she did not dispute it, it would have no effect on Jernigan herself. *Jernigan*, 2013 U.S. Dist. LEXIS 178397 at

*8.

Plaintiffs attempt to distinguish *Jernigan*, arguing that the court did not employ the least sophisticated consumer standard as this Court does. This objection misses the mark, however, as courts in Nebraska and rest of the 8th Circuit employ the **unsophisticated consumer** standard, which is nearly the same as the **least sophisticated consumer** standard. *Spurgeon v. Frederick J. Hanna & Assocs., P.C.*, No. 4:14-CV-3098, 2015 WL 1246157, at *3 (D. Neb. Mar. 17, 2015). As the *Spurgeon* court explained, the standard is a slight modification of the least sophisticated consumer standard designed to protect "the consumer who is uninformed, naïve, or trusting, yet it admits an objective element of reasonableness" to shield collectors from liability for unrealistic or peculiar interpretations of writings. *Id.* Essentially, the standards are the same. *See* § 3(B), *supra*, explaining the least sophisticated consumer standard. What the *Jernigan* court actually determined is that the notice did not misled the plaintiff "to her detriment" and therefore was not "materially misleading." *Jernigan*, 2013 U.S. Dist. LEXIS 178397, at *8. This holding would not be any different had the court applied the least sophisticated consumer standard. The same holds true for the three Plaintiffs here – the affidavits at issue lacked "the potential to affect the decision-making process of the least sophisticated consumer" and therefore were not materially misleading. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). Statements that are immaterial are not actionable under § 1692e. *Id.* at 86. [6]

## CONCLUSION

Plaintiffs' FAC is, much like their previous complaints, based on speculation and inapposite case law. Plaintiffs' unsupported assertions, such as their claims that F&G commenced collection actions and procured default judgments against them without any proof of debt or

---

[6] F&G incorporates by reference Points III and IV of its Memorandum of Law in support of its Motion for Summary Judgment.

relying upon fraudulent affidavits have been shown to lack any basis in fact. Therefore, F&G respectfully requests that the Court grant summary judgment in its favor, dismiss all claims against it, deny Plaintiffs' motion for summary judgement in its entirety and grant such other and further relief as the Court deems just, proper and equitable.

Dated: Rochester, New York
        January 14, 2022

                                        Yours, etc.

                                        DAVIDSON FINK LLP


                                        By:_____ss/Glenn M. Fjermedal/_____
                                           Glenn M. Fjermedal, Esq.
                                           DAVIDSON FINK LLP
                                           *Attorneys for Defendant*
                                           *Forster & Garbus, LLP*
                                           28 East Main Street, Suite 1700
                                           Rochester, New York 14614
                                           Telephone:  (585) 546-6448