**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID AGOADO, LEEANN MCNALLY, CRAIG MOORE, CHRIS PIERRE, THOMAS SHARKEY AND DOREEN VAZQUEZ, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>MIDLAND FUNDING, LLC, MIDLAND FUNDING, LLC DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC, MIDLAND CREDIT MANAGEMENT, INC., RUBIN & ROTHMAN, LLC, FORSTER & GARBUS LLP, COHEN & SLAMOWITZ, LLP and PRESSLER & PRESSLER LLP,<br><br>     Defendants. | **Civil Action No.**<br>**2:14-cv-00018 (WFK)(ST)** |

**DEFENDANTS FORSTER & GARBUS, LLP'S**
**RESPONSE TO PLAINTIFFS' LOCAL**
**CIVIL RULE 56.1 STATEMENT OF UNCONTESTED MATERIAL FACTS**

**<u>Introduction</u>**

1.  Forster & Garbus, LLP's ("F&G") objects to Plaintiffs' use of argumentative headers to introduce various subsections of their Rule 56.1 statement. None of the headers are followed by citation to evidence as required by Local Rule 56.1(d) and therefore are improper.

2.  F&G objects to Plaintiffs' characterization of every debt at issue as an "alleged debt" as Plaintiffs provide no citation to evidence to support the assertion. As set forth below, Midland has provided documentary evidence as to the existence of each such debt.

3.  F&G objects to Plaintiffs' citations to documents without providing a citation to the corresponding documents anywhere in evidence.

4.  F&G limits its response to Plaintiffs' Local Civil Rule 56.1 Statement of

Uncontested Material Facts as they pertain to F&G and Plaintiffs LeAnn McNalley ("McNally") and Thomas Sharkey ("Sharkey").

**Defendants' Collection Action Against Plaintiffs**

*Plaintiff Agoado (Chase Account)*

1.      On January 23, 2012, C&S[1] filed a lawsuit in Suffolk County District Court against Mr. Agoado as to the alleged Chase account, with MF named as plaintiff. (Frank Decl. Ex. 1-A (select court documents from Agoado-Chase state-court collection action) at S&S290–292 (summons and complaint, stating causes of action for breach of contract and account stated)).

          **Response:**      Not Applicable ("N/A").

2.      On July 25, 2012, C&S filed a default judgment application in the suit as to Plaintiff Agoado's alleged Chase account. (Frank Decl. Ex. 1-A at S&S119–128 (default judgment application)).

          **Response:**      N/A.

3.      The MCM-issued affidavit included in this default judgment application for Plaintiff Agoado's alleged Chase account states, at Paragraph 9:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

> (Frank Decl. Ex. 1-A at S&S126) (emphasis added).

          **Response:**      N/A.

---

[1] "Defendants" collectively refers to: Midland Funding, LLC d/b/a as Midland Funding of Delaware, LLC ("MF") and Midland Credit Management, Inc. ("MCM") (together, "Midland" or "Midland Defendants"); and Cohen & Slamowitz, LLP ("C&S"); Forster & Garbus LLP ("F&G"); Pressler & Pressler LLP ("P&P"); and Rubin & Rothman, LLC ("R&R") (together, "Attorney Defendants").

4.      The default judgment against Mr. Agoado as to his alleged Chase account was docketed by the clerk for the First District Court of Suffolk County on August 28, 2012. With interest and costs included, the judgment amount as entered was $8,830.94. (Frank Decl. Ex. A-1 at S&S130 (transcript of judgment)).

**Response:**      N/A.

*Plaintiff Agoado (Household Account)*

5.      On January 23, 2012, C&S filed a lawsuit in Suffolk County District Court against Mr. Agoado as to the alleged Household account, with MF named as plaintiff. (Frank Decl. Ex. 1-B (select court documents from Agoado-Household state-court collection action) at S&S313–315 (summons and complaint, stating causes of action for breach of contract and account stated)).

**Response:**      N/A.

6.      On July 24, 2012, C&S filed a default judgment application in the suit as to Plaintiff Agoado's alleged Household account. (Frank Decl. Ex. 1-B at S&S108–117 (default judgment application)).

**Response:**      N/A.

7.      The MCM-issued affidavit included in this default judgment application for Plaintiff Agoado's alleged Household account states, at Paragraph 8:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-B at S&S115) (emphasis added).

