**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

DAVID AGOADO, LEEANN MCNALLY, :
CRAIG MOORE, CHRIS PIERRE, : Case No. 2:14-cv-00018-WFK-AKT
THOMAS SHARKEY, and DOREEN :
VAZQUEZ, individually and on behalf of all :
others similarly situated :
 :
   Plaintiffs :
 :
v. :
 :
 : **PRESSLER AND PRESSLER, LLP'S**
MIDLAND FUNDING, LLC, MIDLAND : **RESPONSE TO PLAINTIFFS' LOCAL**
FUNDING, LLC DBA IN NEW YORK AS : **CIVIL RULE 56.1 STATEMENT OF**
MIDLAND FUNDING OF DELAWARE, : **UNCONTESTED MATERIAL FACTS**
LLC, and MIDLAND CREDIT : **IN SUPPORT OF PLAINTIFFS'**
MANAGEMENT, INC., RUBIN & : **MOTION FOR PARTIAL SUMMARY**
ROTHMAN, LLC, FORSTER & GARBUS : **JUDGMENT**
LLP, COHEN & SLAMOWITZ, LLP, and :
PRESSLER AND PRESSLER, LLP :
 :
   Defendants :
 :

   Defendant Pressler and Pressler, LLP ("P&P")[1] by and through their undersigned

counsel, respectfully submit this response to Plaintiffs' Local Civil Rule 56.1 Statement of

Uncontested Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

## <u>Introduction</u>

   A.  P&P objects to Plaintiffs' use of argumentative headers to introduce various

subsections of their Rule 56.1 statement. None of the headers are followed by citation to

evidence as required by Local Rule 56.1(d) and therefore are improper.

   B.  P&P objects to Plaintiffs' characterization of every debt at issue as an "alleged

debt" as Plaintiffs provide no citation to evidence to support the assertion.

C.      P&P objects to Plaintiffs' citations to documents without providing a citation to the corresponding documents anywhere in evidence.

**Defendants' Collection Action Against Plaintiffs**

*Plaintiff Agoado (Chase Account)*

1.      On January 23, 2012, C&S[2] filed a lawsuit in Suffolk County District Court against Mr. Agoado as to the alleged Chase account, with MF named as plaintiff. (Frank Decl. Ex. 1-A (select court documents from Agoado-Chase state-court collection action) at S&S000290–000292 (summons and complaint, stating causes of action for breach of contract and account stated)).

        **Response:**      This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

2.      On July 25, 2012, C&S filed a default judgment application in the suit as to Plaintiff Agoado's alleged Chase account. (Frank Decl. Ex. 1-A at S&S000119–000128 (default judgment application)).

        **Response:**      This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

3.      The MCM-issued affidavit included in this default judgment application for Plaintiff Agoado's alleged Chase account states, at Paragraph 9:

        It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection

---

[1] Note that, since the inception of this case, Pressler and Pressler, LLP changed its name to "Pressler, Felt & Warshaw, LLP".

[2] "Defendants" collectively refers to: Midland Funding, LLC d/b/a as Midland Funding of Delaware, LLC ("MF") and Midland Credit Management, Inc. ("MCM") (together, "Midland" or "Midland Defendants"); and Cohen & Slamowitz, LLP ("C&S"); Forster & Garbus LLP ("F&G"); Pressler & Pressler LLP ("P&P"); and Rubin & Rothman, LLC ("R&R") (together, "Attorney Defendants").

Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-A at S&126) (emphasis added).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

4.     The default judgment against Mr. Agoado as to his alleged Chase account was docketed by the clerk for the First District Court of Suffolk County on August 28, 2012. With interest and costs included, the judgment amount as entered was $8,830.94. (Frank Decl. Ex. A-1 at S&S000130 (transcript of judgment)).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

*Plaintiff Agoado (Household Account)*

5.     On January 23, 2012, C&S filed a lawsuit in Suffolk County District Court against Mr. Agoado as to the alleged Household account, with MF named as plaintiff. (Frank Decl. Ex. 1-B (select court documents from Agoado-Household state-court collection action) at S&S000313–000315 (summons and complaint, stating causes of action for breach of contract and account stated)).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

6.     On July 24, 2012, C&S filed a default judgment application in the suit as to Plaintiff Agoado's alleged Household account. (Frank Decl. Ex. 1-B at S&S000108–000117 (default judgment application)).

