UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x        14-cv-00018 (WFK)(ST)

DAVID AGOADO, LEEANN MCNALLY, CRAIG
MOORE, CHRIS PIERRE, THOMAS SHARAKEY,
MADGE SHIPMAN and DOREEN VAZQUEZ,
Individually and on behalf all others similarly situated,


                          Plaintiffs


                      -against-


MIDLAND FUNDING LLC, MIDLAND FUNDING,
LLC DBA IN NEW YORK AS MIDLAND FUNDING
OF DELAWARE, LLC, MIDLAND CREDIT
MANAGEMENT, INC. and RUBIN & ROTHMAN, LLC
*et al.*,

                          Defendants


-------------------------------------------------------------------------x



                DEFENDANT RUBIN & ROTHMAN, LLC'S
                MEMORANDUM OF LAW IN OPPOSITION TO
                PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT




                                      Robert L. Arleo, Esq.
                                      Attorney for the Defendant
                                      Rubin & Rothman, LLC
                                      1345 Avenue of the Americas, 33rd Fl.
                                      New York, New York  10105
                                      (212) 551-1115

**Table of Contents**

**Page**

**Table of Citations**

PRELIMINARY STATEMENT………………………………………   1

ARGUMENT………………………………………………………..   2

THE PLAINTIFFS PIERRE AND
VAZQUEZ ARE PRECLUDED
FROM ADVANCING AFFIDAVIT-
RELATED CLAIMS………………………………………………….   2

THE SECTION 487 CLAIMS
FAIL AS A MATTER OF LAW……………………………………   4

THE CLAIMS FOR UNJUST ENRICHMENT
AND VIOLATION OF NYGBL 349 FAIL
FOR THE SAME REASONS THAT THE
SECTION 487 CLAIMS FAIL…………………………………………   11

PLAINTIFFS' RELIANCE
UPON *GREEN V. FORSTER
& GARBUS, LLP* IS MISPLACED…………………………………..   24

CONCLUSION…………………………………………………….   26

Table of Citations

Page

Cases

*Agostini v Sobol,*
304 A.D.2d 395, 396, 757 N.Y.S.2d 555 (1st Dep't 2003)………………………………   4

*Alliance Network, LLC v. Sidley Austin LLP,*
43 Misc. 3d 848, 987 N.Y.S.2d 794, 803 (N.Y. Sup. Ct. 2014)……………………………   5

*Amalfitano v. Rosenberg,*
12 N.Y.3d 8, 903 N.E.2d 265, 268, 874 N.Y.S.2d 868 (N.Y. 2009)………………………   5

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,*
480 F.3d 470, 473 (7th Cir. 2007)………………………………………………………   11

*Bill Birds, Inc. v. Stein L. Firm, P.C.,*
35 N.Y.3d 173, 178 (2020)………………………………………………………………   6

*Bradley v. Selip & Stylianou, LLP,*
2018 WL 4958964 (W.D.N.Y.)…………………………………………………………..   22

*Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz,*
*P.C.,* 13 A.D.3d 296, 297-298, 787 N.Y.S.2d 267 (1st Dep't 2004)………..……………   4

*Chowaiki & Co. v. Lacher,*
115 A.D.3d 600 (1st Dep't 2014)…………………………………………………………   4

*Christ's Household of Faith v. Ramsey County,*
618 F.Supp.2d 1040, 1046 (D. Minn. 2009)…..………………………………………..   22

*City of New York v. Smoke-Spirits.Com, Inc.,*
12 N.Y.3d 616, 621 (2000)………………………………………………………………   12

*Cohen v. JP Morgan Chase & Co.,*
489 F.3d 111, 126 (2d Cir. 2007)………………………………………………………..   12

*Dockery v. Cullen & Dykman,*
90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000)………………………………………………   25

*Donaldson v. Bottar,*
275 A.D.2d 897, 715 N.Y.S.2d 168, 169 (4th Dep't 2000)…………………………….....   4

*Eades v. Kennedy, PC Law Offices,*
799 F.3d 161, 172 (2d Cir. 2015)………………………………………………………...   15

*Englert v. Schaffer,*
61 A.D.3d 1362, 877 N.Y.S.2d 780, 781 (4th Dep't 2009)…………………………………..   4

*Exxon Mobile Corp. v. Saudi Basic Industries Corp.,*
544 U.S. 280, 291, 125 S.Ct. 1517, 1526 (2005)……………………………………………   16

*Goldemberg v. Johnson & Johnson Consmer Companies, Inc.*,
8 F. Supp. 3d 467, 480-82 (S.D.N.Y. 2014)…………………………………………………   15

*Gonzalez v. Gordon,*
233 A.D.2d191, 649 N.Y.S.2d 701, 702 (1st Dep't 1996*)*…………………………………   5

*Hackett v. Midland Funding LLC*,
2019 WL 1902750, at *2 (W.D.N.Y.)…………………………………………………………   15

*Hill v. Accounts Receivable Servs., LLC*,
888 F.3d 343, 346 (8th Cir. 2018)……………………………………………………………   15

*Hoblock v. Albany County Bd. of Elections,*
422 F.3d 77, 85 (2d Cir. 2006)………………………………………………………………   14

*Iannazzo v. Day Pitney LLP,*
2007 WL 2020052 (S.D.N.Y.)…………………………………………………….…………   4

*In re FDCPA Cognate Cases,*
16 U.S. Dist. LEXIS 44039 *17-*18 (U.S.D.C. W.D. Mi.)…………………………………..   21

*Jaroslawicz v. Cohen*,
12 A.D.3d 160 (App. Div. 1st Dept. 2004)…………………………………………………   5

*Kaminsky v. Herrick, Feinstein, LLP*,
59 A.D.3d 1, 13 (1st Dep't 2008)………………………………………….…………………...   5

*Kaye Scholer LLP v. CNA Holdings, Inc.,*
2010 U.S. Dist. LEXIS 43194  (S.D.N.Y.)……………………………………………………   5

*Kearney v. Cavalry Portfolio Services, LLC*,
2014 U.S. Dist. LEXIS 105577 (E.D.N.Y.)…………………………………………………...   6

*Klein v. Solomon and Solomon, P. C.,*
2011 WL 5354250, at* 2 (D. Conn. 2011)……………………………………………………   14

*Kropelnicki v Siegel*,
290 F.3d 118 (2d Cir. 2002)…………………………………………………………………   21

*Lajauine v. Samuel & Sons Seafood Co. Inc.*,
68 F. Supp. 3d 432, 437 (S.D.N.Y. 2014)……………………………………………..   21

