UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
DAVID AGOADO, LEEANN MCNALLY, CRAIG
MOORE, CHRIS PIERRE, THOMAS SHARKEY,
MADGE SHIPMAN, and DOREEN VAZQUEZ
individually and on behalf of all other similarly situated,

Case No. 2:14-cv-00018-JMA-AKT

Plaintiffs,

-against-

MIDLAND FUNDING, LLC d/b/a as MIDLAND
FUNDING OF DELAWARE, LLC, and MIDLAND
CREDIT MANAGEMENT, INC., RUBIN &
ROTHMAN, LLC, FORSTER & GARBUS LLP,
COHEN & SLAMOWITZ, LLP, PRESSLER &
PRESSLER LLP,

Defendants.
----------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN OPPOSITION OF THE PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Joseph L. Francoeur
Wilson Elser Moskowitz Edelman & Dicker LLP
*Attorneys for Defendants COHEN & SLAMOWITZ, LLP*
150 East 42nd Street
New York, New York 10017-5639
Joseph.Francoeur@wilsonelser.com
Our File No. 11471.00008

Date: January 14, 2022

i

265043452v.2

**Table of Contents**

TABLE OF AUTHORITY ................................................................................................................iii
PRELIMINARY STATEMENT.......................................................................................................1
ARGUMENT....................................................................................................................................2
   I.    S&S Engages In Meaningful Attorney Review Prior To Filing Suit And Again When Seeking A Default .........................................................................................................................................2
   II.   S&S's Review Was Supported By A Copious Amount of Evidence. ...........................................7
   III.   Affidavit Containing Alleged Material Misquote of the FDCPA...............................................10
CONCLUSION................................................................................................................................12

265043452v.2


# **TABLE OF AUTHORITY**

**Cases**

*Green v. Forster & Garbus*, No. 19-CV-3550 (JS)(SIL), 2021 U.S. Dist. LEXIS 203571 (E.D.N.Y. Oct. 21, 2021) ................................................................................................................................. 7


**Statutes**

15 U.S.C § 1692g ........................................................................................................................ 11

15 U.S.C. § 1692g ....................................................................................................................... 11

Judiciary Law § 487 ..................................................................................................................... 1

This memorandum of law is submitted on behalf of Defendant Cohen & Slamowitz, LLP (now known as Selip & Stylianou, LLP) ("Defendant" or "S&S") in opposition of Plaintiffs' motion for partial summary judgment.

**PRELIMINARY STATEMENT**

Plaintiffs claim that S&S violated General Business Law §349 ("GBL § 349") and Judiciary Law § 487 in two ways. First, that S&S filed suit and later requested and obtained a default judgment against Agoado: without a) meaningful attorney review of its file prior to suit; and b) having supporting evidence for the claim. (Pl. Mem. P. 51). This claim was addressed (and rebuffed) in great detail in S&S's memorandum of law in support of its motion for summary judgment, which is incorporated by reference here and and will only be briefly addressed herein.

The second claim is that S&S knowingly and wrongfully submitted to the state court affidavits that: a) materially misquoted the FDCPA, and b) were auto-generated and robo-signed by David Cohen of S&S without meaningful attorney review. (Pl. Mem. P. 52, 67). There is absolutely no evidence supporting these allegations. Instead, the evidence noted below clearly contradicts Plaintiffs' conclusions and wholly supports S&S's statements that it receives all client documents at the time it is retained that are necessary to file suit, and that at least two attorneys review its entire file prior to filing suit and requesting the entry of a default judgment.

Plaintiffs also continue to claim that S&S had no evidence of the debt when it filed suit against Agoado despite the clear and convincing evidence to the contrary that S&S had all chain of title and account level documentation it needed pursuant to New York state law to file suit at the time it was retained. Finally, Plaintiffs, in a desperate attempt to save their claim, falsely assert that S&S manufactured evidence to support its statement that it had the necessary client

1

documentation in its file prior to commencing the state court action by referring to an affidavit that S&S received after this action was filed. However, the fact that S&S received the relevant documentation a second time, in the form of an affidavit or otherwise, does not in any way support an allegation that evidence was manufactured. As S&S had full chain of title documentation when it was retained, an additional affidavit containing no new information does not advance any argument of the Plaintiffs. In sum, there is no support whatsoever for Plaintiffs' claims, and as such, this matter should be dismissed in its entirety as against S&S.

