# Exhibit C

2    UNITED STATES DISTRICT COURT

3    EASTERN DISTRICT OF NEW YORK

4    ----------------------------------------------- x

     DAVID AGOADO, LEEANN MCNALLY, CRAIG MOORE,

5    CHRIS PIERRE, THOMAS SHARKEY, MADGE SHIPMAN,

     and DOREEN VAZQUEZ individually and on behalf

6    of all others similarly situated,

7                        Plaintiffs,

                                    Index No.

8                                   14-cv-00018-LDW-ARL

9         -against-

10   MIDLAND FUNDING, LLC, MIDLAND FUNDING, LLC

     DBA IN NEW YORK AS MIDLAND FUNDING OF

11   DELAWARE, LLC, and MIDLAND CREDIT

     MANAGEMENT, INC., et. al.,

12

                         Defendants.

13   ----------------------------------------------- x

14

15   EXAMINATION BEFORE TRIAL of the Defendant, SELIP &

16        STYLIANOU, LLP, by DAVID A. COHEN, taken by all

17        parties, pursuant to Order, held at the offices

18        of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER,

19        LLP, 666 Old Country Road, Garden City, New

20        York, on February 18, 2016, at 10:15 a.m.

21        before a Notary Public of the State of New

22        York.

23

24

25

2

2    A P P E A R A N C E S:
3

     FRANK, LLP
4              Attorneys for Plaintiffs
               275 Madison Avenue, Suite 705
5              New York, New York  10016
6    BY:  JAY SALTZMAN, ESQ.
               -and-
7    BY:  ASHER HAWKINS, ESQ.
8
9    BIANCO, BYRNES & FINKEL, LLP
               Co-Counsel for Plaintiffs
10             5036 Jericho Turnpike, Suite 2018
               Commack, New York  11725
11
     BY:  ALAN FINKEL, ESQ.
12   (Present Telephonically)
13
14   MARSHALL, DENNEHEY, WARNER, COLEMAN
     & GOGGIN, ESQS.
15             Attorneys for the
               MIDLAND Defendants
16             88 Pine Street
               New York, New York  10005
17
     BY:  MATTHEW JOHNSON, ESQ.
18
19
     WILSON, ELSER, MOSKOWITZ,
20   EDELMAN & DICKER, LLP
               Attorneys for Defendant
21             SELIP & STYLIANOU, LLP
               150 East 42nd Street
22             New York, New York  10017
23   BY:  JOSEPH L. FRANCOEUR, ESQ.
24
25

3

```
2    A P P E A R A N C E S:  (Continued)
3
     ROBERT L. ARLEO, ESQ.
4              Attorneys for Defendant
               RUBIN & ROTHMAN, LLC
5              380 Lexington Avenue
               New York, New York  10168
6    (Present Telephonically)
7
8    DAVIDSON FINK, LLP
               Attorneys for Defendant
9              FORSTER & GARBUS, LLC
               28 East Main Street, Suite 1700
10             Rochester, New York  14614
11   BY:  GLENN M. FJERMEDAL, ESQ.
     (Present Telephonically)
12
13
     PRESSLER & PRESSLER, LLP
14             Attorneys for Defendant
               PRESSLER & PRESSLER, LLP
15             7 Entin Road
               Parsippany, New Jersey 07054
16
     BY: MITCHELL L. WILLIAMSON, ESQ.
17   (Present Telephonically)
18
19   NOT PRESENT:
     MARSHALL, DENNEHEY, WARNER, COLEMAN
20   & GOGGIN, ESQS.
               Attorneys for the
21             MIDLAND Defendants
               2000 Market Street, Suite 2300
22             Philadelphia, Pennsylvania  19103
23
24                          xxxxx
25
```

4

```
 2                    S T I P U L A T I O N S

 3

 4    IT IS HEREBY STIPULATED AND AGREED by and between

 5         the attorneys for the respective parties

 6         herein, that filing, sealing and certification,

 7         and the same are, hereby waived.

 8

 9         IT IS FURTHER STIPULATED AND AGREED that all

10    objections except as to the form of the question, shall be

11    reserved to the time of the trial.

12

13         IT IS FURTHER STIPULATED AND AGREED that the within

14    deposition may be signed and sworn to by an officer

15    authorized to administer an oath, with the same force and

16    effect as if signed and sworn to before the Court.

17

18

19                         xxxxx

20

21

22

23

24

25
```

5

2   D A V I D   A .    C O H E N,

3           Having been first duly sworn before a Notary

4           Public of the State of New York, was examined

5           and testified as follows:

6   EXAMINATION BY

7   MR. SALTZMAN:

8           Q.    Please state your name for the

9   record.

10          A.    David A. Cohen.

11          Q.    What is your address?

12          A.    In care of Wilson Elser, 150 East

13  42nd Street, New York, New York.

14          Q.    Good morning.  My name is Jay

15  Saltzman and I represent the plaintiffs in

16  this class action.  Just state your name for

17  the record please.

18          A.    David A. Cohen.

19          Q.    You understand the ground rules of

20  a deposition, you are an attorney; correct?

21          A.    Yes.

22          Q.    If you want to take any breaks, let

23  us know.  Is there any reason that you can't

24  testify truthfully today?

25          A.    No.

```
1                      Cohen

2         Q.   Are you on any medications that

3    would prevent you from testifying truthfully

4    today?

5         A.   No.

6         Q.   Please allow me to finish my

7    question, allow your counsel, if he is going

8    to object, allow him to object so that makes

9    it easier for the court reporter.  Where did

10   you go to law school?

11        A.   I went to Brooklyn Law School.

12        Q.   How many years have you been

13   practicing?

14        A.   37 years.

15        Q.   After graduating Brooklyn Law

16   School where did you work?

17        A.   I worked at the firm of Stern and

18   Peshkin, P-E-S-H-K-I-N, PC.

19        Q.   What kind of law did they practice?

20        A.   Creditors' rights.

21        Q.   How many years were you there?

22        A.   Seven years.

23        Q.   When you left there were you an

24   associate?

25        A.   Yes.
```

```
 1                    Cohen
 2       Q.    Where did you go after that?
 3       A.    I went to the firm of Peshkin and
 4   Cohen PC.
 5       Q.    Were you the "Cohen" of that firm?
 6       A.    Yes.
 7       Q.    So, you were a partner at that
 8   firm?
 9       A.    Yes.
10       Q.    Was it the same Peshkin as the
11   prior firm?
12       A.    Yes.
13       Q.    What kind of law did Peshkin and
14   Cohen practice?
15       A.    Creditors' rights.
16       Q.    When you say creditors' rights,
17   what do you mean by that exactly?
18       A.    You would sue, commercial
19   litigation and consumer collections.
20       Q.    How long were you at Peshkin and
21   Cohen?
22       A.    Peshkin and Cohen became Taub,
23   Peshkin and Cohen and then it became Taub,
24   Peshkin, Cohen and Adler, and I was probably
25   there, I am trying to think, four years.  It
```

8

1                          Cohen

2    must have been four years or so of that.

3         Q.    With all those changes it was four

4    years?

5         A.    I am trying to get a time line.

6    Yes, about that, four or five years.

7         Q.    So, they changed names pretty

8    rapidly within that time frame?

9         A.    Yes.

10        Q.    After Taub, Peshkin, Cohen and

11   Adler, what happened to you career-wise?

12        A.    The firm of Taub, Peshkin, Cohen

13   and Adler PC merged with the law firm of

14   Arthur E. Upton PC and we became Upton, Cohen

15   and Slamowitz PC.

16        Q.    Did that firm ultimately become

17   Cohen and Slamowitz?

18        A.    Yes.

19        Q.    About how many years after the

20   inception of Upton, Cohen and Slamowitz did

21   the firm change its name?

22        A.    I have to think a minute.  Maybe

23   ten years.

24        Q.    The entire time the same general

25   practice, commercial litigation and consumer

```
 1                    Cohen
 2  collection?
 3       A.   Yes.  We also did mortgage
 4  foreclosures for a period of time.  We also
 5  did mortgage closings representing banks,
 6  credit, home equity loans, credit lines and
 7  mortgages.
 8       Q.   More recently Cohen Slamowitz
 9  became Selip and Stylianou; is that right?
10       A.   That's correct.
11       Q.   Was there any other firm between
12  Cohen and Slamowitz and Selip and Stylianou?
13       A.   No.
14       Q.   About when did the firm become
15  Selip and Stylianou?
16       A.   I believe it was January 1st, 2015.
17       Q.   And the same practice about, right?
18       A.   Yes, essentially the same practice.
19       Q.   What is your position now at Selip
20  and Stylianou?
21       A.   I am a partner.
22       Q.   What are your responsibilities?
23       A.   I oversee the general operations of
24  the firm and you do everything you need to do
25  to run a law practice.
```

1                          Cohen

2          Q.   Do you get involved individually

3     with individual, with collection matters for

4     individual debtors at all?

5          A.   Yes.

6          Q.   What would that task include, when

7     you are involved with individual collection

8     matters, what is your job?

9          A.   I get involved in many ways but I

10    think review of new claims that come in from

11    clients is an area I emphasize and doing suit

12    reviews, reviewing claims prior to filing

13    suit, reviewing claims prior to the entry of

14    judgment, approving them for judgment and I

15    assist in the post judgment collection

16    efforts.

17         Q.   Other than those tasks that are

18    connected to individual claims, you said you

19    oversee general operation of the firm.  What

20    does that include?

21         A.   That would include dealing with

22    everything from HR issues to IT issues to

23    assisting the associate attorneys with

24    particular cases, to overseeing the

25    collections operations, to assisting in

                              Cohen

1    preparing, monitoring compliance in the

2    office, creating policies and procedures for

3    the office.

4        Q.   You said creating policies and

5    procedures for the office.  What does that

6    mean?

7        A.   Well, if you have a particular

8    policy that you want your staff to comply

9    with, you create a procedure and you train

10   them and then you monitor their performance.

11       Q.   Those policies and procedures, they

12   are internal to your firm?

13       A.   Yes.

14       Q.   Those policies and procedures, do

15   they ever have to comply with any of the

16   clients for whom you are doing collections?

17            MR. FRANCOEUR:  Objection to form.

18            I think these questions are going beyond

19            the scope of the deposition.

20            MR. SALTZMAN:  I am laying a

21            foundation for later questions which

22            will be specific.

23            MR. FRANCOEUR:  Okay, but the

24            policies and procedures which Selip

25

1                        Cohen

2          testified to, that deposition is

3          complete.  I would give you a little bit

4          of leeway, but today is a three and a

5          half hour court-ordered deposition for

6          the attorney handling the Agoado file.

7               MR. SALTZMAN:  You can answer.

8               THE WITNESS:  I forgot the

9          question.  I'm sorry.

10          Q.   When you established these

11   procedures and policies for your firm, do

12   those ever have to comply with the policies

13   and procedures of your clients, for example,

14   on how to do collections or how to file a

15   lawsuit, having to do with those specific

16   debtors?

17          A.   There are some client-specific

18   portions of our procedures and policies, if

19   that answers your question.

20          Q.   It does.  Thank you.

21          A.   Okay.

22          Q.   Did you do anything to prepare for

23   this deposition?

24          A.   I spoke with my attorney.

25          Q.   When was that?

1                     Cohen

2          A.    This week.

3          Q.    More than once?

4          A.    We had one discussion.

5          Q.    For how long?

6          A.    I believe it was an hour, an hour

7     and a half.

8          Q.    Did you review any documents in

9     connection with preparation for this

10    deposition?

11         A.    Yes.

12         Q.    Do you remember what documents they

13    were?

14         A.    I believe they were the documents

15    that had been the subject of discovery in

16    this action.

17         Q.    Specific to any client, I'm sorry,

18    specific to any debtor?

19         A.    The debtor that, I don't know how

20    you say the name.

21         Q.    Agoado?

22         A.    Agoado, yes.

23         Q.    When you reviewed those documents,

24    did it refresh your recollection about

25    anything having to do with the Agoado

```
 1                         Cohen

 2   collection procedures and any actions against

 3   Mr. Agoado?

 4        A.    I think the answer would be yes.

 5        Q.    How was your recollection

 6   refreshed?

 7             MR. FRANCOEUR:  Objection to form.

 8        You can answer, if you can.

 9        A.    I don't know the process exactly

10   but it refreshed my recollection of a case

11   that I have no present recollection of.

12        Q.    So, we will talk about that.

13        A.    Okay.

14        Q.    Did you discuss this deposition

15   with anyone other than your counsel?

16        A.    I told my secretary I was going.

17        Q.    That's it?

18        A.    And my partners are aware of it.

19             MR. SALTZMAN:  I would like to mark

20        the first exhibit.  It is called MCM

21        Firm Manual.

22                     (Whereupon, Cohen Exhibit 1

23                      marked for identification.)

24        Q.    Mr. Cohen, can you take a look

25   through that?  Have you ever seen this
```

```
 1                        Cohen
 2    document before?
 3         A.   I don't know.
 4         Q.   Can you take a look and tell me if
 5    it looks familiar to you?
 6         A.   (Witness perusing document).
 7         Q.   Have you ever seen it before?
 8         A.   I have seen parts of it.
 9         Q.   What is this document?
10         A.   It is the Midland Credit Management
11    Firm Manual.
12         Q.   You have seen parts of it in what
13    context?
14              MR. FRANCOEUR:  I am going to
15         object to the question.  This is beyond
16         the scope of the deposition.  It is
17         court ordered.  I am about to instruct
18         my witness not to answer any questions
19         having to do with Midland's procedures,
20         policies and procedures.  These were all
21         topics in the 30(B)6.  They are beyond
22         the scope.  This has nothing to do with
23         Agoado's file.
24              MR. SALTZMAN:  It will, but also we
25         didn't have this for Mr. Selip's
```

1                     Cohen

2       deposition.

3            MR. FRANCOEUR:  So then you are

4       confirming my concern.  I instruct the

5       witness not to answer any questions

6       about this manual.  You could take it up

7       with the court.

8            MR. SALTZMAN:  Okay.

9            MR. FRANCOEUR:  If you have

10      questions regarding Mr. Agoado's account

11      and how Mr. Cohen handled that account,

12      that is why the witness is here, he is

13      available for three and a half hours,

14      this is not a back-door attempt for

15      another 30(B)6.

16           MR. SALTZMAN:  No, and, like I

17      said, this is the basis for other

18      questions, but if you are going to

19      instruct him on the record not to

20      answer, that is fine with me.

21           MR. FRANCOEUR:  Okay.  If you have

22      a question about Agoado's account or

23      what Cohen did for that account, which

24      is the purpose, limited specifically by

25      Judge Tomlinson, the witness is ready,

```
 1                    Cohen
 2       willing and available to answer those
 3       questions.
 4            MR. SALTZMAN:  Okay.
 5       Q.   Aside from this, when you dealt
 6  with Mr. Agoado's account, did you convey any
 7  information about your collection procedures
 8  for any court activity on behalf of your
 9  client having to do with Mr. Agoado's account
10  to Midland?
11       A.   I'm sorry.  I don't understand the
12  question.
13       Q.   When you were dealing with
14  Mr. Agoado's account, did you ever convey
15  information to Midland about that account?
16       A.   Me, specifically?
17       Q.   Your firm.
18       A.   Possibly.
19       Q.   Generally, when you need something,
20  let's say for Midland, for example, an
21  affidavit for default judgment, do you
22  request that from Midland?
23       A.   I specifically probably don't
24  personally request it, but I am sure there is
25  a procedure in place, I am confident there is
```

18

                              Cohen

1

2    a procedure in place in my office that if

3    there is a summons served and there is a

4    default and pleading, a responsive pleading,

5    then you would have a procedure in place that

6    would request the client factual affidavit to

7    support the entry of judgment.

