UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

DAVID AGOADO, LEEANN MCNALLY, CRAIG MOORE, CHRIS PIERRE, THOMAS SHARKEY, MADGE SHIPMAN, and DOREEN VAZQUEZ individually and on behalf of all other similarly situated,

Case No. 2:14-cv-00018-JMA-AKT

Plaintiffs,

-against-

MIDLAND FUNDING, LLC d/b/a as MIDLAND FUNDING OF DELAWARE, LLC, and MIDLAND CREDIT MANAGEMENT, INC., RUBIN & ROTHMAN, LLC, FORSTER & GARBUS LLP, COHEN & SLAMOWITZ, LLP, PRESSLER & PRESSLER LLP,

Defendants.

------------------------------------------------------------------------ X

# DEFENDANT COHEN & SLAMOWITZ'S RESPONSE TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT OF FACTS

265120352v.2

Defendant COHEN & SLAMOWITZ, LLP (now known as Selip & Stylianou, LLP) ("Defendant" or "S&S"), by and through their undersigned counsel, respectfully submit this Defendant Cohen & Slamowitz's Response to Plaintiffs' Local Civil Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

**Introduction**

A.  S&S objects to Plaintiffs' use of argumentative headers to introduce various subsections of their Rule 56.1 statement. None of the headers are followed by citation to evidence as required by Local Rule 56.1(d) and therefore are improper.

B.  S&S objects to Plaintiffs' characterization of every debt at issue as an "alleged debt" as Plaintiffs provide no citation to evidence to support the assertion.

C.  S&S objects to Plaintiffs' citation to documents without providing a citation to the corresponding documents anywhere in evidence.

**Defendants' Collection Action Against Plaintiffs**

*Plaintiff Agoado (Chase Account)*

1.  On January 23, 2012, C&S[1] filed a lawsuit in Suffolk County District Court against Mr. Agoado as to the alleged Chase account, with MF named as plaintiff. (Frank Decl. Ex. 1-A (select court documents from Agoado-Chase state-court collection action) at S&S290–292 (summons and complaint, stating causes of action for breach of contract and account stated)).

    **Response:**   Admit with the exception of Plaintiffs' characterization of Agoado's

---

[1] "Defendants" collectively refers to: Midland Funding, LLC d/b/a as Midland Funding of Delaware, LLC ("MF") and Midland Credit Management, Inc. ("MCM") (together, "Midland" or "Midland Defendants"); and Cohen & Slamowitz, LLP ("C&S"); Forster & Garbus LLP ("F&G"); Pressler & Pressler LLP ("P&P"); and Rubin & Rothman, LLC ("R&R") (together, "Attorney Defendants").

Chase account as "alleged," as the evidence has established its existence. Francoeur Aff.[2], Ex. F (excerpts from David Agoado Dep.) at 10:15-11:7, 20-25; 14:15-16; 150:25-151:4; Murphy-Agoado Ex. G (Chase credit card statements for Agoado account).

2. On July 25, 2012, C&S filed a default judgment application in the suit as to Plaintiff Agoado's alleged Chase account. (Frank Decl. Ex. 1-A at S&S119–128 (default judgment application)).

**Response:** Admit but for characterizing Agoado's Chase account as "alleged." *See* Response to ¶ 1.

3. The MCM-issued affidavit included in this default judgment application for Plaintiff Agoado's alleged Chase account states, at Paragraph 9:

It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-A at S&126) (emphasis added).

**Response:** Admit but for characterizing Agoado's Chase account as "alleged." *See* Response to ¶ 1.

4. The default judgment against Mr. Agoado as to his alleged Chase account was docketed by the clerk for the First District Court of Suffolk County on August 28, 2012. With

---

[2] The Francoeur Affirmation cited in here is referring to Francoeur Affirmation in Opposition of Plaintiffs' Motion for Partial Summary Judgment.

interest and costs included, the judgment amount as entered was $8,830.94. (Frank Decl. Ex. A-1 at S&S130 (transcript of judgment)).