**Response:**      N/A.

8.      The default judgment against Mr. Agoado as to his alleged Household account was docketed by the clerk for the First District Court of Suffolk County on August 28, 2012. With interest and costs included, the judgment amount as entered was $12,508.15. (Frank Decl. Ex. 1-B at S&S13 (transcript of judgment)).

    **Response:**      N/A.

*Plaintiff McNally*

9.      On February 6, 2012, F&G filed a lawsuit in Suffolk County District Court against Ms. McNally, with MF named as plaintiff. (Frank Decl. Ex. 1-C (select court documents from McNally state-court collection action) at F&G 002–003 (summons and complaint, stating causes of action for breach of contract and account stated)).

    **Response:**      Admit. Further responding, Plaintiff McNally went by the name "Leeann Derosa" at the time. *See id.*

10.     On May 22, 2012, F&G filed a default judgment application in the suit as to Plaintiff McNally's alleged account. (Frank Decl. Ex. 1-C at F&G 006–013 (default judgment application)).

    **Response:**      Admit that on or about May 22, 2021, F&G filed a default judgment application in the suit as to Plaintiff McNally's account. F&G denies that McNally's account was an "alleged" account, as McNally admitted that she borrowed $5,000 from Beneficial, funded by HSBC Bank USA, N.A., and failed to repay the loan. Fjermedal Decl. Ex. F (excerpts from McNally Dep.) at 29:4-7; 32:2-4; 55:22-57:23; 63:9-20; 190:3-25; Confidential Murphy-McNally Ex. D (Acceptance of credit in form of $5,000 check payable to McNally); Murphy-McNally Ex. C (sample copy of offer of credit and governing terms that Beneficial provided to McNally).

4

11.     The MCM-issued affidavit included in this default judgment application for Plaintiff McNally's alleged account states, at Paragraph 9:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-C at F&G 008) (emphasis added).

**Response:**     Admit but for the characterization of McNally's account as "alleged," as its existence was established by F&G. *See* Response to ¶ 10.

12.     The default judgment against Ms. McNally was docketed by the clerk for the Second District Court of Suffolk County on May 29, 2012. With interest and costs included, the judgment amount as entered was $7,216.41. (Frank Decl. Ex. 1-C at F&G 016 (transcript of judgment).

**Response:**     Admitted in part; denied in part. F&G admits that the default judgment against Ms. McNally was docketed by the clerk for the Second District Court of Suffolk County in the amount of $7,216.41. F&G denies that this took place on May 29, 2012, as the judgment is dated June 27, 2012. Frank Decl. Ex. 1-C at F&G016.

13.     A satisfaction as to this judgment was submitted in Suffolk County Supreme Court on July 26, 2012, and filed by the Suffolk County Clerk on September 4, 2012, for Plaintiff McNally's alleged account. (Frank Decl. Ex. 1-C at F&G 022 (satisfaction)).

**Response:**     Admitted but for Plaintiff's characterization of the debt as "alleged." *See* Response to ¶ 10.

*Plaintiff Sharkey*

14.     On February 6, 2012, F&G filed a lawsuit in Suffolk County District Court against

Mr. Sharkey, with MF named as plaintiff. (Frank Decl. Ex. 1-D (select court documents from Sharkey state-court collection action) at F&G 077–078 (summons and complaint, stating causes of action for breach of contract and account stated)).

> **Response:**     Admitted in part. F&G admits all facts of this paragraph but for the date F&G filed suit, which F&G 77 indicates was February 14, 2012. *See* F&G 77.

15.     On May 22, 2012, F&G filed a default judgment application in the suit as to Plaintiff Sharkey's alleged account. (Frank Decl. Ex. 1-D at F&G 081–088 (default judgment application)).

> **Response:**     F&G admits all facts of this paragraph but denies Plaintiffs' characterization of the account as "alleged." Sharkey admitted that he had a Bank of America credit card, that he used the credit card and that he failed to make all required payments on the card. Fjermedal Decl. Ex. G (excerpts from Sharkey Dep.) at 25:12-26:5; 32:12-21; 36:20-22; 142:18-22. Sharkey is of the mistaken belief that creditors cannot sell accounts in default once they are written off as bad debt. Fjermedal Decl. Ex. G at 289:20-290:9.

16.     The MCM-issued affidavit included in this default judgment application for Plaintiff Sharkey's alleged account states, at Paragraph 9:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt will be assumed valid.

(Frank Decl. Ex. 1-D at F&G 083) (emphasis added).