**Response:**     This paragraph is directed toward another Defendant and, as a

result, is not applicable to P&P. P&P, therefore, denies same.

7.    The MCM-issued affidavit included in this default judgment application for Plaintiff Agoado's alleged Household account states, at Paragraph 8:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt will be assumed valid.

(Frank Decl. Ex. 1-B at S&S115) (emphasis added).

**Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

8.    The default judgment against Mr. Agoado as to his alleged Household account was docketed by the clerk for the First District Court of Suffolk County on August 28, 2012. With interest and costs included, the judgment amount as entered was $12,508.15. (Frank Decl. Ex. 1-B at S&S00013 (transcript of judgment)).

**Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

*Plaintiff McNally*

9.    On February 6, 2012, F&G filed a lawsuit in Suffolk County District Court against Ms. McNally, with MF named as plaintiff. (Frank Decl. Ex. 1-C (select court documents from McNally state-court collection action) at F&G 000002–000003 (summons and complaint, stating causes of action for breach of contract and account stated)).

**Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

10.    On May 22, 2012, F&G filed a default judgment application in the suit as to

Plaintiff McNally's alleged account. (Frank Decl. Ex. 1-C at F&G 000006–000013 (default judgment application)).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

11.    The MCM-issued affidavit included in this default judgment application for Plaintiff McNally's alleged account states, at Paragraph 9:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

> (Frank Decl. Ex. 1-C at F&G 008) (emphasis added).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

12.    The default judgment against Ms. McNally was docketed by the clerk for the Second District Court of Suffolk County on May 29, 2012. With interest and costs included, the judgment amount as entered was $7,216.41. (Frank Decl. Ex. 1-C at F&G 000016 (transcript of judgment)).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same

13.    A satisfaction as to this judgment was submitted in Suffolk County Supreme Court on July 26, 2012, and filed by the Suffolk County Clerk on September 4, 2012, for Plaintiff McNally's alleged account. (Frank Decl. Ex. 1-C at F&G 000022 (satisfaction)).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

*Plaintiff Sharkey*

14.    On February 6, 2012, F&G filed a lawsuit in Suffolk County District Court against Mr. Sharkey, with MF named as plaintiff. (Frank Decl. Ex. 1-D (select court documents from Sharkey state-court collection action) at F&G 000077–000078 (summons and complaint, stating causes of action for breach of contract and account stated)).

    **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

15.    On May 22, 2012, F&G filed a default judgment application in the suit as to Plaintiff Sharkey's alleged account. (Frank Decl. Ex. 1-D at F&G 000081–000088 (default judgment application)).

    **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

16.    The MCM-issued affidavit included in this default judgment application for Plaintiff Sharkey's alleged account states, at Paragraph 9:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-D at F&G 000083) (emphasis added).

    **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

17.    The default judgment against Mr. Sharkey was docketed by the clerk for the Second District Court of Suffolk County on May 29, 2012. With interest and costs included, the

judgment amount as entered was $7,856.92. (Frank Decl. Ex. 1-D at F&G 000091 (transcript of judgment)).

        **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

18.    On June 20, 2012, F&G began the process of garnishing Mr. Sharkey's wages. (Frank Decl. Ex. 1-D at F&G 000096 (income execution notice for employer)).

        **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

19.    On September 12, 2012, F&G notified the Sheriff of Suffolk County of a payment arrangement with Mr. Sharkey, for $4,000 initially, and $200 monthly thereafter. (Frank Decl. Ex. 1-D at F&G 000098 (notice of payment arrangement)).