*Lazich v. Vittoria & Parker*,
189 A.D.2d 753, 592 N.Y.S.2d 418, 419 (2d Dep't 1993)…………………………...   5

*MacPherson v. State St. Bank & Trust Co.*,
452 F. Supp. 2d 133, 137-138 (E.D.N.Y. 2006)…………………………………….   17

*Mayfield v. Asta Funding, Inc.*,
95 F. Supp. 3d 685, 691 (S.D.N.Y. 2015)…………………………………………   16

*McCrobie v. Palisades Acquisition XVI, LLC*,
664 F. App'x 81, 83 (2d Cir. 2016)………………………………………………..   24

*McKithen v. Brown*,
481 F.3d 89 (2d Cir. 2007)…………………………………………………………   18

*Michelo v. National Collegiate Student Loan Trust 2007-2*,
419 F. Supp. 3d 668, 702 (S.D.N.Y., 2019)………………………………………   13

*Mora v. LVNV Funding LLC*,
408 F.Supp.3d 297, 302 (W.D.N.Y. 2019)………………………………………   14

*Morris v. Am Home Mort. Servicing, Inc.*,
443 Fed. Appx. 22 (5th Cir. 2011)………………………………………………   20

*MSK Eyes Ltd. v. Wells Fargo Bank, Nat'l Ass'n*,
546 F.3d 533 (8th Cir. 2008)……………………………………………………   22

*Mueller v. Barton*,
2014 WL 127866 (E.D. Mi.)……………………………………...………………   22

*Nason v. Fisher*,
36 A.D.3d 486, 828 N.Y.S.2d 51, 52 (1st Dep't 2007)…………………………….   4

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57, 74 (S.D.N.Y. 2006)………………………………………………   15

*North State Autobahn, Inc. v. Progression Ins. Group Co.*,
102 A.D.3d 5 (2d Dep't 2012)……………………………………………………   11

*O'Callaghan v. Sifre*,
537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008)………………………………………   5

*Quiro v. U.S. Bank Nat'l Ass'n,*
2011 WL 2471733, at * 20 (E.D.N.Y.)……………………………………………………………… 17

*Sabatini Frozen Foods, LLC v. Weinberg, Gross & Pergament, LLP,*
2015 U.S. Dist. LEXIS 128220 (E.D.N.Y.)………………………………………………….. 5

*Savitt v Greenberg Traurig, LLP,*
126 A.D.3d 506, 507 (1st Dep't 2015)……………………………………………………… 4

*Schindler v. Issler & Schrage P.C.,*
262 A.D.2d 226, 692 N.Y.S.2d 361, 362 (1st Dep't 1999)……………………………… 4

*Small v. Lorillard Tobacco Co.,*
94 N.Y.2d 43, 55 (1999)……………………………………………………………………… 11

*Sorenson v. Wolfson,*
96 F. Supp. 3d 347, 369 (S.D.N.Y. 2015)……………………………………………….. 24

*St. John's v. CACH, LLC,*
822 F.3d 388, 391 (7th Cir. 2016)……………………………………………………….... 10

*Stinson v. Houslanger & Associates, PLLC,*
2021 WL 4443289 at 9 (S.D.N.Y. 2021)………………………………………………… 6

*Sykes v. Mel Harris & Associates, LLC,*
757 F.Supp.2d 412, 424 (S.D.N.Y. 2010)……………………………………………… 16

*Talley v. Loancare Servicing,*
2018 WL 4185705, at *15 (E.D.N.Y.)………………………………………………….. 22

*Todd v. Weltman, Weinberg & Reis Co., L.P.A.,*
434 F.3d 432 (6th Cir. 2006)……………………………………………………………… 23

*Trakansook v. Astoria Federal Savings & Loan Association et al.,*
2007 WL 1160433 (E.D.NY.)……………………………………………………………. 18

*Ulrich v. Hausfeld,*
269 A.D.2d 526, 704 N.Y.S.2d 495, 495 (2d Dep't 2000)………………………………... 4

*Vassalle v. Midland Funding, LLC,*
2014 WL 5162380, at *11 (N.D. Ohio,2014)…………………………………………… 4

*Vossbrinck v. Accredited Homes Lenders, Inc.,*
773 F.3d 423, 427 (2d Cir. 2014)……………………………………………………… 25

*Winslow v. Forster & Garbus, LLP,*
2017 WL 6375744, at \*13 (E.D.N.Y. 2017)………………………………………………..   13

## PRELIMINARY STATEMENT

Rubin & Rothman, LLC (R&R), one of the law firm Defendants named in the herein action, submits this Memorandum of Law in opposition to that portion of the motion for summary judgment brought two of the Plaintiffs named in the above-entitled action, Chris Pierre and Doreen Vazquez. The Defendant R&R incorporates by reference herein, as if stated at length herein, those arguments advanced by the other Defendants named in the herein action in regard to the Plaintiffs' New York law claims. The Defendant R&R expressly incorporates by reference the arguments set forth in the opposition Memorandum of Law submitted by Midland Funding, LLC, Midland Funding LLC DBA in New York as Midland Funding of Delaware, LLC and Midland Credit Management, Inc. as same refers to the Plaintiff's Chris Pierre (Pierre) and Doreen Vazquez (Vazquez).

In addition thereto, the Defendant R&R adds the underlying arguments to the herein opposition Memorandum of Law.

1

<u>ARGUMENT</u>

THE PLAINTIFFS PIERRE AND
VAZQUEZ ARE PRECLUDED
FROM ADVANCING AFFIDAVIT-
<u>RELATED CLAIMS</u>

The affidavit-related claims advanced by the Plaintiffs Pierre and Vasquez fail against the

Defendant R&R. As a result of the decision issued in the U.S. District Court for the Northern

District of Ohio action entitled *Vassalle v. Midland Fuding, LLC*, 11-cv-00096, the Plaintiffs

Pierre and Vasquez have released claims related to the affiant's personal knowledge. The

Plaintiffs' complain that the MF affidavits include a "fraudulently" misworded version of the

dispute language a debt collector is required to include in its initial communication under the

FDCPA. "Instead of submitting admissible evidence, Midland fraudulently miswords the 15

U.S.C. § 1692g disclosure in its affidavits in order to imply that, should the consumer not reply

to Midland within 30 days, the court will presume the debt is valid." FAC, paragraph 8. The

Report and Recommendation issued on March 4, 2020 (Dkt. No. 246) sets forth "Plaintiffs allege

a theory that Defendants' affidavits are misleading based on grounds separate and distinct from

the alleged scheme rooted in the 'personal knowledge' affidavits -- namely, that Defendants'

utilize affidavits which misstate FDCPA language and are misleading to consumers. Claims of

this nature are not barred by Vassalle. . . . Plaintiffs do not need to abandon affidavit claims in

their entirety as Defendants suggest." Dkt. No. 246 at p. 26–27.