## ARGUMENT

### I. S&S Engages In Meaningful Attorney Review Prior To Filing Suit And Again When Seeking A Default

Plaintiffs allege that S&S "prepare[d] state-court filings" without any meaningful attorney review (aka robo-signed). (Pl. Mem. P. 1). This self-serving conclusion is wholly rebutted by the evidence previously submitted by S&S, and Plaintiffs have failed to present any evidence to support it.

As demonstrated below, the evidence derived from discovery shows that in this matter, and in all matters handled during the same time period as this matter, it was and is S&S's policy and practice to receive the client's entire file and to have its attorneys perform meaningful review of the file before sending the initial "debt validation" letter, filing suit, and again before seeking default judgment.

One of S&S's partners, Mitchell Selip, gave sworn testimony that outlined the meaningful review that each attorney is required to undertake prior to filing suit and for default judgment. The attorney who in fact reviewed the Agoado file, David Cohen, confirmed S&S's policy of meaningfully reviewing each and every matter prior to commencing suit. Further, Mr. Cohen

2

confirmed that he follows the firm's policy and practice of reviewing the entire file prior to filing suit and also prior to requesting a default judgment, and that he had no reason to believe that he deviated from this practice when handling Agoado's account. The fact that the substance of the pleadings filed in the state court matter against Agoado are accurate lend further support to the review performed by Mr. Cohen.

Mr. Selip confirmed that S&S receives sufficient documentation to perform a review of the file – chain of title and account-level documentation – each time it receives a new assignment:

> Q. Do you receive any documents related to new accounts?
>
> A. Yes.
>
> Q. What documents do you receive?
>
> A. It will vary depending upon the account, but it typically includes chain of title, bill of sale, account statements. At times it could include copies of payments from the consumer, terms and conditions or card number agreement, whatever you want to refer to it as. Did I say bill of sale? If I didn't, bill of sale.
>
> Q. Are those items always provided?
>
> A. Not every one of those. There may not always be a copy of payment available to us at the time of placement. But if we need it for whatever reason, we then ask for it; and then we get it if it's available.

(Francoeur Aff.[1], Ex. E; Page 94, lines 8-25)

The sworn testimony of Mr. Selip and Mr. Cohen unequivocally demonstrate S&S's practice of reviewing the entire file. Mr. Selip testified:

> A. … After the data processing folks review it and approve, it then goes to an attorney. It's not assigned to a particular attorney, but it's made available to all the partners and several other attorneys who will then go into the file, review the file to ensure that it's something that we should be accepting and handling on behalf of a client.

---

[1] The Francoeur Affirmation cited in this Memorandum of Law is referring to Francoeur Affirmation in Opposition of Plaintiffs' Motion for Partial Summary Judgment.

3

> Q. How do you make the determination whether it's something that you should be accepting?
>
> A. Based on a review of everything that we get in along with the documents that are associated with the file. We'll review it, and if it -- if in our opinion everything is there that we need in order to litigate an account, we will accept it.

(Francoeur Aff., Ex. E, 95:24-97:16).

Mr. Selip described the attorney review undertaken in every case before a default judgment is sought:

> Q. When S&S makes its decision to file for default judgment, how does the firm go about making that decision?
>
> A. We utilize our Phoenix system to identify accounts that have been sued, where the consumer has been served, where the 3215 Notice has been sent and more than 25 days has passed and there's no answer; it's not paying or performing; there's no compliance issues which I would broadly define as allegation of fraud, dispute, paid prior, identity theft which is part of fraud. If the account falls into that category, then it's reviewed by a clerk who will gather the documents necessary to support the request for a judgment **and give it to an attorney for review and signature.**

(Francoeur Aff., Ex. E, 102:3-18).(emphasis added).

Similarly, David Cohen testified that it is his practice to review all account-level documentation before proceeding with any collection activity:

> Q. Further down, if you look a little more than halfway down where it says "claim accepted by David C", does that mean you?
>
> A. Yes. The one from 11-30, that is me.
>
> Q. What does it mean when it says "claim accepted"?
>
> A. "Claim accepted" means that I have clicked off on my screen after reviewing the account, whatever particular information our clients provided to us, whatever documentation is available to us and indicated that there is a sufficient basis that we can proceed with the claim for collection activity.