8         Q.   Do you know the name of the system

9    that your firm interacts with to request

10   anything from Midland or to inform Midland

11   about the status of an account?

12        MR. FRANCOEUR:  Objection to form.

13        This is beyond the scope, but you can

14        answer the question.

15        A.   We use several different systems.

16   I think the codes that, we send a code, the

17   client sends a code back and I believe that

18   is a YGC operation.

19        Q.   And was that used with your firm in

20   connection with Mr. Agoado's account?

21        A.   As far as I know, it was.

22        Q.   It was, okay, and when you do that,

23   when your firm does that, does your firm have

24   its own set of proprietary software that it

25   uses in order to keep track of what is going

1                          Cohen

2   on with a particular debtor?

3         A.   Yes.

4         Q.   That information that you are

5   keeping track of in your own proprietary

6   system, does that information get transferred

7   or conveyed to Midland in connection with

8   Mr. Agoado or any other client, or any other

9   debtor?

10        A.   I am not understanding your

11  question.  Are you talking about content,

12  factual, discussions or something you had

13  with the debtor?

14        Q.   Yes.

15        A.   Or are you talking about a code

16  being passed?

17        Q.   Both.

18             MR. FRANCOEUR:  Let me object.  The

19             question is appropriate with regard to

20             Mr. Agoado, but I going to object to the

21             extent that the question asked for

22             information regarding other debtors.  To

23             the extent of Mr. Agoado, you may

24             answer.

25             MR. SALTZMAN:  Okay.

1                    Cohen

2          Q.   So, in connection with Mr. Agoado,

3    did your firm convey information to Midland

4    via code?

5          A.   I believe so.

6          Q.   Did they convey information

7    regarding Mr. Agoado in any other way?

8          A.   Possibly.  I don't know.

9          Q.   Mr. Agoado, his account, his

10   collection procedures, they are no different

11   than for any other client; right?

12              MR. FRANCOEUR:  I object to form.

13         Q.   I'm sorry, any other debtor, the

14   collection procedures for any other debtor?

15         A.   They are different for different

16   clients, that was answered.

17         Q.   But Mr. Agoado, for Mr. Agoado, was

18   it any different?

19         A.   Again, I'm sorry, the question is

20   what?

21         Q.   Do you know on whose behalf your

22   firm was collecting the debt, debts, that

23   Mr. Agoado owed?

24         A.   Are you talking about Midland?

25         Q.   I am asking was it Midland?

```
 1                           Cohen
 2          A.    Yes, it was Midland.
 3          Q.    Did your firm convey information to
 4   Midland in connection with the debt
 5   collection efforts having to do with
 6   Mr. Agoado?
 7          A.    Yes.
 8          Q.    In sending that information to
 9   Midland having to do with Mr. Agoado, did
10   C&S, when I say C&S, I mean Cohen and
11   Slamowitz, did C&S have to conform to
12   Midland's system requirements?
13          A.    What system requirements?  I'm
14   sorry.
15          Q.    You testified that Midland, that
16   Cohen and Slamowitz had to conform to Midland
17   procedures to some extent; correct?
18          A.    I said that our procedures were
19   client specific to some extent.  I believe
20   that's what I said.
21          Q.    And did that have to do with
22   Midland as well as other clients?
23          A.    Yes.
24          Q.    So, in conveying information about
25   Mr. Agoado, did your firm have to conform to
```

```
 1                          Cohen

 2   Midland requirements?

 3            MR. FRANCOEUR:  Objection to form.

 4        You can answer, if you can.

 5        A.    I believe so.

 6        Q.    Was that information that was sent,

 7   was that sent in a standard format to

 8   Midland --

 9            MR. FRANCOEUR:  Objection to form.

10        Q.    -- by C&S?

11        A.    Codes are passed through YGC.

12        Q.    And that is a standard MCM format

13   as far as you know?

14        A.    As far as I know.

15            MR. SALTZMAN:  I would like to mark

16        as Cohen Exhibit 2 document Bates

17        stamped S&S 151 through S&S 160.

18                    (Whereupon, Cohen Exhibit 2

19                     marked for identification.)

20        Q.    Have you ever seen this document

21   before, sir?

22        A.    (Witness perusing document).  I

23   don't know if I have seen this specific

24   document but I have seen the screens that I

25   think the print-out was made from.
```

23

                              Cohen

1

2        Q.    What does this represent?

3        A.    This is the paperless notes from

4   one of Mr. Agoado's accounts that was placed

5   with us by Midland for collection.

6        Q.    This is internal to C&S?

7        A.    Yes.

8        Q.    Does any of this information get

9   sent to Midland at any point?

10        A.    Well, again, if you enter a

11   particular code, then information is sent to

12   the client.

13        Q.    Do you see the fourth column from

14   the left, it says code number?

15        A.    Yes.

16        Q.    Are those the codes you are talking

17   about if you enter a specific code?

18        A.    I believe so.

19        Q.    Do you know what any of those codes

20   mean, looking at these codes?

21        A.    Frankly, when an attorney accesses

22   our system, it is much more user-friendly.  I

23   just click a yes or a no or accept or put a

24   note in and the codes are done behind the

25   scenes.

1                    Cohen

2        Q.   So, from looking at this first

3    page, can you tell if any of this information

4    was sent to Midland?

5        A.   I can't tell by the codes but let

6    me see, I see there was a request, I am

7    looking at about the sixth line down, the

8    last billing statement request, and that

9    would be a request, I assume, to the client.

10       Q.   Do you see it says "rejected

11   cancel"?

12       A.   Yes.  I don't know.  I do see that.

13   I am not sure what that means.

14       Q.   You don't know what that means?

15       A.   No.

16       Q.   Are you the most knowledgeable

17   person about this account?  I assume you are

18   the person who was put up for this deposition

19   because of that; is that right?

20       A.   I don't know.

21            MR. FRANCOEUR:  Who are you asking

22       the question?

23            MR. SALTZMAN:  He is the most

24       knowledgeable person about this account,

25       right, that is why he is here?

1                         Cohen

2               MR. FRANCOEUR:  I am not under

3          oath.  I don't know who you are

4          directing the question to.

5          Q.   You don't know what that means;

6     correct?

7          A.   I don't know what that specific

8     entry means.  I don't know what action

9     triggered that comment being put there.

10         Q.   Do you know, you don't know why it

11    says "request rejected, cancel"?

12         A.   No.

13         Q.   Do you know what it means when it

14    says "document type not available for

15    portfolio"?

16         A.   No.

17         Q.   Do you see a couple of lines above

18    that where it says CCR313 in the code

19    section?

20         A.   Yes.

21         Q.   Then it says next to that

22    "statement available", do you see that?

23         A.   Yes.

24         Q.   Do you know what that means,

25    "statement available"?

```
1                          Cohen
2        A.    No.
3        Q.    You wouldn't know which statement
4   that is, looking at this document?
5        A.    No.
6        Q.    You wouldn't know how many
7   statements were available, looking at this
8   document?
9        A.    No.
10       Q.    You wouldn't know if it is the
11  first statement that Mr. Agoado had or his
12  last statement, you wouldn't know from
13  looking at this?
14       A.    Not from looking at this.
15       Q.    Is there any way I could find out?
16       A.    You would have to see, it says
17  statement available, you would have to
18  request the statement, I gather, and then you
19  would get the document and you would take a
20  look at it.
21       Q.    For me, if I wanted to know, there
22  is no way I could do that?
23       A.    From looking at this page?
24       Q.    Yes.
25       A.    No.
```

1                      Cohen

2       Q.   Is there any way I could find that

3   out without looking at this page if I wanted

4   to know, other than what you just said?

5           MR. FRANCOEUR:  Objection to form.

6       I don't understand the question.  I

7       don't know how the witness could

8       possibly answer that question.  Do you

9       understand that question?

10          THE WITNESS:  No.

11      Q.   If I wanted to know what that

12  statement was, is there any way, sitting here

13  is there any way for you to know what that

14  statement is at all?

15          MR. FRANCOEUR:  I think he answered

16      the question.

17      A.   I don't, no, I don't.

18      Q.   If you went back to your office and

19  you wanted to know what this statement was,

20  could you find out?

21          MR. FRANCOEUR:  Objection.

22      A.   Probably.

23      Q.   How would you do that?

24      A.   I think we would run whatever

25  materials were run for the discovery and you

1                          Cohen

2    would know what we know.

3         Q.   Do you know what it means, the line

4    above that, "EDI free form text portfolio

5    1345", do you know what that means?

6         A.   Not specifically.

7         Q.   Do you know generally?

8         A.   It refers to a portfolio and a

9    number.  I believe that is the portfolio

10   number that this account was part of a

11   purchase by Midland and that would be the

12   portfolio number that this account

13   specifically was a part of, but I don't know

14   what the free form, I don't know what that

15   part means.

16        Q.   Take a look at the next page, 152?

17        A.   Okay.  (Witness perusing document).

18        Q.   About halfway down there is a code,

19   asterisk CC:R340, and to the right of that it

20   says, "Terms and conditions sample

21   available", do you see that?

22        A.   Yes.

23        Q.   Do you know what that code means?

24        A.   No.

25        Q.   Do you see where it says "Terms and

1                              Cohen

2    conditions sample available", do you know

3    what that means?

4         A.   It appears to mean that the terms

5    and conditions for the credit card agreement

6    I would assume for this account are

7    available.

8         Q.   Do you know what "sample" means,

9    why it says "sample"?

10        A.   I am not sure.

11        Q.   Does it mean that it is not the

12   actual terms and conditions?

13             MR. FRANCOEUR:  Objection.

14        A.   I am not sure.

15             MR. FRANCOEUR:  Please don't guess.

16        Tell him if you know.

17             THE WITNESS:  I don't know.

18        Q.   You don't know what "sample" means

19   in there?

20        A.   I don't know.

21        Q.   Do you know, does that appear to

22   you to be a communication from Midland to

23   C&S?

24        A.   I don't know it, but it appears to

25   be.

```
 1                         Cohen
 2        Q.   So, any time that there is some
 3   kind of a request by the firm to Midland,
 4   Midland, does Midland send an indication that
 5   that request has been fulfilled?
 6        A.   Again, I believe so.  You know, you
 7   are asking kind of technical questions.  I
 8   don't, you know, I am not all that familiar
 9   with how the codes are sent and how the codes
10   are responded to, but I do know that if we,
11   you know, make an inquiry of the client, the
12   client responds to it.  How exactly it is
13   done, I am not sure.
14        Q.   This appears to be one of those
15   responses by the client; correct?
16        A.   It appears to be.
17             MR. SALTZMAN:  I would like to mark
18        as Exhibit 3 a document Bates stamped
19        MCM-0290 through 0297.
20                    (Whereupon, Cohen Exhibit 3
21                    marked for identification.)
22        Q.   Sir, this was produced by Midland
23   so I am not sure if you have ever seen it
24   before, something like that, but can you tell
25   me if you have ever seen a print-out like
```

1                          Cohen

2    this or screen like this before?

3         A.   (Witness perusing document).  I am

4    not sure.

5         Q.   It doesn't, does it look familiar

6    to you?

7         A.   No.

8         Q.   If you take Exhibit 2, put that in

9    front of you for a moment and also Exhibit 3,

10   do you see in Exhibit 2, which is the S&S

11   document, do you see where it says paperless

12   page file number?

13        A.   Yes.

14        Q.   It says C499687; right?

15        A.   Yes.

16        Q.   Take a look at Exhibit 3, right

17   under where it says Midland Funding LLC

18   versus Agoado/David, do you see there is

19   something that says receiver file number?

20        A.   Yes.

21        Q.   Do you see the same number,

22   C499687?

23        A.   Yes.

24        Q.   Does that indicate to you that

25   these two documents are dealing with the same

1                          Cohen

2    account?

3            MR. FRANCOEUR:  Objection.  I think

4        this calls for information that might be

5        beyond the witness' knowledge.  If you

6        know that answer, tell him, but please

7        don't speculate or guess.

8        A.   I don't know that for a fact.

9        Q.   Does it appear to you to be, it is

10   the same number; right?

11           MR. FRANCOEUR:  Same objection.

12       Q.   It is the same number?

13       A.   Yes.

14       Q.   The Midland document, Cohen

15   Exhibit 3, says it is Midland versus

16   Agoado/David; correct?

17       A.   Yes.

18       Q.   Would that indicate to you that the

19   Cohen Exhibit 2 also is dealing with

20   Mr. Agoado?

21       A.   Yes, this one I know is.

22       Q.   For sure?

23       A.   Yes, this one appears to be.

24       Q.   On the Cohen Exhibit 2 in the first

25   line where it says code number CHRGOFF, do

```
 1                           Cohen

 2   you see that?

 3        A.   Yes.

 4        Q.   Then it says next to it text

 5   $7,985.20?

 6        A.   Yes.

 7        Q.   Do you know where that number came

 8   from?

 9        A.   That number could have come from

10   Midland.

11        Q.   In what form would that number have

12   come from Midland?

13        A.   I don't know.  Electronic form, I

14   assume.

15        Q.   You wouldn't know if it was in the

16   form of just some kind of file or bill, you

17   don't know that?

18        A.   I wouldn't know.

19        Q.   Take a look at page S&S 154 of

20   Cohen Exhibit 2?

21        A.   Okay.

22        Q.   Take a look at about a little more

23   than halfway down in the code column there is

24   something that says "SAFA", and to the right

25   "request for affidavit"?
```

1                          Cohen

2       A.    Yes.

3       Q.    Do you know what "SAFA" means?

4       A.    No.

5       Q.    Do you know what "request for

6    affidavit" means in this document?

7       A.    It is a request for an affidavit

8    from the client.

9       Q.    What kind of affidavit?

10      A.    I am not sure.

11      Q.    Take a look at the bottom of the

12   same page, the last line.  It says "Judgment

13   sent to court per NTRAINA"?

14      A.    Um-hum.

15      Q.    Do you know what NTRAINA means?

16      A.    No.

17      Q.    Do you see on the left in the code

18   column, SJTOCT, do you know what that means?

19      A.    It appears to be a code indicating

20   that a judgment was sent to court.

21      Q.    Does that give you any indication

22   about what the request for affidavit is that

23   happened on 6-29-12?

24            MR. FRANCOEUR:  Please don't

25        speculate.

35

                              Cohen

1

2        A.   I would be speculating.  I don't

3   know.

4        Q.   You can't say from looking at this

5   document without speculating, you can't

6   figure that out?

7             MR. FRANCOEUR:  Objection to form.

8        A.   Are you asking me if I know it or

9   are you --

10        Q.   I am asking from looking at this

11   document can you tell.

12        A.   I can't tell.  They could have sent

13   different kinds of affidavits.  I am not

14   sure.

15        Q.   What kind of affidavits could they

16   send?

17        A.   Could be an affidavit of fact,

18   could be an affidavit for summary judgment,

19   could be, I don't know, different kinds of

20   affidavits, affidavit of good standing.  I

21   don't know.

22        Q.   If you look above the last line,

23   four above it says, it says "default judgment

24   per EDI4", do you see that?

25        A.   EDI14?

1                        Cohen

2        Q.    Yes.

3        A.    Yes.

4        Q.    Do you know what EDI14 means?

5        A.    It is an electronic data interface

6    entry.  I think it is the system making, you

7    know, somebody hit a code and a note is

8    dropping into the file.

9        Q.    Electronic interface?

10       A.    I believe it is electronic data

11   EDI, interface.  This is EDI4, you are right,

12   electronic data interface.  I'm sorry.  I

13   believe that is something internal to the

14   office entering a note.  It is coming from

15   the system as opposed to a person entering a

16   note.  The system is notating an event.

17       Q.    And looking at default judgment per

18   EDI4, does that also, does that give you any

19   clarity on what the request for affidavit is

20   above there?