**Response:** Admit but for the characterization of Agoado's Chase account as "alleged." *See* Response to ¶ 1.

*Plaintiff Agoado (Household Account)*

5. On January 23, 2012, C&S filed a lawsuit in Suffolk County District Court against Mr. Agoado as to the alleged Household account, with MF named as plaintiff. (Frank Decl. Ex. 1-B (select court documents from Agoado-Household state-court collection action) at S&S313–315 (summons and complaint, stating causes of action for breach of contract and account stated)).

**Response:** Admit but for the characterization of Agoado's Household account as "alleged." Agoado admitted that either he or his former wife opened the Household account under his name. *See* Francoeur Aff., Ex. F at 68:17-69:22; 70:7-14; 70:21-71:12.

6. On July 24, 2012, C&S filed a default judgment application in the suit as to Plaintiff Agoado's alleged Household account. (Frank Decl. Ex. 1-B at S&S108–117 (default judgment application)).

**Response:** Admit but for the characterization of Agoado's Household account as "alleged." Agoado admitted that either he or his former wife opened the Household account under his name. *See* Response to ¶ 5.

7. The MCM-issued affidavit included in this default judgment application for Plaintiff Agoado's alleged Household account states, at Paragraph 8:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying

plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-B at S&S115) (emphasis added).

**Response:** Admit but for the characterization of Agoado's Household account as "alleged." *See* Response to ¶ 5.

8. The default judgment against Mr. Agoado as to his alleged Household account was docketed by the clerk for the First District Court of Suffolk County on August 28, 2012. With interest and costs included, the judgment amount as entered was $12,508.15. (Frank Decl. Ex. 1-B at S&S13 (transcript of judgment)).

**Response:** Admitted in part. The citation to Frank Decl. Ex. 1-B at S&S13, which is incorrect. The actual citation should be to Frank Decl. Ex. 1-B at S&S131. Further, C&S denies the characterization of Agoado's Household account as "alleged." *See* Response to ¶ 5.

*Plaintiff McNally*

9. On February 6, 2012, F&G filed a lawsuit in Suffolk County District Court against Ms. McNally, with MF named as plaintiff. (Frank Decl. Ex. 1-C (select court documents from McNally state-court collection action) at F&G 002–003 (summons and complaint, stating causes of action for breach of contract and account stated)).

**Response:** Denied. There are no claims against Defendant S&S with regard to this account. Plaintiff Agoado's account was the only account handled by Defendant S&S. As such, allegations relating to accounts other than Agoado's account do not involve S&S, should not have been included in a Rule 56.1 Statement for the claims against S&S, and

S&S does not have knowledge or information sufficient to respond to such allegations.

10. On May 22, 2012, F&G filed a default judgment application in the suit as to Plaintiff McNally's alleged account. (Frank Decl. Ex. 1-C at F&G 006–013 (default judgment application)).

**Response:** Denied. *See* response to ¶ 9.

11. The MCM-issued affidavit included in this default judgment application for Plaintiff McNally's alleged account states, at Paragraph 9:

It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-C at F&G 008) (emphasis added).

**Response:** Denied. *See* Response to ¶ 9.

12. The default judgment against Ms. McNally was docketed by the clerk for the Second District Court of Suffolk County on May 29, 2012. With interest and costs included, the judgment amount as entered was $7,216.41. (Frank Decl. Ex. 1-C at F&G 016 (transcript of judgment)).

**Response:** Denied. *See* response to ¶ 9.

13. A satisfaction as to this judgment was submitted in Suffolk County Supreme Court on July 26, 2012, and filed by the Suffolk County Clerk on September 4, 2012, for Plaintiff McNally's alleged account. (Frank Decl. Ex. 1-C at F&G 022 (satisfaction)).