> **Response:**     Admit but for Plaintiffs' characterization of Sharkey's debt as "alleged." *See* Response to ¶ 15.

17.     The default judgment against Mr. Sharkey was docketed by the clerk for the Second District Court of Suffolk County on May 29, 2012. With interest and costs included, the judgment amount as entered was $7,856.92. (Frank Decl. Ex. 1-D at F&G 091 (transcript of judgment)).

    **Response:**     Admit.

18.     On June 20, 2012, F&G began the process of garnishing Mr. Sharkey's wages. (Frank Decl. Ex. 1-D at F&G 096 (income execution notice for employer)).

    **Response:**     Admit.

19.     On September 12, 2012, F&G notified the Sheriff of Suffolk County of a payment arrangement with Mr. Sharkey, for $4,000 initially, and $200 monthly thereafter. (Frank Decl. Ex. 1-D at F&G 098 (notice of payment arrangement)).

    **Response:**     Admit in part. F&G denies that the $200 monthly payments were to continue indefinitely. The $200 monthly payments were to cease upon satisfaction of the debt. *See* Frank Decl. Ex. 1-D at F&G 98.

20.     A satisfaction as to the judgment against Mr. Sharkey was submitted in Suffolk County Supreme Court on April 1, 2014, and filed by the Suffolk County Clerk on April 17, 2014. (Frank Decl. Ex. 1-D at F&G 100 (satisfaction)).

    **Response:**     Admit.


    *Plaintiff Vazquez*

21.     On or about February 2, 2011, R&R filed suit against Ms. Vazquez in Suffolk County District Court, with MF named as plaintiff. (Frank Decl. Ex. 1-E (select court documents from Vazquez state-court collection action) at R&R #102–#103 (summons and complaint, stating causes of action for breach of contract and account stated)).

    **Response:**     N/A.

22.     The complaint filed by R&R against Ms. Vazquez on Midland's behalf identified Chase as MF's "assignor" with respect to the alleged debt in question. (Frank Decl. Ex. 1-E at R&R #103).

      **Response:**     N/A .

23.     On or about June 7, 2011, R&R filed a default judgment application in the suit as to Plaintiff Vazquez's alleged account. (Frank Decl. Ex. 1-E at R&R #118–#122 (default judgment application)).

      **Response:**     N/A.

24.     The MCM-issued affidavit included in this default judgment application referenced only Chase with respect to the source of the account, and did not identify any prior owner(s). (Frank Decl. Ex. 1-E at R&R #119–#121 (affidavit for default judgment application))

      **Response:**     N/A.

25.     The default judgment against Ms. Vazquez was rendered and docketed by the clerk for the Fourth District Court of Suffolk County on June 17, 2011. With interest and costs included, the judgment amount as entered was $11,131.48. (Frank Decl. Ex. 1-E at R&R 130 (transcript of judgment)).

      **Response:**     N/A.

26.     On June 17, 2011, R&R commenced the garnishment process against Ms. Vazquez. (Frank Decl. Ex. I-4 at R&R #134–#139 (income execution documents for employer)).

      **Response:**     N/A.

27.     Ms. Vazquez had paid Midland at least $5,945.84.00 in connection with the alleged debt in question by December 2013, shortly after Plaintiffs' class action lawsuit was commenced. (Frank Decl. Ex. 3-B at MCM-0087–0088 (Midland payment history for Vazquez)).

**Response:** N/A.

**Discovery Shows Defendants Fraudulently Procured Judgments On Unprovable Debt**

*Midland's Sellers Disclaimed Accuracy Of The Data Provided At Purchase*

28.     During discovery in this litigation, Defendants produced documents in response to Plaintiffs' demands for documents demonstrating how MF purchased alleged debts. When Midland acquired debt, the entities from which it purchased could not provide an analysis of the original allegedly unpaid charge, the fees, the interest, etc. for each alleged debt, and instead simply provided a dollar amount for the account balance as a data item in a spreadsheet, meanwhile disclaiming the accuracy of that amount. The July 30, 2010 purchase agreement for Plaintiff Vazquez's alleged account states that "'Current Balance' means the approximate unpaid balance, expressed in United States Dollars, owed on each Account as of the date of charge-off . . .'" (Frank Decl. Ex. 2-A at Part 1.7, (MCM-1017)) (emphasis added).