        **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

20.    A satisfaction as to the judgment against Mr. Sharkey was submitted in Suffolk County Supreme Court on April 1, 2014, and filed by the Suffolk County Clerk on April 17, 2014. (Frank Decl. Ex. 1-D at F&G 000100 (satisfaction)).

        **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

*Plaintiff Vazquez*

21.    On or about February 2, 2011, R&R filed suit against Ms. Vazquez in Suffolk County District Court, with MF named as plaintiff. (Frank Decl. Ex. 1-E (select court documents from Vazquez state-court collection action) at R&R #000102–#000103 (summons and complaint, stating causes of action for breach of contract and account stated)).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

22. The complaint filed by R&R against Ms. Vazquez on Midland's behalf identified Chase as MF's "assignor" with respect to the alleged debt in question. (Frank Decl. Ex. 1-E at R&R #000103).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

23. On or about June 7, 2011, R&R filed a default judgment application in the suit as to Plaintiff Vazquez' alleged account. (Frank Decl. Ex. 1-E at R&R #000118–#000122 (default judgment application)).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

24. The MCM-issued affidavit included in this default judgment application referenced only Chase with respect to the source of the account, and did not identify any prior owner(s). (Frank Decl. Ex. 1-E at R&R #000119–#000121 (affidavit for default judgment application))

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

25. The default judgment against Ms. Vazquez was rendered and docketed by the clerk for the Fourth District Court of Suffolk County on June 17, 2011. With interest and costs included, the judgment amount as entered was $11,131.48. (Frank Decl. Ex. 1-E at R&R 000130 (transcript of judgment)).

> **Response:** This paragraph is directed toward another Defendant and, as a

result, is not applicable to P&P. P&P, therefore, denies same.

26.     On June 17, 2011, R&R commenced the garnishment process against Ms. Vazquez. (Frank Decl. Ex. I-4 at R&R #000134–#000139 (income execution documents for employer)).

      **Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

27.     Ms. Vazquez had paid Midland at least $5,945.84.00 in connection with the alleged debt in question by December 2013, shortly after Plaintiffs' class action lawsuit was commenced. (Frank Decl. Ex. 3-B at MCM-0087–0088 (Midland payment history for Vazquez)).

      **Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

**Discovery Shows Defendants Fraudulently Procured Judgments On Unprovable Debt**

*Midland's Sellers Disclaimed Accuracy Of The Data Provided At Purchase*

28.     During discovery in this litigation, Defendants produced documents in response to Plaintiffs' demands for documents demonstrating how MF purchased alleged debts. When Midland acquired debt, the entities from which it purchased could not provide an analysis of the original allegedly unpaid charge, the fees, the interest, etc. for each alleged debt, and instead simply provided a dollar amount for the account balance as a data item in a spreadsheet, meanwhile disclaiming the accuracy of that amount. The July 30, 2010 purchase agreement for Plaintiff Vazquez' alleged account states that "'Current Balance' means the approximate unpaid balance, expressed in United States Dollars, owed on each Account as of the date of charge-off . . .'" (Frank Decl. Ex. 2-A at Part 1.7, (MCM-1017)) (emphasis added).

**Response:**   This paragraph is supported only by reference to Plaintiff Vazquez's alleged account documents. As a result, it is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same. By way of further response, Plaintiff fails to cite to any evidence in the record supporting this statement's applicability to Plaintiff Craig Moore as required by Local Rule 56.1(d). By way of further response, P&P adopts and incorporates by reference as if set forth herein at length Midland's response to paragraph 28 of Plaintiffs' Uncontested Statement of Material Facts.