The affidavits filed in the Suffolk County actions to secure default judgments against the

Plaintiffs Pierre and Vasquez do not contain any language that references 15. U.S.C. § 1692g.

The entirety of the affidavit filed in the Pierre Suffolk County action sets forth as follows:

1.    I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendants CHASE BANK USA, N.A. account XXXXXXXXXXXXX7220 (MCM Number 85362604468) (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf.

2.    I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account. The records are kept in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record. In the regular course of business, the record or compilation is made at or near the time of the act or event. The relevant financial information concerning the account included the following:

3.    The account shows the defendants(s) owed a balance of $6980.53 as of 2010-12-05; and I am advised the interest is due at a rate of 9.0000% as an annual percentage rate.

4.    Upon information and belief, this action is based upon a revolving credit agreement entered into between defendants(s) and the original credit grantor. Upon information and belief, pursuant to the agreement, defendant(s) agreed to pay monthly installments to the original credit grantor for all goods and/or services and/or cash advances. Upon information and belief, defendant(s) used or authorized the use of the credit card account to obtain loans from the original credit grantor for the purpose of obtaining goods and/or services and/or cash advances but failed to make the payments due pursuant to the agreement.

The affidavit filed in the Vasquez action is substantially similar.

    Based upon their status as members of the *Vasalle* class, the Plaintiffs Pierre and Vasquez are prohibited from advancing claims that the Defendant R&R "filed an affidavit in a debt-collection lawsuit where the affidavit was executed by a person who lacked personal knowledge of the facts stated in the affidavit,". As the affidavits filed in the Suffolk County actions against the Plaintiffs Pierre and Vasquez do not include the 15. U.S.C. § 1692g language, relevant to initial

3

disclosures, there are no viable affidavit-based claims to be advanced by the Plaintiffs Pierre and Vazquez against the Defendant R&R. *Vassalle v. Midland Funding, LLC*, 2014 WL 5162380, at *11 (N.D. Ohio).

### THE SECTION 487 CLAIMS
### FAIL AS A MATTER OF LAW

To establish a Judiciary Law § 487 violation against an attorney or a law firm, a plaintiff must show that the attorney(s): (1) are guilty of deceit or collusion, or consent to any deceit or collusion; and (2) had an intent to deceive the court or any party. *Iannazzo v. Day Pitney LLP,* 2007 WL 2020052 (S.D.N.Y.). Relief under Section 487 is not "lightly given". *Chowaiki & Co. v. Lacher*, 115 A.D.3d 600 (1st Dep't 2014) and requires a showing of "egregious conduct or a chronic and extreme pattern of behavior" on the part of the defendant attorneys that caused damages. *Savitt v Greenberg Traurig, LLP,* 126 A.D.3d 506, 507 (1st Dep't 2015). A Section 487 claim will be dismissed if the allegations as to scienter are conclusory and factually insufficient. *Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz, P.C.,* 13 A.D.3d 296, 297-298, 787 N.Y.S.2d 267 (1st Dep't 2004); *Agostini v Sobol,* 304 A.D.2d 395, 396, 757 N.Y.S.2d 555 (1st Dep't 2003).

New York State courts interpreting Section 487 claims, as well as federal courts considering the state court decisions, consistently abide by the "extreme" or "egregious" standard. *Englert v. Schaffer,* 61 A.D.3d 1362, 877 N.Y.S.2d 780, 781 (4th Dep't 2009); *Nason v. Fisher,* 36 A.D.3d 486, 828 N.Y.S.2d 51, 52 (1st Dep't 2007); *Donaldson v. Bottar,* 275 A.D.2d 897, 715 N.Y.S.2d 168, 169 (4th Dep't 2000*)*; *Ulrich v. Hausfeld,* 269 A.D.2d 526, 704 N.Y.S.2d 495, 495 (2d Dep't 2000*)*; *Schindler v. Issler & Schrage P.C.,* 262 A.D.2d 226, 692 N.Y.S.2d 361, 362 (1st Dep't

1999); *Gonzalez v. Gordon,* 233 A.D.2d191, 649 N.Y.S.2d 701, 702 (1st Dep't 1996*); Alliance Network, LLC v. Sidley Austin LLP,* 43 Misc. 3d 848, 987 N.Y.S.2d 794, 803 (N.Y. Sup. Ct. 2014); See also *Sabatini Frozen Foods, LLC v. Weinberg, Gross & Pergament, LLP,* 2015 U.S. Dist. LEXIS 128220 (E.D.N.Y. Sept. 23, 2015); *O'Callaghan v. Sifre,* 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008). The reasons for such a limitation on Section 487 liability are strong:

> "By confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorney's wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall "well within the bounds of the adversarial proceeding." *Lazich v. Vittoria & Parker,* 189 A.D.2d 753, 592 N.Y.S.2d 418, 419 (2d Dep't 1993). Under this threshold, an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487."

537 F. Supp. 2d at 596. Applying Section 487 too broadly would chill proper attorney advocacy and encourage parties to use Section 487 suits as tactics to stall and otherwise gain leverage over their opponents. Such a scenario causes highly detrimental effects on the fair and efficient progress of litigation. See *Alliance Network, supra,* 987 N.Y.S.2d at 803.

A further basis for reserving liability under Section 487 for extreme or egregious cases is the fact that Section 487 has its "origin in the criminal law of England," thus "the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law." *Amalfitano v. Rosenberg,* 12 N.Y.3d 8, 903 N.E.2d 265, 268, 874 N.Y.S.2d 868 (N.Y. 2009), Therefore, Section 487 "must be strictly construed." *Kaye Scholer LLP v. CNA Holdings, Inc.,* 2010 WL 1779917 (S.D.N.Y.). The inability to demonstrate any consequential damages renders a Section 487 claim deficient as a matter of law. *Kaminsky v. Herrick, Feinstein, LLP*, 59 A.D.3d 1, 13 (1st Dep't 2008) *citing Jaroslawicz v. Cohen*, 12 A.D.3d 160 1st Dep't 2004).