(Francoeur Aff. Ex. C; Page 52, 12-25; Page 53, 2-7, 25; Page 54, 2-11); (Page 51, 24-25; Page 52, lines 2-11)

4

Moreover, as described below, Mr. Cohen explained what actual documents are contained in the "media" portion of the file that he reviews:

> Q. When you say media, do you mean any documents?
>
> A. Media would include affidavits from the client, media would include a debt validation letter that my firm sent, media would include a credit bureau report, media would include pleadings, when and if you do the pleadings, copy of the summons and complaint, media would include the affidavit of service filed with the court, media could include a copy of a judgment entered by the court, media could include all of those things in addition to things like statements or an application or things of that nature.
>
> (Francoeur Aff. Ex. C; Page 52, 12-25; Page 53, 2-7, 25; Page 54, 2-11); (Page 51, 24-25; Page 52, lines 2-11)

Finally, with regard to the default judgment filed against Agoado, Mr. Cohen affirmed that he has no reason to believe he did not follow his custom and practice of reviewing the entire file:

> With regard to the underlying collection action against David Agoado, I do not have a specific recollection as to what I reviewed, except that I am certain I followed my regular custom and practice of reviewing all documents and the client affidavit, and I have no reason whatsoever to believe that I did not review the documents and affidavit prior to seeking the default judgment.
>
> (Francoeur Aff., Ex. O, ¶ 3.)

The sworn testimony of Mr. Selip and Mr. Cohen conclusively rebut Plaintiffs' unsubstantiated allegations that the affidavit signed by Mr. Cohen violated the FDCPA because it was not signed after conducting meaningful review of the firm's file.

Plaintiffs offer scant proof to rebut S&S's testimony and evidence that the pleadings were properly reviewed and signed. Plaintiffs' first "proof" is no more than a reference to a typographical error. Plaintiffs point out that Mr. Cohen failed to notice that "Household Financial Corporation" was misspelled, since the letter "n" was missing in the word "corporation." (Pl.

5

265043452v.2

Mem. P. 66). If a typo were sufficient to lead to liability, then all of us would be in trouble, but fortunately there is no such case law supporting this silly point.

Plaintiffs' next "proof" is to point out the obvious to the Court: that S&S uses a computer and drafts its documents using a "computer template." Plaintiff would have this Court conclude that S&S's use of technology means that its attorneys do not review its files. This too is a meritless argument. S&S uses a computer and templates for practical and efficiency purposes, as does the entire business world, including Plaintiffs' counsel. This argument simply is not proof of anything other than the fact that S&S uses a computer. Simply put, all of S&S's many reviews cannot be deemed invalid because of its use of a template and one misspelled word. This flawed argument just strengthens S&S's position that Plaintiffs do not have a valid claim against them.

Plaintiffs argue, wrongly, that S&S's practices were "bereft of meaningful attorney involvement" because they were entirely dependent upon automated systems and non-attorneys. (Pl. Mem. P. 66). This allegation is once again unsupported by any evidence. As described above, Mr. Selip testified that the non-attorneys, specifically the data processing team, conduct a preliminary review of the documents for new accounts to ensure that the file is complete with the necessary documents prior to review by an attorney. The record clearly establishes that S&S communicated with its client through software called YGC, which Midland utilized to send S&S relevant media (documents) such as account level documents and chain of title records. (Francoeur Aff. Ex. E; P. 93-95). The use of computer software, automated systems, and non-attorneys are not evidence of anything, and they do not speak one way or the other as to whether an attorney meaningfully reviewed a file. That evidence comes from the testimony of Mr. Selip and Mr. Cohen, which very clearly outlined the in-depth reviews performed by the firm's attorneys.

265043452v.2

As Plaintiffs have no evidence that S&S failed to conduct a meaningful attorney review, this argument should be rejected in its entirety.

## II.    S&S's Review Was Supported By A Copious Amount of Evidence.

As set forth in S&S's motion for summary judgment – and not fully repeated herein – S&S had sufficient chain of title and account level documentation at the time it was retained to support its suit against Agoado. Plaintiffs' repeated contention that S&S has "no evidence" is puzzling and wholly without merit.