21       A.    It gives me an indicator of what it

22   probably is but I still don't know.

23       Q.    What does it indicate to you what

24   it probably is?

25       A.    It is probably an affidavit of fact

1              Cohen

2  to be used in support of an entry of

3  judgment, but again it is kind of

4  speculating.

5      Q.   So, an affidavit of a fact to be

6  used in support of a default judgment, that

7  affidavit that was used in Mr. Agoado's case,

8  is that a standard affidavit that the firm

9  uses and they used in this case?

10          MR. FRANCOEUR:  Objection to the

11      form.  The witness has testified three

12      times in a row he does not know

13      specifically what that affidavit was.

14      So now you are asking him detailed

15      questions about an affidavit the witness

16      said he doesn't know what that affidavit

17      was.

18          MR. SALTZMAN:  He said probably,

19      you can read it back, he said it

20      probably is based on looking at this

21      document that has to do with Mr. Agoado.

22          MR. FRANCOEUR:  You could read it

23      back all you want.  He said in his very

24      last answer, "but I would only be

25      speculating".  So, with that in mind, I

1                          Cohen

2       ask you to rephrase your question.

3              MR. SALTZMAN:  We will read it

4         back.

5                    (Whereupon, the reporter read

6                     back as requested.)

7       Q.   It is kind of speculating, but it

8    probably is that; right?

9              MR. FRANCOEUR:  Objection to form.

10        If you know the answer, you may answer

11        the question.

12      A.   I don't want to say it was and then

13   find out it was not, so I think it is but I

14   am not sure.  I don't know.

15      Q.   But you think it is, based on

16   looking at this document that has to do with

17   Mr. Agoado?

18             MR. FRANCOEUR:  Objection.  He said

19        he doesn't know.  The question is asked

20        and answered already.  If you have the

21        affidavit, show him, he can talk about

22        it.

23      Q.   Do you know an affidavit for

24   Mr. Agoado, what information would be filled

25   in for that affidavit by your firm?

```
 1                        Cohen
 2             MR. FRANCOEUR:  Objection to form.
 3        Do you know which affidavit he is
 4        referring to?  If you don't understand
 5        the question, you need to say something.
 6        I can't follow it.
 7        A.   (No verbal response).
 8        Q.   Take a look at page S&S 153 of
 9   Cohen Exhibit 2?
10        A.   Okay.
11        Q.   Do you see towards the end there is
12   an entry in the code number column S, or is
13   that 5?  S3RDAUTH, do you see that?
14        A.   Yes.
15        Q.   And then right below that there is
16   a code SFAXRECD; do you see that?
17        A.   Yes.
18        Q.   Do you know what that code is?
19        A.   I don't know specifically what the
20   code is.
21        Q.   Do you know generally what the code
22   is?
23        A.   I am speculating as to what the
24   code is based upon the data, you know, the
25   entry, the words.
```

```
 1                        Cohen
 2        Q.   The entry is, "Fax received from
 3   CSR, addressed to CarolynF, with third-party
 4   authorization, states does not recognize
 5   debt, sister is willing to give him a little
 6   bit of money to settle this and X-Ref
 7   account, has SS statements per: PAVLIDESD".
 8   Do you know what PAVLIDESD means?
 9        A.   Yes.
10        Q.   What is that?
11        A.   That is a note that was put in by a
12   Denise Pavlides.  The last name is spelled
13   P-A-V-L-I-D-E-S, first name Denise.  She was
14   formerly our compliance attorney manager.
15        Q.   What is her position now with the
16   firm?
17        A.   She is no longer with the firm.
18        Q.   Do you see where it says what we
19   just read, "States does not recognize debt"?
20        A.   Yes.
21        Q.   Do you have any understanding of
22   what that means?
23        A.   I believe she is putting in a note
24   stating that, I don't know, from consumer, so
25   it appears the consumer is stating it does
```

1                          Cohen

2    not recognize the debt.

3              MR. SALTZMAN:  Let's mark as Cohen

4         Exhibit 4 document Bates stamped S&S 133

5         through S&S 135.

6                        (Whereupon, Cohen Exhibit 4

7                        marked for identification.)

8              MR. SALTZMAN:  The court reporter

9         has requested we take a break.  Take a

10        look at that and when we come back I

11        will ask you about that.

12             THE WITNESS:  Okay.

13                       (Whereupon, a brief recess was

14                       taken at this time.  Time noted

15                       11:00-11:15).

16        Q.   Mr. Cohen, back on the record,

17   going back to Cohen Exhibit 2 for a moment

18   and the text where it says "statement

19   available", we discussed that briefly.  Do

20   you know what "available" means in that

21   context?

22        A.   Not specifically.

23        Q.   Do you know generally what it means

24   when a document is available?

25             MR. FRANCOEUR:  Objection to form.

1                        Cohen

2        A.   I assume it means it is available.

3   If you need it, we have it.

4        Q.   Is that what it meant in this

5   context?

6        A.   I don't know.

7        Q.   You don't know what it means?

8        A.   I don't know what it means.

9        Q.   Just to be clear, where it says

10  "statement available" in connection with

11  Mr. Agoado's account, you don't know what

12  "statement available" means?

13       A.   No.

14       Q.   You don't?

15       A.   No.

16       Q.   Being as you don't know what

17  "statement available" means, do you have any

18  recollection of looking at a statement on or

19  about 11-27-2011 in connection with

20  Mr. Agoado's, this is the Chase account?

21            MR. FRANCOEUR:  Objection to form.

22       A.   I don't have any present

23  recollection of looking at it then.

24       Q.   Do you have any recollection at

25  all?

1                          Cohen

2          A.    I have refreshed my recollection.

3          Q.    When did you refresh your

4    recollection?

5          A.    This week.

6          Q.    How was your recollection

7    refreshed?

8          A.    I looked at the notes and I looked

9    at the exhibits that were tendered with the

10   discovery demands.

11         Q.    Did that refresh your recollection

12   that you actually did look at a statement on

13   or about 11-27-2011?

14              MR. FRANCOEUR:  Objection to form.

15         A.    I believe so.

16         Q.    Do you remember what that statement

17   was that you looked at on or about 11-27-2011

18   in connection with Mr. Agoado?

19              MR. FRANCOEUR:  Objection.  Correct

20              me if I am wrong, I don't believe he

21              said he reviewed, he knows what the

22              statement was.  I thought he said his

23              recollection was generally refreshed.

24              If I am wrong, then put it in your

25              words.

1              Cohen

2          THE WITNESS:  Exactly right, it was

3      generally refreshed.

4          Q.   What was generally refreshed, that

5      you looked at something?

6          A.   (No verbal response).

7          Q.   What was generally refreshed?  You

8      said your recollection was generally

9      refreshed.  What do you mean?

10         A.   If I may?

11         Q.   Sure.

12         A.   I looked at the account in 2011, I

13     have looked at a lot of accounts before 2011,

14     I have looked at a lot of accounts after

15     2011.  I don't have a specific recollection

16     of looking at this account.  I have refreshed

17     my recollection of this account by looking at

18     my notes, the file notes available to me, and

19     by the documentation that has been provided

20     to you in the discovery.

21         Q.   You don't remember what statement

22     you looked at on or about that date,

23     11-27-2011?

24         A.   Only from my refreshed

25     recollection.

1                        Cohen

2        Q.   So, do you have any recollection or

3   not, sitting here right now?

4             MR. FRANCOEUR:   Objection to form.

5        Q.   Yes or no?

6             MR. FRANCOEUR:   If you show him the

7        document what statement you are

8        referring to.

9             MR. SALTZMAN:   I am asking him

10       about this document.

11            MR. FRANCOEUR:   He answered that

12       question three times.  You don't have to

13       answer it again.  Ask another question,

14       counsel.

15       Q.   Yes or no, do you have any

16   recollection of what the statement you looked

17   at was, sitting here now?

18       A.   Yes.

19       Q.   What was that statement that you

20   looked at sitting here now?

21       A.   Part of the documentation that you

22   provided, that was provided to you, rather,

23   in the discovery.

24       Q.   Okay, it was provided to us, but

25   you don't remember which one?

| | | |
|---|---|---|
| 1 | | Cohen |
| 2 | A. | I don't understand the question. |
| 3 | Q. | All right, we will move on.  Let's |

look at Cohen Exhibit 4.  Have you ever seen
this document before today?

| 6 | A. | Yes. |
| 7 | Q. | When did you last see it? |
| 8 | A. | Earlier this week. |
| 9 | Q. | Did you see it any time before |

earlier this week?

| 11 | A. | Possibly. |
| 12 | Q. | Might you have seen it on or about |

5-22-12?

| 14 | A. | Possibly. |
| 15 | Q. | Who is Carolyn Ford? |
| 16 | A. | Carolyn Ford is an employee in my |

office.

| 18 | Q. | What is her position? |
| 19 | A. | I believe she is a collector. |
| 20 | Q. | She is not an attorney? |
| 21 | A. | No. |
| 22 | Q. | Take a look at page 135, S&S 135. |

It appears to be a handwritten note; correct?

| 24 | A. | Yes.  That's what appears to be. |
| 25 | Q. | Do you see where it says, second |

1                   Cohen

2    paragraph, "I don't even have recollection of

3    these bills", do you see that?

4         A.   Yes.

5         Q.   Does that reflect to your review

6    right now that Mr. Agoado or somebody on his

7    behalf didn't knowledge the indebtedness?

8              MR. FRANCOEUR:  Objection to form.

9         A.   He said he had no recollection.  He

10   didn't say they weren't his bills.

11        Q.   But he has no recollection of these

12   bills; correct?

13        A.   I don't know what he has a

14   recollection of or what he does not have a

15   recollection of.  I know what the note says.

16        Q.   By "note", what do you mean?

17        A.   I mean the note, the document you

18   have in front of me, 135, S&S 135.

19        Q.   A document like this, is this

20   something that would be received by S&S in

21   the regular course of its business?

22             MR. FRANCOEUR:  Objection.

23        A.   Pretty much.

24             MR. SALTZMAN:  We will mark as

25        Cohen Exhibit 5 document Bates stamped

48

2        S&S 138 through S&S 149.

3                     (Whereupon, Cohen Exhibit 5

4                     marked for identification.)

5        Q.    Have you ever seen this document

6   before, sir?

7        A.    (Witness perusing document).  Yes,

8   I believe so.

9        Q.    When did you see this last?

10       A.    Probably earlier this week.

11       Q.    Have you ever seen it before

12   earlier this week at any time?

13       A.    Probably in 2011 or so.

14       Q.    What is this document?

15       A.    This is the paperless notes page

16   from our computer system as regards

17   Mr. Agoado's case with us, number 499583.

18       Q.    Take a look, the fourth line down

19   from the top where it says "text", do you see

20   where it says "EDI" --

21       A.    Yes.

22       Q.    --"Free form text chain of title

23   affidavit available", do you see that?

24       A.    Yes.

25       Q.    What does that mean?

                              Cohen

        A.    To the extent I believe it means

that a chain of title affidavit was available

for this particular account between, you

know, this particular Midland account with

this debtor.

        Q.    Did you look at that on or about

11-27-2011?

        A.    I don't recall.  I would assume so

but I don't have a present recollection of

it.

        Q.    When you looked at it, how did you

look at it?

        A.    I looked at it on a computer

screen.

        Q.    When you looked at it on the

computer screen, how did you actually access

the document from the computer?

        A.    It probably was a scanned item and

if you click on the document on the screen,

it opens up and you can see it, like a PDF.

        Q.    When you do that, it is within the

C&S computer system?

        A.    Yes.

        Q.    Does it access anything, any MCM

50

                              Cohen

1

2       computer system, when you try to look at that

3       document?

4            A.   I am not sure how it works.  I

5       believe we download them or it is somehow

6       electronically sent to us, but I am not sure.

7       I don't know if I am looking at some portals.

8       I am not sure.  It just opens instantaneously

9       to my viewing.

10           Q.   When you request it?

11           A.   When you click on it, that's how

12      you call up the document and I assume it is a

13      PDF that I am looking at, but I am not sure

14      how it got there.

15           Q.   When you get the notification that

16      this chain of title affidavit is available,

17      do you log in to Mr. Agoado's account and

18      then you see the status of it or do you get

19      an alert noting that this document is

20      available?

21           A.   I am not sure.  I am not

22      understanding.

23           Q.   How do you know that this chain of

24      title affidavit is available?

25           A.   It says it is available.

```
 1                      Cohen
 2        Q.   But I am saying physically when you
 3   come in in the morning, how do you find that
 4   out, do you get a ping or something, how does
 5   that happen?
 6        A.   No.  When I open this account to
 7   review it, to either accept it or do a suit
 8   review, there are documents, a media that has
 9   been provided on the file and we can click on
10   the media entry and it shows you whatever is
11   there.
12        Q.   And when you say media, do you mean
13   documentation?
14        A.   That would include, yes,
15   documentation.
16        Q.   Is that only account level
17   documentation or any documentation?
18             MR. FRANCOEUR:  Objection to form.
19        A.   It depends on the particular
20   account.  There may be a mixture.  I don't
21   know.
22        Q.   When you say media, do you mean any
23   documents?
24        A.   Media would include affidavits from
25   the client, media would include a debt
```

1                          Cohen

2    validation letter that my firm sent, media

3    would include a credit bureau report, media

4    would include pleadings, when and if you do

5    the pleadings, copy of the summons and

6    complaint, media would include the affidavit

7    of service filed with the court, media could

8    include a copy of a judgment entered by the

9    court, media could include all of those

10   things in addition to things like statements

11   or an application or things of that nature.

12        Q.   Further down, if you look a little

13   more than halfway down where it says "claim

14   accepted by David C", does that mean you?

15        A.   Yes.  The one from 11-30, that is

16   me.

17        Q.   What does it mean when it says

18   "claim accepted"?

19        A.   "Claim accepted" means that I have

20   clicked off on my screen after reviewing the

21   account, whatever particular information our

22   clients provided to us, whatever

23   documentation is available to us and

24   indicated that there is a sufficient basis

25   that we can proceed with the claim for

```
 1                         Cohen

 2    collection activity.

 3         Q.   Looking at this document, what

 4    documentation was available prior to you

 5    hitting "claim accepted"?

 6         A.   On this particular account?

 7         Q.   Yes, and on this page.

 8              MR. FRANCOEUR:  Hold on.  The

 9         question is from this page can you tell

10         what documentation was available from

11         the client, is that the question?

12              MR. SALTZMAN:  It is a little

13         different, from this page what

14         documentation is available.

15              MR. FRANCOEUR:  Is the question

16         what documentation is available?

17              MR. SALTZMAN:  Yes.

18              MR. FRANCOEUR:  Having nothing to

19         do with this page?

20              MR. SALTZMAN:  No, from this page,

21         I am basing the question on this page.

22              MR. FRANCOEUR:  I don't understand

23         the question.  Do you understand the

24         question?

25         A.   I can't tell from this page what
```

54

1                                Cohen

2    documents I looked at.

3         Q.    You can't tell?

4         A.    No.

5         Q.    Can you tell what was available

6    from looking at this page?

7         A.    No.

8         Q.    Why not?

9         A.    It doesn't reflect the documents.

10   This is not the document media portion of the

11   file.

12        Q.    So, there is a separate portion of

13   the file that would indicate the

14   documentation that is available for this

15   account?

16        A.    Media scanned items are stored

17   separately.

18        Q.    And when something becomes

19   available, how do you know that for this

20   account?

21        A.    I would know it when I review the

22   account.

23        Q.    And that would be something other

24   than what is printed here?

25              MR. FRANCOEUR:  Objection.  You

1                         Cohen

2      could answer.

3      A.    What is printed here are file

4   notes.  I believe media is stored separately

5   in a media folder, if you will, electronic

6   media folder.