   **Response:**  Denied. *See* response to ¶ 9.

*Plaintiff Sharkey*

14. On February 6, 2012, F&G filed a lawsuit in Suffolk County District Court against Mr. Sharkey, with MF named as plaintiff. (Frank Decl. Ex. 1-D (select court documents from Sharkey state-court collection action) at F&G 077–078 (summons and complaint, stating causes of action for breach of contract and account stated)).

   **Response:**  Denied. There are no claims against Defendant S&S with regard to this account. Plaintiff Agoado's account was the only account handled by Defendant S&S. As such, allegations relating to accounts other than Agoado's account do not involve S&S, should not have been included in a Rule 56.1 Statement for the claims against S&S, and S&S does not have knowledge or information sufficient to respond to such allegations.

15. On May 22, 2012, F&G filed a default judgment application in the suit as to Plaintiff Sharkey's alleged account. (Frank Decl. Ex. 1-D at F&G 081–088 (default judgment application)).

   **Response:**  Denied. *See* response to ¶ 14.

16. The MCM-issued affidavit included in this default judgment application for Plaintiff Sharkey's alleged account states, at Paragraph 9:

> It is in the ordinary course of business for plaintiff or its agents to send a validation letter to defendant(s) in accordance with the Fair Debt Collection Practices Act (15 USC § 1692g) setting forth the amount of the debt, identifying plaintiff as the creditor to whom the debt is owed, and notifying defendant(s) that, in accordance with the FDCPA, unless defendant(s) disputes the validity of the

debt, or any portion of it, the debt <u>will be assumed valid</u>.

(Frank Decl. Ex. 1-D at F&G 083) (emphasis added).

**Response:** Denied. *See* response to ¶ 14.

17. The default judgment against Mr. Sharkey was docketed by the clerk for the Second District Court of Suffolk County on May 29, 2012. With interest and costs included, the judgment amount as entered was $7,856.92. (Frank Decl. Ex. 1-D at F&G 091 (transcript of judgment)).

**Response:** Denied. *See* response to ¶ 14.

18. On June 20, 2012, F&G began the process of garnishing Mr. Sharkey's wages. (Frank Decl. Ex. 1-D at F&G 096 (income execution notice for employer)).

**Response:** Denied. *See* response to ¶ 14.

19. On September 12, 2012, F&G notified the Sheriff of Suffolk County of a payment arrangement with Mr. Sharkey, for $4,000 initially, and $200 monthly thereafter. (Frank Decl. Ex. 1-D at F&G 098 (notice of payment arrangement)).

**Response:** Denied. *See* response to ¶ 14.

20. A satisfaction as to the judgment against Mr. Sharkey was submitted in Suffolk County Supreme Court on April 1, 2014, and filed by the Suffolk County Clerk on April 17, 2014. (Frank Decl. Ex. 1-D at F&G 100 (satisfaction)).

**Response:** Denied. *See* response to ¶ 14.

*Plaintiff Vazquez*

21. On or about February 2, 2011, R&R filed suit against Ms. Vazquez in Suffolk County District Court, with MF named as plaintiff. (Frank Decl. Ex. 1-E (select court documents from Vazquez state-court collection action) at R&R #102–#103 (summons and complaint, stating causes of action for breach of contract and account stated)).

>    **Response:** Denied. There are no claims against Defendant S&S with regard to this account. Plaintiff Agoado's account was the only account handled by Defendant S&S. As such, allegations relating to accounts other than Agoado's account do not involve S&S, should not have been included in a Rule 56.1 Statement for the claims against S&S, and S&S does not have knowledge or information sufficient to respond to such allegations.

22. The complaint filed by R&R against Ms. Vazquez on Midland's behalf identified Chase as MF's "assignor" with respect to the alleged debt in question. (Frank Decl. Ex. 1-E at R&R #103).

>    **Response:** Denied. *See* response to ¶ 21.