**Response:** Denied. See Midland's response to Plaintiff's SUMF ¶ 28.

*Midland's Secondary Debt Is Defective Due To Broken Chain Of Title*

29.     During discovery in this litigation, Defendants produced documents in response to Plaintiffs' demands for proof of, inter alia, MF's ownership of the alleged debts that were the subject of the underlying state-court collection actions. As to Plaintiff Vazquez, the documents produced show Midland was not the first debt buyer to own Plaintiff Vazquez's alleged account. According to the document that Midland produced as the purchase agreement for Plaintiff Vazquez's alleged account, dated July 30, 2010, the entity that sold this to MF was not an original lender, but a fellow debt buyer, which could be either SquareTwo Financial Corporation, or one of two purported Square Two subsidiaries, CACH, LLC or CACV of Colorado, LLC. (Frank Decl. Ex. 2-A (excerpts from Vazquez purchase agreement) at MCM-1017 (agreement's introductory

paragraph)).

**Response:** Denied. See Midland's response to Plaintiff's SUMF ¶ 29. MF, "however", purchased each account at issue other than Vazquez's account directly from the original creditor, as shown by the following evidence:

(1) MF purchased McNally's Beneficial account from original creditor HSBC Consumer Lending (USA), which sold it on behalf of Beneficial Company LLC. Murphy-McNally Ex. A (purchase agreement between MF and HSBC Consumer Lending (USA) on behalf of Beneficial Company LLC under which MF purchased McNally's Beneficial account); Murphy-McNally Ex. C (reflecting fact that account MF purchased was a Beneficial loan issued to McNally); and

(2) MF purchased Sharkey's Bank of America card from FIA Card Services, N.A., a wholly-owned subsidiary of Bank of America. Murphy-Sharkey Ex. A (purchase agreement between MF and FIA Card Services, N.A., a wholly owned subsidiary of Bank of America Corporation, under which MF purchased Sharkey's Bank of America account); Murphy-Sharkey Ex. C (copy of statement issued to Sharkey on his Bank of America account purchased by MF).

30.     The July 30, 2010 purchase agreement for Plaintiff Vazquez's alleged account states that "'Current Balance' means the approximate unpaid balance, expressed in United States Dollars, owed on each Account as of the date of charge-off . . .'" (Frank Decl. Ex. 2-A at Part 1.7, (MCM-1017)) (emphasis added).

**Response:**     N/A.

31.     Midland's internal records as to this alleged account reflect that it was originated by Washington Mutual ("WaMu"), then assigned to Chase, although Midland has furnished no assignments from WaMu to any other entity or from Chase to any other entity. (Frank Decl. Ex. 2-B (Midland data sheet for Vazquez account) at MCM-0068).

**Response:**     N/A.

32.     Midland's internal records state that electronic data concerning Ms. Vazquez's alleged Chase account were "provided by SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC" in connection with a "transfer[] on or about 10/27/2010 in connection with the sale of accounts from provided by SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC to Midland Funding LLC"—but the records do not identify which of these three entities was the purported assignor of the alleged account. (Frank Decl. Ex. 2-B at MCM-0068).

**Response:**     N/A.

33.     Midland's internal records concerning Ms. Vazquez's alleged Chase account also state that, with respect to "Chain Of Title(s)," there is "No Information available." (Frank Decl. Ex. 2¬B at MCM-0083).

**Response:**     N/A.

34.     Midland has produced documents labeled "ASSIGNMENT AND BILL OF SALE" and showing a date of October 27, 2010, that variously identify SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC as entities which have assigned portfolios accounts to MF—but none of these documents identifies which of those three entities (if any) assigned Ms. Vazquez's alleged Chase account to MF. (Frank Decl. Ex. 2-B (purported assignment documents for Vazquez account) at MCM-0062–0067).

**Response:**     N/A.

*Midland Told The Attorney Defendants There Was No Account-Level Documentation*

35.     Midland and the Attorney Defendants use the You've Got Claims program ("YGC") to allow their respective computer systems to interface concerning debt-collection activities being performed by the Attorney Defendants on Midland's behalf. (Frank Decl. Ex. 3-A

("MCM Firm Manual" provided by Midland to Attorney Defendants) at Part 15.1 (MCM-1076)).

        **Response:**    Admit.

36.    When Midland places an account with any of the Attorney Defendants for the commencement of state-court collection suit, Midland uses YGC to communicate to the firm the alleged balance on the account. (Frank Decl. Ex. 3-A at Part 15.2.1.1 (MCM-1078 and 1140).