*Midland's Secondary Debt Is Defective Due To Broken Chain Of Title*

29.     During discovery in this litigation, Defendants produced documents in response to Plaintiffs' demands for proof of, inter alia, MF's ownership of the alleged debts that were the subject of the underlying state-court collection actions. As to Plaintiff Vazquez, the documents produced show Midland was not the first debt buyer to own Plaintiff Vazquez' alleged account. According to the document that Midland produced as the purchase agreement for Plaintiff Vazquez' alleged account, dated July 30, 2010, the entity that sold this to MF was not an original lender, but a fellow debt buyer, which could be either SquareTwo Financial Corporation, or one of two purported SquareTwo subsidiaries, CACH, LLC or CACV of Colorado, LLC. (Frank Decl. Ex. 2-A (excerpts from Vazquez purchase agreement) at MCM-1017 (agreement's introductory paragraph)).

**Response:**   This paragraph is supported only by reference to Plaintiff Vazquez's alleged account documents. As a result, it is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same. By way of further response, Plaintiff fails to cite to any evidence in the record supporting this

statement's applicability to Plaintiff Craig Moore as required by Local Rule 56.1(d). By way of further response, P&P adopts and incorporates by reference as if set forth herein at length Midland's response to paragraph 29 of Plaintiffs' Uncontested Statement of Material Facts.

30.     The July 30, 2010 purchase agreement for Plaintiff Vazquez' alleged account states that "'Current Balance' means the approximate unpaid balance, expressed in United States Dollars, owed on each Account as of the date of charge-off . . .'" (Frank Decl. Ex. 2-A at Part 1.7, (MCM-1017)) (emphasis added).

>       **Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

31.     Midland's internal records as to this alleged account reflect that it was originated by Washington Mutual ("WaMu"), then assigned to Chase, although Midland has furnished no assignments from WaMu to any other entity or from Chase to any other entity. (Frank Decl. Ex. 2-B (Midland data sheet for Vazquez account) at MCM-0068).

>       **Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

32.     Midland's internal records state that electronic data concerning Ms. Vazquez' alleged Chase account were "provided by SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC" in connection with a "transfer[] on or about 10/27/2010 in connection with the sale of accounts from provided by SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC to Midland Funding LLC"—but the records do not identify which of these three entities was the purported assignor of the alleged account. (Frank Decl. Ex. 2-B at MCM-0068).

**Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

33.    Midland's internal records concerning Ms. Vazquez' alleged Chase account also state that, with respect to "Chain Of Title(s)," there is "No Information available." (Frank Decl. Ex. 2¬B at MCM-0083).

**Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

34.    Midland has produced documents labeled "ASSIGNMENT AND BILL OF SALE" and showing a date of October 27, 2010, that variously identify SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC as entities which have assigned portfolios accounts to MF—but none of these documents identifies which of those three entities (if any) assigned Ms. Vazquez' alleged Chase account to MF. (Frank Decl. Ex. 2-B (purported assignment documents for Vazquez account) at MCM-0062–0067).

**Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

*Midland Told The Attorney Defendants There Was No Account-Level Documentation*

35.    Midland and the Attorney Defendants use the You've Got Claims program ("YGC") to allow their respective computer systems to interface concerning debt-collection activities being performed by the Attorney Defendants on Midland's behalf. (Frank Decl. Ex. 3-A ("MCM Firm Manual" provided by Midland to Attorney Defendants) at Part 15.1 (MCM-1076)).

**Response:**    Admit that P&P uses YGC, among other methods, to communicate with Midland.

12

36.     When Midland places an account with any of the Attorney Defendants for the commencement of state-court collection suit, Midland uses YGC to communicate to the firm the alleged balance on the account. (Frank Decl. Ex. 3-A at Part 15.2.1.1 (MCM-1078, -1140).

     **Response:**     Denied in part and admitted in part. To the extent that the section cited by Plaintiffs provides that outside counsel must determine the appropriate suit amount using MCM data as a starting point and does not take other information into consideration, including, but not limited to: balance information, payment/adjustment data, payments received by the firm, available media and all applicable local, state and federal laws, rules and regulations, such allegation is denied. Frank Decl. Ex. 3-A at Part 15.2.1.1 (MCM-1078). Admit that P&P uses YGC, among other methods, to communicate with Midland.