The Section 487 claims advanced in the FAC are akin to the Section 487 claims advanced in *Kearney v. Cavalry Portfolio Services, LLC*, 2014 WL 3778746 (E.D.N.Y.). In granting the defendant's motion to dismiss therein, the court stated (in part) as follows:

> "Even if this Court were to have found that CPS lacked standing in the underlying debt collection suits, Plaintiffs do not plausibly plead their *section 487* claim, as a lack of standing is a curable procedural defect. *See N.Y. C.P.L.R. 3025* (providing for amendments to pleadings)……… Plaintiffs cite no cases supporting the conclusion that a mere lack of standing demonstrates the intent to deceive. Plaintiffs' *section 487* claims are dismissed."

at *32-33. Further, mere error or negligence is not sufficient to establish scienter required to establish a Section 487 claim.   "Given the requirement that the conduct involve 'deceit or collusion' and be intentional, liability under the statute does not extend to negligent acts or conduct that constitutes only legal malpractice, evincing a lack of professional competency." *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 178 (2020); *Stinson v. Houslanger & Associates, PLLC*, 2021 WL 4443289 at 9 (S.D.N.Y. 2021) (holding legal error in establishing statute of limitations did not "rise to the level of scienter needed to establish a § 487 claim.").

This Court is asked to consider the foregoing legal rulings in conjunction with the deposition testimony of both Plaintiffs Pierre and Vazquez, and the documents obtained by the Defendant R&R, in conjunction with the claim that the Defendant R&R has violated Section 487. (All applicable references herein to the transcripts of the deposition testimony of the Plaintiffs Pierre and Vazquez are set forth in the Midland Defendant's Local Rule 56.1 statement, paragraphs 223-267 regarding the Plaintiff Pierre, and paragraphs 331-376 regarding the Plaintiff Vazquez).

In regard to the Plaintiff Pierre, he testified that he used his Chase credit card, had no proof that he did not owe MF the amount demanded, that he never told either MF or R&R that he did not owe the debt nor that the amount was incorrect. He further agreed to pay R&R $100 per

month and has no independent knowledge, *outside of what his attorneys told him*, what evidence the Defendant R&R needed to collect his former Chase account.

The Plaintiff Pierre further testified that he received a copy of the judgment in the mail, filed an Order to Show Cause acknowledging owing the former Chase debt and requested the opportunity to negotiate a settlement with the Defendant R&R and set up a repayment plan. The judgment was vacated and the Defendant R&R subtracted $2,000 from the balance. The Plaintiff Pierre further testified he reviewed the bill of sale from Chase to Midland Capital Management (MCM) and understood that his account was purchased from Chase and transferred to MF. He understood that the information Chase provided was true and up to date and confirmed that a Chase document produced at his deposition was related to and concerned his Chase account.

The Plaintiff Pierre testified that he has no proof that MF did not buy his Chase account and that he possesses no facts to dispute that MF owned the account! He does not recall ever disputing any charges with Chase and he never asked MF for verification of his former Chase debt. The Plaintiff Pierre agreed that MF produced customer service records from his former Chase account, which reflected that he never disputed the account, and that MF acquired his former Chase account along with documents from Chase. Incredibly, and despite the allegations in the FAC, the Plaintiff Pierre agreed that, based on the documentation MF produced, it can demonstrate the existence of his former Chase debt.

The Plaintiff Pierre testified that the allegations set forth in the FAC, that MF did not obtain documents regarding his former Chase account, were inaccurate. He testified that MF had documents showing that his former Chase debt is legitimate and that Chase did not just tell MF that the debt was legitimate. He is not aware of any fraudulent, deceptive or misleading affidavits

7

used in connection with the Suffolk County action filed against him by the Defendant R&R and admits that, at the time the Defendant R&R obtained judgment against him on the Chase account, MF owned his account.

The Plaintiff Pierre admits he was served with a summons and complaint and that he has no evidence that the Defendant R&R lacked a reasonable basis to file suit on behalf of MF. The Plaintiff Pierre further testified that he has no facts supporting the allegation that MF conveyed any false information to him. The Plaintiff Pierre testified that his out-of-pocket expenses consist of having to drive to the Suffolk County courthouse in Riverhead, NY, an amount he characterized as "not much.". He further testified that he has no facts to support the allegation that MF had no right to obtain or to request the underlying documentation from Chase.

The Plaintiff Vazquez was equally unable to explain the basis for her claims at her deposition. She testified that she was advised by her attorneys that the Defendant R&R did not obtain the proper documentation to collect her former Chase debt, but that she has no independent understanding of what documentation was lacking. The Plaintiff Vazquez testified that the basis of her understanding that MF could never obtain any documents to prove that she owed money came from discussions with her attorneys. However, she cannot identify *anything* improper that the Defendant R&R did in attempting to collect her former Chase account.

The Plaintiff Vazquez testified she did possess a credit card issued by Chase Bank USA, N.A. and that she used the credit card. Incredibly, the Plaintiff Vazquez testified that she owed an amount in excess of $10,000 as alleged by the Defendant R&R. The Plaintiff Vazquez testified that she does not know what laws she alleges the Defendant R&R violated or the legal basis of the claims she asserts against the Defendant R&R. Although the Plaintiff Vazquez recalls

8

receiving letters from the Defendant R&R prior to being served with the summons and complaint, she did not take any action in response to the letters. She admits she has no evidence that MF furnished false information concerning her former Chase account to any credit reporting agency and that she does not possess any knowledge supporting the allegation that MF cannot prove that it purchased her former Chase account. The Plaintiff Vazquez verified that a January 5, 2011 letter from the Defendant R&R, informing the Plaintiff Vazquez of MF's claim against her arising out of her former Chase account and providing her rights under 15 U.S.C. 1692g to dispute the account, was properly addressed to her. The Plaintiff Vazquez further testified that, at the time she was served with a summons and complaint in the Suffolk County action, she did not do anything because she could not challenge efforts to collect the debt as she owed the debt.

The Plaintiff Vazquez admitted that, as alleged in the affidavit submitted in the Suffolk County action filed against her, she owed a balance of $10,430 on her former Chase account which had been assigned to MF. The Plaintiff Vazquez was shown a Chase billing statement and admitted that MF could get documents from Chase. She testified that she does not know how the Defendant R&R failed to conduct a reasonable investigation as to the facts alleged in the Suffolk County action.

Despite the allegations in the FAC, the Plaintiff Vazquez admitted that the Defendant R&R sued the correct person and obtained judgment for the correct amount of money! The Plaintiff Vazquez does not know of any evidence that shows the Defendant R&R did not have a reasonable basis to file suit against her and has no facts to show that MF obtained a default judgment against her without sufficient proof of assignment of her Chase debt to MF.