Plaintiffs curiously cite to *Green v. Forster & Garbus*, No. 19-CV-3550 (JS)(SIL), 2021 U.S. Dist. LEXIS 203571 (E.D.N.Y. Oct. 21, 2021) (Locke, Mag. J.)., that when a debt collector "has submitted no evidence of [secondary d]ebt's chain of custody, transfer, or sale from original creditor to the [debt buyer] entity upon whose behalf Defendant sought to collect[, it] can neither prove that it was acting in accordance with sections 1692g(a)(2), 1692e, and 1692e(10) of the FDCPA when it [prosecuted the Plaintiff], nor defeat Plaintiff's motion for summary judgment on this claim."

Plaintiffs' citation is wholly inapplicable as S&S actually possessed copious amount of documents establishing "chain of custody, transfer, of sale from original creditor", which includes: i) the Card Member Agreement for Mr. Agoado's Chase Account and the Notices of Changes to the Card Member Agreement (Francoeur Aff., Ex. J.); ii) electronic "Account Work-screens" for Agoado's Accounts, which detail account information stored in S&S's electronic litigation files (Francoeur Aff., Ex. K.); iii) the charge-off statement for the Chase Account, dated February 6, 2010, detailing the current balance as $7,985.20 (Francoeur Aff., Ex.J.); iv) the Bill of Sale dated September 19, 2011, the Closing Statement dated September 20, 2011, and the Affidavit of Sale of Account By Original Creditor dated March 20, 2012 (Francoeur Aff., Ex. H.); v) electronic data provided by Chase as indicated in the "field data sheet" for the Chase account (Francoeur Aff. Ex.

7

L) and the household account (Francoeur Aff., Ex. M.); vi) Chase Bank Account Statements attributed to Mr. Agoado, bates stamped S&S000042-81(Francoeur Aff. Ex. G.); vii) the Personal Credit Line Account Agreement on the Household Account attributed to Mr. Agoado (Francoeur Aff. Ex. N.); and viii) chain of title for the Household Account attributed to Mr. Agoado, including the Affidavit of Bulk Sale of Accounts with a Certificate of Conformity, the Assignment and Bill of Sale, the Closing Statement, the Account Schedule, and the Affidavit of Sale of Individual Account for the Household Account, bates stamped S&S000083-97 (Francoeur Aff. Ex. I).

As noted above, Mr. Selip stated just the opposite and explained what S&S typically receives for a new account:

> Q. What documents do you receive?
>
> A. It will vary depending upon the account, but it typically includes chain of title, bill of sale, account statements. At times it could include copies of payments from the consumer, terms and conditions or card number agreement, whatever you want to refer to it as. Did I say bill of sale? If I didn't, bill of sale.
>
> Q. Are those items always provided?
>
> A. Not every one of those. There may not always be a copy of payment available to us at the time of placement. But if we need it for whatever reason, we then ask for it; and then we get it if it's available.
>
> (Francoeur Aff. Ex. E; Page 94, lines 8-25)

Plaintiffs ignore the evidence showing S&S possessed full chain of title documentation at the time it was retained. The chain of title documents included an Assignment and Bill of Sale (Francoeur Aff. Ex. I; S&S 000088), Closing Statement (Francoeur Aff. Ex. I; S&S 000089) and an Account Schedule (Francoeur Aff. Ex. I; S&S 000090) establishing that a portfolio of accounts was sold by HSBC to Midland on August 26, 2011. S&S was also provided a Field Data sheet confirming that Agaodo's account was in the purchased portfolio of accounts:

8

> Data printed by Midland Credit Management, Inc. from electronic records provided by HSBC Consumer Lending (USA) Inc. pursuant to the Bill of Sale / Assignment of Accounts transferred on or about 08/26/2011 in connection with the sale of accounts from HSBC Consumer Lending (USA) Inc. to Midland Funding LLC.
>
> (Francoeur Aff. Ex. I; S&S 000091).

These documents are fully sufficient to establish chain of title prior to filing suit and for default, and they were all provided to S&S at the time S&S was retained.

After the filing of this suit by Plaintiffs, Midland requested from HSBC an additional affidavit showing Agoado's account was in the August 26, 2011 portfolio of accounts. Midland's 30(b)(6) witness Xenia Murphy also confirmed that additional documentation – such as this individual account affidavit – is available to Midland and to its attorneys at the time of placement with S&S upon request:

> Q   When does Midland Credit Management get the actual physical documents into the portal? I am not talking about requests for documents, front end, can you explain it a little bit maybe.
>
> A   Sure. I think we talked about it earlier, when Midland purchases accounts, we try to get as much media, what we call upfront as possible. That media is delivered to us at the time of purchase and we put it on the media portal, but we also have the ability to order additional documents, so all of those documents are available to us at the time of purchase. **We can ask for it then, we can ask for it six months from now, we can ask for it whenever we want, but it is available to us at the time of purchase**.
>
> (Francoeur Aff. Ex. D; P. 164 line 14 – P. 165 line 25) (emphasis added).