7             MR. SALTZMAN:  Mark this as Cohen

8         Exhibit 6. It is Bates stamped MCM 1213

9         through MCM 1222.

10                  (Whereupon, Cohen  Exhibit 6

11                  marked for identification.)

12      Q.    This is an MCM document having to

13   do with Mr. Agoado's account, also the

14   Household account.  Take a look at the second

15   page of this document, MCM-1214.  Do you see

16   on the top to the right where it says "media

17   available" and there is an "N", do you know

18   what that means?

19      A.    No.

20      Q.    No idea, you have no idea what that

21   means?

22      A.    I don't specifically know what it

23   means.

24      Q.    Do you know generally what it

25   means?

```
 1                        Cohen

 2         A.    I don't specifically or generally

 3    know what it means.   I see it as an "N".

 4         Q.    You have no understanding?

 5         A.    Not really.

 6         Q.    Go back to Cohen Exhibit 5, if you

 7    will, page S&S 142.

 8         A.    Okay.

 9         Q.    If you look, the third line from

10    the top, it says "affidavit received", do you

11    see that?

12         A.    Yes.

13         Q.    Below that, a few lines below that,

14    off 7-24-12 it says "default judgment per

15    EDI4" --

16         A.    Yes.

17         Q.    -- as we saw before; correct?

18         A.    Yes.

19         Q.    Does that give you any

20    understanding of what the affidavit that was

21    sent to your firm on or about 7-18-12 was?

22               MR. FRANCOEUR:   Objection to form.

23         A.    Again, I would be speculating.   I

24    would guess that it was an affidavit, a fact

25    from the client to be used in support of the
```

 1

 2    preparation and submission of the judgment

 3    upon default, but again, I am not sure of

 4    that, I believe that but I am not sure.

 5              MR. SALTZMAN:  Let's mark as Cohen

 6         Exhibit 7 document Bates S&S 108 through

 7         117.

 8                        (Whereupon, Cohen Exhibit 7

 9                        marked for identification.)

10         Q.   Have you ever seen this before,

11    sir?

12         A.   Yes, I believe I have.

13         Q.   Have you seen it other than this

14    week?

15         A.   I may have seen it back in 2011 or

16    '12.

17         Q.   What is this document?

18         A.   The first page is the default

19    judgment that was submitted to the court in

20    connection with the action of Midland against

21    Agoado, our file number C499583.  The next

22    page is the attorney's affirmation signed by

23    myself in support of the entry of judgment.

24    The next document is a status report given to

25    us by the Department of Defense Manpower Data

1                    Cohen

2     Center which basically certifies that the

3     subject debtor, David Agoado, is not on

4     active duty status with the military as of

5     July 24, 2012.  The last few pages of this

6     exhibit are the affidavit from Midland.  This

7     would be the affidavit of facts given to us

8     in support of our application for the default

9     judgment, and this was signed by a Miss Haag,

10    H-A-A-G, she was a legal specialist at

11    Midland Funding LLC, and signed and

12    notarized, and it comes with the certificate

13    of conformity which is the last page from a

14    local attorney in Minnesota which is where

15    the client's affidavit was subscribed and

16    notarized.

17         Q.   Would this appear to be the

18    affidavit that is discussed at S&S 142 in the

19    first line?

20         A.   First line?

21         Q.   Of S&S 142, Exhibit 5?

22         A.   I'm sorry.  Go back to that --

23              MR. FRANCOEUR:  If you know.

24         A.   -- are you saying the affidavit

25    received would be Miss Haag's affidavit?

1                        Cohen

2        Q.    Correct.

3        A.    I would assume so.  I don't know

4   that to be the case, but I believe so.

5        Q.    You believe so?

6        A.    Yes.

7        Q.    Thank you.  To your knowledge for

8   Mr. Agoado did your firm provide this

9   affidavit to Miss Haag or somebody at Midland

10   for their signature?

11        A.    I don't know who prepared it.  I

12   would assume that, you know, we told the

13   clients what the requirements are for the

14   entry of judgment in New York State.  They

15   relied on our expertise for the local law, if

16   you will, of the state.  I don't believe we

17   drafted the affidavit.  I think the client

18   drafted it with our input.

19        Q.    Did the client also insert, if you

20   look at paragraph 4 on page 115, S&S 115, did

21   the client insert those numbers?

22        A.    I am not sure.

23        Q.    Typically, does the client insert

24   the numbers, typically does Midland insert

25   the numbers, let's say the numbers in

```
 1                    Cohen
 2    paragraph 4, does Midland typically insert
 3    those or is that provided by your firm to
 4    Midland?
 5         A.    I am not sure.
 6         Q.    You don't know at all?
 7         A.    I am not sure.
 8         Q.    Have you ever been involved in
 9    drafting any of these, an affidavit like this
10    one to Mr. Agoado?
11         A.    Like this?
12         MR. FRANCOEUR:  Objection to form.
13         There are two affidavits here.
14         Q.    The affidavit of Kayla Haag, have
15    you ever been involved in drafting an
16    affidavit like this one, this affidavit of
17    Kayla Haag, for your firm?
18         MR. FRANCOEUR:  Objection.  I am
19         directing the witness not to answer.  It
20         is outside of the scope.  He is not here
21         to talk about policies and procedures
22         and what Midland does.  He is here to
23         talk about what he did in the Agoado
24         case.  If you have questions, he is
25         ready, willing and able to talk about
```

61

```
 1                         Cohen
 2          this affidavit from Kayla Haag which is
 3          S&S 115.  Thank you.
 4          Q.   Do you remember anything, do you
 5     remember doing anything having to do with
 6     this affidavit, 114 to 115, of Kayla Haag, do
 7     you remember anything?
 8               MR. FRANCOEUR:  Objection to form.
 9          A.   I don't have a specific
10     recollection at this time, no.
11          Q.   When you say specific recollection,
12     I am going to ask you do you have any
13     recollection, I understand you don't have a
14     specific recollection, do you have any
15     recollection?
16               MR. FRANCOEUR:  Objection to form.
17          A.   We need to have an affidavit from
18     the client in order to enter a judgment in
19     every case.
20          Q.   Okay?
21          A.   I probably review it whenever I do
22     a judgment, you know, proposed application
23     for the entry of a default judgment.  So, I
24     would routinely look at them.  I don't recall
25     drafting them.  I don't recall discussing
```

62

```
 1                    Cohen

 2    them with a client.  I don't recall anything

 3    particularly about this affidavit other than

 4    it was used in the application for the

 5    default judgment entry.

 6            MR. SALTZMAN:  Read back the

 7        answer.

 8                    (Whereupon, the reporter read

 9                    back as requested.)

10        Q.    When you reviewed, you said you

11    typically review these affidavits, what do

12    you review?

13        A.    Make sure that they are signed,

14    make sure that they are notarized, make sure

15    they are dated, make sure that there is a

16    certificate of conformity so the court will

17    accept it, probably check to see that the

18    numbers are correct and the debtor's name is

19    correct.

20        Q.    When you check to see that the

21    numbers are correct, what do you look at?

22        A.    I would be looking at the document

23    on my screen which would be the top exhibit

24    here, default judgment.  I probably compare

25    the numbers here to the numbers in the
```

1                        Cohen

2    affidavit.

3         Q.   So, would you physically have a

4    piece of paper in front of you and look at a

5    screen?

6         A.   No.  You review it all at one time.

7    I would open up this document.  I would make

8    sure this was the number.  I go to the next

9    document and make sure the numbers were the

10   same, really make sure that you are not using

11   an affidavit from a different file

12   inadvertently.

13        Q.   You, yourself, you said you review

14   it but do you fill in any numbers?  I am

15   talking about you, do you fill in any numbers

16   or do you send the information to Midland or

17   you just review it?

18             MR. FRANCOEUR:  Your question

19        relates to the Kayla Haag affidavit?

20             MR. SALTZMAN:  He testified what he

21        usually does.  He testified to what he

22        usually does.

23             MR. FRANCOEUR:  I know, but there

24        are several documents in this exhibit.

25        Which document, specifically Kayla Haag?

1              Cohen

2         MR. SALTZMAN:  Yes.

3     A.    I'm sorry.  The question is?

4     Q.    The question is did you provide any

5   of these numbers to, such as in paragraph 4,

6   to Midland?

7     A.    I don't believe so.  Me

8   specifically, I don't believe so.

9     Q.    What about anybody in your firm

10   that reports to you that might have worked on

11   this affidavit?

12     A.    The firm might have set something

13   up that would indicate that interest accrued

14   at 9 percent, which is the legal rate in New

15   York, I don't know if Midland would know

16   that, so we might have had some discussion

17   with them or their general counsel's office

18   or whatever to make sure they were using the

19   proper prejudgment interest rate, legal rate

20   of interest in New York State, but the other

21   numbers I don't believe so.

22     Q.    You don't believe that your firm

23   sends it to Midland?

24     A.    I don't believe, I think the

25   9 percent we set up with Midland.  The other

```
 1                        Cohen
 2   numbers I believe would be supplied by
 3   Midland.
 4        Q.   Take a look at the first page of
 5   Cohen Exhibit 7?
 6        A.   Yes.
 7        Q.   Do you know how this page is
 8   created?
 9        A.   We create it at Cohen and
10   Slamowitz.
11        Q.   For example, the amount claimed in
12   the complaint, $11,428.90, where does that
13   come from?
14        A.   That would be the number that was
15   provided to us by the client that is in the
16   client's affidavit, confirmed in the client's
17   affidavit, and that we are going to advise
18   the court that is the amount that is due.
19        Q.   And somebody at your firm inputs
20   these numbers into this form?
21        A.   Well, you get numbers for an
22   account, my understanding, you get the
23   particular fields of data for an account and
24   those fields of data can be drawn upon for
25   this document, the same fields of data can be
```

1                    Cohen

2    drawn upon for this document, so you may

3    enter them once and then use them in ten

4    different documents in ten different places,

5    so.

6         Q.   And somebody does that on the

7    computer?

8         A.   Either some person does or there is

9    some automated process that does, I am not

10   sure.

11        Q.   You are not sure?

12        A.   No.

13             MR. SALTZMAN:   I would like to mark

14        as Exhibit 8, Cohen Exhibit 8, document

15        Bates S&S 0096 through 97.

16                       (Whereupon, Cohen Exhibit 8

17                       marked for identification.)

18        Q.   Have you ever seen this document

19   before, sir?

20        A.   (Witness perusing document).   I may

21   have seen it this week.

22        Q.   What is this document?

23        A.   Document is entitled Affidavit of

24   Sale of Individual Account.

25        Q.   What does that mean?

```
 1                       Cohen
 2        A.   Account level specific affidavit
 3   that a particular account, in this case for
 4   David Agoado, account number, I don't know,
 5   some number assigned there, the last four
 6   letters are 8468 and 5291, it has a balance
 7   of $11,428.90, was sold by Household Finance
 8   Corporation 3, identified as HSBC, to
 9   Midland.
10        Q.   Take a look at the date of this
11   affidavit.  Do you see that date?
12        A.   Yes.
13        Q.   It is June 4, 2014.  Do you see
14   that?
15        A.   Yes.
16        Q.   Do you have any understanding of
17   why that is dated June 4, 2014?
18        A.   No.
19        Q.   It is after the commencement of
20   this action that we are talking about today;
21   right?
22        A.   I believe so.
23             MR. SALTZMAN:  I would like to next
24        mark, this was produced this morning,
25        S&S 005971 through 5972, mark that as
```

68

1                    Cohen

2        Exhibit 9.

3                    (Whereupon, Cohen Exhibit 9

4                    marked for identification.)

5        Q.   What is this document, Mr. Cohen?

6        A.   (Witness perusing document).  This

7   is an affidavit, looks like an affidavit of

8   sale of an individual account, in this case

9   it is the Agoado account that was Chase in

10  origin, and this is an affidavit of sale from

11  Chase to Midland Funding LLC.

12       Q.   If you look here, if you look on

13  the first page, this was sworn to on June 25,

14  2014, do you see that, by Cherise Phillips?

15       A.   Yes.

16       Q.   Do you have any understanding why

17  this is sworn to on June 25, 2014?

18       A.   No.

19       Q.   You do understand this is also

20  after the date of the commencement of this

21  lawsuit?

22       A.   Yes.

23       Q.   Is there any way you could tell

24  when this document was first found in C&S's

25  files?

```
 1                    Cohen

 2          MR. FRANCOEUR:  Objection to the

 3      form.  Do you understand the question?

 4          THE WITNESS:  Not exactly.

 5          MR. SALTZMAN:  Let me rephrase it.

 6      Q.   If I wanted to know when this

 7  document first appeared in your firm's files,

 8  could I do that?

 9      A.   I believe so.

10      Q.   How?

11      A.   I think usually when the document

12  is appended to a file, or a PDF of a document

13  is appended to a file, there is a date when

14  it is being added to the file.

15      Q.   Would that be found in a document

16  like Cohen 5, or would that be in some other

17  kind of document?

18      A.   Which one is Cohen 5?  This again

19  is the paperless note page.  It is not a list

20  of media or scanned items.

21      Q.   So, it would be found in a --

22      A.   Different folder in the same file,

23  yes.

24      Q.   It would indicate when particular

25  documents became available?
```

Cohen

2      A.    It would indicate the day it was

3    scanned to the file.

4          MR. SALTZMAN:  Let's take a break,

5          a couple minutes.

6                     (Whereupon, a brief recess was

7                     taken at this time.)

8                     (Time noted 11:50-12:00)

9          MR. SALTZMAN:  We have no further

10         questions, but I would like to put on

11         the record I understand your position is

12         that we can't ask any questions or you

13         won't allow your client to answer any

14         questions having to do with the manual.

15         Our position is that we can and should

16         be able to ask him questions about the

17         manual.  We want to preserve that right.

18            The fact that I have limited my

19         questions to the beginning is no waiver

20         of our position that we can and if we go

21         to the judge and the judge allows it, we

22         will ask questions to either Mr. Cohen

23         or someone else at your firm, at your

24         client's firm, about the MCM Manual.  We

25         have no further questions.

1                        Cohen

2          MR. FRANCOEUR:  I would like to

3    make a statement as well.  If you leave,

4    it is absolutely a waiver.  I do invite

5    you to contact Judge Tomlinson now.  The

6    witness is here and available.  He will

7    not be made available again.  I believe

8    her ruling was quite clear that this

9    deposition was limited for the attorney

10   handling the account and the 30(B)6

11   questions and witness have been closed.

12   You haven't made any representation or

13   showing of how a question on the manual

14   would relate to the handling of the

15   Agoado account.  If you can do that, the

16   witness would answer them, but I suggest

17   that if you want to preserve your right

18   you need to call the judge while we are

19   here.  You still have an hour 45 minutes

20   for the deposition.  I am sure the judge

21   is in.

22         MR. SALTZMAN:  I am not calling the

23   judge and I am not waiving my rights.

24         MR. FRANCOEUR:  You have waived

25   them.

```
 1                    Cohen
 2        MR. SALTZMAN:  Well, we are not and
 3   I am stating for the record, your
 4   opinion what I did is not relevant to
 5   me.  It might be relevant to the judge
 6   at some point but it certainly --
 7        MR. FRANCOEUR:  Well, can you give
 8   a basis for the record why you won't
 9   call the judge now?  I mean is it just
10   revving up the expense for my client to
11   have him come twice?
12        MR. SALTZMAN:  No.
13        MR. FRANCOEUR:  Well, why wouldn't
14   you call the judge now?  We are all
15   here.  We have four parties on the line.
16   You are going to have this issue with
17   four other defendants.  Why not just
18   address it with the court right now?
19        MR. SALTZMAN:  All right, call the
20   judge.
21                 (Whereupon, discussion held
22                  telephonically with Erin Kandel,
23                  law clerk for Judge Tomlinson).
24        MS. KANDEL:  Let's take this down.
25   Has the witness been asked to be
```

1                    Cohen

2    excused?