23. On or about June 7, 2011, R&R filed a default judgment application in the suit as to Plaintiff Vazquez's alleged account. (Frank Decl. Ex. 1-E at R&R #118–#122 (default judgment application)).

>    **Response:** Denied. *See* response to ¶ 21.

24. The MCM-issued affidavit included in this default judgment application referenced only Chase with respect to the source of the account, and did not identify any prior owner(s). (Frank Decl. Ex. 1-E at R&R #119–#121 (affidavit for default judgment application))

>    **Response:** Denied. *See* response to ¶ 21.

25. The default judgment against Ms. Vazquez was rendered and docketed by the clerk for the Fourth District Court of Suffolk County on June 17, 2011. With interest and costs included, the judgment amount as entered was $11,131.48. (Frank Decl. Ex. 1-E at R&R 130 (transcript of judgment)).

>    **Response:** Denied. *See* response to ¶ 21.

26. On June 17, 2011, R&R commenced the garnishment process against Ms. Vazquez.

(Frank Decl. Ex. I-4 at R&R #134–#139 (income execution documents for employer)).

**Response:** Denied. *See* response to ¶ 21.

27. Ms. Vazquez had paid Midland at least $5,945.84.00 in connection with the alleged debt in question by December 2013, shortly after Plaintiffs' class action lawsuit was commenced. (Frank Decl. Ex. 3-B at MCM-0087–0088 (Midland payment history for Vazquez)).

**Response:** Denied. *See* response to ¶ 21.

**Discovery Shows Defendants Fraudulently Procured Judgments On Unprovable Debt**

*Midland's Sellers Disclaimed Accuracy Of The Data Provided At Purchase*

28. During discovery in this litigation, Defendants produced documents in response to Plaintiffs' demands for documents demonstrating how MF purchased alleged debts. When Midland acquired debt, the entities from which it purchased could not provide an analysis of the original allegedly unpaid charge, the fees, the interest, etc. for each alleged debt, and instead simply provided a dollar amount for the account balance as a data item in a spreadsheet, meanwhile disclaiming the accuracy of that amount. The July 30, 2010 purchase agreement for Plaintiff Vazquez's alleged account states that "'Current Balance' means the approximate unpaid balance, expressed in United States Dollars, owed on each Account as of the date of charge-off . . .'" (Frank Decl. Ex. 2-A at Part 1.7, (MCM-1017)) (emphasis added).

**Response:** Denied. Allegations relating to claims against Midland and that do not involve claims against S&S should not have been included in a Rule 56.1 Statement for the claims against S&S, and S&S does not have knowledge or information sufficient to respond to such allegations.

*Midland's Secondary Debt Is Defective Due To Broken Chain Of Title*

29. During discovery in this litigation, Defendants produced documents in response to

Plaintiffs' demands for proof of, inter alia, MF's ownership of the alleged debts that were the subject of the underlying state-court collection actions. As to Plaintiff Vazquez, the documents produced show Midland was not the first debt buyer to own Plaintiff Vazquez's alleged account. According to the document that Midland produced as the purchase agreement for Plaintiff Vazquez's alleged account, dated July 30, 2010, the entity that sold this to MF was not an original lender, but a fellow debt buyer, which could be either SquareTwo Financial Corporation, or one of two purported SquareTwo subsidiaries, CACH, LLC or CACV of Colorado, LLC. (Frank Decl. Ex. 2-A (excerpts from Vazquez purchase agreement) at MCM-1017 (agreement's introductory paragraph)).

> **Response:**   *See* Response to ¶ 21.

30. The July 30, 2010 purchase agreement for Plaintiff Vazquez's alleged account states that "'Current Balance' means the approximate unpaid balance, expressed in United States Dollars, owed on each Account as of the date of charge-off . . .'" (Frank Decl. Ex. 2-A at Part 1.7, (MCM-1017)) (emphasis added).

> **Response:**   *See* Response to ¶ 21.