        **Response:**    Denied in part and admitted in part. The section cited by Plaintiffs provides that outside counsel must determine the appropriate suit amount using MCM data as a starting point and taking other information into consideration, including, but not limited to: balance information, payment/adjustment data, payments received by the firm, available media and all applicable local, state and federal laws, rules and regulations. Frank Decl. Ex. 3-A at Part 15.2.1.1 (MCM-1078). Admit that Midland uses YGC, among other methods, to communicate with outside counsel such as F&G.

37.    Midland uses YGC to send the Attorney Defendants a "Record 1" to tell the firm whether account-level documentation[2] is or is not available as to that account. (Frank Decl. Ex. 3-A at Part 22.1 (MCM-1119–1120)).

        **Response:**    Denied. The manual Plaintiffs cite actually states that "MCM either receives media at the time of purchase or proactively request media; that media may be available on the media website at the time of placement <u>or sometime after</u>." Frank Decl. Ex. 3-A at Part 22.1.2 (MCM-1119) (emphasis added). The manual makes no reference at all to instances in which account-level documentation is not available. *See id.* at MCM-

---

[2] The term "account-level documentation" as used herein means records (1) created by an original lender, (2) at or near the time of the events (charges and payments) that they purport to describe, (3) pursuant to that entity's standard business practices, and (4) that were mailed to the consumer prior to account charge-off. In New York State, account-level documentation generally includes, among other business records, signed cardholder agreements, account statements, and proof of mailing of account statements.

1119 to 1120. Plaintiff's contention to the contrary lacks evidentiary support as required by Local Rule 56.1(d).

38.     When no account-level documentation is available, the Record 1 alert will read "Media Available: N." (*Id.*).

      **Response:**     Denied. The material Plaintiffs cite actually states that "N" means "Media is not available via MCM media website at the time of placement. Firms should review media availability via MCM media website and request required media via YGC or the Vendor Specialist." Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) (emphasis added). Plaintiffs purposely misrepresent the meaning of this notation in an effort to bolster their claims. *See* Midland's Memorandum of Law in Support of Motion for Summary Judgment at Section C(5) (addressing the meaning of "Media Available: N" in a more complete fashion).

39.     Whenever Midland sends a communication to any of the Attorney Defendants, Midland's YGC logs reflect the event as a "Record 9"; when an Attorney Defendant sends a communication to Midland, the event is categorized as a "Record 39." (Frank Decl. Ex. 3-A at Table 7, (MCM-1095)).

      **Response:**     Denied. Reference to Table 7 reflects that when Midland sends a record to an Attorney Defendant such as F&G, it may be coded "Record 1," "Record 2," "Record 3," "Record 4," "Record 5," "Record 7," "Record 8," "Record 9," "Record 18," or "Record 24." When an Attorney Defendant sends a record to MCM, it may be coded as "Record 30," "Record 31," "Record 34," "Record 35," "Record 39," "Record 41," "Record 42" or "Record 46." Frank Decl. Ex. 3-A at Table 7, (MCM-1095). Further responding, Table 7 makes no representation that it is an exhaustive list of "Record" codes. *See id.*

40.     When interfacing with Midland via a Record 39 sent by YGC, the Attorney Defendants rely on a list of "p-codes" each of which pertains to a particular event notification or document request. (Frank Decl. Ex. 3-A at "Record 39[:] P-Codes" (MCM-1140)).

      **Response:**     Admitted in part and denied in part. F&G admits that an attorney defendant may use a "P-Code" when communicating with Midland to request particular documents. Denied that the table indicates that this is the only method by which F&G and other Attorney Defendants may issue a document request. For instance, F&G may also obtain documents from their Vendor Specialist. *See* Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) ("Firms should review media availability via MCM media website and request required media via YGC or the Vendor Specialist").

41.     One of the p-codes is "*CC:S309," by which an Attorney Defendant may request a affidavit proving chain of title, including documentary proof attached thereto, in connection with a collection suit being prosecuted in a New York State court. (Frank Decl. Ex. 3-A at MCM-1110).

      **Response:**     Admit.

42.     Upon placing Plaintiff Vazquez's alleged account with R&R, Midland informed R&R that no account-level documentation was available as to Plaintiff Vazquez's alleged account. (Frank Decl. Ex. 3-B (Midland's YGC log re Vazquez account) at MCM-0094 ("Media Available: N" appears on upper-right of page)).