37.     Midland uses YGC to send the Attorney Defendants a "Record 1" to tell the firm whether account-level documentation[3]  is or is not available as to that account. (Frank Decl. Ex. 3-A at Part 22.1 (MCM-1119–1120)).

     **Response:**     Denied. The manual Plaintiffs cite actually states that "MCM either receives media at the time of purchase or proactively request media; that media may be available on the media website at the time of placement or sometime after." Frank Decl. Ex. 3-A at Part 22.1.2 (MCM-1119) (emphasis added). The manual makes no reference at all to instances in which account-level documentation is not available. *See id.* at MCM-1119 to 1120. Plaintiffs' contention to the contrary lacks evidentiary support as required by Local Rule 56.1(d).

---

[3] The term "account-level documentation" as used herein means records (1) created by an original lender, (2) at or near the time of the events (charges and payments) that they purport to describe, (3) pursuant to that entity's standard business practices, and (4) that were mailed to the consumer prior to account charge-off. In New York

38.     When no account-level documentation is available, the Record 1 alert will read "Media Available: N." (*Id.*).

**Response:**     Denied. The material Plaintiffs cite actually states that "N" means "Media is not available via MCM media website <u>at the time of placement</u>. Firms should review media availability via MCM media website and request required media via YGC or the Vendor Specialist." Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) (emphasis added). Plaintiffs purposely misrepresent the meaning of this notation in an effort to bolster their claims. *See also* Midland's Memorandum of Law in Support of Motion for Summary Judgment at § C(5) (addressing the meaning of "Media Available: N" in a more complete fashion).

39.     Whenever Midland sends a communication to any of the Attorney Defendants, Midland's YGC logs reflect the event as a "Record 9"; when an Attorney Defendant sends a communication to Midland, the event is categorized as a "Record 39." (Frank Decl. Ex. 3-A at Table 7, (MCM-1095)).

**Response:**     Denied. Reference to Table 7 reflects that when Midland sends a record to an Attorney Defendant, it may be coded "Record 1," "Record 2," "Record 3," "Record 4," "Record 5," "Record 7," "Record 8," "Record 9," "Record 18," or "Record 24." When an Attorney Defendant sends a record to MCM, it may be coded as "Record 30," "Record 31," "Record 34," "Record 35," "Record 39," "Record 41," "Record 42" or "Record 46." Frank Decl. Ex. 3-A at Table 7, (MCM-1095). Further responding, Table 7 makes no representation that it is an exhaustive list of "Record" codes. *See id.*

40.     When interfacing with Midland via a Record 39 sent by YGC, the Attorney

---

State, account-level documentation generally includes, among other business records, signed cardholder agreements, account statements, and proof of mailing of account statements.

Defendants rely on a list of "p-codes" each of which pertains to a particular event notification or document request. (Frank Decl. Ex. 3-A at "Record 39[:] P-Codes" (MCM-1140)).

> **Response:** Admitted in part and denied in part. Pressler admits that it may use a "P-Code" when communicating with Midland to request particular documents. Denied that the table indicates that this is the only method by which Pressler may issue a document request. For instance, Pressler may also obtain documents from their Vendor Specialist. *See* Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) ("Firms should review media availability via MCM media website and request required media via YGC or the Vendor Specialist").

41.     One of the p-codes is "*CC:S309," by which an Attorney Defendant may request a affidavit proving chain of title, including documentary proof attached thereto, in connection with a collection suit being prosecuted in a New York State court. (Frank Decl. Ex. 3-A at MCM-1110).

> **Response:** Admit.

42.     Upon placing Plaintiff Vazquez' alleged account with R&R, Midland informed R&R that no account-level documentation was available as to Plaintiff Vazquez' alleged account. (Frank Decl. Ex. 3-B (Midland's YGC log re Vazquez account) at MCM-0094 ("Media Available: N" appears on upper-right of page)).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

43.     No chain-of-title documentation was provided to R&R prior to its procuring the default judgment on Midland's behalf against Ms. Vazquez. (Frank Decl. Ex. 3-B at MCM-0096–0097).

**Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

44. On June 24, 2011—after the default judgment against Ms. Vazquez had been effectuated—R&R sent Midland a YGC communication requesting chain-of-title documentation as to Ms. Vazquez' alleged Chase account; this request was never fulfilled. (Frank Decl. Ex. 3¬B at MCM-0095 (Midland's YGC log entry for "6/24/2011" shows Record 39 from R&R to Midland using "*CC:S309" to request "CHAIN OF TITLE"); Frank Decl. Ex. 3-C (R&R's YGC log re Vazquez account) at R&R #147 (showing "CHAIN OF TITLE REQUESTED" on "06/24/11").

**Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

45. When Midland placed Plaintiff Sharkey's alleged account with F&G, Midland informed F&G that no account-level documentation was available for Plaintiff Sharkey's alleged account. (Frank Decl. Ex. 3-D (Midland's YGC log re Sharkey account) at MCM-0687 ("Media Available: N" appears at top-right of page); Frank Decl. Ex. 3-E (F&G's YGC log re Sharkey account) at F&G 000103 ("Media Available N" appears as "Message[ Number] 008")).

**Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

46. When Midland placed Plaintiff McNally's alleged account with F&G, Midland informed F&G that no account-level documentation was available for Plaintiff McNally's alleged account. (Frank Decl. Ex. 3-F (Midland's YGC log re McNally account) at MCM-0342 ("Media Available: N" appears at top-right of page); Frank Decl. Ex. 3-G (F&G's YGC log re McNally account) at F&G 000025 ("Media Available N" appears as "Message[ Number]

008")).

> **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

47.    When Midland placed Plaintiff Agoado's alleged Household account with C&S, Midland informed C&S that no account-level documentation was available for Plaintiff Agoado's alleged Household account. (Frank Decl. Ex. 3-H (Midland's YGC log re Agoado-Household account) at MCM-1214 ("Media Available: N" appears at top-right of page)).

> **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

48.    On November 28, 2011, within days after Midland had placed Plaintiff Agoado's alleged Chase account with C&S, C&S requested the "Last Billing Statement" as to this account, but Midland rejected that request, informing C&S that "DOCUMENT TYPE NOT AVAILABLE FOR PORTFOLIO." (Frank Decl. Ex. 3-I (Midland's YGC log re Agoado-Chase account) at MCM-0297; Frank Decl. Ex. 3-J (C&C's YGC log re Agoado-Chase account) at S&S-151).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

**Plaintiffs Suffered Injuries Due To Defendants' Misconduct**

49.    Ms. Vazquez testified about how Midland subjected her to wage garnishments as a result of the judgment against her. (Frank Decl. Ex. 4-A at 41:21-42:2; 172:12-:23).

> **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

50.    Ms. Vazquez does not believe she ever owed Midland anything. (Frank Decl. Ex.

4-A at 63:9-14; 178:4-179:16).

      **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

51.    Mr. Sharkey testified that he did not owe the debt because the original lender had told him they were writing off the debt. (Frank Decl. Ex. 4-B at 51:15-52:15; 53:8-:19).

      **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

52.    Mr. Sharkey did not know the amount he purportedly owed, (*id*. 143:10-:18), but paid because he was "afraid and . . . harassed," (*id*. 64:13-65:7; 102:14-18; 170:21-171:2).

      **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

53.    Mr. Sharkey never received an "itemized account of what [he] owed." (*Id*. 71:23-:24). Nevertheless, he paid $500.00 per month until the debt was fully paid. (*Id*. 74:19-75:7; 75:19-76:7; 187:7-:15). To this day, he does not know if that was the correct amount. (*Id*. 75:11-:12; 158:9-:12).