The Plaintiff Vazquez testified that she remembers receiving multiple collection letters from

9

but that she never disputed the debt with Chase, MF, Midland Credit Management or the

Defendant R&R and, thus, does not expect that there would be any customer dispute records

regarding her account. The Plaintiff Vazquez testified she did not dispute the debt because she

never denied owing the debt and did not question the accuracy of the amount due. She does not

know of any factual basis supporting the claim that MF knows it cannot actually demonstrate the

existence of her debt. Importantly, the Plaintiff Vazquez testified she could not identify any out-

of-pocket expenses she suffered as a result of the conduct of MF or MCM.

Thus, based upon their deposition testimony, the Plaintiffs Pierre and Vazquez have

failed *woefully* in regard to satisfying their respective burden to show egregious conduct or a

chronic and extreme pattern of behavior on the part of the Defendant R&R that caused any

damages. Notwithstanding, part of the Section 487 claim in the FAC is based upon an alleged

lack of standing for MF to be named as the plaintiff in the Suffolk County actions.

However, *even if this lack of standing allegation were true* (which the Defendant R&R contests),

same is a curable procedural defect in that N.Y. C.P.L.R. 3025 provides for amendments to

pleadings. There is simply no basis in law supporting the conclusion that a mere lack of standing

demonstrates the intent to deceive for the purposes of a Section 487 claim.

Applying Section 487 in regard to the claims advanced by the Plaintiffs Pierre and Vazquez

would chill proper advocacy and encourage other debtors to use Section 487 lawsuits as tactics

to stall and otherwise gain leverage over their creditor opponents. Application of Section 487

herein would cause highly detrimental effects on the fair and efficient progress of litigation.

The claims set forth in the FAC mirror the baseless claims set forth in *St. John's v. CACH,

LLC*, 822 F.3d 388, 391 (7th Cir. 2016). The plaintiff therein alleged that the defendants, a debt

10

buyer and a law firm which filed lawsuits in its behalf, violated the FDCPA because it did not

intend to litigate the lawsuits to trials. In affirming the denial of the FDCPA claims by the district

court, the Seventh Circuit stated (in part):

> "…the mere filing of a civil action does not include an implicit declaration that the plaintiff intends to advance the action all the way through trial. Litigation is inherently a *process*. And recovery through that process may be achieved in many ways, and at different stages, of which trial is often not the most cost-effective or desirable. Indeed, the typical plaintiff at the outset of litigation likely hopes to recover through a less cumbersome avenue, such as a settlement or default judgment, and would rather avoid the expense, inconvenience, and uncertainty of trial. That is not "trickery," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 473 (7th Cir. 2007); it is the legitimate exercise of the plaintiff's discretion in determining how to efficiently manage litigation by obtaining an optimal outcome with limited resources."

THE CLAIMS FOR UNJUST ENRICHMENT
AND VIOLATION OF NYGBL 349 FAIL
FOR THE SAME REASONS THAT THE
SECTION 487 CLAIMS FAIL

For the same reasons that the Judiciary Law 487 claims fail as a matter of law so too do the

claims that the Defendant R&R violated the New York law against unjust enrichment and New

York General Business Law § 349 claims (Section 349). Otherwise, the Defendant R&R

incorporates by reference all of those arguments advanced by the other co-Defendants in this

action, in regard to the claims of unjust enrichment and Section 349, as if set forth at length

herein. In addition, the Defendant R&R includes the underlying additional arguments.

Section 349 declares unlawful all "[d]eceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus.

Law § 349(a). "Section 349 governs consumer-oriented conduct and, on its face, applies to

virtually all economic activity." *North State Autobahn, Inc. v. Progression Ins. Group Co.*, 102

A.D.3d 5 (2d Dept't 2012) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999).

To successfully assert a claim under General Business Law § 349(h) a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *City of New York v. Smoke-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2000); *see also Cohen v. JP Morgan Chase & Co.*, 489 F.3d 111, 126 (2d Cir. 2007).

The New York Court of Appeals held that under Section 349 "[w]hether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' *Stutman v. Chemicak Bank*, 95 N.Y.2d 24, 29 (2000). Unlike FDCPA claims, claims asserted under Section 349 are subject to a "more stringent standard" than the least sophisticated consumer standard under the FDCPA. *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013). Even if a statement is false in some technical sense, it does not violate the FDCPA unless it would mislead the unsophisticated consumer. *Hasbrouck v. Arrow Fin. Servs., LLC*, 2011 WL 1899250, at 3 (N.D.N.Y.). Under the less stringent FDCPA standard, statements are material if they influence a consumer's decision-to pay a debt or if they would impair the consumer's ability to challenge the debt. *O'Rourke v. Palisades Acquisition XYI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011).

Plaintiffs  commingle various theories of liability. First, Plaintiffs rely on cases having to deal with misidentifying the state court plaintiff's status as the original creditor. Next, Plaintiff relies on a series of cases having to deal with assigned judgments to support their theory of "chain of title fraud." Neither of theories is applicable to these facts and the court should dismiss plaintiff's complaint.

In regard to the issues raised specific to the state court complaint filed against Plaintiff

Vazquez, the Plaintiff conflates misidentifying the original creditor with misidentifying an entity in the chain of ownership. In *Michelo v. National Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668, 702 (S.D.N.Y., 2019), in which Plaintiffs' counsel herein represented the plaintiff therein, the district court analyzed a state court complaint filed on behalf of a student loan trust which was an assignee of the original student loans entered into between the plaintiff and the original creditor. The state court complaint expressly identified the student loan trust plaintiff as the "original creditor," among other alleged defects. The district court held that the misstatement as to the plaintiff's status as the <u>original creditor</u> was materially misleading under Section 349 since, viewed objectively, it might lead a debtor to be confused as to the nature of the debt sought to be collected. In *Winslow v. Forster & Garbus*, the court analyzed the same state court complaint that identified the student loan trust as the "original creditor" In doing so, the court held that "[a] false statement as to the owner of a debt 'could easily mislead the least sophisticated consumer as to the nature and legal status' thereof and could 'impede the consumer's ability to respond.' *Winslow v. Forster & Garbus, LLP*, 2017 WL 6375744, at *13 (E.D.N.Y. 2017).