Consistent with Ms. Murphy's testimony, S&S's Mr. Selip confirmed the availability of additional documentation, which is typically requested to support a motion:

> Q.   Does S&S ever ask Midland to provide Affidavits in support of its litigation against debtors?
> A.   Yes.
> Q.   In what instances would S&S ask for such Affidavits?
> A.   To support a motion or to support the request for the Entry of Judgment.

9

(Francoeur Aff., Ex. E; 148).

Plaintiffs' accusation reads as if proof of chain of title were not available at the time S&S was retained, but as shown above this statement is not correct. S&S was always provided with proof of a complete chain of title at the time of retention. Here, the Bill of Sale and supporting documents established that the portfolio was sold to Midland on August 26, 2011, and that the Field Data sheet that evidences that Agoado's account was inside that portfolio of accounts. This documentation is all that is required to set forth a cause of action sufficient to demonstrate Midland's entitlement to judgment against Agoado, as is evidenced by the court's entry of a judgment against Agoado. The mere fact that the information in the Field Data sheet can be packaged into an affidavit upon request does not mean full chain of title information was not provided – and not reviewed – by an attorney at S&S prior to filing suit. Plaintiffs fail to realize that the individual account affidavit *did not provide any new information that was not previously provided to S&S at the time it was retained*, which exposes Plaintiffs' entire argument here as a red-herring and it should be disregarded as having no meaning or impact whatsoever.

## III. Affidavit Containing Alleged Material Misquote of the FDCPA

Plaintiffs attempt to muddy the waters with a very confusing allegation that S&S participated in Midland's "scheme" and argue that the affidavits materially misquoted the FDCPA; however, Plaintiffs fail to allege which affidavit to which it is referring. (Pl. Mem. P. 16). Reading Plaintiffs' papers as a whole, it appears that they are referring to Midland's supporting affirmation by Kayla Haag. (Pl. Mem. P. 16). In reviewing that affidavit, Plaintiffs contend that it was deceiving because it failed to include the words "by the debt collector" in the 15 U.S.C § 1692g "certification." However, Midland did no such thing.

Plaintiffs are attempting to confuse the Court by referencing the validation notice required by 15 U.S.C. § 1692g.  However, the affidavit was submitted in support of Midland's state court action against Agoado.  There is no requirement under the FDCPA or New York state law that a plaintiff need to provide a validation notice in an affidavit submitted in support of a request for a default judgment in a state court action.

Ms. Haag's affidavit attested to her review of Midland's file and to her knowledge of Midland's procedures. (Francoeur Aff., Ex. B, S&S000125-127)  Her statement in paragraph 9 simply indicated that it was Midland's practice to send a validation letter in accordance with § 1692g. (Id.)  While Ms. Haag paraphrased what that notice contained, her affidavit <u>was not the § 1692g notice</u>.  Plaintiffs' counsel is well aware of this fact, and its argument that Ms. Haag's affidavit was Midland's 1692g validation notice is wholly disingenuous.  Plaintiffs' counsel has intentionally failed to disclose to this Court that the actual validation notice (which was produced to Plaintiffs) <u>does contain the "by the debt collector" language.</u>  (Francoeur Aff. Ex. A; S&S 000038-39).  Furthermore, Plaintiffs' attempt to raise deficiencies in Midland's validation notice is unrelated to S&S, and is not an issue raised in the complaint, thus making it irrelevant to the instant motion for summary judgment.

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs' motion for partial summary judgment must be denied.

Dated: January 14, 2022
      New York, New York

                                Yours, etc.

             WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                     By: ___*/s/ Joseph Francoeur*___
                          Joseph L. Francoeur
                          *Attorneys for Defendant*
                          *COHEN & SLAMOWITZ, LLP*
                          150 East 42nd Street
                          New York, New York 10017-5639
                          Tel.: (212) 490-3000
                          File No.: 11471.00008
                          Joseph.francoeur@wilsonelser.com