3         MR. FRANCOEUR:  The witness may be

4    excused.  I could have him step out.

5         MS. KANDEL:  Yes.  That is our

6    usual procedure, if we could do that

7    please.

8         (Whereupon, witness excused).

9         MS. KANDEL:  Before we get into the

10   nitty-gritty of the dispute, I should

11   tell you that Judge Tomlinson is out

12   today and she will not be in today or

13   for the rest of this week, out on a

14   personal matter.  So, with that in mind

15   I would ask, I mean it sounds like you

16   have some fundamental disagreement as to

17   the scope of the deposition or what not,

18   but if this is something that you could

19   get past and move forward, that would be

20   ideal because Judge Tomlinson is not

21   here to hear your dispute.  I mean I can

22   try and find another magistrate judge to

23   review the issue but that will take

24   sometime and will depend on the schedule

25   of the other magistrates that are in the

1                    Cohen
2     courthouse today.  So, I will lay that
3     out there and you could tell me what
4     this is about or consider whether you
5     want to go forward or try to have a
6     judge here to speak to today.
7          MR. FRANCOEUR:  I mean I could tell
8     you just very briefly, it is a class
9     action arising in an FD CPA context.  My
10    client, Cohen and Slamowitz, produced --
11         MS. KANDEL:  Who is speaking right
12    now?
13         MR. FRANCOEUR:  This is Joseph
14    Francoeur for Cohen and Slamowitz, now
15    known as Selip and Stylianou.  So, Cohen
16    and Slamowitz produced a 30(B)6 witness.
17    After that the plaintiffs made a
18    specific application to the court for a
19    fact witness separate from the 30(B)6
20    for the attorney who actually handled
21    the specific debtor's account.  That
22    deposition is happening today, but the
23    court was very clear, Judge Tomlinson
24    limited the deposition to three and a
25    half hours and it was limited to items

1                         Cohen

2        relating to the handling of the account

3        only.  I don't believe counsel takes

4        issue with that.  I think the

5        disagreement is more specific in that he

6        wants to go into policies and procedures

7        of my client's client, Midland, in

8        getting into matters of the firm manual

9        and procedures in general, not specific

10       to Agoado's account, but I won't speak

11       for the plaintiff.

12           MR. SALTZMAN:  This is Jay Saltzman

13       on behalf of the plaintiffs.  The reason

14       we need to talk about or ask about the

15       manual is that it is basic to the

16       procedures of how the company, the

17       defendant law firm, handled this

18       particular account, because they had to

19       follow the procedures of their client,

20       Midland.  At a minimum it is important

21       as a foundation for the other questions

22       which we have already completed.

23           MS. KANDEL:  Okay, again, Judge

24       Tomlinson is not here to rule on this

25       dispute.  I feel like this is something

```
 1                      Cohen
 2        that if there are objections and it can
 3        be marked for a ruling and the judge can
 4        rule it at a later date and that the
 5        deposition needs to be reopened or
 6        questions need to be addressed that
 7        aren't addressed today because she
 8        wasn't able to rule on the dispute, it
 9        will be taken up at another time.  Do
10        you folks agree with that or is this
11        something I need to call back after I
12        canvass the courthouse to see if a judge
13        who isn't familiar with this matter can
14        hear your dispute?
15            MR. SALTZMAN:  This is Jay Saltzman
16        for plaintiffs.  I am okay with I can
17        ask my questions and we can mark it for
18        dispute at a later date, I am okay with
19        that.
20            MS. KANDEL:  Okay, and how about
21        Mr. Francoeur?
22            MR. FRANCOEUR:  Well, I don't
23        believe I am okay with that.  I think
24        once the cat is out of the bag, you
25        can't put it back in the bag.  I think
```

<pre>
 1                    Cohen
 2    what I am going to do is talk to my
 3    client, see what his preferences are in
 4    how to proceed.  We may just have to
 5    deal with the judge.  I don't think, and
 6    I appreciate your offer, it was so
 7    specific, the judge's rulings, I don't
 8    believe going to another judge is going
 9    to work.  I think we have to go before
10    Judge Tomlinson, but I will have a
11    conversation with my client to see if he
12    is willing to answer these questions,
13    but it is my position that anything on
14    policy and procedure was for 30(B)6 and
15    is outside the scope and I need to
16    preserve that.
17         MS. KANDEL:  Okay.  Just to be
18    abundantly clear, you believe that Judge
19    Tomlinson needs to hear the dispute and
20    that cannot happen today.
21         MR. FRANCOEUR:  Yes, no, I mean I
22    think counsel agrees with that, yes.
23         MR. SALTZMAN:  Yes.
24         MR. FRANCOEUR:  Plaintiff agrees,
25    another judge isn't going to be able to
</pre>

78

1                         Cohen

2          address the issue.

3                 MR. SALTZMAN:  I agree with that.

4                 MR. FRANCOEUR:  So, I think really

5          the only thing is I will talk to my

6          client, see if there is a way for us to

7          answer the questions preserving our

8          rights, but if we are not comfortable, I

9          may direct him not to answer and we will

10         just have to take it up with the court

11         at a later time.

12                MR. SALTZMAN:  I am okay with that.

13                MR. FRANCOEUR:  The plaintiff is

14         okay with that.

15                MS. KANDEL:  Okay.

16                MR. FRANCOEUR:  Alright.  Thank you

17         for your time.

18                MS. KANDEL:  Okay, no problem.

19                MR. SALTZMAN:  Let's go off the

20         record.

21                        (Whereupon, discussion held off

22                         the record.)

23                MR. FRANCOEUR:  Counsel, as you

24         know, we had a call with the court.

25         Judge Tomlinson is not available and

```
 1                    Cohen
 2        while you represented to me that you
 3        think your questioning would be brief in
 4        these other areas, I believe that the
 5        court limitation on this deposition was
 6        quite clear, the witness was not to talk
 7        about policies and procedures and issues
 8        for a 30(B)6 witness but this was
 9        supposed to be limited in scope to the
10        attorney handling the Agoado file.
11        Mr. Cohen is here.  He is ready to
12        answer any questions regarding Agoado,
13        even communications with Midland, which
14        he has already testified to, but to go
15        into areas outside of that, such as
16        Midland's policies and procedures and
17        what happens generally and not related
18        to Mr. Agoado, we cannot agree to.  So,
19        we are going to hold our objection and
20        if you want to pursue that with the
21        court later, you could do so.
22             MR. SALTZMAN:  Okay.  We are going
23        to reserve our right.  We are not
24        waiving, as you know.
25             MR. FRANCOEUR:  You called the
```

80

1

2          court, I agree.

3              MR. SALTZMAN:  And we called the

4          court, we tried to resolve it, we are

5          not able to resolve it today.  If we

6          need to resolve it at a later date, then

7          we shall.

8              MR. FRANCOEUR:  Okay.

9              MR. SALTZMAN:  Thank you,

10         Mr. Cohen.

11                  (Time noted: 12:20 p.m.)

12

13                         -----------------------

14                 DAVID A. COHEN

15    Subscribed and Sworn to before me

16    this       day of          2016.

17

18    ----------------------------------

19         Notary Public

20

21

22

23

24

25

1
2                          INDEX
3
4                        EXHIBITS
5
6    COHEN
     FOR I.D.    DESCRIPTION                    PAGE
7
     1           MCM Firm Manual                 14
8
     2           Documents                       22
9                S&S 151-160
10   3           Documents                       30
                 MCM 0290-0297
11
     4           Documents                       41
12               S&S 133-135
13   5           Documents                       48
                 S&S 138-149
14
     6           Documents                       55
15               MCM 1213-1222
16   7           Documents                       57
                 S&S 108-117
17
     8           Affidavit of Sale               66
18               S&S 96-97
19   9           Affidavit of Sale               68
                 S&S 5971-5972
20
21
22
23
24
25

82

```
 1
 2                    C E R T I F I C A T E
 3          I, ELLORI EISEMAN, hereby certify that the
 4     examination of said witness named in the foregoing
 5     transcript was held before me at the time and place herein
 6     named; that said witness was duly sworn before the
 7     commencement of the testimony; that the testimony was taken
 8     stenographically by myself and then transcribed under my
 9     direction; that the party was represented by counsel as
10     appears herein;
11          That the within transcript is a true record of the
12     examination of said witness;
13          That I am not connected by blood or marriage with
14     any of the parties; that I am not interested directly or
15     indirectly in the outcome of this matter; that I am not in
16     the employ of any of the counsel.
17          IN WITNESS WHEREOF, I have hereunto set my hand this
18     18th day of February, 2016.
19
20
21
22                    ELLORI EISEMAN
23
24
25
```

83

```
 1
 2                           ERRATA SHEET
            PAGE/LINE        -  CHANGE -            REASON
 3          _____      _____        _____
            _____      _____        _____
 4          _____      _____        _____
            _____      _____        _____
 5          _____      _____        _____
            _____      _____        _____
 6          _____      _____        _____
            _____      _____        _____
 7          _____      _____        _____
            _____      _____        _____
 8          _____      _____        _____
            _____      _____        _____
 9          _____      _____        _____
            _____      _____        _____
10          _____      _____        _____
            _____      _____        _____
11          _____      _____        _____
            _____      _____        _____
12          _____      _____        _____
            _____      _____        _____
13          _____      _____        _____
            _____      _____        _____
14          _____      _____        _____
            _____      _____        _____
15          _____      _____        _____
            _____      _____        _____
16          _____      _____        _____
            _____      _____        _____
17          _____      _____        _____
            _____      _____        _____
18          _____      _____        _____
            _____      _____        _____
19          _____      _____        _____
            _____      _____        _____
20          _____      _____        _____
            _____      _____        _____
21          _____      _____        _____
            _____      _____        _____
22          _____      _____        _____
            _____      _____        _____
23          _____      _____        _____
            _____      _____        _____
24          _____      _____        _____
            _____      _____        _____
25
```

**A**

**able** 60:25 70:16 76:8 77:25 80:5
**absolutely** 71:4
**abundantly** 77:18
**accept** 23:23 51:7 62:17
**accepted** 52:14,18 52:19 53:5
**access** 49:17,25
**accesses** 23:21
**account** 16:10,11 16:22,23 17:6,9 17:14,15 18:11,20 20:9 24:17,24 28:10,12 29:6 32:2 40:7 42:11 42:20 44:12,16,17 49:4,5 50:17 51:6 51:16,20 52:21 53:6 54:15,20,22 55:13,14 65:22,23 66:24 67:2,3,4 68:8,9 71:10,15 74:21 75:2,10,18
**accounts** 23:4 44:13,14
**accrued** 64:13
**action** 5:16 13:16 25:8 57:20 67:20 74:9
**actions** 14:2
**active** 58:4
**activity** 17:8 53:2
**actual** 29:12
**added** 69:14
**addition** 52:10
**address** 5:11 72:18 78:2
**addressed** 40:3 76:6,7
**adler** 7:24 8:11,13
**administer** 4:15
**advise** 65:17
**affidavit** 17:21 18:6 33:25 34:6,7,9,22 35:17,18,20 36:19 36:25 37:5,7,8,13 37:15,16 38:21,23 38:25 39:3 48:23 49:3 50:16,24 52:6 56:10,20,24 58:6,7,15,18,24 58:25 59:9,17 60:9,14,16,16 61:2,6,17 62:3 63:2,11,19 64:11 65:16,17 66:23 67:2,11 68:7,7,10 81:17,19

**affidavits** 35:13,15 35:20 51:24 60:13 62:11
**affirmation** 57:22
**agoado** 1:4 12:6 13:21,22,25 14:3 19:8,20,23 20:2,7 20:9,17,17,23 21:6,9,25 26:11 31:18 32:16,20 37:21 38:17,24 43:18 47:6 57:21 58:3 59:8 60:10 60:23 67:4 68:9 71:15 79:10,12,18
**agoados** 15:23 16:10,22 17:6,9 17:14 18:20 23:4 37:7 42:11,20 48:17 50:17 55:13 75:10
**agree** 76:10 78:3 79:18 80:2
**agreed** 4:4,9,13
**agreement** 29:5
**agrees** 77:22,24
**al** 1:11
**alan** 2:11
**alert** 50:19
**allow** 6:6,7,8 70:13
**allows** 70:21
**alright** 78:16
**amount** 65:11,18
**answer** 12:7 14:4,8 15:18 16:5,20 17:2 18:14 19:24 22:4 27:8 32:6 37:24 38:10,10 45:13 55:2 60:19 62:7 70:13 71:16 77:12 78:7,9 79:12
**answered** 20:16 27:15 38:20 45:11
**answers** 12:19
**anybody** 64:9
**appear** 29:21 32:9 58:17
**appeared** 69:7
**appears** 29:4,24 30:14,16 32:23 34:19 40:25 46:23 46:24 82:10
**appended** 69:12,13
**application** 52:11 58:8 61:22 62:4 74:18
**appreciate** 77:6
**appropriate** 19:19
**approving** 10:14
**area** 10:11

**areas** 79:4,15
**arent** 76:7
**arising** 74:9
**arleo** 3:3
**arthur** 8:14
**asher** 2:7
**aside** 17:5
**asked** 19:21 38:19 72:25
**asking** 20:25 24:21 30:7 35:8,10 37:14 45:9
**assigned** 67:5
**assist** 10:15
**assisting** 10:23,25
**associate** 6:24 10:23
**assume** 24:9,17 29:6 33:14 42:2 49:9 50:12 59:3 59:12
**asterisk** 28:19
**attempt** 16:14
**attorney** 5:20 12:6 12:24 23:21 40:14 46:20 58:14 71:9 74:20 79:10
**attorneys** 2:4,15,20 3:4,8,14,20 4:5 10:23 57:22
**authorization** 4:5
**authorized** 4:15
**automated** 66:9
**available** 16:13 17:2 25:14,22,25 26:7,17 28:21 29:2,7 41:19,20 41:24 42:2,10,12 42:17 44:18 48:23 49:3 50:16,20,24 50:25 52:23 53:4 53:10,14,16 54:5 54:14,19 55:17 69:25 71:6,7 78:25
**avenue** 2:4 3:5
**aware** 14:18

**B**

**b** 15:21 16:15 71:10 74:16,19 77:14 79:8
**back** 18:17 27:18 37:19,23 38:4,6 41:10,16,17 56:6 57:15 58:22 62:6 62:9 76:11,25
**backdoor** 16:14
**bag** 76:24,25
**balance** 67:6
**banks** 9:5

**based** 37:20 38:15 39:24
**basic** 75:15
**basically** 58:2
**basing** 53:21
**basis** 16:17 52:24 72:8
**bates** 22:16 30:18 41:4 47:25 55:8 57:6 66:15
**beginning** 70:19
**behalf** 1:5 17:8 20:21 47:7 75:13
**believe** 9:16 13:6 13:14 18:17 20:5 21:19 22:5 23:18 28:9 30:6 36:10 36:13 40:23 43:15 43:20 46:19 48:8 49:2 50:5 55:4 57:4,12 59:4,5,16 64:7,8,21,22,24 65:2 67:22 69:9 71:7 75:3 76:23 77:8,18 79:4
**beyond** 11:19 15:15 15:21 18:13 32:5
**bianco** 2:9
**bill** 33:16
**billing** 24:8
**bills** 47:3,10,12
**bit** 12:3 40:6
**blood** 82:13
**bottom** 34:11
**break** 41:9 70:4
**breaks** 5:22
**brief** 41:13 70:6 79:3
**briefly** 41:19 74:8
**brooklyn** 6:11,15
**bureau** 52:3
**business** 47:21
**byrnes** 2:9