31. Midland's internal records as to this alleged account reflect that it was originated by Washington Mutual ("WaMu"), then assigned to Chase, although Midland has furnished no assignments from WaMu to any other entity or from Chase to any other entity. (Frank Decl. Ex. 2-B (Midland data sheet for Vazquez account) at MCM-0068).

> **Response:**   *See* response to ¶ 21.

32. Midland's internal records state that electronic data concerning Ms. Vazquez's alleged Chase account were "provided by SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC" in connection with a "transfer[] on or about 10/27/2010 in connection with

265120352v.2

the sale of accounts from provided by SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC to Midland Funding LLC"—but the records do not identify which of these three entities was the purported assignor of the alleged account. (Frank Decl. Ex. 2-B at MCM-0068).

**Response:** *See* response to ¶ 21.

33. Midland's internal records concerning Ms. Vazquez's alleged Chase account also state that, with respect to "Chain Of Title(s)," there is "No Information available." (Frank Decl. Ex. 2¬B at MCM-0083).

**Response:** *See* response to ¶ 21.

34. Midland has produced documents labeled "ASSIGNMENT AND BILL OF SALE" and showing a date of October 27, 2010, that variously identify SquareTwo Financial Corporation, CACV of Colorado, LLC and CACH, LLC as entities which have assigned portfolios accounts to MF—but none of these documents identifies which of those three entities (if any) assigned Ms. Vazquez's alleged Chase account to MF. (Frank Decl. Ex. 2-B (purported assignment documents for Vazquez account) at MCM-0062–0067).

**Response:** *See* response to ¶ 21.

*Midland Told The Attorney Defendants There Was No Account-Level Documentation*

35. Midland and the Attorney Defendants use the You've Got Claims program ("YGC") to allow their respective computer systems to interface concerning debt-collection activities being performed by the Attorney Defendants on Midland's behalf. (Frank Decl. Ex. 3-A ("MCM Firm Manual" provided by Midland to Attorney Defendants) at Part 15.1 (MCM-1076)).

**Response:** Admit that S&S used YGC in addition to other forms of communication to communicate debt collection activities with Midland during the relevant time period.

265120352v.2

36. When Midland places an account with any of the Attorney Defendants for the commencement of state-court collection suit, Midland uses YGC to communicate to the firm the alleged balance on the account. (Frank Decl. Ex. 3-A at Part 15.2.1.1 (MCM-1078, -1140).

**Response:** Admit.

37. Midland uses YGC to send the Attorney Defendants a "Record 1" to tell the firm whether account-level documentation[3] is or is not available as to that account. (Frank Decl. Ex. 3-A at Part 22.1 (MCM-1119–1120)).

**Response:** Denied. Media is made at the time of assignment and/or thereafter. The manual Plaintiffs cite actually states that "MCM either receives media at the time of purchase or proactively request media; that media may be available on the media website at the time of placement or sometime after." Frank Decl. Ex. 3-A at Part 22.1.2 (MCM-1119) (emphasis added). Media, also known as account-level documentation, was provided to S&S not through YGC but through Midland's website.

38. When no account-level documentation is available, the Record 1 alert will read "Media Available: N." (*Id.*).

**Response:** Denied. Plaintiffs misrepresent the meaning of "Media Available: N." In fact, this notation means "Media is not available via MCM media website at the time of placement. Firms should review media availability via MCM media website and request required media via YGC or the Vendor Specialist." Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) (emphasis added).

---

[3] The term "account-level documentation" as used herein means records (1) created by an original lender, (2) at or near the time of the events (charges and payments) that they purport to describe, (3) pursuant to that entity's standard business practices, and (4) that were mailed to the consumer prior to account charge-off. In New York State, account-level documentation generally includes, among other business records, signed cardholder agreements, account statements, and proof of mailing of account statements.

265120352v.2

39. Whenever Midland sends a communication to any of the Attorney Defendants, Midland's YGC logs reflect the event as a "Record 9"; when an Attorney Defendant sends a communication to Midland, the event is categorized as a "Record 39." (Frank Decl. Ex. 3-A at Table 7, (MCM-1095)).