      **Response:**     N/A.

43.     No chain-of-title documentation was provided to R&R prior to its procuring the default judgment on Midland's behalf against Ms. Vazquez. (Frank Decl. Ex. 3-B at MCM-0096–0097).

      **Response:**   N/A.

44.   On June 24, 2011—after the default judgment against Ms. Vazquez had been effectuated—R&R sent Midland a YGC communication requesting chain-of-title documentation as to Ms. Vazquez's alleged Chase account; this request was never fulfilled. (Frank Decl. Ex. 3¬B at MCM-0095 (Midland's YGC log entry for "6/24/2011" shows Record 39 from R&R to Midland using "*CC:S309" to request "CHAIN OF TITLE"); Frank Decl. Ex. 3-C (R&R's YGC log re Vazquez account) at R&R #147 (showing "CHAIN OF TITLE REQUESTED" on "06/24/11").

      **Response:**   N/A.

45.   When Midland placed Plaintiff Sharkey's alleged account with F&G, Midland informed F&G that no account-level documentation was available for Plaintiff Sharkey's alleged account. (Frank Decl. Ex. 3-D (Midland's YGC log re Sharkey account) at MCM-0687 ("Media Available: N" appears at top-right of page); Frank Decl. Ex. 3-E (F&G's YGC log re Sharkey account) at F&G 103 ("Media Available N" appears as "Message[ Number] 008")).

      **Response:**   Denied. Plaintiffs misrepresent the meaning of "Media Available: N." In fact, this notation means "Media is not available via MCM media website <u>at the time of placement</u>. F&G review media availability via MCM media website and <u>request required media via YGC or the LED Vendor Specialist.</u>" Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) (emphasis added).

46.   When Midland placed Plaintiff McNally's alleged account with F&G, Midland informed F&G that no account-level documentation was available for Plaintiff McNally's alleged account. (Frank Decl. Ex. 3-F (Midland's YGC log re McNally account) at MCM-0342 ("Media Available: N" appears at top-right of page); Frank Decl. Ex. 3-G (F&G's YGC log re McNally account) at F&G 025 ("Media Available N" appears as "Message[ Number] 008")).

**Response:**      Denied. Plaintiffs misrepresent the meaning of "Media Available: N." In fact, this notation means "Media is not available via MCM media website <u>at the time of placement</u>. F&G reviewed media availability via MCM media website and <u>request required media via YGC or the Vendor Specialist.</u>" Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) (emphasis added).

47.      When Midland placed Plaintiff Agoado's alleged Household account with C&S, Midland informed C&S that no account-level documentation was available for Plaintiff Agoado's alleged Household account. (Frank Decl. Ex. 3-H (Midland's YGC log re Agoado-Household account) at MCM-1214 ("Media Available: N" appears at top-right of page)).

**Response:**      N/A.

48.      On November 28, 2011, within days after Midland had placed Plaintiff Agoado's alleged Chase account with C&S, C&S requested the "Last Billing Statement" as to this account, but Midland rejected that request, informing C&S that "DOCUMENT TYPE NOT AVAILABLE FOR PORTFOLIO." (Frank Decl. Ex. 3-I (Midland's YGC log re Agoado-Chase account) at MCM-0297; Frank Decl. Ex. 3-J (C&C's YGC log re Agoado-Chase account) at S&S-151).

**Response:** N/A.

**Plaintiffs Suffered Injuries Due To Defendants' Misconduct**

49.      Ms. Vazquez testified about how Midland subjected her to wage garnishments as a result of the judgment against her. (Frank Decl. Ex. 4-A at 41:21-42:2; 172:12-:23).

**Response:**      N/A.

50.      Ms. Vazquez does not believe she ever owed Midland anything. (Frank Decl. Ex. 4-A at 63:9-14; 178:4-179:16).

**Response:**      N/A.

51.     Mr. Sharkey testified that he did not owe the debt because the original lender had told him they were writing off the debt. (Frank Decl. Ex. 4-B at 51:15-52:15; 53:8-:19).

**Response:**     Admit. Sharkey further testified that, when he discussed his former Bank of America account with F&G, it was his understanding that Bank of America had "sold the debt to Midland Funding." Fjermedal Decl. Ex. at 57:12-18.

52.     Mr. Sharkey did not know the amount he purportedly owed, (*id*. 143:10-:18), but paid because he was "afraid and . . . harassed," (*id*. 64:13-65:7; 102:14-18; 170:21-171:2).