      **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

54.    Mr. Sharkey testified that the language of the FDCPA recited in the default-judgment affidavit that Defendants filed against him in state court left him with the false impression there was a court presumption against him due to his alleged failure to dispute the debt after receiving Midland's validation letter. (*Id*. 383:8-21).

      **Response:**    This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

55.     Ms. McNally testified that she believes she paid more than she should have in order to resolve the judgment. (Frank Decl. Ex. 4-C at 53:5-:11; 54:20-55:11; 172:11-:22).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

56.     Ms. McNally was emotionally harmed by Defendants' conduct. She saw a psychiatrist for her ills. (*Id*. 166:14-:21; 167:21-168:14).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

57.     Mr. Agoado testified that the accounts in question were opened without his knowledge by his now-deceased wife, who struggled with gambling addiction. (Frank Decl. Ex. 4-D at 10:16-:18; 11:22-:25; 13:18-:22; 14:3-:12; 15:8-:10; 38:5-42:4; 43:23-45:4; 45:2-:4; 45:23-46:16; 46:21-47:5; 47:23-50-2; 64:10-:14; 67:8-:23; 68:12-69:6; 70:15-71:13; 107:7-:9; 142:5-:7).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

58.     Midland and C&S were aware of Mr. Agoado's noninvolvement with these alleged accounts at the time of the underlying collection actions against him. (*Id*. 39:8-41:2; 56:25-57:24).

**Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

59.     Mr. Agoado was left emotionally distressed by Midland and C&S's conduct against him, which culminated with publicly recorded judgments that negatively affect his personal and financial reputation. (*Id*. 175:9-19).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

**Defendants Never Mailed Plaintiffs Documents Correctly Quoting The FDCPA**

60. At deposition defense counsel introduced the default-judgment affidavit submitted in state court against each Plaintiff, as an exhibit for that Plaintiff to review during deposition, counsel asked, "Do you remember receiving this document in the mail?" (Frank Decl. Ex. 4-B at 150:6–:21).

> **Response:** Denied as stated. Admit that the cited portion of the Sharkey deposition shows that defense counsel showed Mr. Sharkey Exhibit Sharkey 6 and asked if Mr. Sharkey recognized the document. Denied that Plaintiffs cited to evidence as to what any of several defense attorneys asked any Plaintiff other than Mr. Sharkey. Plaintiffs' generalized contention about depositions lacks evidentiary support as required by Local Rule 56.1(d).

61. Plaintiff Sharkey does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-B at 306:2–:22).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

62. Plaintiff McNally does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-C at 220:15–221:5).

> **Response:** This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

63.     Plaintiff Agoado does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-D at 88:21–89:12).

      **Response:**     This paragraph is directed toward another Defendant and, as a result, is not applicable to P&P. P&P, therefore, denies same.

64.     Defendants have provided no proof of mailing of any such letters.

      **Response:**     Denied. Plaintiffs fail to provide a citation to evidence which would be admissible as required under Local Rule 56.1(d).

### Statement of Additional Facts

65.     Midland Funding, LLC purchased Craig Moore's subject debt directly from GE Money Bank. Declaration of Michael J. Peters, Esq. in Opposition to Plaintiffs' Motion, Exhibit A.

66.     The Affidavit of Paula Hensen submitted as part of the default judgment application in the collection case against Craig Moore does not contain the language Plaintiffs' complain of as misquoting the FDCPA that the debt will be "assumed to be valid by the debt collector." Declaration of Michael J. Peters, Esq. in Opposition to Plaintiffs' Motion, Exhibit B.

                                     Respectfully submitted,
                                     PRESSLER, FELT & WARSHAW, LLP

Dated:  January 14, 2022     By:   */s/ Michael J. Peters*
                                     Michael J. Peters, Esq.
                                       7 Entin Road
                                       Parsippany, NJ 07054
                                       Telephone:     (973) 753-5100
                                       Facsimile:     (973) 753-5353
                                       mpeters@pfwattorneys.com
                                       Attorney for Defendant,
                                       Pressler and Pressler, LLP