In contrast, the complaint filed in the Vazquez action does not contain a false statement as to the owner of the debtor. Unlike *Michelo* and *Winslow,* Midland is not identified as the "original creditor." Rather, the only technical error in the complaint is that Chase is identified as the plaintiff's "assignor." The complaint correctly identifies Midland Funding LLC doing business in NY as Midland Funding of Delaware LLC as the plaintiff and, hence, the party to whom the debt is due. The complaint correctly includes MF's NYC DCA debt collection license number, making clear that MF is a licensed debt collector. The complaint then states that the Vazquez

"used a credit card issued by plaintiff's assignor, Chase." While Chase is plaintiff's predecessor in interest, this statement as to the chain of title is immaterial.  In *Mora v. LVNV Funding LLC*, 408 F.Supp.3d 297, 302 (W.D.N.Y., 2019), where there was no misrepresentation as to the fact that the current creditor was not the original creditor, the court held "as a matter of law, [Plaintiff] cites no authority recognizing an FDCPA claim based on an inaccurate chain of title, and to the extent that this allegation goes to [debt purchaser's] failure to prove its standing…that alone is insufficient to support an FDCPA claim."

The state court complaint does not impede a reasonable consumer's ability to respond or misstate the legal nature of the debt and, therefore, is not materially misleading. In *Klein v. Solomon and Solomon, P. C.*,  2011 WL 5354250, at* 2 (D. Conn. 2011), the collector initiated a collection action and debtor alleged the collector violated the FDCPA because it could not establish standing to commence the collection action as a result of not having the correct assignment documents. In dismissing the debtor's complaint, the court reasoned, "[p]laintiff does not allege that defendants made a representation or statement that impeded his ability to pay or challenge the debt that he had incurred.". Similarly, when Vazquez received the complaint she was put on notice that the current creditor is not the same as the original creditor and that she may elect to challenge standing in that regard. Additionally, the legal status of the debt is not implicated because Midland is the correct plaintiff in the action and, as assignee of the debt, has standing to pursue this action. In fact, Plaintiff Vazquez testified that, upon receipt of the complaint, she correctly assessed the lawsuit was related to her chase credit card on which she previously defaulted. (Vazquez Deposition, p. 39-40).

Further, an inaccurate statement of the chain of ownership in the state court complaint did not

14

cause injury of which plaintiff complaints. In addition to claiming that the statements are materially misleading, "[p]laintiff also must properly allege actual injury caused by Defendant's statements." *Goldemberg v. Johnson & Johnson Consmer Companies, Inc.*, 8 F. Supp. 3d 467, 480-82 (S.D.N.Y. 2014). "The causation element is essential: The plaintiff ... must show that the defendant's material deceptive act caused the injury." *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 74 (S.D.N.Y. 2006).

The Plaintiff Vazquez's alleged injuries are not related to an inaccurate statement of the chain of ownership in the complaint. Vazquez argues her injuries are related to a having "her wages garnished despite owing Midland nothing" and being injured " by having her employer learn of the judgment through garnishment." (Pls.' 56.1 ¶¶ 49–50). These injuries are not related to the misstatement as to the chain of ownership. As argued in MF's reply brief, Midland is the proper owner of the accounts. Merely not having the documents in hand cannot reasonably be considered a deceptive practice. This is especially true where the underlying collection litigation was properly served on the defendant. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015). ("Standing alone, the allegation that an attorney filed and pursued a lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt."); *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006) (filing of debt-collection suit without having immediate means of proving debt did not constitute deceptive practice under FDCPA); *Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018)(holding that debt collector's inadequate documentation of assignment and consequent loss of collection case did not amount to a misrepresentation under the FDCPA); *Hackett v. Midland Funding LLC*, 2019 WL 1902750, at *2 (W.D.N.Y.) ("Midland

15

interprets Hackett's allegations as claiming that Midland violated the FDCPA by filing the collection case without the immediate means of proving ownership of the debt and then losing the case. This alone, as Midland correctly argues, is not actionable.") *compare  Sykes v. Mel Harris & Associates, LLC,* 757 F.Supp.2d 412, 424 (S.D.N.Y. 2010)("Plaintiffs do not merely alleged that ... defendants 'lack physical evidence of the debt,' but that they knowingly authorized [filing of] false affidavits of merit—misleading both the Civil Court and consumer-defendants…" Affidavits were executed by law firm staff and suits filed as part of a massive sewer service scheme); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 691 (S.D.N.Y. 2015). (Plaintiffs alleged they never had accounts or were otherwise not indebted to the original creditor, were not served with the lawsuits and first learned of the suits until years after default judgments had been entered against them.)

### THE *ROOKER-FELDMAN* DOCTRINE BARS ALL CLAIMS IN THE FAC

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" *Exxon Mobile Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 291, 125 S.Ct. 1517, 1526 (2005). The doctrine is based upon the fact that 28 U.S.C. § 1257 mandates that only the United States Supreme Court may review appeals from the highest court of each state. Thus, district courts may not adjudicate what amount to *de facto* appeals from state court judgments. *Id.*at 291-92, 125 S.Ct. at 1526.

The *Rooker-Feldman* doctrine "is confined to cases...brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

*Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir. 2006), *quoting Exxon,* 544 U.S. at 284, 125 S.Ct. at 1521. The Second Circuit applies a four-pronged test to decide whether *Rooker-Feldman* prohibits a federal district court from exercising jurisdiction over a claim:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" *Hoblock,* 422 F.3d at 85. The first and fourth requirements may be loosely termed "procedural"; the second and third may be termed "substantive." *Id.*

*Hoblock,* 422 F.3d at 85; *see also, MacPherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 137-138 (E.D.N.Y. 2006).

The Court is referred to the introduction to the FAC. The clear implication of the dissertation in the FAC in regard to the alleged problems with the entry of default judgments against the Plaintiffs named in the FAC is that 1) the default judgments are improper and without merit and; 2) the various courts should have undertaken steps to prevent the entry of default against the named Plaintiffs but failed to do so. Thus, the statements contained in the FAC are nothing more than a message to this district court that the Plaintiffs, including Pierre and Vazquez, want their default judgments reviewed and vacated due to lack of merit to the claims alleged in the complaints filed therein. *Quiro v. U.S. Bank National Association*, 2011 WL 2471733 (E.D.N.Y.)(applying *Rooker-Feldman* to dismiss challenges to mortgage foreclosure action). It is undeniable that vacating the default judgments would end the issues concerning the assignment of the debts to the Defendant MF and whether the Defendant law firms, including the Defendant R&R, possessed evidence that the Plaintiffs owed the subject debts at the time the subject

17

lawsuits were filed or whether they knew they could obtain evidence in support of the lawsuits.

The Meriam-Webster dictionary defines "inextricable" as "impossible to separate" and "intertwine" as "to become mutually involved." It is undeniable that the attack by the Plaintiffs Pierre and Vazquez upon the entry of the default judgments entered against each, and the attack upon the debt collections actions invoked by the attorney Defendants in conjunction with the lawsuits relevant to the default judgments, *as all are zealously alleged in the FAC*, are impossible to separate as both allegations are mutually involved.