**C**

**c** 2:2 3:2 5:2 21:10 21:10,11 22:10 23:6 29:23 49:23 52:14 68:24 82:2 82:2
**c499583** 57:21
**c499687** 31:14,22
**call** 50:12 71:18 72:9,14,19 76:11 78:24
**called** 14:20 79:25 80:3
**calling** 71:22
**calls** 32:4
**cancel** 24:11 25:11
**cant** 5:23 24:5 35:4

**35**:5,12 39:6 53:25 54:3 70:12 76:25
**canvass** 76:12
**card** 29:5
**care** 5:12
**careerwise** 8:11
**carolyn** 46:15,16
**carolynf** 40:3
**case** 14:10 37:7,9 48:17 59:4 60:24 61:19 67:3 68:8
**cases** 10:24
**cat** 76:24
**cc** 28:19
**ccr313** 25:18
**center** 58:2
**certainly** 72:6
**certificate** 58:12 62:16
**certification** 4:6
**certifies** 58:2
**certify** 82:3
**chain** 48:22 49:3 50:16,23
**change** 8:21 83:2
**changed** 8:7
**changes** 8:3
**chase** 42:20 68:9 68:11
**check** 62:17,20
**cherise** 68:14
**chrgoff** 32:25
**chris** 1:5
**city** 1:19
**claim** 52:13,18,19 52:25 53:5
**claimed** 65:11
**claims** 10:10,12,13 10:18
**clarity** 36:19
**class** 5:16 74:8
**clear** 42:9 71:8 74:23 77:18 79:6
**clerk** 72:23
**click** 23:23 49:20 50:11 51:9
**clicked** 52:20
**client** 13:17 17:9 18:6,17 19:8 20:11 21:19 23:12 24:9 30:11,12,15 34:8 51:25 53:11 56:25 59:17,19,21 59:23 61:18 62:2 65:15 70:13 72:10 74:10 75:7,19 77:3,11 78:6
**clients** 10:11 11:17 12:13 20:16 21:22 52:22 58:15 59:13

65:16,16 70:24
75:7
**clientspecific** 12:17
**closed** 71:11
**closings** 9:5
**cocounsel** 2:9
**code** 18:16,17
19:15 20:4 23:11
23:14,17 25:18
28:18,23 32:25
33:23 34:17,19
36:7 39:12,16,18
39:20,21,24
**codes** 18:16 22:11
23:16,19,20,24
24:5 30:9,9
**cohen** 1:16 5:10,18
6:1 7:1,4,5,14,21
7:22,23,24 8:1,10
8:12,14,17,20 9:1
9:8,12 10:1 11:1
12:1 13:1 14:1,22
14:24 15:1 16:1
16:11,23 17:1
18:1 19:1 20:1
21:1,10,16 22:1
22:16,18 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1,20 31:1 32:1
32:14,19,24 33:1
33:20 34:1 35:1
36:1 37:1 38:1
39:1,9 40:1 41:1,3
41:6,16,17 42:1
43:1 44:1 45:1
46:1,4 47:1,25
48:1,3 49:1 50:1
51:1 52:1 53:1
54:1 55:1,7,10
56:1,6 57:1,5,8
58:1 59:1 60:1
61:1 62:1 63:1
64:1 65:1,5,9 66:1
66:14,16 67:1
68:1,3,5 69:1,16
69:18 70:1,22
71:1 72:1 73:1
74:1,10,14,15
75:1 76:1 77:1
78:1 79:1,11
80:10,14 81:6
**coleman** 2:14 3:19
**collecting** 20:22
**collection** 9:2 10:3
10:7,15 14:2 17:7
20:10,14 21:5
23:5 53:2
**collections** 7:19
10:25 11:17 12:14
**collector** 46:19

**column** 23:13 33:23
34:18 39:12
**come** 10:10 33:9,12
41:10 51:3 65:13
72:11
**comes** 58:12
**comfortable** 78:8
**coming** 36:14
**commack** 2:10
**commencement**
67:19 68:20 82:7
**comment** 25:9
**commercial** 7:18
8:25
**communication**
29:22
**communications**
79:13
**company** 75:16
**compare** 62:24
**complaint** 52:6
65:12
**complete** 12:3
**completed** 75:22
**compliance** 11:2
40:14
**comply** 11:9,16
12:12
**computer** 48:16
49:14,17,18,23
50:2 66:7
**concern** 16:4
**conditions** 28:20
29:2,5,12
**confident** 17:25
**confirmed** 65:16
**confirming** 16:4
**conform** 21:11,16
21:25
**conformity** 58:13
62:16
**connected** 10:18
82:13
**connection** 13:9
18:20 19:7 20:2
21:4 42:10,19
43:18 57:20
**consider** 74:4
**consumer** 7:19
8:25 40:24,25
**contact** 71:5
**content** 19:11
**context** 15:13 41:21
42:5 74:9
**continued** 3:2
**conversation** 77:11
**convey** 17:6,14
20:3,6 21:3
**conveyed** 19:7
**conveying** 21:24
**copy** 52:5,8

**corporation** 67:8
**correct** 5:20 9:10
21:17 25:6 30:15
32:16 43:19 46:23
47:12 56:17 59:2
62:18,19,21
**counsel** 6:7 14:15
45:14 75:3 77:22
78:23 82:9,16
**counsels** 64:17
**country** 1:19
**couple** 25:17 70:5
**course** 47:21
**court** 1:2 4:16 6:9
15:17 16:7 17:8
34:13,20 41:8
52:7,9 57:19
62:16 65:18 72:18
74:18,23 78:10,24
79:5,21 80:2,4
**courthouse** 74:2
76:12
**courtordered** 12:5
**cpa** 74:9
**craig** 1:4
**create** 11:10 65:9
**created** 65:8
**creating** 11:3,5
**credit** 1:11 9:6,6
15:10 29:5 52:3
**creditors** 6:20 7:15
7:16
**csr** 40:3

---

**D**

**d** 5:2,2 81:6
**data** 36:5,10,12
39:24 57:25 65:23
65:24,25
**date** 44:22 67:10,11
68:20 69:13 76:4
76:18 80:6
**dated** 62:15 67:17
**david** 1:4,16 5:10
5:18 31:18 32:16
52:14 58:3 67:4
80:14
**davidson** 3:8
**day** 70:2 80:16
82:18
**dba** 1:10
**deal** 77:5
**dealing** 10:21 17:13
31:25 32:19
**dealt** 17:5
**debt** 20:22 21:4
40:5,19 41:2
51:25
**debtor** 13:18,19
19:2,9,13 20:13
20:14 49:6 58:3

**debtors** 10:4 12:16
19:22 62:18 74:21
**debts** 20:22
**default** 17:21 18:4
35:23 36:17 37:6
56:14 57:3,18
58:8 61:23 62:5
62:24
**defendant** 1:15
2:20 3:4,8,14
75:17
**defendants** 1:12
2:15 3:21 72:17
**defense** 57:25
**delaware** 1:11
**demands** 43:10
**denise** 40:12,13
**dennehey** 2:14 3:19
**department** 57:25
**depend** 73:24
**depends** 51:19
**deposition** 4:14
5:20 11:20 12:2,5
12:23 13:10 14:14
15:16 16:2 24:18
71:9,20 73:17
74:22,24 76:5
79:5
**description** 81:6
**detailed** 37:14
**dicker** 1:18 2:20
**didnt** 15:25 47:7,10
**different** 18:15
20:10,15,15,18
35:13,19 53:13
63:11 66:4,4
69:22
**direct** 78:9
**directing** 25:4
60:19
**direction** 82:9
**directly** 82:14
**disagreement**
73:16 75:5
**discovery** 13:15
27:25 43:10 44:20
45:23
**discuss** 14:14
**discussed** 41:19
58:18
**discussing** 61:25
**discussion** 13:4
64:16 72:21 78:21
**discussions** 19:12
**dispute** 73:10,21
75:25 76:8,14,18
77:19
**district** 1:2,3
**document** 15:2,6,9
22:16,20,22,24
25:14 26:4,8,19

28:17 30:18 31:3
31:11 32:14 34:6
35:5,11 37:21
38:16 41:4,24
45:7,10 46:5
47:17,19,25 48:5
48:7,14 49:18,20
50:3,12,19 53:3
54:10 55:12,15
57:6,17,24 62:22
63:7,9,25 65:25
66:2,14,18,20,22
66:23 68:5,6,24
69:7,11,12,15,17
**documentation**
44:19 45:21 51:13
51:15,17,17 52:23
53:4,10,14,16
54:14
**documents** 13:8,12
13:14,23 31:25
51:8,23 54:2,9
63:24 66:4 69:25
81:8,10,11,13,14
81:16
**doesnt** 31:5 37:16
38:19 54:9
**doing** 10:11 11:17
61:5
**dont** 13:19 14:9
15:3 17:11,23
20:8 22:23 24:12
24:14,20 25:3,5,7
25:8,10 27:6,7,17
27:17 28:13,14
29:15,17,18,20,24
30:8 32:7,8 33:13
33:17 34:24 35:2
35:19,21 36:22
38:12,14 39:4,19
40:24 42:6,7,8,11
42:14,16,22 43:20
44:15,21 45:12,25
46:2 47:2,13 49:9
49:10 50:7 51:20
53:22 55:22 56:2
59:3,11,16 60:6
61:9,13,24,25
62:2 64:7,8,15,21
64:22,24 67:4
75:3 76:22 77:5,7
**doreen** 1:5
**download** 50:5
**drafted** 59:17,18
**drafting** 60:9,15
61:25
**drawn** 65:24 66:2
**dropping** 36:8
**due** 65:18
**duly** 5:3 82:6
**duty** 58:4

**E**

e 2:2,2 3:2,2 5:2
  8:14 82:2,2
earlier 46:8,10
  48:10,12
easier 6:9
east 2:21 3:9 5:12
eastern 1:3
edelman 1:18 2:20
edi 28:4 36:11
  48:20
edi14 35:25 36:4
edi4 35:24 36:11,18
  56:15
effect 4:16
efforts 10:16 21:5
eiseman 82:3,22
either 51:7 66:8
  70:22
electronic 33:13
  36:5,9,10,12 55:5
electronically 50:6
ellori 82:3,22
elser 1:18 2:19 5:12
emphasize 10:11
employ 82:1
employee 46:16
enter 23:10,17
  61:18 66:3
entered 52:8
entering 36:14,15
entin 3:15
entire 8:24
entitled 66:23
entry 10:13 18:7
  25:8 36:6 37:2
  39:12,25 40:2
  51:10 57:23 59:14
  61:23 62:5
equity 9:6
erin 72:22
errata 83:2
esq 2:6,7,11,17,23
  3:3,11,16
esqs 2:14 3:20
essentially 9:18
established 12:10
et 1:11
event 36:16
exactly 7:17 14:9
  30:12 44:2 69:4
examination 1:15
  5:6 82:4,12
examined 5:4
example 12:13
  17:20 65:11
excused 73:2,4,8
exhibit 14:20,22
  22:16,18 30:18,20
  31:8,9,10,16

32:15,19,24 33:20
  39:9 41:4,6,17
  46:4 47:25 48:3
  55:8,10 56:6 57:6
  57:8 58:6,21
  62:23 63:24 65:5
  66:14,14,16 68:2
  68:3
exhibits 43:9 81:4
expense 72:10
expertise 59:15
extent 19:21,23
  21:17,19 49:2

**F**

f 82:2
fact 32:8 35:17
  36:25 37:5 56:24
  70:18 74:19
facts 58:7
factual 18:6 19:12
familiar 15:5 30:8
  31:5 76:13
far 18:21 22:13,14
fax 40:2
fd 74:9
february 1:20 82:18
feel 75:25
fields 65:23,24,25
figure 35:6
file 12:6,14 15:23
  31:12,19 33:16
  36:8 44:18 51:9
  54:11,13 55:3
  57:21 63:11 69:12
  69:13,14,22 70:3
  79:10
filed 52:7
files 68:25 69:7
filing 4:6 10:12
fill 63:14,15
filled 38:24
finance 67:7
find 26:15 27:2,20
  38:13 51:3 73:22
fine 16:20
finish 6:6
fink 3:8
finkel 2:9,11
firm 6:17 7:3,5,8,11
  8:12,13,16,21
  9:11,14,24 10:19
  11:13 12:11 14:21
  15:11 17:17 18:9
  18:19,23,23 20:3
  20:22 21:3,25
  30:3 37:8 38:25
  40:16,17 52:2
  56:21 59:8 60:3
  60:17 64:9,12,22
  65:19 70:23,24

75:8,17 81:7
firms 69:7
first 5:3 14:20 24:2
  26:11 32:24 40:13
  57:18 58:19,20
  65:4 68:13,24
  69:7
five 8:6
fjermedal 3:11
folder 55:5,6 69:22
folks 76:10
follow 39:6 75:19
follows 5:5
force 4:15
ford 46:15,16
foreclosures 9:4
foregoing 82:4
forgot 12:8
form 4:10 11:18
  14:7 18:12 20:12
  22:3,9 27:5 28:4
  28:14 33:11,13,16
  35:7 37:11 38:9
  39:2 41:25 42:21
  43:14 45:4 47:8
  48:22 51:18 56:22
  60:12 61:8,16
  65:20 69:3
format 22:7,12
formerly 40:14
forster 3:9
forward 73:19 74:5
found 68:24 69:15
  69:21
foundation 11:22
  75:21
four 7:25 8:2,3,6
  35:23 67:5 72:15
  72:17
fourth 23:13 48:18
frame 8:8
francoeur 2:23
  11:18,24 14:7
  15:14 16:3,9,21
  18:12 19:18 20:12
  22:3,9 24:21 25:2
  27:5,15,21 29:13
  29:15 32:3,11
  34:24 35:7 37:10
  37:22 38:9,18
  39:2 41:25 42:21
  43:14,19 45:4,6
  45:11 47:8,22
  51:18 53:8,15,18
  53:22 54:25 56:22
  58:23 60:12,18
  61:8,16 63:18,23
  69:2 71:2,24 72:7
  72:13 73:3 74:7
  74:13,14 76:21,22
  77:21,24 78:4,13

78:16,23 79:25
  80:8
frank 2:3
frankly 23:21
free 28:4,14 48:22
front 31:9 47:18
  63:4
fulfilled 30:5
fundamental 73:16
funding 1:10,10,10
  31:17 58:11 68:11
further 4:9,13 52:12
  70:9,25

**G**

garbus 3:9
garden 1:19
gather 26:18
general 8:24 9:23
  10:19 64:17 75:9
generally 17:19
  28:7 39:21 41:23
  43:23 44:3,4,7,8
  55:24 56:2 79:17
getting 75:8
give 12:3 34:21
  36:18 40:5 56:19
  72:7
given 57:24 58:7
gives 36:21
glenn 3:11
go 6:10 7:2 56:6
  58:22 63:8 70:20
  74:5 75:6 77:9
  78:19 79:14
goggin 2:14 3:20
going 6:7 11:19
  14:16 15:14 16:18
  18:25 19:20 41:17
  61:12 65:17 72:16
  77:2,8,8,25 79:19
  79:22
good 5:14 35:20
graduating 6:15
ground 5:19
guess 29:15 32:7
  56:24

**H**

h 5:2
haag 58:9,10 59:9
  60:14,17 61:2,6
  63:19,25
haags 58:25
half 12:5 13:7 16:13
  74:25
halfway 38:18
  33:23 52:13
hand 82:17
handled 16:11
  74:20 75:17

handling 12:6
  71:10,14 75:2
  79:10
handwritten 46:23
happen 51:5 77:20
happened 8:11
  34:23
happening 74:22
happens 79:17
havent 71:12
hawkins 2:7
hear 73:21 76:14
  77:19
held 1:17 72:21
  78:21 82:5
hereunto 82:17
hit 36:7
hitting 53:5
hold 53:8 79:19
home 9:6
hour 12:5 13:6,6
  71:19
hours 16:13 74:25
household 55:14
  67:7
hr 10:22
hsbc 67:8