**Response:** Denied. Reference to Table 7 reflects that when Midland sends a record to an Attorney Defendant, it may be coded "Record 1," "Record 2," "Record 3," "Record 4," "Record 5," "Record 7," "Record 8," "Record 9," "Record 18," or "Record 24." When an Attorney sends a record to MCM, it may be coded as "Record 30," "Record 31," "Record 34," "Record 35," "Record 39," "Record 41," "Record 42" or "Record 46." Frank Decl. Ex. 3-A at Table 7, (MCM-1095). Further responding, Table 7 makes no representation that it is an exhaustive list of "Record" codes. *See id.*

40. When interfacing with Midland via a Record 39 sent by YGC, the Attorney Defendants rely on a list of "p-codes" each of which pertains to a particular event notification or document request. (Frank Decl. Ex. 3-A at "Record 39[:] P-Codes" (MCM-1140)).

**Response:** Admitted in part and denied in part. S&S admits that they use a "P-Code" when communicating with Midland to request particular documents. Denied that the table indicates that this is the only method by which C&S may issue a document request. For instance, C&S can also obtain documents from the Vendor Specialist. *See* Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) ("Firms should review media availability via MCM media website and request required media via YGC or the Vendor Specialist").

41. One of the p-codes is "*CC:S309," by which an Attorney Defendant may request an affidavit proving chain of title, including documentary proof attached thereto, in connection

with a collection suit being prosecuted in a New York State court. (Frank Decl. Ex. 3-A at MCM-1110).

**Response:** Admit.

42. Upon placing Plaintiff Vazquez's alleged account with R&R, Midland informed R&R that no account-level documentation was available as to Plaintiff Vazquez's alleged account. (Frank Decl. Ex. 3-B (Midland's YGC log re Vazquez account) at MCM-0094 ("Media Available: N" appears on upper-right of page)).

**Response:** Denied. *See* Response to ¶ 21.

43. No chain-of-title documentation was provided to R&R prior to its procuring the default judgment on Midland's behalf against Ms. Vazquez. (Frank Decl. Ex. 3-B at MCM-0096–0097).

**Response:** Denied. *See* Response to ¶ 21.

44. On June 24, 2011—after the default judgment against Ms. Vazquez had been effectuated—R&R sent Midland a YGC communication requesting chain-of-title documentation as to Ms. Vazquez's alleged Chase account; this request was never fulfilled. (Frank Decl. Ex. 3¬B at MCM-0095 (Midland's YGC log entry for "6/24/2011" shows Record 39 from R&R to Midland using "*CC:S309" to request "CHAIN OF TITLE"); Frank Decl. Ex. 3-C (R&R's YGC log re Vazquez account) at R&R #147 (showing "CHAIN OF TITLE REQUESTED" on "06/24/11").

**Response:** Denied. *See* response to ¶ 21.

45. When Midland placed Plaintiff Sharkey's alleged account with F&G, Midland informed F&G that no account-level documentation was available for Plaintiff Sharkey's alleged account. (Frank Decl. Ex. 3-D (Midland's YGC log re Sharkey account) at MCM-0687 ("Media Available: N" appears at top-right of page); Frank Decl. Ex. 3-E (F&G's YGC log re Sharkey

account) at F&G 103 ("Media Available N" appears as "Message[ Number] 008")).

**Response:** Denied. *See* Response to ¶ 14.

46. When Midland placed Plaintiff McNally's alleged account with F&G, Midland informed F&G that no account-level documentation was available for Plaintiff McNally's alleged account. (Frank Decl. Ex. 3-F (Midland's YGC log re McNally account) at MCM-0342 ("Media Available: N" appears at top-right of page); Frank Decl. Ex. 3-G (F&G's YGC log re McNally account) at F&G 025 ("Media Available N" appears as "Message[ Number] 008")).