**Response:**     Admit that Sharkey did not know the exact amount he owed, as he could not confirm whether $6,959.54 was the proper balance, but he did agree that there was some balance that was not paid. Frank Decl. Ex. 4-B at 143:10-22. Admit that Sharkey testified that he paid Midland "[b]ecause I was afraid and I was harassed" (Frank Decl. Ex. 4-B at 64:23-25), though he further testified that he never told the sheriff's office of F&G that he didn't think he owed the debt but thought that if he did not pay it, F&G would go to his employer, which he believed would be embarrassing, so he voluntarily agreed to pay off the debt. Frank Decl. Ex. 4-B at 188:2-23. Mr. Sharkey also testified that once he found out F&G had obtained a judgment against him, he "just figured that they had [the judgment] … and I had to pay it." Frank Decl. Ex. 4-B at 101:13-102:8.

53.     Mr. Sharkey never received an "itemized account of what [he] owed." (*Id*. 71:23-:24). Nevertheless, he paid $500.00 per month until the debt was fully paid. (*Id*. 74:19-75:7; 75:19-76:7; 187:7-:15). To this day, he does not know if that was the correct amount. (*Id*. 75:11-:12; 158:9-:12).

**Response:**     As to the first contention, regarding whether Sharkey obtained an itemized receipt, deny that page 71, cited to support it, is included in Frank Decl. Ex. 4-B.

17

Admit that Sharkey stated that he didn't receive an itemized account of what he owed (Fjermedal Decl. Ex. G at 71:21-24), but he further testified that he never asked F&G for an itemized statement (JFjermedal Decl. Ex. G at 72:16-22).

As to the second contention, that Sharkey paid $500.00 per month until the debt was fully paid, deny that pages 74-76 are included in Frank Decl. Ex. 4-B. Admit that Sharkey testified that he paid $500 to the court per month and then made a lump payment at the end to pay the debt off. Frank Decl. Ex. 4-B at 187:6-15.

As to the third contention, that Sharkey does not know if "that" was the correct amount, deny that page 75 is included in Frank Decl. Ex. 4-B. Admit that Sharkey testified that "I could have, I could not have [owed that amount]. I don't know." Frank Decl. Ex. 4-B at 158:9-12. Further, Sharkey testified that he had no facts to dispute the amount of debt reflected in his April 2009 statement from Bank of America of $6,959.54 (Fjermedal Decl. Ex. G at 273:4-18), that he never notified MCM that he disputed the debt, that he never requested validation of the debt and that he never contacted MF or MCM to discuss the debt (Fjermedal Decl. Ex. G at 309:5-311:6; 315:2-5).

54.     Mr. Sharkey testified that the language of the FDCPA recited in the default-judgment affidavit that Defendants filed against him in state court left him with the false impression there was a court presumption against him due to his alleged failure to dispute the debt after receiving Midland's validation letter. (*Id.* 383:8-21).

**Response:**     Denied as stated. Sharkey did not testify that he ever saw the default judgment affidavit before his deposition. *See* Frank Decl. Ex. 4-B at 381:14-383:21. Sharkey agreed with his counsel that at the time of his deposition, reviewing paragraph 9 of the default judgment affidavit, he assumed that the affidavit's text meant that the debt

would be assumed valid by the court. Frank Decl. Ex. 4-B at 382:16-383:21.

55.     Ms. McNally testified that she believes she paid more than she should have in order to resolve the judgment. (Frank Decl. Ex. 4-C at 53:5-:11; 54:20-55:11; 172:11-:22).

       **Response:**     Admit. Further responding, McNally admitted that she borrowed $5,000 from Beneficial (Fjermedal Decl. Ex. F at 32:2-4), that Beneficial charged interest in the loan (Fjermedal Decl. Ex. F at 32:11-16), that she received a check in the amount of $5,000 from Beneficial that she signed, thus entering into a loan agreement with Beneficial (Fjermedal Decl. Ex. F at 55:22-58:2) and that she understood at her deposition how the judgment against her came to total $7,216.41 (Fjermedal Decl. Ex. F at 104:20-107:24). With interest and costs included, the judgment amount as entered was $7,216.41. Frank Decl. Ex. 1-C at F&G 016 (transcript of judgment).

56.     Ms. McNally was emotionally harmed by Defendants' conduct. She saw a psychiatrist for her ills. (*Id.* 166:14-:21; 167:21-168:14).