In regard to the Plaintiffs Pierre and Vazquez, the first and fourth "procedural" requirements set forth in *Hoblock* have been satisfied. As a matter of law, both Pierre and Vazquez "lost" in the Suffolk County actions, based upon the entry of a default judgment against each, and the judgments were issued before the commencement of the herein federal court action. The second *Hoblock* inquiry is whether a plaintiff's claims arise from injuries caused by a state court judgment. The *Hoblock* decision describes this mandate as "the core requirement from which the others derive." 422 F.3d at 87. *See also, McKithen v. Brown,* 481 F.3d 89 (2d Cir. 2007):

> "A federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear."

*Hoblock,* 422 F.3d at 88.

The Plaintiffs in *Hoblock* were voters and candidates who asserted that their constitutional rights would be violated if the elections board certified election results without first including the votes of certain disputed absentee ballots. *Id. at 81*. The Court determined that the County Board had refused to count the absentee votes due to the fact that a state court ordered against that

18

counting. *Id. at 89*. The *Hoblock* court ruled that the injury to the plaintiffs therein was caused by the state-court judgment directing the County Board not to count their votes. Thus, their federal action was barred by *Rooker-Feldman. Id. at 88.*

The allegations set forth in the FAC indicate that both Plaintiffs Pierre and Vazquez claim they were injured by the default judgments entered against them. However, the Defendant R&R did not obtain default judgments against these Plaintiffs and then ask the Suffolk County Court to ratify their attempts to enforce the default judgments. Instead, when the Defendant R&R attempted to enforce the default judgments, those enforcement attempts caused the alleged injuries which the Plaintiffs Pierre and Vazquez ask this district court to address.

The third *Hoblock* requirement, which is that the plaintiff's claim must invite review and rejection of a state court judgment, has been satisfied in the herein action. The FAC is *replete* with attacks upon the default judgments. This detailed, long attack constitutes a clear request to this district court to vacate the default judgments entered against the Plaintiffs Pierre and Vazquez by the Suffolk County Court. Thus, these Plaintiffs are inviting this district court to "reject" the default judgments entered against them.

In *McKithen, supra,* the Second Circuit stated:

> 'What *Exxon Mobil* and *Hoblock*...make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."

481 F.3d 89 at 97-98.

Here, there is a definite causal relationship between the Suffolk County default judgments and the alleged injuries complained of by the Plaintiffs in the herein action. *Trakansook v. Astoria*

*Federal Savings & Loan Association et al.*, 2007 WL 1160433 (E.D.NY.) *affirmed* 2008 WL 4962990 (2d Cir.)(applying *Rooker Feldman* to bar claims based upon post-judgment attempts to execute mortgage foreclosure judgment). Nor does it matter for *Rooker-Feldman* purposes that default judgments are at issue. Courts have repeatedly applied *Rooker-Feldman* to state court default judgments. *Neshewat v. Salem,* 194 Fed. Appx. 24 (2d Cir. 2006)(affirming district court decision that it lacked jurisdiction under *Rooker-Feldman* over state court default judgment; *Ballyhighlands, Ltd. v. Bruns,* 1999 U.S. App. LEXIS 11811, at *5 (2d Cir. 1999)(Westlaw citation unavailable)("*Rooker-Feldman* applies to default judgments just as it does to other types of judgments."). Nor does it matter that the Defendant R&R was not a party to the Suffolk County actions commenced against Pierre and Vazquez. The *Rooker-Feldman* doctrine may be invoked by a defendant in a federal lawsuit who was not a party to the relevant state court action. *Morris v. Am Home Mort. Servicing, Inc.*, 443 Fed. Appx. 22 (5th Cir. 2011).

Neither Pierre nor Vazquez attempted to vacate the default judgments entered against them and defend the merits of the lawsuits commenced against them, including their claims that no effective assignment to MF occurred and that no proof existed, or could be obtained, to support the claims set forth in the Suffolk County actions filed against them. Importantly, all of the claims alleged against the Defendant R&R are based upon alleged violations of New York laws. The Plaintiffs could have set forth these alleged violations of New York laws in respective answers to the complaints filed in the Suffolk County actions. Neither the Plaintiff Pierre nor the Plaintiff Vazquez alleges improper service of process. Instead, these Plaintiffs now improperly drag their alleged claims into this federal district court and request this Court to review the

20

default judgments entered against each.

The allegations set forth in the FAC clearly demonstrate that events leading to the entry of the default judgments, and the attempts to collect upon the judgements by the Defendant R&R, are unequivocally "inextricably intertwined". *Lajauine v. Samuel & Sons Seafood Co. Inc.*, 68 F. Supp. 3d 432, 437 (S.D.N.Y. 2014) *reversed on other grounds without consideration of Rooker-Feldman dismissal*, 614 Fed. App'x 33 (2d Cir. 2015)(stating, in part "Here, the causal link is clear and direct. If the state court judgment did not exist, the Plaintiffs would not have the damaged credit rating they complain of, and there would be no compensable injury. To this extent, Plaintiffs' injury asserted in this action is "inextricably intertwined" with the Pennsylvania state court judgment.")

In *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), the Second Circuit ruled that *Rooker-Feldman* did not apply because the plaintiff therein was not challenging a state court judgment but, instead, was alleging FDCPA violations based upon alleged false statements set forth in a collection letter. In contrast, the Plaintiffs Pierre and Vazquez scream their dissatisfaction in the FAC in regard to the manner via which the default judgments were entered.

In *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006), the Sixth Circuit Court of Appeals properly recognized that the *Rooker-Feldman* doctrine did not apply as the plaintiff therein was not complaining about the state court judgment. In contrast, both Pierre and Vazquez zealously complain in their FAC in regard to the events leading up to the default judgments entered in the Suffolk County actions.

The Court is referred to the matter of *In re FDCPA Cognate Cases*, 2016 U.S. Dist. LEXIS 44039, at *17-*18 (W.D. Mich.)(Westlaw citation unavailable). The court therein found that the

violative claims alleged therein were based on actions of third-party debt collectors and legal professionals who allegedly violated the FDCPA by seeking inappropriate costs in requests and writs for garnishment. The requests were reviewed by state-court clerks to see if the writs were correct. However, the court found that a "far cry" from a judgment on the merits, concluding that a garnishment judgment never entered--either by default or after a contest. As there was no state court judgment or other final order, the *Rooker-Feldman* doctrine could not apply. In stark contrast, the Plaintiffs Pierre and Vazquez challenge the entry of the default judgments filed against each in the Suffolk County actions, thus application of the *Rooker-Feldman* doctrine herein is proper.