**I**

idea 55:20,20
ideal 73:20
identification 14:23
  22:19 30:21 41:7
  48:4 55:11 57:9
  66:17 68:4
identified 66:8
im 12:9 13:17 17:11
  20:13,19 21:13
  36:12 58:22 64:3
important 75:20
inadvertently 63:12
inception 8:20
include 10:6,20,21
  51:14,24,25 52:3
  52:4,6,8,9
indebtedness 47:7
index 1:7 81:2
indicate 31:24
  32:18 36:23 54:13
  64:13 69:24 70:2
indicated 52:24
indicating 34:19
indication 30:4
  34:21
indicator 36:21
indirectly 82:15
individual 10:3,4,7
  10:18 66:24 68:8
individually 1:5
  10:2
inform 18:10

**information** 17:7,15 19:4,6,22 20:3,6 21:3,8,24 22:6 23:8,11 24:3 32:4 38:24 52:21 63:16
**input** 59:18
**inputs** 65:19
**inquiry** 30:11
**insert** 59:19,21,23 59:24 60:2
**instantaneously** 50:8
**instruct** 15:17 16:4 16:19
**interacts** 18:9
**interest** 64:13,19 64:20
**interested** 82:14
**interface** 36:5,9,11 36:12
**internal** 11:13 23:6 36:13
**invite** 71:4
**involved** 10:2,7,9 60:8,15
**isnt** 76:13 77:25
**issue** 72:16 73:23 75:4 78:2
**issues** 10:22,22 79:7
**item** 49:19
**items** 54:16 69:20 74:25

**J**

**january** 9:16
**jay** 2:6 5:14 75:12 76:15
**jericho** 2:10
**jersey** 3:15
**job** 10:8
**johnson** 2:17
**joseph** 2:23 74:13
**judge** 16:25 70:21 70:21 71:5,18,20 71:23 72:5,9,14 72:20,23 73:11,20 73:22 74:6,23 75:23 76:3,12 77:5,8,10,18,25 78:25
**judges** 77:7
**judgment** 10:14,14 10:15 17:21 18:7 34:12,20 35:18,23 36:17 37:3,6 52:8 56:14 57:2,19,23 58:9 59:14 61:18 61:22,23 62:5,24
**july** 58:5
**june** 67:13,17 68:13

68:17

**K**

**kandel** 72:22,24 73:5,9 74:11 75:23 76:20 77:17 78:15,18
**kayla** 60:14,17 61:2 61:6 63:19,25
**keep** 18:25
**keeping** 19:5
**kind** 6:19 7:13 30:3 30:7 33:16 34:9 35:15 37:3 38:7 69:17
**kinds** 35:13,19
**know** 5:23 13:19 14:9 15:3 18:8,21 20:8,21 22:13,14 22:23 23:19 24:12 24:14,20 25:3,5,7 25:8,10,10,13,24 26:3,6,10,12,21 27:4,7,11,13,19 28:2,2,3,5,7,13,14 28:23 29:2,8,16 29:17,18,20,21,24 30:6,8,10,11 32:6 32:8,21 33:7,13 33:15,17,18 34:3 34:5,15,18 35:3,8 35:19,21 36:4,7 36:22 37:12,16 38:10,14,19,23 39:3,18,19,21,24 40:8,24 41:20,23 42:6,7,8,11,16 47:13,15 49:5 50:7,23 51:21 54:19,21 55:17,22 55:24 56:3 58:23 59:3,11,12 60:6 61:22 63:23 64:15 64:15 65:7 67:4 69:6 78:24 79:24
**knowledge** 32:5 47:7 59:7
**knowledgeable** 24:16,24
**known** 74:15
**knows** 43:21

**L**

**l** 2:23 3:3,16 4:2
**law** 6:10,11,15,19 7:13 8:13 9:25 59:15 72:23 75:17
**lawsuit** 12:15 68:21
**lay** 74:2
**laying** 11:21
**leave** 71:3

**leeann** 1:4
**leeway** 12:4
**left** 6:23 23:14 34:17
**legal** 58:10 64:14 64:19
**letter** 52:2
**letters** 67:6
**level** 51:16 67:2
**lexington** 3:5
**limitation** 79:5
**limited** 16:24 70:18 71:9 74:24,25 79:9
**line** 8:5 24:7 28:3 32:25 34:12 35:22 48:18 56:9 58:19 58:20 72:15 83:2
**lines** 9:6 25:17 56:13
**list** 69:19
**litigation** 7:19 8:25
**little** 12:3 33:22 40:5 52:12 53:12
**llc** 1:10,10,11 3:4,9 31:17 58:11 68:11
**llp** 1:16,19 2:3,9,20 2:21 3:8,13,14
**loans** 9:6
**local** 58:14 59:15
**log** 50:17
**long** 7:20 13:5
**longer** 40:17
**look** 14:24 15:4 26:20 28:16 31:5 31:16 33:19,22 34:11 35:22 39:8 41:10 43:12 46:4 46:22 48:18 49:7 49:13 50:2 52:12 55:14 56:9 59:20 61:24 62:21 63:4 65:4 67:10 68:12 68:12
**looked** 43:8,8,17 44:5,12,13,14,22 45:16,20 49:12,14 49:16 54:2
**looking** 23:20 24:2 24:7 26:4,7,13,14 26:23 27:3 35:4 35:10 36:17 37:20 38:16 42:18,23 44:16,17 50:7,13 53:3 54:6 62:22
**looks** 15:5 68:7
**lot** 44:13,14

**M**

**m** 1:20 3:11 80:11
**madge** 1:5

**madison** 2:4
**magistrate** 73:22
**magistrates** 73:25
**main** 3:9
**making** 36:6
**management** 1:11 15:10
**manager** 40:14
**manpower** 57:25
**manual** 14:21 15:11 16:6 70:14,17,24 71:13 75:8,15 81:7
**mark** 14:19 22:15 30:17 41:3 47:24 55:7 57:5 66:13 67:24,25 76:17
**marked** 14:23 22:19 30:21 41:7 48:4 55:11 57:9 66:17 68:4 76:3
**market** 3:21
**marriage** 82:13
**marshall** 2:14 3:19
**materials** 27:25
**matter** 73:14 76:13 82:15
**matters** 10:3,8 75:8
**matthew** 2:17
**mcm** 14:20 22:12 49:25 55:8,9,12 70:24 81:7,10,15
**mcm0290** 30:19
**mcm1214** 55:15
**mcnally** 1:4
**mean** 7:17 11:7 21:10 23:20 29:4 29:11 44:9 47:16 47:17 48:25 51:12 51:22 52:14,17 66:25 72:9 73:15 73:21 74:7 77:21
**means** 24:13,14 25:5,8,13,24 28:3 28:5,15,23 29:3,8 29:18 34:3,6,15 34:18 36:4 40:8 40:22 41:20,23 42:2,7,8,12,17 49:2 52:19 55:18 55:21,23,25 56:3
**meant** 42:4
**media** 51:8,10,12 51:22,24,25 52:2 52:3,6,7,9 54:10 54:16 55:4,5,6,16 69:20
**medications** 6:2
**merged** 8:13
**midland** 1:10,10,10 1:11 2:15 3:21

15:10 17:10,15,20 17:22 18:10,10 19:7 20:3,24,25 21:2,4,9,15,16,22 22:2,8 23:5,9 24:4 28:11 29:22 30:3 30:4,4,22 31:17 32:14,15 33:10,12 49:5 57:20 58:6 58:11 59:9,24 60:2,4,22 63:16 64:6,15,23,25 65:3 67:9 68:11 75:7,20 79:13
**midlands** 15:19 21:12 79:16
**military** 58:4
**mind** 37:25 73:14
**minimum** 75:20
**minnesota** 58:14
**minute** 8:22
**minutes** 70:5 71:19
**mitchell** 3:16
**mixture** 51:20
**moment** 31:9 41:17
**money** 40:6
**monitor** 11:11
**monitoring** 11:2
**moore** 1:4
**morning** 5:14 51:3 67:24
**mortgage** 9:3,5
**mortgages** 9:7
**moskowitz** 1:18 2:19
**move** 46:3 73:19

**N**

**n** 2:2 3:2 4:2 5:2 55:17 56:3
**name** 5:8,14,16 8:21 13:20 18:8 40:12,13 62:18
**named** 82:4,6
**names** 8:7
**nature** 52:11
**need** 9:24 17:19 39:5 42:3 61:17 71:18 75:14 76:6 77:18 77:15 80:6
**needs** 76:5 77:19
**new** 1:3,10,19,21 2:5,5,10,16,16,22 2:22 3:5,5,10,15 5:4,13,13 10:10 59:14 64:14,20
**nittygritty** 73:10
**notarized** 58:12,16 62:14
**notary** 1:21 5:3 80:19

**notating** 36:16
**note** 23:24 36:7,14 36:16 40:11,23 46:23 47:15,16,17 69:19
**noted** 41:14 70:8 80:11
**notes** 23:3 43:8 44:18,18 48:15 55:4
**notification** 50:15
**noting** 50:19
**ntraina** 34:13,15
**number** 23:14 28:9 28:10,12 31:12,19 31:21 32:10,12,25 33:7,9,11 39:12 48:17 57:21 63:8 65:14 67:4,5
**numbers** 59:21,24 59:25,25 62:18,21 62:25,25 63:9,14 63:15 64:5,21 65:2,20,21

**O**

**o** 4:2 5:2
**oath** 4:15 25:3
**object** 6:8,8 15:15 19:18,20 20:12
**objection** 11:18 14:7 18:12 22:3,9 27:5,21 29:13 32:3,11 35:7 37:10 38:9,18 39:2 41:25 42:21 43:14,19 45:4 47:8,22 51:18 54:25 56:22 60:12 60:18 61:8,16 69:2 79:19
**objections** 4:10 76:2
**offer** 77:6
**office** 11:3,4,6 18:2 27:18 36:14 46:17 64:17
**officer** 4:14
**offices** 1:17
**okay** 11:24 12:21 14:13 16:8,21 17:4 18:22 19:25 28:17 33:21 39:10 41:12 45:24 56:8 61:20 75:23 76:16 76:18,20,23 77:17 78:12,14,15,18 79:22 80:8
**old** 1:19
**once** 13:3 66:3 76:24

**open** 51:6 63:7
**opens** 49:21 50:8
**operation** 10:19 18:18
**operations** 9:23 10:25
**opinion** 72:4
**opposed** 36:15
**order** 1:17 18:25 61:18
**ordered** 15:17
**origin** 68:10
**outcome** 82:15
**outside** 60:20 77:15 79:15
**oversee** 9:23 10:19
**overseeing** 10:24
**owed** 20:23

**P**

**p** 2:2,2 3:2,2 4:2 80:11
**page** 24:3 26:23 27:3 28:16 31:12 33:19 34:12 39:8 46:22 48:15 53:7 53:9,13,19,20,21 53:25 54:6 55:15 56:7 57:18,22 58:13 59:20 65:4 65:7 68:13 69:19 81:6 83:2
**pages** 58:5
**paper** 63:4
**paperless** 23:3 31:11 48:15 69:19
**paragraph** 47:2 59:20 60:2 64:5
**parsippany** 3:15
**part** 28:10,13,15 45:21
**particular** 10:24 11:8 19:2 23:11 49:4,5 51:19 52:21 53:6 65:23 67:3 69:24 75:18
**particularly** 62:3
**parties** 1:17 4:5 72:15 82:14
**partner** 7:7 9:21
**partners** 14:18
**parts** 15:8,12
**party** 82:9
**passed** 19:16 22:11
**pavlides** 40:12,13
**pavlidesd** 40:7,8
**pc** 6:18 7:4 8:13,14 8:15
**pdf** 49:21 50:13 69:12
**pennsylvania** 3:22

**percent** 64:14,25
**performance** 11:11
**period** 9:4
**person** 24:17,18,24 36:15 66:8
**personal** 73:14
**personally** 17:24
**perusing** 15:6 22:22 28:17 31:3 48:7 66:20 68:6
**peshkin** 6:18,18 7:3 7:10,13,20,22,23 7:24 8:10,12
**philadelphia** 3:22
**phillips** 68:14
**physically** 51:2 63:3
**piece** 63:4
**pierre** 1:5
**pine** 2:16
**ping** 51:4
**place** 17:25 18:2,5 82:5
**placed** 23:4
**places** 66:4
**plaintiff** 75:11 77:24 78:13
**plaintiffs** 1:7 2:4,9 5:15 74:17 75:13 76:16
**pleading** 18:4,4
**pleadings** 52:4,5
**please** 5:8,17 6:6 29:15 32:6 34:24 73:7
**point** 23:9 72:6
**policies** 11:3,5,12 11:15,25 12:11,12 12:18 15:20 60:21 75:6 79:7,16
**policy** 11:9 77:14
**portals** 50:7
**portfolio** 25:15 28:4 28:8,9,12
**portion** 54:10,12
**portions** 12:18
**position** 9:19 40:15 46:18 70:11,15,20 77:13
**possibly** 17:18 20:8 27:8 46:11,14
**post** 10:15
**practice** 6:19 7:14 8:25 9:17,18,25
**practicing** 6:13
**preferences** 77:3
**prejudgment** 64:19
**preparation** 13:9 57:2
**prepare** 12:22
**prepared** 59:11

**preparing** 11:2
**present** 2:12 3:6,11 3:17,19 14:11 42:22 49:10
**preserve** 70:17 71:17 77:16
**preserving** 78:7
**pressler** 3:13,13,14 3:14
**pretty** 8:7 47:23
**prevent** 6:3
**printed** 54:24 55:3
**printout** 22:25 30:25
**prior** 7:11 10:12,13 53:4
**probably** 7:24 17:23 27:22 36:22 36:24,25 37:18,20 38:8 48:10,13 49:19 61:21 62:17 62:24
**problem** 78:18
**procedure** 11:10 17:25 18:2,5 73:6 77:14
**procedures** 11:3,6 11:12,15,25 12:11 12:13,18 14:2 15:19,20 17:7 20:10,14 21:17,18 60:21 75:6,9,16 75:19 79:7,16
**proceed** 52:25 77:4
**process** 14:9 66:9
**produced** 30:22 67:24 74:10,16
**proper** 64:19
**proposed** 61:22
**proprietary** 18:24 19:5
**provide** 59:8 64:4
**provided** 44:19 45:22,22,24 51:9 52:22 60:3 65:15
**public** 1:21 5:4 80:19
**purchase** 28:11
**purpose** 16:24
**pursuant** 1:17
**pursue** 79:20
**put** 23:23 24:18 25:9 31:8 40:11 43:24 70:10 76:25
**putting** 40:23

**Q**

**question** 4:10 6:7 12:9,19 15:15 16:22 17:12 18:14 19:11,19,21 20:19

24:22 25:4 27:6,8 27:9,16 38:2,11 38:19 39:5 45:12 45:13 46:2 53:9 53:11,15,21,23,24 63:18 64:3,4 69:3 71:13
**questioning** 79:3
**questions** 11:19,22 15:18 16:5,10,18 17:3 30:7 37:15 60:24 70:10,12,14 70:16,19,22,25 71:11 75:21 76:6 76:17 77:12 78:7 79:12
**quite** 71:8 79:6