**Response:** Denied. *See* Response to ¶ 9.

47. When Midland placed Plaintiff Agoado's alleged Household account with C&S, Midland informed S&S that no account-level documentation was available for Plaintiff Agoado's alleged Household account. (Frank Decl. Ex. 3-H (Midland's YGC log re Agoado-Household account) at MCM-1214 ("Media Available: N" appears at top-right of page)).

**Response:** Denied. Plaintiffs misrepresent the meaning of "Media Available: N." In fact, this notation means "Media is not available via MCM media website <u>at the time of placement</u>. Firms should review media availability via MCM media website and <u>request required media via YGC or the Vendor Specialist.</u>" Frank Decl. Ex. 3-A at Table 12: Record 1 Media Availability Messages (MCM-1119) (emphasis added).

48. On November 28, 2011, within days after Midland had placed Plaintiff Agoado's alleged Chase account with C&S, C&S requested the "Last Billing Statement" as to this account, but Midland rejected that request, informing C&S that "DOCUMENT TYPE NOT AVAILABLE FOR PORTFOLIO." (Frank Decl. Ex. 3-I (Midland's YGC log re Agoado-Chase account) at MCM-0297; Frank Decl. Ex. 3-J (C&C's YGC log re Agoado-Chase account) at S&S-151).

**Response:** Denied. As the cited documents state, "Request Rejected/Cancelled," not that Midland simply "rejected" the request. *See* Frank Decl. Ex. 3-I (Midland's YGC log re Agoado-Chase account) at MCM-0297; Frank Decl. Ex. 3-J (C&C's YGC log re Agoado-Chase account) at S&S-151. Further responding, C&S produced copies of Agoado's Chase statements in discovery, documents that were received at the time of assignment and also at time the suit against Agoado was brought. *See* Francoeur Aff., Ex. G, H, and I. Further, C&S denies Plaintiff's characterization of the debt as "alleged." *See* Response to ¶ 1.

**Plaintiffs Suffered Injuries Due To Defendants' Misconduct**

49. Ms. Vazquez testified about how Midland subjected her to wage garnishments as a result of the judgment against her. (Frank Decl. Ex. 4-A at 41:21-42:2; 172:12-:23).

**Response:** Denied. *See* response to ¶ 28.

50. Ms. Vazquez does not believe she ever owed Midland anything. (Frank Decl. Ex. 4-A at 63:9-14; 178:4-179:16).

**Response:** Denied. *See* response to ¶ 21.

51. Mr. Sharkey testified that he did not owe the debt because the original lender had told him they were writing off the debt. (Frank Decl. Ex. 4-B at 51:15-52:15; 53:8-:19).

**Response:** Denied. *See* response to ¶ 14.

52. Mr. Sharkey did not know the amount he purportedly owed, (*id*. 143:10-:18), but paid because he was "afraid and . . . harassed," (*id*. 64:13-65:7; 102:14-18; 170:21-171:2).

**Response:** Denied. *See* response to ¶ 14.

53. Mr. Sharkey never received an "itemized account of what [he] owed." (*Id*. 71:23-:24). Nevertheless, he paid $500.00 per month until the debt was fully paid. (*Id.* 74:19-75:7; 75:19-

76:7; 187:7-:15). To this day, he does not know if that was the correct amount. (*Id*. 75:11-:12; 158:9-:12).

**Response:** Denied. *See* response to ¶ 14.

54. Mr. Sharkey testified that the language of the FDCPA recited in the default-judgment affidavit that Defendants filed against him in state court left him with the false impression there was a court presumption against him due to his alleged failure to dispute the debt after receiving Midland's validation letter. (*Id*. 383:8-21).

**Response:** Denied. *See* response to ¶ 14.

55. Ms. McNally testified that she believes she paid more than she should have in order to resolve the judgment. (Frank Decl. Ex. 4-C at 53:5-:11; 54:20-55:11; 172:11-:22).