       **Response:**     Admit that McNally so testified. Further responding, McNally also testified that she was not sure if F&G did anything wrong in connection with collecting her debt but felt wronged because her bank account became frozen after she failed to satisfy the judgment against her. Fjermedal Decl. Ex. F at 133:14-134:10.

57.     Mr. Agoado testified that the accounts in question were opened without his knowledge by his now-deceased wife, who struggled with gambling addiction. (Frank Decl. Ex. 4-D at 10:16-:18; 11:22-:25; 13:18-:22; 14:3-:12; 15:8-:10; 38:5-42:4; 43:23-45:4; 45:2-:4; 45:23-46:16; 46:21-47:5; 47:23-50-2; 64:10-:14; 67:8-:23; 68:12-69:6; 70:15-71:13; 107:7-:9; 142:5-:7).

       **Response:**     N/A.

58.     Midland and C&S were aware of Mr. Agoado's noninvolvement with these alleged accounts at the time of the underlying collection actions against him. (*Id*. 39:8-41:2; 56:25-57:24).

       **Response:**     N/A.

59.     Mr. Agoado was left emotionally distressed by Midland and C&S's conduct against him, which culminated with publicly recorded judgments that negatively affect his personal and financial reputation. (*Id*. 175:9-19).

       **Response:**     N/A.

**Defendants Never Mailed Plaintiffs Documents Correctly Quoting The FDCPA**

60.     At deposition defense counsel introduced the default-judgment affidavit submitted in state court against each Plaintiff, as an exhibit for that Plaintiff to review during deposition, counsel asked, "Do you remember receiving this document in the mail?" (Frank Decl. Ex. 4-B at 150:6–:21).

       **Response:**     Denied as stated. Admit that the cited portion of the Sharkey deposition shows that defense counsel showed Mr. Sharkey Exhibit Sharkey 6 and asked if Mr. Sharkey recognized the document. Denied that Plaintiffs cited to evidence as to what any of several defense attorneys asked any Plaintiff other than Mr. Sharkey.

61.     Plaintiff Sharkey does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-B at 306:2–:22).

       **Response:**     Denied. Page 306 of the Sharkey deposition is not included as part of Frank Decl. Ex. 4-B. Reference to the page 306 of the deposition transcript shows that it does not provide support for the facts asserted in this paragraph.

62.     Plaintiff McNally does not recall any letter in the mail from Midland prior to suit

being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-C at 220:15–221:5).

      **Response:**    Denied. The cited text provides no support for the alleged facts identified. To the contrary, the cited testimony establishes that Ms. McNally testified that McNally Exhibit 19, marked MCM-311 to MCM-313, did not look familiar.

63.    Plaintiff Agoado does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-D at 88:21–89:12).

      **Response:**    N/A.

64.    Defendants have provided no proof of mailing of any such letters.

      **Response:**    Denied. Plaintiffs fail to provide a citation to evidence which would be admissible as required under Local Rule 56.1(d).

Dated: January 14, 2021

            Respectfully submitted,

            **Davidson Fink, LLP**

            Glenn M. Fjermedal, Esq.
            28 East Main Street, Suite 1700
            Rochester, New York 14614
            Tel: (585) 546-6448
            Fax: (585) 546-8125
            mbjohnson@grsm.com

            *Attorneys for Defendants,*
            *Forster & Garbus,, LLP,*
            *60 Motor Parkway*
            *Commack, NY 11725*
            *Tel: (631) 393-9400*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID AGOADO, LEEANN MCNALLY, CRAIG MOORE, CHRIS PIERRE, THOMAS SHARKEY AND DOREEN VAZQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIDLAND FUNDING, LLC, MIDLAND FUNDING, LLC DBA IN NEW YORK AS MIDLAND FUNDING OF DELAWARE, LLC, MIDLAND CREDIT MANAGEMENT, INC., RUBIN & ROTHMAN, LLC, FORSTER & GARBUS LLP, COHEN & SLAMOWITZ, LLP and PRESSLER & PRESSLER LLP,<br><br>Defendants. | Civil Action No.<br>**2:14-cv-00018 (WFK)(ST)** |

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January, 2021, a copy of **DEFENDANT FORSTER & GARBUS, LLP RESPONSE TO LOCAL CIVIL RULE 56.1 STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was saved via email to all counsel of record.


Glenn M. Fjermedal

1195301/63861550v.1