The Court is referred to the matter of *Mueller v. Barton*, 2014 WL 127866 (E.D. Mi.). The court therein stated that the *Rooker-Feldman* did not apply as the plaintiff did not challenge the state court's issuance of a consent judgment or have the judgment overturned. Other courts have denied *Rooker-Feldman* application based upon a lack of challenge to a state court judgment. *Riehm v. Engelking* , 538 F.3d 952, 965 (8th Cir. 2008); *MSK Eyes Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533 (8th Cir. 2008); *Christ's Household of Faith v. Ramsey County*, 618 F. Supp. 2d 1040, 1046 (D. Minn. 2009). In contrast, the Plaintiff Pierre and the Plaintiff Vazquez challenge the default judgments entered in the Suffolk County actions. The allegations set forth in the FAC can be viewed as nothing less than an attempt to have this district court review and overturn the default judgments.

In setting forth claims for violation of New York Judiciary Law § 487, the Plaintiffs trip over their own allegations. Although patently baseless and easily defendable, these Section 487 claims allege that the law firm Defendants committed fraud upon the state courts wherein the actions

were filed. (See paragraphs 103 and 104 of the FAC). The entirety of the Plaintiffs' claims are based upon allegations that MF could not own the debts at issue thus the Plaintiffs do not owe the debts. It is clear that claims that a judgment was procured based upon fraud is an attack upon the very judgment and, thus, precluded by *Rooker-Feldman*. In *Bradley v. Selip & Stylianou, LLP*, 2018 WL 4958964 (W.D.N.Y.), the court applied *Rooker-Feldman* to preclude a claim for violation of the FDCPA for attempting to collect a debt the plaintiff alleged was not owed due to identity theft. Therein, the court cited to *McCrobie v. Palisades Acquisition XVI, LLC*, 664 F. App'x 81, 83 (2d Cir. 2016) for the premise that an underlying state-court judgment can be valid yet a debt collector can still have violated the FDCPA by making false, deceptive, or misleading communications, or using unfair or unconscionable means, in the course of attempting to collect on the judgment. However, a claim that the consumer is not liable for the judgment is precluded by *Rooker-Feldman*. Here, the Plaintiffs allege that the judgments entered against them are *invalid*, not that the Defendant MF violated the FDCPA by using unfair and/or deceptive means via attempts to collect valid judgments.

Other decisions hold that claims of the use of fraud to procure a state court judgment is covered by *Rooker-Feldman*. *Barlow v. Nation Star Mortg.*, 2021 WL 1960522 (W.D.N.Y.); *Quiroz v. U.S. Bank Nat'l Ass'n*, 2011 WL 2471733, at * 20 (E.D.N.Y.) In *Talley v. Loancare Servicing*, 2018 WL 4185705, at *15 (E.D.N.Y.), the plaintiffs alleged that the defendants had obtained a judgment of foreclosure based upon fraud. The court, relying upon *Kropelnicki v. Siegel*, concluded that a ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, . . . which is

23

precisely the result that the *Rooker-Feldman* doctrine seeks to avoid." Any favorable ruling herein could only occur by finding that the Defendant R&R obtained default judgments upon fraud and are thus void.

"The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker-Feldman*". *Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000). "Courts in this District consistently have held that there is no 'fraudulent procurement' exception to the *Rooker-Feldman* doctrine." *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 369 (S.D.N.Y. 2015). Fraud claims may not be barred by *Rooker-Feldman* when a plaintiff seeks damages from a defendant for injuries suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment. *Vossbrinck v. Accredited Homes Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). Here, the Plaintiff Pierre and Vazquez each seek damages from alleged injuries based upon alleged fraud by the Defendant R&R. However, the adjudication of these alleged damages could only occur if this Court sits in review of how the default judgments were obtained.


PLAINTIFFS' RELIANCE
UPON *GREEN V. FORSTER*
*& GARBUS, LLP* IS MISPLACED

Plaintiff's reliance on the report and recommendation issued by Magistrate Judge Steven I. Locke in *Green v. Forster & Garbus, LLP*, CITE,  is misplaced. Initially, the R&R has yet to be ruled upon by District Judge Joanna Seybert. Importantly, the undersigned has stressed as part of the objections to the R&R that the plaintiff therein lacks Article III standing in that he did not suffer any concrete and particularized injury in fact as a result of his alleged review of the collection letter at issue therein. The lack of standing is based upon the decision issued in June

25, 2021 by the U.S. Supreme Court in *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

Notwithstanding any of the foregoing, *Green* follows a series of decisions related to FDCPA liability for failure to provide notice and file an assignment of judgment under New York State Law. These decisions have interpreted state law that requires that the assignor of a judgment to file an assignment of judgment and provide notice to the judgment debtor prior to the assignee having authority to enforce the judgment. N.Y. C.P.L.R. § 5019(c). In *Moukengeschaie v. Eltman, Eltman & Cooper*, 2016 WL 1274541, at *19 (E.D.N.Y.), which Plaintiff cites, the court found FDCPA liability for the debt collector who threatened to collect on the plaintiff's judgment before the Plaintiff received notice of the assignment of the judgment. Similarly, in McCrobie v. Palisades Acquisition XVI, on which Plaintiff also relies, the complaint "alleges that the defendants did not own or have the right to collect Centurion Capital Corporations's judgement because that judgment never was assigned to any other person or entity at all, and certainly not to Palisades XVI, LLC." 359 F.Supp.3d 239, 250 (W.D.N.Y., 2019) (emphasis added). In both of these cases the court held that the collector violated the FDCPA due to their failure to properly follow state law requirements for assigned judgments. Green is a report and recommendation that ultimately deals with manner in which the original creditor, current creditor and the creditor who entered the judgment and the assigned the judgment to the current creditor were identified on a collection letter. Since this action deals with claims that were assigned prior to judgment, these cases are not applicable.

Reliance on Green is even further misplaced because Midland has provided documentary evidence that it was assigned all claims, including Plaintiff Vazquez and Pierre's, prior to the commencement of legal action as identified in Midlands opposition and Rule 56.1 motion. As a

25

result, Midland had standing to proceed with all the legal actions commenced on its behalf.


CONCLUSION

For the reasons set forth heretofore herein, the Plaintiff's motion for summary judgment should be denied in its entirety.


Respectfully submitted,

/ s / *Robert L. Arleo*
ROBERT L. ARLEO

26