**R**

**r** 2:2 3:2 82:2
**r340** 28:19
**rapidly** 8:8
**rate** 64:14,19,19
**read** 37:19,22 38:3 38:5 40:19 62:6,8
**ready** 16:25 60:25 79:11
**really** 56:5 63:10 78:4
**reason** 5:23 75:13 83:2
**recall** 49:9 61:24,25 62:2
**received** 40:2 47:20 56:10 58:25
**receiver** 31:9
**recess** 41:13 70:6
**recognize** 40:4,19 41:2
**recollection** 13:24 14:5,10,11 42:18 42:23,24 43:2,4,6 43:11,23 44:8,15 44:17,25 45:2,16 47:2,9,11,14,15 49:10 61:10,11,13 61:14,15
**record** 5:9,17 16:19 41:16 70:11 72:3 72:8 78:20,22 82:11
**referring** 39:4 45:8
**refers** 28:8
**reflect** 47:5 54:9
**refresh** 13:24 43:3 43:11
**refreshed** 14:6,10 43:2,7,23 44:3,4,7 44:9,16,24
**regard** 19:19
**regarding** 16:10

Page 89

regards 48:16
regular 47:21
rejected 24:10
  25:11
relate 71:14
related 79:17
relates 63:19
relating 75:2
relevant 72:4,5
relied 59:15
remember 13:12
  43:16 44:21 45:25
  61:4,5,7
reopened 76:5
rephrase 38:2 69:5
report 52:3 57:24
reporter 6:9 38:5
  41:8 62:8
reports 64:10
represent 5:15 23:2
representation
  71:12
represented 79:2
  82:9
representing 9:5
request 17:22,24
  18:6,9 24:6,8,9
  25:11 26:18 30:3
  30:5 33:25 34:5,7
  34:22 36:19 50:10
requested 38:6
  41:9 62:9
requirements
  21:12,13 22:2
  59:13
reserve 79:23
reserved 4:11
resolve 80:4,5,6
respective 4:5
responded 30:10
responds 30:12
response 39:7 44:6
responses 30:15
responsibilities
  9:22
responsive 18:4
rest 73:13
review 10:10 13:8
  47:5 51:7,8 54:21
  61:21 62:11,12
  63:6,13,17 73:23
reviewed 13:23
  43:21 62:10
reviewing 10:12,13
  52:20
reviews 10:12
revving 72:10
right 9:9,17 20:11
  24:19,25 28:19
  31:14,16 32:10

19:22 20:7 79:12

33:24 36:11 38:8
  39:15 44:2 45:3
  46:3 47:6 55:16
  67:21 70:17 71:17
  72:18,19 74:11
  79:23
rights 6:20 7:15,16
  71:23 78:8
road 1:19 3:15
robert 3:3
rochester 3:10
rothman 3:4
routinely 61:24
row 37:12
rubin 3:4
rule 75:24 76:4,8
rules 5:19
ruling 71:8 76:3
rulings 77:7
run 9:25 27:24,25

**S**

s 2:2 3:2 4:2,2
  21:10,10,11 22:10
  22:17,17,17,17
  23:6 29:23 31:10
  31:10 33:19,19
  39:8,8,12 41:4,4,5
  41:5 46:22,22
  47:18,18,20,20
  48:2,2,2,2 49:23
  56:7,7 57:6,6
  58:18,18,21,21
  59:20,20 61:3,3
  66:15,15 67:25,25
  81:9,9,12,12,13
  81:13,16,16,18,18
  81:19,19
s3rdauth 39:13
safa 33:24 34:3
sale 66:24 68:8,10
  81:17,19
saltzman 2:6 5:7,15
  11:21 12:7 14:19
  15:24 16:8,16
  17:4 19:25 22:15
  24:23 30:17 37:18
  38:3 41:3,8 45:9
  47:24 53:12,17,20
  55:7 57:5 62:6
  63:20 64:2 66:13
  67:23 69:5 70:4,9
  71:22 72:2,12,19
  75:12,12 76:15,15
  77:23 78:3,12,19
  79:22 80:3,9
sample 28:20 29:2
  29:8,9,18
saw 56:17
saying 51:2 58:24
says 23:14 24:10

25:11,14,18,21
  26:16 28:20,25
  29:9 31:11,14,17
  31:19 32:15,25
  33:4,24 34:12
  35:23,23 40:18
  41:18 42:9 46:25
  47:15 48:19,20
  50:25 52:13,17
  55:16 56:10,14
scanned 49:19
  54:16 69:20 70:3
scenes 23:25
schedule 73:24
school 6:10,11,16
scope 11:20 15:16
  15:22 18:13 60:20
  73:17 77:15 79:9
screen 31:2 49:15
  49:17,20 52:20
  62:23 63:5
screens 22:24
sealing 4:6
second 46:25 55:14
secretary 14:16
section 25:19
see 23:13 24:6,6,10
  24:12 25:17,22
  26:16 28:21,25
  31:10,11,18,21
  33:2 34:17 35:24
  39:11,13,16 40:18
  46:7,9,25 47:3
  48:9,19,23 49:21
  50:18 55:15 56:3
  56:11 62:17,20
  67:11,13 68:14
  76:12 77:3,11
  78:6
seen 14:25 15:7,8
  15:12 22:20,23,24
  30:23,25 46:4,12
  48:5,11 57:10,13
  57:15 66:18,21
selip 1:15 2:21 9:9
  9:12,15,19 11:25
  74:15
selips 15:25
send 18:16 30:4
  35:16 63:16
sending 21:8
sends 18:17 64:23
sent 22:6,7 23:9,11
  24:4 30:9 34:13
  34:20 35:12 50:6
  52:2 56:21
separate 54:12
  74:19
separately 54:17
  55:4
served 18:3

service 52:7
set 18:24 64:12,25
  82:17
settle 40:6
seven 6:22
sfaxrecd 39:16
sharkey 1:5
sheet 83:2
shipman 1:5
show 38:21 45:6
showing 71:13
shows 51:10
signature 59:10
signed 4:14,16
  57:22 58:9,11
  62:13
similarly 1:6
sir 22:21 30:22 48:6
  57:11 66:19
sister 40:5
sitting 27:12 45:3
  45:17,20
situated 1:6
sixth 24:7
sjtoct 34:18
slamowitz 8:15,17
  8:20 9:8,12 21:11
  21:16 65:10 74:10
  74:14,16
software 18:24
sold 67:7
somebody 36:7
  47:6 59:9 65:19
  66:6
sorry 12:9 13:17
  17:11 20:13,19
  21:14 36:12 58:22
  64:3
sounds 73:15
speak 74:6 75:10
speaking 74:11
specialist 58:10
specific 11:23
  12:15 13:17,18
  21:19 22:23 23:17
  25:7 44:15 61:9
  61:11,14 67:2
  74:18,21 75:5,9
  77:7
specifically 16:24
  17:16,23 28:6,13
  37:13 39:19 41:22
  55:22 56:2 63:25
  64:8
speculate 32:7
  34:25
speculating 55:2,5
  37:4,25 38:7
  39:23 56:23
spelled 40:12
spoke 12:24

ss 40:7 68:24
staff 11:9
stamped 22:17
  30:18 41:4 47:25
  55:8
standard 22:7,12
  37:8
standing 35:20
state 1:21 5:4,8,16
  59:14,16 64:20
statement 24:8
  25:22,25 26:3,11
  26:12,17,18 27:12
  27:14,19 41:18
  42:10,12,17,18
  43:12,16,22 44:21
  45:7,16,19 71:3
statements 26:7
  40:7 52:10
states 1:2 40:4,19
stating 40:24,25
  72:3
status 18:11 50:18
  57:24 58:4
stenographically
  82:8
step 73:4
stern 6:17
stipulated 4:4,9,13
stored 54:16 55:4
street 2:16,21 3:9
  3:21 5:13
stylianou 1:16 2:21
  9:9,12,15,20
  74:15
subject 13:15 58:3
submission 57:2
submitted 57:19
subscribed 58:15
  80:15
sue 7:18
sufficient 52:24
suggest 71:16
suit 10:11,13 51:7
suite 2:4,10 3:9,21
summary 35:18
summons 18:3
  52:5
supplied 65:2
support 18:7 37:2,6
  56:25 57:23 58:8
supposed 79:9
sure 17:24 24:13
  29:10,14 30:13,23
  31:4 32:22 34:10
  35:14 38:14 44:11
  50:4,6,8,13,21
  57:3,4 59:22 60:5
  60:7 62:13,14,14
  62:15 63:8,9,10
  64:18 66:10,11

71:20
sworn 4:14,16 5:3
68:13,17 80:15
82:6
system 18:8 19:6
21:12,13 23:22
36:6,15,16 48:16
49:23 50:2
systems 18:15

_____

**T**

t 4:2,2 82:2,2
take 5:22 14:24
15:4 16:6 26:19
28:16 31:8,16
33:19,22 34:11
39:8 41:9,9 46:22
48:18 55:14 65:4
67:10 70:4 72:24
73:23 78:10
taken 1:16 41:14
70:7 76:9 82:7
takes 75:3
talk 14:12 38:21
60:21,23,25 75:14
77:2 78:5 79:6
talking 19:11,15
20:24 23:16 63:15
67:20
task 10:6
tasks 10:17
taub 7:22,23 8:10
8:12
technical 30:7
telephonically 2:12
3:6,11,17 72:22
tell 15:4 24:3,5
29:16 30:24 32:6
35:11,12 53:9,25
54:3,5 68:23
73:11 74:3,7
ten 8:23 66:3,4
tendered 43:9
terms 28:20,25
29:4,12
testified 5:5 12:2
21:15 37:11 63:20
63:21 79:14
testify 5:24
testifying 6:3
testimony 82:7,7
text 28:4 33:4 41:18
48:19,22
thank 12:20 59:7
61:3 78:16 80:9
thats 9:10 14:17
21:20 46:24 50:11
thing 78:5
things 52:10,10,11
think 7:25 8:22
10:10 11:19 14:4

18:16 22:25 27:15
27:24 32:3 36:6
38:13,15 59:17
64:24 69:11 75:4
76:23,25 77:5,9
77:22 78:4 79:3
third 56:9
thirdparty 40:3
thomas 1:5
thought 43:22
three 12:4 16:13
37:11 45:12 74:24
time 4:11 8:5,8,24
9:4 30:2 41:14,14
46:9 48:12 61:10
63:6 70:7,8 76:9
78:11,17 80:11
82:5
times 37:12 45:12
title 48:22 49:3
50:16,24
today 5:24 6:4 12:4
46:5 67:20 73:12
73:12 74:2,6,22
76:7 77:20 80:5
told 14:16 59:12
tomlinson 16:25
71:5 72:23 73:11
73:20 74:23 75:24
77:10,19 78:25
top 48:19 55:16
56:10 62:23
topics 15:21
track 18:25 19:5
train 11:10
transcribed 82:8
transcript 82:5,11
transferred 19:6
trial 1:15 4:11
tried 80:4
triggered 25:9
true 82:11
truthfully 5:24 6:3
try 50:2 73:22 74:5
trying 7:25 8:5
turnpike 2:10
twice 72:11
two 31:25 60:13
type 25:14
typically 59:23,24
60:2 62:11

_____

**U**

u 4:2
ultimately 8:16
umhum 34:14
understand 5:19
17:11 27:6,9 39:4
46:2 53:22,23
61:13 68:19 69:3
70:11

understanding
19:10 40:21 50:22
56:4,20 65:22
67:16 68:16
united 1:2
upton 8:14,14,20
use 18:15 66:3
userfriendly 23:22
uses 18:25 37:9
usual 73:6
usually 63:21,22
69:11

_____

**V**

v 5:2
validation 52:2
vazquez 1:5
verbal 39:7 44:6
versus 31:18 32:15
viewing 50:9

_____

**W**

waived 4:7 71:24
waiver 70:19 71:4
waiving 71:23
79:24
want 5:22 11:9
37:23 38:12 70:17
71:17 74:5 79:20
wanted 26:21 27:3
27:11,19 69:6
wants 75:6
warner 2:14 3:19
wasnt 76:8
way 20:7 26:15,22
27:2,12,13 68:23
78:6
ways 10:9
week 13:2 43:5
46:8,10 48:10,12
57:14 66:21 73:13
went 6:11 7:3 27:18
whereof 82:17
williamson 3:16
willing 17:2 40:5
60:25 77:12
wilson 1:18 2:19
5:12
witness 12:8 15:6
15:18 16:5,12,25
22:22 27:7,10
28:17 29:17 31:3
32:5 37:11,15
41:12 44:2 48:7
60:19 66:20 68:6
69:4 71:6,11,16
72:25 73:3,8
74:16,19 79:6,8
82:4,6,12,17
wont 70:13 72:8
75:10

words 39:25 43:25
work 6:16 77:9
worked 6:17 64:10
works 50:4
wouldnt 26:3,6,10
26:12 33:15,18
72:13
wrong 43:20,24

_____

**X**

x 1:4,13
xref 40:6
xxxxx 3:24 4:19

_____

**Y**

years 6:12,14,21,22
7:25 8:2,4,6,19,23
ygc 18:18 22:11
york 1:3,10,20,22
2:5,5,10,16,16,22
2:22 3:5,5,10 5:4
5:13,13 59:14
64:15,20

_____

**Z**

_____

**0**

00 70:8
0011 41:15
005971 67:25
0096 66:15
02900297 81:10
0297 30:19
07054 3:15

_____

**1**

1 14:22 81:7
10 1:20
10005 2:16
10016 2:5
10017 2:22
10168 3:5
108 57:6
108117 81:16
11 41:15 65:12 67:7
70:8
11272011 42:19
43:13,17 44:23
49:8
1130 52:15
114 61:6
115 59:20,20 61:3,6
117 57:7
11725 2:10
12 57:16 80:11
1213 55:8
12131222 81:15
1222 55:9
133 41:4
133135 81:12
1345 28:5

135 41:5 46:22,22
47:18,18
138 48:2
138149 81:13
14 81:7
142 56:7 58:18,21
14614 3:10
149 48:2
14cv00018ldwarl
1:8
15 1:20 41:15
150 2:21 5:12
151 22:17
151160 81:9
152 28:16
153 39:8
154 33:19
160 22:17
1700 3:9
18 1:20
18th 82:18
19103 3:22
1st 9:16

_____

**2**

2 22:16,18 31:8,10
32:19,24 33:20
39:9 41:17 81:8
20 33:5 80:11
2000 3:21
2011 44:12,13,15
48:13 57:15
2012 58:5
2014 67:13,17
68:14,17
2015 9:16
2016 1:20 80:16
82:18
2018 2:10
22 81:8
2300 3:21
24 58:5
25 68:13,17
275 2:4
28 3:9

_____

**3**

3 30:18,20 31:9,16
32:15 67:8 81:10
30 15:21 16:15
71:10 74:16,19
71:14 79:8 81:10
37 6:14
380 3:5

_____

**4**

4 41:4,6 46:4 59:20
60:2 64:5 67:13
67:17 81:11
41 81:11
428 65:12 67:7

**42nd** 2:21 5:13
**45** 71:19
**48** 81:13
**499583** 48:17

---
**5**

**5** 39:13 47:25 48:3
 56:6 58:21 69:16
 69:18 81:13
**5012** 70:8
**5036** 2:10
**52212** 46:13
**5291** 67:6
**55** 81:14
**57** 81:16
**59715972** 81:19
**5972** 67:25

---
**6**

**6** 15:21 16:15 55:8
 55:10 71:10 74:16
 74:19 77:14 79:8
 81:14
**62912** 34:23
**66** 81:17
**666** 1:19
**68** 81:19

---
**7**

**7** 3:15 33:5 57:6,8
 65:5 81:16
**705** 2:4
**71812** 56:21
**72412** 56:14

---
**8**

**8** 66:14,14,16 81:17
**8468** 67:6
**88** 2:16

---
**9**

**9** 64:14,25 68:2,3
 81:19
**90** 65:12 67:7
**9697** 81:18
**97** 66:15
**985** 33:5