**Response:** Denied. *See* response to ¶ 9.

56. Ms. McNally was emotionally harmed by Defendants' conduct. She saw a psychiatrist for her ills. (*Id*. 166:14-:21; 167:21-168:14).

**Response:** Denied. *See* response to ¶ 9.

57. Mr. Agoado testified that the accounts in question were opened without his knowledge by his now-deceased wife, who struggled with gambling addiction. (Frank Decl. Ex. 4-D at 10:16-:18; 11:22-:25; 13:18-:22; 14:3-:12; 15:8-:10; 38:5-42:4; 43:23-45:4; 45:2-:4; 45:23-46:16; 46:21-47:5; 47:23-50-2; 64:10-:14; 67:8-:23; 68:12-69:6; 70:15-71:13; 107:7-:9; 142:5-:7).

**Response:** Deny in part and admit in part. Admit that Mr. Agoado did testify his wife was deceased and did gamble. Mr. Agoado never contacted HSBC to inform them that he had not opened the account himself. Francoeur Aff., Ex. F at 112:8-113:25. Mr. Agoado also did not notify anyone that his wife had taken out a Chase account in his name. *Id.* at 141:24-142:11.

58. Midland and C&S were aware of Mr. Agoado's noninvolvement with these alleged accounts at the time of the underlying collection actions against him. (*Id*. 39:8-41:2; 56:25-57:24).

**Response:** Denied. Frank Decl. Ex. 4-D at 39:8-41:2 fails to provide any support for this contention. Frank Decl. Ex. 4-D does not include pages 56-57 of the Agoado deposition. Further responding, Mr. Agoado testified that his wife forged his name to credit documents and that she was very good at forging his name. Frank Decl. Ex. 4-D at 69:18-71:12.

59. Mr. Agoado was left emotionally distressed by Midland and C&S's conduct against him, which culminated with publicly recorded judgments that negatively affect his personal and financial reputation. (*Id*. 175:9-19).

**Response:** Denied. Page 175 of the Agoado deposition is not included in Frank Decl. Ex. 4-D.

**Defendants Never Mailed Plaintiffs Documents Correctly Quoting The FDCPA**

60. At deposition defense counsel introduced the default-judgment affidavit submitted in state court against each Plaintiff, as an exhibit for that Plaintiff to review during deposition, counsel asked, "Do you remember receiving this document in the mail?" (Frank Decl. Ex. 4-B at 150:6–:21).

**Response:** Denied. *See* Response in ¶ 14.

61. Plaintiff Sharkey does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-B at 306:2–:22).

**Response:** Denied. *See* response to ¶ 14.

62. Plaintiff McNally does not recall any letter in the mail from Midland prior to suit

being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-C at 220:15–221:5).

**Response:**   Denied. *See* response to ¶ 9.

63.   Plaintiff Agoado does not recall any letter in the mail from Midland prior to suit being filed, and containing a correct recitation of Section 809 of the FDCPA. (Frank Decl. Ex. 4-D at 88:21–89:12).

**Response:**   Denied. The cited testimony reflects that Mr. Agoado confirmed that a letter marked Exhibit Agoado 13 (MCM-0127 to MCM-0129) was properly addressed to his residence but that he did not recall seeing the letter before.

64.   Defendants have provided no proof of mailing of any such letters.

**Response:**   Denied.  *See* response to ¶ 28.


Dated: January 14, 2022
       New York, New York

                              Yours, etc.

                              WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                              By:   */s/ Joseph Francoeur*
                                    Joseph L. Francoeur
                                    *Attorneys for Defendant*
                                    *COHEN & SLAMOWITZ, LLP*
                                    150 East 42nd Street
                                    New York, New York 10017-5639
                                    Tel.: (212) 490-3000
                                    File No.: 11471.00008
                                    Joseph.francoeur@wilsonelser.com

265120352v.2